UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PATRICIA PEROTTI-CYRUS,
    Plaintiff,

                                          CIVIL ACTION
                                          NO. 05-10116-DPW

        v.

ROBERT JENSON, Chairman
Of The Board Of Appeals For
The Town Of Sandwich, Et al.,
        Defendants.

PLAINTIFF'S MOTION TO AMEND HER COMPLAINT
TO ADD COUNT APPEALING DENIAL OF HER APPLICATION
<u>FOR SPECIAL PERMIT BY DEFENDANT, SANDWICH BOARD OF APPEALS</u>

NOW COMES the plaintiff, Patricia Perotti-Cyrus ["Cyrus"], and moves to

amend her Complaint, to add a count appealing the denial of her application for

special permit by the defendant Sandwich Board of Appeals ["Board"]. As

grounds, Cyrus states that although the Board denied her applications appealing

the decision of the Building Inspector and for a variance on December 14, 2004,

and filed the same with the Sandwich Town Clerk on December 15, 2004, it did

not decide (and deny) her application for a special permit until March 4, 2005,

filing the same with the Town Clerk on March 9, 2005. Pursuant to G.L. c. 40A,

s. 17, appeals of decisions of the Board of Appeals must be made within twenty

(20) days after the filing of the decision with the Town Clerk. Accordingly, Cyrus

was required to file her appeals to this Court of the decisions of the Board

denying her appeal of the building permit and application for variance on or

before January 4, 2005, yet the appeal period for the denial of her application for

variance did not begin to run until March 9, 2005, and expires on March 29, 2005.

The issues pertaining to her appeal of the Board's denial of Cyrus' application for special permit arise out of and relate to the same circumstances at issue in her appeals of the denial of appeal of decision of the Building Inspector and denial of her application for variance. Accordingly, in the interests of judicial economy, all matters should be heard together, rather than having plaintiff file a separate legal action in the Barnstable Superior Court, which could result in inconsistent decisions in this matter. Defendants will not be harmed if Cyrus is allowed to amend her complaint to add a Count appealing the denial of her application for special permit in this matter, particularly where defendants sought removal of this matter to U.S. District Court, and would likely do the same if plaintiff were to file a separate action in the Barnstable Superior Court appealing the denial of her special permit application.

WHEREFORE, plaintiff Cyrus requests that her Motion to mend her Complaint, a copy of which is attached, with Exhibits, be allowed, and that the service requirements set forth in G.L. c. 40A, s. 17, be waived, in light of defendants' answer and appearance of counsel on their behalf in this matter, and that instead service upon counsel be deemed sufficient service in these

circumstances.

Plaintiff,

PATRICIA PEROTTI-CYRUS,

By her attorney,

Julie C. Molloy    BBO#555176
379 Route 6A
East Sandwich MA 02537
(508) 833-3707

Dated:  March 22, 2005

<u>CERTIFICATE OF SERVICE</u>

I, Julie C. Molloy, Esq., hereby certify that a copy of the foregoing was served via U.S. Mail, first class, postage pre-paid, on March 24, 2005, upon the defendants, as follows:

Judith C. Cutler, Esq.
Kopelman & Paige, P.C.
31 St. James Avenue
Boston MA 02116-4102

Leonard H. Kesten, Esq.  (also by hand on March 24, 2005)
Deborah Ecker, Esq.
Brody, Hardoon, Perkins & Kesten
One Exeter Plaza, 12th floor
Boston MA 02116

3

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 05-10116 DPW

PATRICIA PEROTTI-CYRUS,  )
                         )
        Plaintiff,       )
                         )
    v.                   )
                         )
ROBERT JENSEN, Chairman of the Board of )
Appeals for the Town of Sandwich, ROBERT )
GUERIN, JAMES KILLION, MATTHEW )
McDONNELL, ERIK VAN BUSKIRK, )
WILLIAM DAWES, and MICHAEL )
LESPERANCE, as they are Members of the )
Board of Appeals, DONNA BOARDMAN, )
Building Inspector and Zoning Enforcement )
Officer for the Town of Sandwich, and )
TOWN OF SANDWICH, )
                         )
        Defendants.      )

## PLAINTIFF'S AMENDED COMPLAINT APPEALING DECISIONS OF TOWN OF SANDWICH BOARD OF APPEALS, DECISION OF BUILING INSPECTOR, REQUEST FOR DECLARATORY JUDGMENT, AND DEMAND FOR JURY TRIAL

I.    INTRODUCTION

The plaintiff hereby files this Amended Complaint, adding a Count III,[1]

appealing the denial by the Board of Appeals of her application for special permit.

Although the Board denied plaintiff's applications appealing the decision of the

Building Inspector, denying her request for a building permit, and for a variance

on December 14, 2004, and filed those decisions with the Town Clerk on

---

[1] In her original Complaint, plaintiff omitted a Count III, which was intended to appeal the denial of her special permit.

December 15, 2004, it did not render its decision denying her application for a special permit until March 4, 2005, and filed the same with the Town Clerk only on March 9, 2005. Accordingly, plaintiff's appeal of the denial of the special permit application did not become ripe until March 9, 2005, and must be filed on or before March 29, 2005, while her appeals of the other two applications had to be filed within (20) twenty days after December 15, 2004 (by no later than January 4, 2005).

As previously noted in the original Complaint, the issues in this case are similar, if not identical, to the issues raised in the matter of _Donald Thibault v. William Dawes, et al._, Barnstable Superior Court, Docket No. 04-CV-0588,[2] and to the issues in the case matters decided by the Massachusetts Land Court, in the matter of _Norwell-Arch, L.L.C. v. Norwell Zoning Board of Appeals_, Misc. Case No. 285113, Mass. Land Court (Hon. J. Trombley) (decided May 24, 2004); 12 LCR 208; 2004 MASS. LCR LEXIS 44.

The heart of the issue, as noted by the Land Court in the _Norwell-Arch, L.L.C._ case, is whether a property containing two or more structures which have existed since before the municipality adopted the Subdivision Control Law, divided into two or more lots through the endorsement of an "approval not required" plan ["ANR plan"], pursuant to G.L. c. 41, s. 81L, such that each structure is located on its own lot, is entitled to the protections set forth in G.L. c. 40A, s. 6 (1st¶), as a "structure lawfully in existence," as used in that paragraph, where the already developed lots created by the ANR plan do not meet zoning

---

[2] Plaintiff in that case has filed a Motion for Summary Judgment, which the Town has opposed, and filed a Cross-Motion for Summary Judgment. The cross-motions for summary judgment were scheduled for hearing on February 15, 2005, but the hearing was postponed to May 26, 2005, by the Court.

dimensional requirements in effect as of the date of endorsement of the ANR

plan. As stated by the Land Court:

> Clearly, the General Court intended to provide special protection
> for residential structures in existence before the adoption of the
> subdivision control law in each locality when it added the two
> building exception to G. L. c. 41, 81L, in 1953. Citgo Petroleum
> Corp. v. Planning Bd. of Braintree, 24 Mass. App. Ct. 425, 427
> (1987); G. L. c. 41, § 81L (excepting from the subdivision control
> law the "division of a tract of land on which two or more buildings
> were standing when the subdivision control law went into effect in
> the city or town in which land lies into separate lots on each of
> which one of such buildings remains standing"). Similarly, single
> and two-family residential structures enjoy preferential zoning
> treatment under the second "except" clause of G. L. c. 40A, § 6.
> The second "except" clause of G. L. c. 40A, § 6, provides residential
> structures preferential zoning treatment when the proposed
> changes to a nonconforming residential structure will not increase
> its nonconforming nature. Goldhirsh [v. McNear], 32 Mass. App.
> Ct. [455] at 458-461 [(1992)] (discussing board of appeal's review of
> nonconforming structures under G. L. c. 40A, § 6). To fully protect
> single and two-family residential structures, G. L. c. 41, § 81L, and
> c. 40A, § 6, must be read together. The Special Permit Granting
> Authority, in this case the ZBA, cannot merely deny the request on
> the grounds that the structure is nonconforming as a result of a G.
> L. c. 41, 81L endorsement, . . .
>
> _Norwell-Arch, L.L.C. v. Norwell Zoning Board of Appeals_, Misc.
> Case No. 285113 (page 4, attached as Exhibit 1).

Notwithstanding this decision, which plaintiff pointed out to the Board of

Appeals during the hearings, plaintiff's appeal of the decision of the building

inspector, denying her application for a building permit, and her applications for

special permit and variance relief were denied, on the grounds that the property

is "unlawful" under zoning because the lot created by the ANR plan[3] did not meet

---

[3] Plaintiff's property was one of six cottages on one lot, and each cottage having been in existence since 1948, before the Town of Sandwich adopted Subdivision Control in August 1954, was entitled to division pursuant to G.L. c. 41, s. 81L and s. 81P by endorsement of the ANR plan in October 1994. Unquestionably, the six newly created lots, each containing one cottage, did not comply with zoning dimensional requirements at the time of the October 1994 ANR plan's

the zoning dimensional requirements in effect as of the date of endorsement of the ANR plan, on October 19, 1994. As a consequence, plaintiff has been unable to use her cottage since October 2003, when it was damaged in a fire.

At no time since this ANR plan was endorsed or recorded, over ten (10) years ago, has the Town of Sandwich ever sought to enforce any alleged zoning dimensional (hence structural) violation resulting from the endorsement and recording of this ANR plan, locating each cottage on its own lot. G.L. c. 40A, s. 7, bars enforcement of any structural (dimensional) violation after six (6) years, if the structure was undertaken with a building permit, or ten (10) years, if the structure was undertaken without the benefit of a building permit. The creation of a dimensional violation through the endorsement of an ANR plan does not, in and of itself, create a "use" violation under zoning, and, in point of fact, by locating each cottage on its own lot, the cottages fall within the definition of "dwelling unit, single family," under the Sandwich zoning by-laws, a by-right use in the R-2 zoning district in which the cottages have been located at all times since October 1994 through the present.

During the Board's hearings, it became clear that the Board of Appeals (through its Counsel) erroneously believes that the creation of a dimensional violation on this peculiar type of ANR plan created a _use_ violation, by virtue of the "conversion" of the cottage colony to six (6) individual lots through the endorsement of the 1994 ANR plan, each containing a single-family residence, as defined in the zoning by-laws, without complying with section 4710 of the zoning

---

endorsement. This plan was recorded with the Barnstable County Registry of Deeds at Plan Book 506, Page 85, on October 28, 1994.

by-laws, governing conversion of cottage colonies to single-family residences. See Special Permit Decision, attached as Exhibit 2, Findings #10 and 11. This interpretation ignores the reality that, after division via the 1994 ANR plan, the individual cottages, now each located on their own lot, no longer fall within the definition of the "cottage colony" zoning by-law, Section 4710, and accordingly, it is inapplicable. There is no definition of "seasonal" in the zoning by-laws, as found by the Board of Appeals (See Exhibit 2, Finding#25). All of the Ploughed Neck Road cottages have been equipped with heating systems since their construction in 1948, and as such, have always had the "characteristic furnishings and equipment" to allow year-round usage, and in fact they have been used on a year-round basis, thus, no "abandonment" of the year-round usage could have occurred under the abandonment zoning by-law, Section 2410, and they are not seasonal cottages, but instead are year-round units, thus taking them out of the definition of "cottage colony," and not subject to the cottage colony conversion by-law. See Exhibit 2, Finding #27.[4] Ms. Perotti-Cyrus has also presented a G.L. c. 258 Tort Claims Act demand letter to the Town, dated November 5, 2004, to which the Town has six (6) months[5] to respond. To date, no response has been forthcoming.

---

[4] Even assuming that in fact the cottages may only be used on a seasonal basis (which at the end of the day seemed to be the Town's real concern), at present, Ms. Perotti-Cyrus is being deprived of using her cottage even seasonally, because she cannot obtain a building permit to repair the damage to render it habitable. If the Town in fact is correct regarding the seasonal issue, the proper thing to do would be for the building permit to issue so that the cottage can be used, and if the Town feels that a use violation arises by virtue of other than just seasonal use, it may bring an enforcement action against Ms. Perotti-Cyrus seeking to enjoin the same. This was raised at the hearings, to no avail.

[5] As yet, the Town has made no response to the G.L. c. 258 Demand letter, and its response is due on or about May 5, 2005.

<u>COMPLAINT</u>

<u>Parties</u>

1.  Plaintiff, Patricia Perotti-Cyrus ["Plaintiff"], owns the real property, containing a year-round cottage, located at 9 Ploughed Neck Road, East Sandwich, Barnstable County, Massachusetts 02537 ["the Property"], and she resides at One Palmer Road, East Sandwich, Barnstable County, Massachusetts 02537.

2.  Plaintiff purchased the Property on September 11, 2002, which is reflected as Lot 1 on Plan Book 506, Page 85, recorded with the Barnstable County Registry of Deeds, and plaintiff's Deed is recorded at Book 15579, Page 249, in the same registry.

3.  Defendants, Robert Jensen is the Chairman of the Board of Appeals for the Town of Sandwich, and Robert Guerin, James Killion, Matthew McDonnell, Erik Van Buskirk, William Dawes, and Michael Lesperance, are member of the Board of Appeals [hereafter referred to collectively as "Board of Appeals"], at all times relevant, with a principal place of business at the Office of Planning & Development, Town Office Building, 16 Jan Sebastian Drive, Sandwich, Barnstable County, Massachusetts 02563.

4.  Defendant, Donna Boardman, is the Building Inspector and Zoning Enforcement Officer for the Town of Sandwich, at all times relevant, with a principal place of business at the Building Department, Town Office Building, 16 Jan Sebastian Drive, Sandwich, Barnstable County, Massachusetts 02563.

5.  Defendant, Town of Sandwich ["Town"], is a duly incorporated body politic and town of the Commonwealth of Massachusetts, with a principal place of business at 130 Main Street, Sandwich, Barnstable County, Massachusetts 02563.

<u>Factual Background</u>

6.  Plaintiff repeats and reasserts the matters set forth above, incorporating the same herein by reference, and further states as follows:

7.  On October 19, 1994, the Town of Sandwich Planning Board endorsed an ANR plan ["1994 ANR plan], dividing one large lot containing cottages that had existed since before the Town adopted the Subdivision Control Law, into six (6) smaller lots, with one cottage on each newly created lot, under that provision of G.L.c. 41, s. 81L and s.

81P, allowing such division on an ANR plan so long as the structures pre-date Subdivision Control adoption by a municipality.

8.  The six lots shown on the 1994 ANR plan did not meet the 1994 zoning dimensional requirements in effect in October 1994.

9.  The Town adopted Subdivision Control Law on August 20, 1954.

10. The Town first adopted zoning in 1960.

11. The 1994 ANR plan was recorded with the Barnstable County Registry of Deeds on October 28, 1994, at Plan Book 506, Page 85.

12. "Structural" violations under G.L. c. 40A, s. 7, are violations of the dimensional requirements of zoning.

13. G.L. c. 40A, s. 3, states "No zoning ordinance or by-law shall regulate or restrict the use of materials, or methods of construction of structures regulated by the state building code, . . . ".

14. Structural violations of the state building code are solely enforceable by building inspectors pursuant to G.L.c. 143, s. 3A.

15. An ANR plan showing a violation of dimensional zoning constitutes a structural violation under zoning, if in fact there is any violation.

16. G.L. c. 40A, s. 7 sets forth two statutes of limitations: a six year statute of limitations regarding structural and use violations begun under an original building permit authorizing such use; and, a ten year statute of limitations for structural violations begun without benefit of a building permit.

17. G.L. c. 40A, s.7, provides no statute of limitations for use violations not begun under a lawfully issued building permit.

18. At all times relevant, the Property, since October 1994, through the present, has been located within the R-2 zoning district in Sandwich, which allows single family residential use by right.

19. Sandwich zoning by-laws define "dwelling" and "dwelling, single family" as follows:

> DWELLING - A building or part of a building used exclusively as the living quarters for one or more families.
>
> DWELLING, SINGLE-FAMILY - One dwelling unit on a single lot irrespective of structure type, ownership or tenure.

(Added STM 9/91)

See Sandwich zoning by-laws, "Definitions," p. 71.

20.    Sandwich zoning by-laws define "cottage colony" as follows:

COTTAGE COLONY - Two or more detached seasonal
dwellings located on the same lot, _each designed for
independent family living and including cooking facilities_.
(Amended May 1, 1995)

See Sandwich zoning by-laws, "Definitions," p. 71. (emphasis
added)

21.    Before May 1, 1995, and specifically in October 1994, the definition of
cottage colony also limited the definition by defining all of the cottages
as each having less than 480 square feet of area.  See Sandwich zoning
by-laws, "Definitions," in effect before May 1, 1995.

22.    The Sandwich cottage colony conversion by-law states as follows:

Cottage Colonies. Any existing cottage colony [two or
more detached seasonal dwellings located on the same
lot] may not be converted to single-family dwelling use
under separate ownership unless the lot upon which each
building is located complies with the minimum
requirements for single family dwellings in the zoning
district in which the land is located, and such non-
conforming cottage colony may not be converted to
single-family use under condominium, cooperative, time
sharing condominium, or any other single-family
dwelling use more intensive or frequent than seasonal or
intermittent use, unless the lot meets the minimum
requirements for Cluster Developments, as set forth in
Section 4440. This section shall apply whether or not the
lot is situated in a district in which Cluster Development
is a prohibited use.

See Sandwich zoning by-laws, Section 4710.

23.    The Sandwich zoning by-laws do not contain any definition of the term
"seasonal dwelling."  See Sandwich zoning by-laws, "Definitions,"
beginning p. 69; see also Board of Appeals Special Permit Decision,
Exhibit 2, Finding No. 25.

24.  The Sandwich zoning by-laws further provide with respect to the conversion of seasonal cottage colonies that the following procedure be followed:

> 4740.  <u>Procedures</u>. The <u>conversion of any structure</u> provided herein shall be governed by the procedures contained in <u>Section 4431</u> through <u>4437</u>; and, in addition, the Planning Board shall thereafter submit its recommendations to the Board of Appeals within thirty (30) days after receipt of reports from the Board of Health and/or Conservation Commission, or within seventy-five (75) days of the date  of pre-application review, whichever is sooner.  The Board of Appeals shall act upon said application as an application for special permit as set forth in <u>Section 1330</u> through <u>1360</u> and, where applicable, <u>Section 2400</u>.

> <u>See</u> Sandwich zoning by-laws, Section 4740.

> 4431.   Pre-Application Review. To promote better communication and avoid misunderstanding, applicants are encouraged to submit preliminary materials for informal review by the Planning Board prior to formal application.

> 4432.   Submission. Proposed Cluster Developments shall comply with the "Cluster Development Special Permit Regulations" of the Sandwich Planning Board. A Cluster Development shall encompass at least twice the lot area required in the district. A new or existing Cluster Development may include a Village Cluster, which meets the requirements of <u>Section 4444</u> of the Sandwich Zoning By-laws. In the case of an application to amend an existing Cluster Special Permit to permit a Village Cluster, the procedures in <u>Section 4440</u> through <u>Section 4448</u>, inclusive shall apply, except as to such materials as the Planning Board may waive as duplicative of materials previously submitted.

> <u>See</u> Sandwich zoning by-laws, Sections 4431 and 4432. [*N.B.* Section 4433 through 4437 do not exist in the by-laws]

> 1330.  Special Permits shall normally be granted unless, because of conditions peculiar to the particular case but not generally true for similar permitted uses on other sites in the same district, it appears that nuisance, hazard

or congestion will be created, or for other reasons there will be substantial harm to the neighborhood or derogation from the intent of the by-law, so that the stated district objectives will not be satisfied. The Special Permit Granting Authority shall place upon each special permit the condition that failure to comply with the conditions set forth in the special permit will result in termination thereof and that it shall expire upon transfer of ownership, prior to initiation of substantial construction on or occupancy of the site, unless such transfer is authorized in the permit, or if no substantial construction or occupancy takes place within the twelve (12) months of special permit approval, excluding such time required to pursue or await the determination of an appeal referred to in Section 17 of Chapter 40A. Extenuating circumstances may be a basis for a six (6) month extension to be granted by the Special Permit Granting Authority. Construction or operations under a building or special permit shall conform to any subsequent amendment of the ordinance or by-law unless the use or construction is commenced within a period of not less than six (6) months after the issuance of the permit and, in cases involving construction, unless such construction is continued through to completion as continuously and expeditiously as is reasonable.

1331.  Special permits shall only be issued following public hearings held within sixty-five (65) days after filing of an application with the Special Permit Granting Authority. A copy of the application shall be given to the Town Clerk forthwith by the applicant.

1332.  Referral. The Special Permit Granting Authority (SPGA) shall refer special permit applications to the Board of Health, Water Quality Review Committee, Conservation Commission, Housing Authority, Planning Board, Board of Appeals, Highway Department, and Town Engineer for written comments and recommendations pertaining to the area of responsibility of that particular board or department, before taking final action on said special permit application. In additions to the above noted boards, the SPGA may refer a special permit application to any other Town agency/board/department for comments and recommendations if it so desires before taking final action on said special permit application. A public hearing on said referral shall not be required. The SPGA

need not send a referral to itself.

Any such board or agency to which applications are referred to for comments shall make its recommendations and send copies thereof to the SPGA and the applicant within thirty-five (35) days of receipt of the referral request by said board or agency or there shall be deemed no opposition or desire to comment. The SPGA shall not act upon said special permit until either comments from referred boards or agencies have been received, or said thirty-five (35) days have elapsed, whichever is sooner. Applications referred to more than one board or agency may be reviewed jointly by said boards or agencies.

1342.  In acting on special permits and special permit amendments under this section, the <u>Board of Appeals</u> <u>shall give consideration to the recommendations, if any,</u> <u>of the Planning Board and the Town Engineer.</u> These recommendations shall be formulated considering the following criteria:
(a) Protection of adjacent area against detrimental or offensive uses on the site by provision of adequate surface water drainage, buffers against lighting, sight, sound, dust, vibration, odor and allowance of sunlight and air;
(b) Convenience and safety of vehicular and pedestrian movement within the site and in relation to adjacent areas;
(c) Adequacy of facilities for handling and disposal of refuse and other production by-products;
(d) Protection of environmental features on the site and in adjacent areas;
(e) *Promotion of appropriate arrangement of structures* *within the site and in relation to existing structures* *within the district and neighborhood*;
(f) Co-ordination with and improvement of systems of vehicular and pedestrian access, drainage, water supply, sewage disposal, lighting, landscaping, wetlands, water courses, buildings and others features that support the neighborhood;
(g) Compliance with all applicable sections of the Zoning By-Law.

2400.   Non-Conforming Uses. The use of any structure or land lawfully existing at the time of the enactment or subsequent amendment of this bylaw may be continued

although such structure or use does not conform with provisions of this by-law, subject to the following conditions and exceptions:

2410. Abandonment. A non-conforming use of a building or land, which has been abandoned for a period of two (2) years, shall not thereafter be returned to such non-conforming use. A non-conforming use shall be considered abandoned when the premises has been vacant for two years, or when the characteristic equipment and/or furnishings of the non-conforming use have been removed from the premises and have not been replaced by similar equipment, whichever shall occur first.

2420. Change, Extension Or Alteration. No change, extension or alteration of a pre-existing non-conforming use and no change, extension or alteration of a pre-existing non-conforming structure may be made except upon the issuance of a special permit from the Zoning Board of Appeals. Such a special permit may be granted only if the special permit granting authority finds that the proposed change, extension or alteration of a pre-existing non-conforming use, or change, extension or alteration of a pre-existing non-conforming structure is not substantially more detrimental to the neighborhood than the existing nonconforming use or non-conforming structure.

The following conditions shall apply to any special permit granted under this section:
a). When the permit applicant requests either a change, extension or alteration of a non-conforming use or change, extension or alteration of a non-conforming structure, any change, extension or alteration may occur only upon those parcels of land upon which the pre-existing non-conforming use or structure is located;
b). When the permit applicant requests either a change, extension or alteration of a non-conforming use, or a. change, extension or alteration of a non-conforming structure, the permit applicant shall substantially screen all new parking from abutters and from streets. (5/4/98)

See Sandwich zoning by-laws, Sections 4431, 4432, 1330, 1331, 1332, 1342 (emphasis added to subpar. (e)), 2400, 2410, and 2400.

25.    The Sandwich zoning by-laws grant exemptions and protections from "increases in lot area, width, depth, frontage, yard, or coverage

requirements," for vacant lots, in accordance with the requirements of G.L.c. 40A, s. 6 (4th¶), but also with regard to certain developed lots:

> 2550. Non-Conforming Lots. Application of amended Intensity of Use Regulations to previously created lots is limited by Section 6, Chapter 40A, MGL. In addition, any increase in lot area, width, depth, frontage, yard, or coverage requirements of this by-law shall not apply to erection, extension, alterations, or moving of a structure on a legally created lot not meeting current requirements, provided that either the lot is in an exempted subdivision (see Section 2560) or the applicant documents that:

> a.  At the time such increase requirement became applicable to it, the lot:
>     1.  Had at least 5,000 square feet of lot area and 50 feet of frontage on a street; and
>     2.  Conformed to the existing dimensions required at the time of creation,
> b.  The lot is to be used for a single dwelling unit or for non-residential use, provided that no side yard shall be less than 20 feet on a lot having frontage of more than 100 feet but less than 200 feet and that no side yard shall be less than the greater of ten (10) percent of the lot's frontage or six (6) feet on one side and eight (8) feet on the other on a lot having frontage of 100 feet or less,
> c.  And the lot was held in ownership separate from all abutting property on December 31, 1998. (Amended 5/4/98)

> Such non-conforming lots may be changed in size or shape or their land area recombined without losing this exemption, so long as the change does not increase the actual or potential number of buildable lots.

> See Sandwich zoning by-laws, Section 2550.

26.  The Sandwich zoning by-laws define "abandonment" as follows:

> Abandonment. A non-conforming use of a building or land, which has been abandoned for a period of two (2) years, shall not thereafter be returned to such non-conforming use. *A non-conforming use shall be considered abandoned* when the premises has been vacant for two years, *or when the characteristic equipment and/or furnishings of the non-conforming use have been removed from the premises and have not*

> *been replaced by similar equipment*, whichever shall occur first.
>
> See Sandwich zoning by-laws, Section 2410 (emphasis added).

27. The Ploughed Neck Road cottages have been used on a year-round basis for many years, both before and after 1994, continuing through the present, and all six cottages have been equipped with heating systems since their construction in 1948.

28. The Town has never sought to enforce a use violation due to the fact that the Ploughed neck cottages have been used on a year-round basis, at any time before or after 1994, through the present.

29. On or about March 8, 1995, Forestdale Realty, Inc., owned all of the Ploughed Neck Road cottages, and created a condominium consisting of the six cottages. See Master Deed, recorded with Barnstable Registry of Deeds, Book 9581, Page 262.

30. The Town never issued any special permit for this conversion to a condominium.

31. On June 1, 2001, Forestdale Realty, Inc., and the one other unit owner, Paulette Sasville, lawfully terminated the condominium at Ploughed Neck Road, in accordance with the procedures set forth in G.L. c. 183A, s. 19, which termination is recorded with the Barnstable Registry of Deeds in Book 13898, Page 190.

32. Thereafter, Paulette Sasville acquired title to the cottage located on Lot 5, on Plan Book 506, Page 85, the 1994 ANR plan, as a single family residence, a by-right use in the R-2 zoning district.

33. Forestdale Realty, Inc., conveyed all of its right title and interest in the cottages located on Lots 1-4, and 6, as shown on the 1994 ANR plan, recorded at Plan Book 506, Page 85, to West Yarmouth Lodgings, Inc., on June 1, 2001, by deed recorded with Barnstable Registry of Deeds, Book 13898, Page 197.

34. West Yarmouth Lodgings, Inc., thereafter sold the individual lots to various individuals, including Lots 1 and 2 to plaintiff in this action.

35. A planning board may not refuse to endorse an ANR plan showing the division of land on which two or more structures have existed since before the city or town adopted Subdivision Control, such that each structure is located on its own lot, on the grounds that the resulting lots

violate dimensional zoning requirements as of date of endorsement of ANR plan.

36.   Challenges to the endorsement of an ANR plan must be brought within sixty (60) days of the endorsement of such a plan, pursuant to G.L. c. 249, s. 4.

37.   No person, including the Town, has challenged the endorsement of the 1994 ANR plan, pursuant to G.L. c. 249, s. 4.

38.   In mid-October, 2003, plaintiff's cottage ["Cottage"] located on Lot 1, at 9 Ploughed Neck Road, East Sandwich, was damaged by fire.

39.   The cottage is uninhabitable as a result of this fire and water damage, although overall the damage is minimal.

40.   Plaintiff began repairs without the benefit of a building permit in late 2003/early 2004, but stopped when the Building Inspector issued a cease and desist order.

41.   Thereafter, plaintiff sought to obtain a building permit from the Building Inspector, but was denied the same by the Building Inspector, in July 2004, in reliance upon a March 12, 2004, letter from Town Counsel.

42.   Plaintiff timely filed an appeal of the denial of her building permit application by the Building Inspector, and simultaneously filed applications for special permit and variance relief, on or about August 24, 2004.

43.   Defendant Board held public hearings on all three zoning applications on October 12, 2004, November 23, 2004, and December 14, 2004, and the public hearing was closed on December 14, 2004.

44.   During these hearings, plaintiff presented evidence that the cottage was not a part of a seasonal cottage colony because: (1) it has always been equipped with a heating system, thus year-round usage has never been abandoned; (2) testimony in the form of affidavits from Forestdale Realty, Inc., and West Yarmouth Lodgings, Inc., that while those entities owned the cottages, they were used on a year-round basis; (3) letters from Forestdale Realty's predecessor owner, Elizabeth Sprague, from 1994, that she had used both the main home and cottages on a year-round basis; (4) after the 1994 ANR plan was endorsed, the "cottage colony" definition no longer applied, because each cottage was now located on its own lot.

45.   Plaintiff also presented evidence that the only violation that arose, if in
      fact one did arise, in connection with the endorsement of the 1994 ANR
      plan, it was a dimensional violation, which, under the Zoning Act, G.L.
      c. 40A, is a structural violation, and further that no use violation arose.

46.   Plaintiff further presented evidence that the fact that no special permit
      was ever issued by the Town to the property when the condominium
      was created is further evidence that the Town did not consider this
      property to fall within the definition of "cottage colony" as defined in
      the zoning by-laws – if it had, then the Town surely would have had to
      issue a special permit, yet Town Counsel asserts that the property was
      lawful as a condominium, but unlawful as single-family residences.

47.   Plaintiff further presented evidence that it appears the Town's real
      issue is whether the cottages can be used on a year-round basis, or only
      seasonally, whatever that is, given the lack of a definition for the same,
      and that plaintiff was being deprived even of using the cottage
      seasonally, because she has been denied a building permit to repair the
      damage and the cottage remains uninhabitable in its present state.

48.   Plaintiff further presented evidence that the Board should issue
      plaintiff her building permit, by overturning the decision of the
      Building Inspector, and if, thereafter, the Building Inspector feels a use
      violation arises due to year-round usage, the Building Inspector can
      seek enforcement of that violation by seeking to enjoin the same.

49.   The defendant Board rejected all of this evidence, and denied both
      plaintiff's appeal of the Building Inspector's decision, and plaintiff's
      applications for variance and special permit relief.

50.   Plaintiff has suffered damages, and continues to suffer damages,
      insofar as the title to her property has been slandered, lost rents, loss of
      use, legal fees and expenses, expenses incurred in borrowing monies in
      order to continue to meet her mortgage obligations, which had been
      subsidized by the rental income she received in connection with rental
      of the cottage.

51.   As grounds for it's denial of plaintiff's appeal of the decision of the
      Building Inspector denying plaintiff's application for building permit,
      the Board made the following findings:

      Findings:

      1.   The applicant states that 9 Ploughed Neck Road is used as a single-
           family dwelling.  The Board of Appeals finds that no information
           was submitted by the applicant to contradict the determinations
           made by Town Counsel and the Building Inspector that the use

remains cottage colony as shown by information contained in the public record in this matter.

2.  The Board of Appeals finds that the Sandwich Protective Zoning By-laws does (sic) not empower the Board of Appeals to grant use variances.

3.  The Board of Appeals finds that the conveyance of the property to individual owners to be used as single-family dwellings created a zoning violation because the conveyance took place without complying with Section 4710.

4.  The Board of Appeals finds that Town Counsel's letter of March 12, 2004 to the Building Inspector chronicles the history of the use and ownership of this property. Counsel specifically states: "Because these lots have subsequently come into separate ownership the entire property is in violation of the zoning by-law."

5.  The Board of Appeals finds that the plan endorsed under Section 81L does not legitimize the single-family dwelling use.

6.  The Board of Appeals finds that the statute of limitations in Chapter 40A, Section 7, does not apply to uses. The Board finds that even if the statute of limitations did apply, the 10 years have not yet expired.

7.  The Board of Appeals finds that denial of a building permit is not an action or proceeding under Chapter 40A, Section 7.

8.  The Board of Appeals finds that the information submitted by the applicant to show that the year round use of the property pre-dates the adoption of zoning in Sandwich was insufficient.

See Decision of Board of Appeals denying plaintiff's Appeal of Decision of Building Inspector, Exhibit 3.

52.  As grounds for it's denial of plaintiff's variance application, the Board made the following findings:

Findings:

1.  The applicant states that 9 Ploughed Neck Road is used as a single-family dwelling. The Board of Appeals finds that no information was submitted by the applicant to contradict the determinations made by Town Counsel and the Building Inspector that the use remains cottage colony as shown by information contained in the public record in this matter.

2.  The Board of Appeals finds that the Sandwich Protective Zoning By-laws does (sic) not empower the Board of Appeals to grant use variances.

3.  The Board of Appeals finds that the conveyance of the property to individual owners to be used as single-family dwellings created a zoning violation because the conveyance took place without complying with Section 4710.

4.  The Board of Appeals does not find that a literal enforcement of the provisions of this by-law would involve a substantial hardship, financial or otherwise, to the petitioner or appellant.
5.  The Board of Appeals does not find the hardship is owing to circumstances relating to the soil conditions, shape, or topography of such land or structures but not generally affecting the zoning district in which it is located.
6.  The Board does not find that desirable relief may be granted without either;
    1.  Substantial detriment to the public good; or
    2.  Nullifying or substantially derogating from the intent and purpose of this by-law.

<u>See</u> Decision of Board of Appeals on Variance Application, Exhibit 4.

53.  As grounds for it's denial of plaintiff's application for a special permit, the Board of Appeals made the following findings:

<u>Findings</u>

1.  The Board of Appeals finds that this application meets the requirements of Section 9, M.G.L. Chapter 40A.
2.  The Board of Appeals finds that the subject property lies within the Residence - 2 zoning district.
3.  The Board of Appeals finds that the subject property has 17,053 SF of lot area and 140.51' of frontage on Ploughed Neck Road.
4.  Section 1330 requirements:
    (a) The Board of Appeals finds that there are conditions peculiar to this case but not generally true for similar permitted uses on other sites in the Residence – 2 zoning district.
    (b) The Board of Appeals finds that nuisance, hazard or congestion will not be created.
    (c) The Board of Appeals finds that there is not substantial harm to the neighborhood.
    (d) The Board of Appeals finds that there is derogation from the intent of the by-law.
    (e) The Board of Appeals finds that the stated Residence -2 district objectives will not be satisfied.
5.  The Board of Appeals finds that this application does not meet the requirements of Sandwich Protective Zoning By-law Section 1330.
6.  The lot at No. 9 Ploughed Neck Road is a 17,053 SF parcel of land on which is located one of six cottages that were part of a seasonal, nonconforming Cottage Colony on approximately two acres of land off Ploughed Neck Road.  The cottage at No. 9 Ploughed Neck Road has one bedroom, one bathroom and a kitchen.
7.  The subject property is located in Residential -2, in which cottage colonies are not permitted.

18

8. The Zoning By-laws define "Cottage Colony" as "[t]wo or more seasonal dwellings located on the same lot, each designed for independent family living and including cooking facilities."

9. Until 1994, all six cottages in the Cottage Colony, including No. 9, were located on one individual lot.

10. A plan showing the division of the land on which the Cottage Colony was located was endorsed Approval under the Subdivision Control Law Not Required ("ANR") by the Planning Board in 1994, apparently pursuant to the provision of G.L. c. 41, s. 81L which excludes from the definition of "subdivision" a "division of a tract of land on which two or more buildings were standing when the subdivision control law went into effect in the city or town in which the land lies into separate lots on each of which one of such buildings remains standing." The endorsed ANR plan, which is dated October 11, 1994, is recorded with the Barnstable Registry of Deeds.

11. Section 4710 of the Zoning by-laws prohibits the conversion of an existing cottage colony to "single-family dwelling use under separate ownership unless the lot upon which each building is located complies with the minimum requirements for single-family dwellings in the zoning district in which the land is located." The minimum lot area requirement for single-family use in the R-2 district is 60,000 square feet. The minimum frontage requirement is 200 feet.

12. The lot on which No. 9 Ploughed Neck Road is located does not conform to the minimum requirements for single-family dwellings in the R-2 district.

13. The Cottage Colony was the subject of a lawsuit filed by the former owner, Forestdale Realty, Inc., against the Sandwich ZBA in 1995. The 1995 lawsuit challenged a decision by this Board that the Cottage Colony was nonconforming and that the division of the property into individual lots for year round single-family use was not permitted under the applicable Zoning by-laws because the lots and cottages did not conform with applicable dimensional requirements for the R-2 district, as required by Section 4710 of the Zoning By-laws.

14. In April 1996, a Stipulation of Dismissal With Prejudice was filed in Barnstable Superior Court, with respect to the 1995 appeal.

15. In 1995 Forestdale Realty, Inc., established the Cottage Colony property as the Ploughed Neck Condominiums and, thereafter, conveyed out cottages as condominium units, in violation of the Sandwich Zoning By-laws, Section 4710.

16. In 2001, the condominium was revoked by the then unit owners. Thereafter, the individual cottages with lots as shown on the 1994 ANR plan, were conveyed out in violation of Section 4710.

17. According to the applicant's attorney, the applicant purchased the cottage and the land at No. 9 Ploughed Neck Road, and adjacent

No. 11, Ploughed Neck Road as investment properties in September 2002, and has rented them out since then.

18. As conveyed in 2002, and at present, No. 9 Ploughed Neck Road does not meet the applicable minimum area and frontage requirements of the Zoning by-laws and the cottage does not meet required setbacks for a single-family dwelling.

19. The cottage at No. 9 Ploughed Neck Road was damaged by fire in October 2003.

20. The applicant represented that the cottage at No. 9 Ploughed Neck Road has always had a heating system and has always been used year-round. The documentation submitted by the applicant did not support the claim that the cottage was used continuously as a year-round single-family dwelling since prior to the enactment of the Zoning by-law provisions prohibiting the conversion of cottage colonies except in conformance with Section 4710.

21. The Zoning by-laws define "Dwelling, Single-Family" as "[o]ne dwelling unit on a single lot irrespective of structure type, ownership or tenure."

22. No. 9 Ploughed Neck Road was part of a seasonal Cottage Colony until at least 1995, and not a single-family dwelling, as defined in the Zoning By-laws.

23. The Cottage Colony was converted to single-family dwelling use in contravention of Section 4710.

24. No. 9 Ploughed Neck Road is not eligible for protection as a lawfully pre-existing, nonconforming single-family dwelling on a nonconforming lot since neither the single-family use, nor the lot, were "lawfully existing" at the time of the enactment or subsequent amendment of the Zoning By-laws governing conversion of cottage colonies.

25. The Board notes that "seasonal dwelling" is not defined in the current, effective Protective Zoning By-law.

26. The Board further recognizes that Article VII, Three Ponds District, Section 7020 of the Protective Zoning By-law defines "Seasonal Facility" as "a facility that offers activities that do not occur and are not designed to occur on a year round basis."

27. The Board finds that applicant has evidenced existence of heating systems in the structure that is consistent with a structure designed and appropriate for full-time, year-round occupation.

28. The Board finds that the applicant has demonstrated that the construction and use of the applicant's dwelling/structure pre-dates the adoption of zoning.

29. The Board finds that the applicant's property is not a **HOTEL** as defined by the protective zoning by-laws.

30. The Board finds that the applicant's property is not a **MOTEL** as defined by the protective zoning by-laws.

31. The Board notes that **MOTOR COURT** is not defined in the by-laws.

32. The Board finds that applicant's property is not a **LODGING HOUSE** as defined in the protective zoning by-laws.
33. The Board finds that applicant's proposed repair would not:
    a. Jeopardize public health or safety;
    b. Decrease the value of land or buildings;
    c. Lead to blight and pollution of the environment;
    d. Increase the congestion of traffic;
    e. Increase hazards from fire and other dangers;
    f. Preclude the economical provisions of transportation, water, sewerage, schools, parks, and other public facilities;
    g. Decrease housing for persons of all income levels; and or
    h. Deplete or misuse the amenities of the Town.
34. The Board of Appeals finds that the application for special permit does not substantially conform to the Sandwich Protective Zoning By-laws
35. The Board of Appeals finds that the Sandwich Fire Department report dated October 2, 2003 states: "The cottage had no electric power and the meter has been removed by NStar."

See Decision of Board of Appeals on Special Permit Application, Exhibit 2.

## COUNT I

*Declaratory Judgment pursuant to G.L. c. 231A, s. 1 et seq. that Town's Interpretation of G.L. c. 40A, s. 6 and Town By-laws is in Violation of Home Rule Procedures Act, G.L. c. 43B, s. 13*

54. Plaintiff repeats and reasserts the matters set forth above in paragraphs 1 through 53, incorporating the same herein by reference, and further states as follows:

55. ". . . Nothing in this section shall be construed to permit any city or town, by ordinance or by-law, to exercise any power or function which is inconsistent with any general law enacted by the general court before November eighth, nineteen hundred and sixty-six which applies alike to all cities, or to all towns, or to all cities and towns, or to a class of not fewer than two. . . . G.L. c. 43B, s. 13 (in pertinent part).

56. Defendants' interpretation of Section 6 of the Zoning Act and the Town's zoning by-laws constitutes an "exercise of any power or function which is inconsistent with" the Subdivision Control Law, G.L. c. 41, s. 81L and s. 81P, a "general law enacted by the general court before November [8th, 1966] which applies alike to all cities, or to all towns, or to all cities and towns, or to a class of not fewer than two . . . .," in violation of the limitations set forth in G.L. c. 43B, s. 13.

21

57.   Further, defendants' interpretation that it may prevent the division of land on which two or more structures have existed since before the city or town adopted subdivision control, such that each structure is located on its own lot, through the endorsement of an ANR plan pursuant to G.L. c. 41, s. 81L, unless the resulting lots meet the dimensional zoning requirements in effect as of the date of the ANR endorsement, through Section 4710 of the zoning by-laws, violates the limitations set forth in G.L. c. 43B, s. 13.

58.   Defendants' interpretation that the 1994 ANR endorsement created a use violation, is erroneous, since if it indeed created any violation, it was a dimensional or structural violation, and not a use violation, insofar as the lots did not meet dimensional requirements of zoning in effect in October 1994.

59.   Defendants' interpretation of its zoning by-laws improperly seeks to regulate form of ownership, which is not a proper subject of zoning.

60.   Defendants' interpretation of G.L. c. 40A, s. 6(1st¶), deeming properties lawfully created on an ANR plan, in the peculiar and unique circumstance where two or more structures existed on the property before the Town adopted Subdivision Control, unlawful under zoning, bears no rational relation to any proper purpose for which zoning may be adopted or enforced.

61.   Defendants' interpretation that the all property shown on the 1994 ANR plan violates zoning due to failure to comply with the "Cottage Colony Conversion" by-law, Section 4710, is erroneous, because upon the recording of the 1994 ANR plan, the cottages were no longer located all on one lot, but instead each cottage was on its' own lot, and therefore does not fall within the definition of "cottage colony."

62.   Defendants' interpretation that the all property shown on the 1994 ANR plan violates zoning due to failure to comply with the "Cottage Colony Conversion" by-law, Section 4710, is erroneous, because each cottage, including plaintiff's, is not seasonal, but instead, being equipped with the "characteristic equipment and furnishings" of a year-round, single-family dwelling, including a heating system, as they have been, they have always been capable of being used on a year-round basis, and this use has never been abandoned under the abandonment by-law, Section 2410 of the zoning by-laws, and further, has been used on a year-round basis for many years.

63.   Defendants' interpretation that a zoning violation arose when the lots were conveyed out (See Decision of Board of Appeals re: Variance, Findings, para. 3), as opposed to when the 1994 ANR plan was endorsed, awkwardly, improperly and erroneously grafts language

from the 4th paragraph (which applies only to vacant, as opposed to developed, land) of Section 6 into the 1st paragraph of Section 6, and further, overlooks the "plain language" of the 4th paragraph states, in pertinent part:

> Any increase in area, frontage, width, yard, or depth requirements of a zoning ordinance or by-law shall not apply to a lot for single and two-family residential use *which at the time of recording or endorsement, <u>whichever occurs sooner</u>* . . .
>
> G.L. c. 40A, s. 6(4th¶)

64. Defendants' interpretation of G.L. c. 40A, s. 6, awkwardly, improperly and erroneously grafts language from the 4th paragraph into the 1st paragraph of Section 6, because the 4th paragraph deals strictly with vacant land, whereas the land shown on the 1994 ANR plan was developed land.

65. Defendants' interpretation, set forth above, constitutes an exercise of its powers under the zoning by-laws which is inconsistent with the ability to create such lots in the peculiar and limited circumstance where the structures pre-date the Town's adoption of the Subdivision Control Law.

66. Defendants' interpretation that a permit was necessary to convert the cottages or condominiums to single-family dwellings is erroneous, because single-family dwelling is a by-right use in the zoning district in which the property is located.

67. Furthermore, Section 2550 of the Town zoning by-laws, insofar as it applies to developed properties, is inconsistent with both the Subdivision Control Law, G.L.c. 41, s. 81L and s. 81P, and the Zoning Act, G.L.c. 40A, s. 6 (1st¶), insofar as it:

   a. interferes with the ability to create lots on ANR plan in the peculiar and unique circumstance where the structures on such properties existed before the Town adopted Subdivision Control; and

   b. deprives lawfully created properties of the exemptions and protection from any "increase in lot area, width, depth, frontage, yard, or coverage requirements," set forth in G.L.c. 40A, s. 6 (1st¶), unless these properties meet the requirements set forth in Section 2550.

68. As a direct and proximate consequence of defendants' violation of the limitations on its ability to adopt and enforce its zoning by-laws, plaintiff has been harmed and sustained damages, including but not

limited to: loss of use of the 9 Ploughed Neck Road cottage; loss of rents and rental income from the cottage; expenses incurred through borrowing in order to pay her mortgage on her primary home, previously subsidized through the rents received from the rental of the 9 Ploughed Neck Road cottage; legal fees and costs.

WHEREFORE, plaintiff requests that this Court enter an order of declaratory judgment, declaring as follows:

a. The Town's interpretation of G.L. c. 40A, s. 6 (1st¶) violates the limitations placed on municipalities in adopting and enforcing its zoning by-laws, as set forth in G.L. c. 43B, s. 13, due to its inconsistency with G.L.c. 41, ss. 81K, et seq.;

b. The Town's interpretation of its zoning by-laws violates the limitations placed on municipalities in adopting and enforcing zoning by-laws, per G.L. c. 43B, s. 13, insofar as it interprets properties lawfully created on an ANR plan, under the peculiar and unique circumstance where structures existed on the property before the Town adopted Subdivision Control, as being unlawful under zoning, unless at the time the ANR plan is endorsed, the resulting lots meet existing dimensional requirements.

c. The Town's interpretation violates the limits placed on adopting and enforcing zoning by-laws under G.L. c. 43B, s. 13, by determining properties lawfully created, under G.L. c. 41, s. 81L and s. 81P, under the peculiar and unique circumstance where structures existed on the property before the Town adopted Subdivision Control, "unlawful" under zoning unless the properties meet the dimensional zoning requirements in effect as of the date the ANR plan is endorsed, thereby depriving these properties of the protections set forth in G.L. c. 40A, s. 6 (1st¶) .

d. The Town's interpretation that a permit was necessary to convert the cottages or condominiums to single-family dwellings is erroneous, because single-family dwelling is a by-right use in the zoning district in which the property is located.

e. The Town's interpretation of its zoning by-laws improperly seeks to regulate form of ownership, which is not a proper subject of zoning, and therefore exceeds the limits of its powers under zoning.

f. The Town's interpretation that the all property shown on the 1994 ANR plan violates zoning due to failure to comply with the "Cottage Colony Conversion" by-law, Section 4710, is erroneous, because upon the endorsement and recording of the 1994 ANR plan, the cottages were no longer located all on one lot, but instead each

cottage was on its' own lot, and thus falling outside the definition of "cottage colony."

g. Defendants' interpretation that the all property shown on the 1994 ANR plan violates zoning due to failure to comply with the "Cottage Colony Conversion" by-law, Section 4710, is erroneous, because each cottage, including plaintiff's, is not seasonal, but instead, being equipped with the "characteristic equipment and furnishings" of a year-round, single-family dwelling, including a heating system, as they have been, they have always been capable of being used on a year-round basis, and this use has never been abandoned under the abandonment by-law, Section 2410 of the zoning by-laws, and further, has been used on a year-round basis for many years.

h. The Town's interpretation of G.L. c. 40A, s. 6(1st¶), deeming properties lawfully created on an ANR plan, in the peculiar and unique circumstance where two or more structures existed on the property before the Town adopted Subdivision Control, unlawful under zoning, bears no rational relation to any proper purpose for which zoning may be adopted or enforced, and therefore exceeds the limits of its powers under zoning.

i. The Town's interpretation that a zoning violation arose in this case when the lots were conveyed out (See Decision of Board of Appeals re: Variance, Findings, para. 3), violates the limits of its powers under zoning, because, first, G.L. c. 40A, s. 6(4th¶) applies only to vacant land, whereas the property shown on the 1994 ANR plan was developed property, and second, because, even if the 4th paragraph applied, the date of the endorsement of the ANR plan occurred sooner than the conveyance out of the lots into individual ownership, and thus it is the date of endorsement, not date of conveyance, which control for purposes of interpreting the statute of limitations set forth in G.L. c. 40A, s.7.

j. Section 2550 of the Town zoning by-laws, insofar as it applies to developed properties, is inconsistent with both the Subdivision Control Law, G.L.c. 41, s. 81L and s. 81P, and the Zoning Act, G.L.c. 40A, s. 6 (1st¶), because it:

  1) interferes with the ability to create lots on ANR plan in the peculiar and unique circumstance where the structures on such properties existed before the Town adopted Subdivision Control; and

  2) deprives lawfully created properties of the exemptions and protection from any "increase in lot area, width, depth, frontage, yard, or coverage requirements," set forth in

G.L.c. 40A, s. 6 (1st¶), unless these properties meet the requirements set forth in Section 2550.

    k.  Finally, plaintiff requests that this Honorable Court declare her property to be one "lawfully in existence," used as a by-right use ass a single-family dwelling, entitled to the protections set forth in G.L. c. 40A, s. 6(1st¶), and order the Board of Appeals to overturn the decision of the Building Inspector, and further order the Building Inspector to issue plaintiff a building permit so she may repair her cottage. Plaintiff further requests that this Court award her damages, including interest, attorney's fees and costs, and such other amounts as the Court deems just and reasonable, given the Town's arbitrary, capricious, whimsical, and legally untenable position and interpretations.

<u>COUNT II</u>

*Denial of Appeal of Building Inspector's Denial of Building Permit*

69.    Plaintiff repeats and reasserts the matters set forth above, and incorporates the same herein by reference, as if fully set forth herein, further stating:

70.    The division of plaintiff's property was lawfully done pursuant to G.L. c. 41, s. 81L, on the 1994 ANR plan, and was a division that could not have been denied by the Planning Board of the Town of Sandwich on the grounds of noncompliance with zoning requirements at the time.

71.    Defendants' position that this division was unlawful unless a special permit under Section 4710, the Cottage Colony Conversion by-law, was first obtained has no foundation in law or in fact, as G.L. c. 41, s. 81L and s. 81P, contain no such requirement.

72.    Further, if defendants' felt that the 1994 ANR endorsement was unlawful, due to failure to comply with the provisions of Section 4710 of the zoning by-laws, it had sixty (60) days in which appeal the

endorsement, which it did not due, and which is now barred by the statute of limitations set forth in G.L. c. 249, s. 4.

73.   Upon endorsement of the 1994 ANR plan, each cottage was located upon its own lot, and thus no longer fell within the definition of the term "cottage colony" as used in the zoning by-laws, and therefore, seeking a special permit under Section 4710, was unnecessary.

74.   Defendants' interpretation of the term "seasonal," in the absence of any definition of the same in the zoning by-laws, has no foundation in law or in fact.

75.   Plaintiff's cottage, having been equipped with a heating system since its construction in 1948, was available for year-round usage, and this use has never been abandoned under the abandonment by-law, Section 2410.

76.   Defendants' interpretation that plaintiff's property is unlawful because of failure to obtain a special permit under Section 4710, has no foundation in law or in fact, because plaintiff's cottage is not now and never has been "seasonal."

77.   Defendant's interpretation of G.L. c. 40A, s. 6 and its zoning by-laws, such that an ANR plan, dividing land containing two or more structures before Subdivision Control was adopted such that each structures is located on its own lot, creates a use violation if the dimensional requirements of zoning are not met has no foundation in law or in fact.

78. The only violation arising as a consequence of the same, set forth in the preceding paragraph, if any, is a structural violation.

79. A structural violation arises when a dimensional requirement of the zoning by-laws arises.

80. G.L. c. 40A, s. 7, sets forth two different statutes of limitations upon the enforcement, including through administrative action, such as the denial of a building permit, of six years where the structural violation arises in connection with a building permit, and ten years where the structural violation arises without the benefit of a building permit.

81. Defendants are violating the statutes of limitations in denying the plaintiff a building permit as a consequence of the alleged structural violation arising out of the 1994 ANR plan.

82. Defendants' interpretation that the violation arose when the lots were conveyed into separate ownership has no foundation in law or in fact, because this interpretation awkwardly and improperly grafts language from the 4th paragraph of Section, which applies only to vacant land, into the 1st paragraph of Section 6, which deals with lawfully developed property, as was plaintiff's. Under the 4th paragraph of Section 6, even if it did apply, the first to occur of either endorsement or recording governs the date from which to determine whether a structural violation arose.

83. Hence, the "structural violation," if any, arose on October 19, 1994, the date the ANR plan was endorsed, and the date of conveyance of the cottages into separate ownership has no bearing.

28

84.    As a direct and proximate consequence of defendants' violation of the limitations on its ability to adopt and enforce its zoning by-laws, and specifically the denial of her appeal of the decision of the building inspector denying her application for a building permit, plaintiff has been harmed and sustained damages, including but not limited to: loss of use of the 9 Ploughed Neck Road cottage; loss of rents and rental income from the cottage; expenses incurred through borrowing in order to pay her mortgage on her primary home, previously subsidized through the rents received from the rental of the 9 Ploughed Neck Road cottage; legal fees and costs; slander of title, and such other damages as the Court may determine.

WHEREFORE, plaintiff requests that this Court declare that the defendant Building Inspector's decision to deny plaintiff's application for building permit, and defendant Board of Appeals' denial of plaintiff's appeal of the decision of the Building Inspector were incorrect, arbitrary, capricious, whimsical, and legally untenable, and plaintiff further requests that the Court overturn these denials, and order the defendants to issue the plaintiff a building permit to repair her cottage forthwith, together with such other relief as the Court deems just and reasonable, including damages, interest, attorney's fees, costs, and such other amounts as this Court deems just and reasonable.

## COUNT III

### *Denial of Special Permit*

85. Plaintiff repeats and reasserts the matters set forth above, and incorporates the same herein by reference, as if fully set forth herein, further stating:

86. Defendants erred in their findings with regard to the plaintiff's application for a special permit.

87. Contrary to defendants' findings, granting a special permit to the plaintiff would not result in derogation from the intent of the zoning by-laws, nor would the "stated Residence – 2 district objectives [...] not be satisfied, as set forth in the Board's findings No. 4(d) and 4(e). See Exhibit 2.

88. The stated district objectives of the Residence -2 district are: "To provide for low-density residential environment in areas of good accessibility while protecting the quality of air, surface water and ground water of the area." See Sandwich Protective Zoning By-laws, Section 2140.

89. As found by the Board, the plaintiff's cottage, and indeed all of the cottages which formerly comprised the cottage colony, pre-date the adoption of zoning by-laws in the Town of Sandwich. See Exhibit 2, Findings, para. 28.

90. The Board further found that the 1994 ANR plan was endorsed because the cottages pre-date the adoption of Subdivision Control by the Town

of Sandwich, the result of which was that each of the six cottages were located upon their own lots. See Exhibit 2, Findings, para. 10.

91. Upon endorsement of the 1994 ANR plan, the cottages, including plaintiff's, no longer fell within the definition of "cottage colony," as each structure was and is located upon its own lot.

92. Further, since the endorsement and recording of the ANR plan did not result in the movement of any of the cottages, their relationship to one another and to other structures in the neighborhood and district remained physically unchanged, meaning the structural density was not changed in any manner, hence no derogation from the intent of the by-laws occurred nor could occur, nor were or could this ANR plan contravene the stated objectives of the Residence-2 district, particularly since each one of the cottages pre-dates not only Subdivision Control, but also zoning.

93. The 1994 ANR plan did not result in any violation of any of the zoning by-laws, including Section 4710, particularly since Section 4710 would not apply, as each cottage was located on its own lot.

94. Moreover, Section 4710 only applies to _seasonal_ cottages, and, as found by the Board of Appeals, plaintiff's "dwelling/structure" is equipped with a heating system, "that is consistent with a structure designed and appropriate for full-time, year-round occupation." See Exhibit 2, Findings, No. 27.

95. Upon endorsement of the 1994 ANR plan, plaintiff's cottage fell within the definition of "Dwelling, Single-Family," defined as "[o]ne dwelling unit on a single lot irrespective of structure type, ownership or tenure."

96. As a direct and proximate consequence of defendants' violation of the limitations on its ability to adopt and enforce its zoning by-laws, and its' denial of her application for a special permit, plaintiff has been harmed and sustained damages, including but not limited to: loss of use of the 9 Ploughed Neck Road cottage; loss of rents and rental income from the cottage; expenses incurred through borrowing in order to pay her mortgage on her primary home, previously subsidized through the rents received from the rental of the 9 Ploughed Neck Road cottage; legal fees and costs; slander of title, and such other damages as the Court may determine.

WHEREFORE, plaintiff requests that this Court declare that the defendant Board of Appeals' denial of plaintiff's application for a special permit was incorrect, arbitrary, capricious, whimsical, and legally untenable, and plaintiff further requests that the Court overturn these denials, and order the defendants to issue the plaintiff a special permit to allow her to repair her cottage forthwith, together with such other relief as the Court deems just and reasonable, including damages, interest, attorney's fees, costs, and such other amounts as this Court deems just and reasonable.

<u>COUNT IV</u>

*Denial of Variance*

97. Plaintiff repeats and reasserts the matters set forth above, and incorporates the same herein by reference, as if fully set forth herein, further stating:

98. Defendants' erred in finding that enforcement of the by-law would not result in substantial hardship to plaintiff, financial or otherwise, and further erred in finding that the hardship did not relate to the "soil conditions, shape, or topography of such land or structures which but not affecting generally the zoning district in which it is located, and in erred further in finding that it could not grant relief without "either; (1) substantial detriment to the public good; or (2) nullifying or substantially derogating from the intent or purpose of this by-law."

99. While plaintiff maintains that her cottage is entitled to the protections afforded in G.L. c. 40A, s. 6 (1st¶), as a structure lawfully in existence, without the need for a variance, she also asserts alternatively, should the Court determine that such a variance is needed, that enforcement of the by-law, here Section 4710, would involve a substantial hardship upon her, financially or otherwise.

100. Endorsement of ANR plans such as this may not be refused by planning boards, thus the creation of such lots cannot be prevented.

101. Requiring compliance with Section 4710, when in fact each cottage, now located on its own lot, does not meet the definition of cottage colony, imposes a substantial and unreasonable hardship upon the plaintiff, because the definitions do not apply to her lot, and would require her to meet dimensional requirements which she cannot

possibly meet. Additionally, by refusing to grant a variance, plaintiff suffers serious financial hardship, being deprived of the use of the cottage, loss of rents, additional and exceptional costs and expenses in connection with her mortgage, which previously was subsidized by the receipt of rental income from the cottage, legal fees, costs, and slander of title.

102.    The hardship arises out of the unique and peculiar circumstances of the cottage, allowing it to be located upon its own lot, pursuant to G.L. c. 41, s. 81L and s. 81P, by virtue of the fact that it pre-dates the adoption of Subdivision Control in Sandwich, thus uniquely relating to this structure, but not generally true for the zoning district, since most structures in the R-2 zoning district were built *after* Subdivision Control was adopted.

103.    Granting a variance to the plaintiff will neither cause "substantial detriment to the public good," nor "nullify[...] or substantially derogate[e] from the intent or purpose of" the zoning by-laws.

104.    The defendants' misstate the standard in connection with derogation or nullification of the by-law, in connection with the grant of a variance.

105.    The standard is whether the grant of the variance will derogate from or nullify the intent of the zoning by-laws as a whole, not any particular by-law.

34

106.    The 1994 ANR plan placed each one of six cottages on its' own lot,

however, the lots created did not meet the 1994 dimensional

requirements of zoning.

107.    One of the proper purposes of zoning is dimensional zoning, the

purpose and intent of which is to regulate the structural density of a

particular zoning district.

108.    The cottages shown on the 1994 ANR Plan, having been built in 1948,

predate not only Subdivision Control, but also the adoption of zoning

by-laws in Sandwich.

109.    By virtue of the fact that the cottages, including plaintiff's, predate

zoning, their structural density in this zoning district was already in

place before zoning was adopted.

110.    The division of the property into six lots, each with its own cottage,

given its pre-existing structural density (since none of the cottages have

moved), neither derogates from nor nullifies the intent or purpose of

the dimensional zoning by-laws, nor causes any substantial detriment

to the public good.

111.    Nor does the fact that the cottages are now in single-family ownership,

as opposed to all six cottages being owned by one person, and being

rented out to others, derogate from or nullify the intent and purpose of

the use regulations of the zoning by-laws, nor cause any substantial

detriment to the public good, since the use of cottages under the

cottage colony definition: "[t]wo or more detached seasonal dwellings

located on the same lot, *each designed for independent family living*

_and including cooking facilities_," is identical to the use of a single-family dwelling, as defined in the zoning by-laws, which defines, as follows, the terms "dwelling:" "building or part of a _building used exclusively as the living quarters_ for one or more families," and "single-family dwellings": "_One dwelling unit on a single lot irrespective of structure type, ownership or tenure_."

112.    Finally, while plaintiff maintains that the cottage is not seasonal, by virtue of the fact that it is and has always been equipped with a heating system, granting a variance to allow her to obtain a building permit to repair the cottage so it may be used, will not derogate from nor nullify the intent of the cottage colony by-law, nor cause substantial detriment to the public good, because, if after the cottage has been repaired, the defendants believe that it is being unlawfully used on a year-round basis, may seek to bring an enforcement action pursuant to G.L. c. 40A, s. 7, to enjoin any usage other than seasonally, which would be their right.

113.    Denying the plaintiff a variance, thus preventing the plaintiff from making repairs so that she cannot use the cottage other than seasonally, is not the appropriate way for the defendants to enforce the purported violation.

114.    As a direct and proximate consequence of defendants' violation of the limitations on its ability to adopt and enforce its zoning by-laws,  and its denial of her application for a variance, plaintiff has been harmed and sustained damages, including but not limited to: loss of use of the

9 Ploughed Neck Road cottage; loss of rents and rental income from the cottage; expenses incurred through borrowing in order to pay her mortgage on her primary home, previously subsidized through the rents received from the rental of the 9 Ploughed Neck Road cottage; legal fees and costs; slander of title, and such other damages as the Court may determine.

WHEREFORE, plaintiff requests that this Court declare that the defendant Board of Appeals' denial of plaintiff's variance application was incorrect, arbitrary, capricious, whimsical, and legally untenable, and further plaintiff requests that this Court overturn this denial, and order the defendant Board of Appeals to issue the plaintiff a variance, so she may obtain a building permit to repair her cottage forthwith, together with such other relief as the Court deems just and reasonable, including damages, interest, attorney's fees, costs, and such other amounts as this Court deems just and reasonable.

COUNT V

*Defendants' Interpretation of G.L. c. 40A, s. 6, and their Zoning By-Laws,*
*And Section 2550 of the Zoning By-Laws, Constitute Unlawful Spot Zoning*

115.   Plaintiff repeats and reasserts the matters set forth above, incorporating the same herein by reference, as if fully set forth, and further states as follows:

116.   Defendants' interpretation of G.L. c. 40A, s. 6 and their zoning by-laws amounts to unlawful "spot zoning" regarding plaintiff's property, and other properties, lawfully divided under G.L.c. 41, s. 81L and s. 81P,

depriving them of the protections to which they are lawfully entitled, afforded by G.L. c. 40A, s. 6 (1st¶).

117.    Moreover, Section 2550 of Sandwich's zoning by-laws, unlawfully constitutes spot zoning, depriving lawful nonconforming developed properties of exemption and protection from increases in "lot area, width, depth, frontage, yard, or coverage requirements," unless they meet certain minimal dimensional requirements, as set forth in Section 2550.

118.    "Spot zoning" constitutes selective zoning which violates the uniformity requirements of G.L. c. 40A, s. 4, and constitutes a denial of equal protection under the law guaranteed by the State and Federal Constitutions.

119.    As a direct and proximate consequence of defendants' violation of the limitations on its ability to adopt and enforce its zoning by-laws, plaintiff has been harmed and sustained damages, including but not limited to: loss of use of the 9 Ploughed Neck Road cottage; loss of rents and rental income from the cottage; expenses incurred through borrowing in order to pay her mortgage on her primary home, previously subsidized through the rents received from the rental of the 9 Ploughed Neck Road cottage; legal fees and costs; slander of title; deprivation of equal protection under the state and federal constitutions, in violation of the uniformity requirement of G.L. c. 40A, s.4, , and such other damages as the Court may determine.

38

WHEREFORE, plaintiff requests that this Court declare that the defendants' interpretation of G.L. c. 40A, s. 6 and its' zoning by-laws, and in particular, Section 2550 of the zoning by-laws, to constitute unlawful "spot zoning," in violation of the uniformity requirements of G.L. c. 40A, s. 4, denying the plaintiff of equal protection under the state and federal constitutions, and declaring the same to be unlawful, aribtrary, capricious, whimsical, and legally untenable, and further plaintiff requests that this Court declare that the plaintiff is entitled to treatment as a lawful, pre-existing, nonconforming structure and property, entitled to the protections set forth in G.L.c. 40A, s. 6(1st¶), and entitled to the building permit which she seeks, together with such other relief as the Court deems just and reasonable, including damages, as set forth in paragraph 105, interest, attorney's fees, costs, and such other amounts as this Court deems just and reasonable.

JURY TRIAL

Plaintiff demands a trial by jury as to all issues so triable.

Plaintiff,

PATRICIA PEROTTI-CYRUS,

By her attorney,

Julie C. Molloy    BBO#555176
379 Route 6A
East Sandwich MA 02537
(508) 833-3707

Dated: March 22, 2005

39

CERTIFICATE OF SERVICE

I, Julie C. Molloy, Esq., hereby certify that a copy of the foregoing was served via U.S. Mail, first class, postage pre-paid, on March 24, 2005, upon the defendants, as follows:

Judith C. Cutler, Esq.
Kopelman & Paige, P.C.
31 St. James Avenue
Boston MA 02116-4102

Leonard H. Kesten, Esq. (also by hand on March 24, 2005)
Deborah Ecker, Esq.
Brody, Hardoon, Perkins & Kesten
One Exeter Plaza, 12th floor
Boston MA 02116

_Norwell-Arch, L.L.C. v. Norwell Zoning Board of Appeals_, Misc. Case No. 285113, Mass. Land Court (Hon. J. Trombley) (decided May 24, 2004); 12 LCR 208; 2004 MASS. LCR LEXIS 44

### LEXSEE

NORWELL-ARCH, LLC. V. EARL S. OPDYKE III, ABIGAIL R. CHILDS, AND G. BRIAN SHONTZ, AS MEMBERS OF THE NORWELL ZONING BOARD OF APPEALS

MISC. CASE NO. 285113

MASSACHUSETTS LAND COURT

12 LCR 208; 2004 MASS. LCR LEXIS 44

May 24, 2004, Decided

HEADNOTES: Nonconformity Finding-Grandfather Lot-Buildings in Existence at the Time of the Adoption of the Subdivision Control Law-Subsequent Addition

SYLLABUS: [**1] The Norwell Zoning Board could not simply deny a special permit to alter a nonconforming structure merely because the structure had been rendered nonconforming by an ANR division pursuant to § 81L but would have to determine whether the proposal would intensify existing nonconformities.

COUNSEL: Richard Serkey, Esq., Winokur Winokur Serkey & Rosenberg, P.C. for Plaintiff.

Robert E. Galvin, Esq., Galvin & Galvin, SP for Defendant.

JUDGES: Charles W. Trombly, Jr., Justice

OPINIONBY: TROMBLY, JR.

OPINION:

[*208] ORDER ALLOWING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND ORDER OF REMAND

On November 12, 2002, plaintiff Norwell-Arch, Inc. ("Norwell-Arch"), filed this case pursuant to G. L. c. 40A, § 17, appealing a decision of the Norwell Zoning Board of Appeals (the "ZBA") denying its application for a special permit under Sections 1420 and 1642 of the Norwell Zoning Bylaws which would allow it to construct an addition to a nonconforming single family dwelling. As permitted by G. L. c. 40A, § 17, the ZBA did not file an answer. Norwell-Arch then filed a request that the case be [**2] assigned for a pre-trial conference, which the court scheduled for September 29, 2003. At the conference, counsel

Case 1:05-cv-10116-DPW    Document 10-3    Filed 03/24/2005    Page 3 of 21

Page 2

12 LCR 208, *; 2004 Mass. LCR LEXIS 44, **

discussed the case with the court (Trombly, J.) and concluded that the case could be decided upon the filing of motions for summary judgment. The motions, which had not yet been filed, were scheduled for argument on November 13, 2003.

On November 7, 2003, Norwell-Arch filed its motion for summary judgment, together with a memorandum in support, and supporting exhibits and documentation. On November 10, 2003, the ZBA filed its cross-motion for summary judgment and memorandum in support. The court (Trombly, J.) held a hearing on November 13, 2003, at which the cross-motions were argued and taken under advisement.

I find the material facts to be substantially undisputed and to be as follows:

1. By deed dated September 27, 2000, and recorded at the Plymouth County Registry of Deeds n1 in Book 18915, Page 6, Norwell-Arch acquired a parcel of land containing two single family dwellings situated on the northerly side of Grove Street in Norwell. Both buildings had been in existence since before the Subdivision Control Law went into effect in Norwell in 1953. The [**3] parcel conveyed was shown as Lot 2 on a plan referred to in the deed, a copy of the plan is attached hereto as "Exhibit A."

> n1 All references herein to recorded instruments or plans relate to items recorded at the Plymouth County Registry of Deeds.

2. The land which is the subject of this litigation is located in Residential District A and in the Norwell Aquifer Protection (Overlay) District which requires a minimum lot size of one acre pursuant to Section 2421 of the Norwell Zoning Bylaw.

[Paragraph 3 omitted in original.]

4. On January 7, 2002, the Norwell Planning Board endorsed as "Approval Not Required" a plan subdividing the aforementioned Lot 2 into two new lots, designated as Lot 3 and Lot 4 (the "ANR Plan"). The ANR Plan was entitled to endorsement pursuant to G. L. c. 41, § 81L, whereby a plan is entitled to endorsement if the planning board determines that two or more buildings were standing on the land being divided when the subdivision control law went [**4] into effect in that community, and each of the new lots holds one of those structures. A copy of the ANR Plan showing Lots 3 and 4 is attached hereto as "Exhibit B."

5. On April 22, 2002, Norwell-Arch conveyed Lot 3 as shown on the ANR Plan to Keith A. Hague and Angela A. Hague by deed recorded in Book 21943, Page 83. The ANR Plan was also recorded at that time, in Plan Book 45, Page 500. It appears that Lot 3 does not conform in some respects to the provisions of the Norwell Zoning Bylaw, but is not at issue in this case.

6. On September 17, 2002, Norwell-Arch submitted an application to the ZBA seeking a special permit pursuant to G. L. c. 40A, § 6, in order to construct an addition to the single family dwelling on Lot 4 as shown on the ANR Plan. This proposed addition, according to Norwell-Arch, would not increase the nonconforming nature of the dwelling and would comply with all applicable property line setback requirements. n2

12 LCR 208, *; 2004 Mass. LCR LEXIS 44, **

n2 In March, 2002, Norwell-Arch submitted an application to the ZBA seeking permission to raze the existing building on Lot 4 and to replace it with a new building. This application was denied by the ZBA for several reasons and is the subject of an appeal by Norwell-Arch in Land Court Misc. Case No. 282462, which is still pending before this court.

[**5]

7. At the time Norwell-Arch's application was submitted, Lot 4 was already nonconforming in that it did not conform to the frontage requirement of the Norwell Zoning Bylaw, having only 50.81 feet of frontage, considerably less than the required 80 feet. Its width at the required setback line was also inadequate, being less than the required 150 feet. In addition, the existing house on Lot 4 was nonconforming with respect to its side setback line.

8. The ZBA conducted a public hearing on Norwell-Arch's application on October 16, 2002, after which it voted two to one to deny the application. The ZBA's decision was filed in the office of the Town Clerk on October 30, 2002. In its decision and at the [*209] hearing, the ZBA informed Norwell-Arch that its application should have sought a variance, rather than a special permit, because Lot 4 "was non-conforming as a result of ... [the] ... subdivision under 81L."

***

"Summary judgment is granted where there are no issues of genuine material fact, and the moving party is entitled to judgment as a matter of law." Ng Bros. Constr., Inc. v. Cranney, 436 Mass. 638, 643-644 (2002); Mass. R. Civ. [**6] P.

56(c). I find that there are no material facts at issue and that summary judgment is, therefore, appropriate in this matter.

Norwell-Arch averred in its application that it, as the owner of a nonconforming lot containing a nonconforming single family dwelling as a result of a plan endorsed under G. L. c. 41, § 81L, was entitled to a special permit finding under G. L. c. 40A, § 6, which would allow it to construct an addition that would not increase the nonconforming nature of the existing dwelling and would comply with all applicable property line setback requirements. For this position, Norwell-Arch relies on the second "except" clause of G. L. c. 40A, § 6 P 1, providing zoning protection for single and two-family residential structures. G. L. c. 40A, § 6 provides in pertinent part, that:

> except as hereinafter provided, a zoning ordinance or by-law shall not apply to structures ... lawfully in existence ... before the first publication of notice of the public hearing on such ordinance or by-law required by section five, but shall apply ... to any reconstruction, extension [**7] or structural change ... except where alteration, reconstruction, extension or structural change to a single or two-family residential structure does not increase the nonconforming nature of said structure. (emphasis added).

Norwell-Arch further relies on Section 1642 of the Norwell Zoning Bylaw which states, "as provided in G. L. c. 40A, s. 6, a nonconforming single- or two-family dwelling may be altered or extended provided that doing so does not increase

Case 1:05-cv-10116-DPW    Document 10-3    Filed 03/24/2005    Page 5 of 21

Page 4

12 LCR 208, *; 2004 Mass. LCR LEXIS 44, **

the nonconforming nature of said structure."

The ZBA argues that Norwell-Arch is not entitled to any zoning protection under G. L. c. 40A, § 6, because Lot 4 is an unlawful nonconforming structure established by Norwell-Arch's own voluntary act pursuant to G. L. c. 41, § 81L. Neither Lot 3 nor Lot 4 as shown on the ANR Plan were in compliance with the Norwell Zoning Bylaw in effect at the time the ANR Plan was endorsed. The ZBA, therefore, contends that Lot 4, lacking sufficient frontage and width, and having a structure thereon which is in violation of several set back and side yard requirements, is not a lawful nonconforming structure but rather an [**8] unlawful structure with no zoning protection afforded to it. Thus, it argues, Norwell-Arch must first seek and obtain a variance to bring the lot into zoning compliance before it may perform any alterations or changes outside of the existing footprint of the existing structure.

Norwell-Arch contends that it does not matter how Lot 4 and the dwelling thereon came into existence and became nonconforming, and that a nonconforming single family dwelling may be treated as lawfully nonconforming when the nonconformity was established voluntarily under G. L. c. 41, § 81L. See Goldhirsh v. McNear, 32 Mass. App. Ct. 455, 459 (1992) ("In applying the second 'except' clause of Section 6 and the by-law to the present structure, the appropriate focus is not how or when the nonconforming building came to be used as a single-family dwelling. Rather, the question is whether the proposed changes to the nonconforming residential structure will increase its nonconforming nature."); Serieka v. Town of Winchester Bd. of Zoning Appeals, 1 LCR 91, 92 (1993) (Misc. Case No. 183095)

("A nonconforming single or two-family structure [**9] is not disqualified from being treated as lawfully nonconforming under G. L. c. 40A, s. 6 even if the nonconformity was established by a variance").

Clearly, the General Court intended to provide special protection for residential structures in existence before the adoption of the subdivision control law in each locality when it added the two building exception to G. L. c. 41, 81L, in 1953. Citgo Petroleum Corp. v. Planning Bd. of Braintree, 24 Mass. App. Ct. 425, 427 (1987); G. L. c. 41, § 81L (excepting from the subdivision control law the "division of a tract of land on which two or more buildings were standing when the subdivision control law went into effect in the city or town in which land lies into separate lots on each of which one of such buildings remains standing"). Similarly, single and two-family residential structures enjoy preferential zoning treatment under the second "except" clause of G. L. c. 40A, § 6. The second "except" clause of G. L. c. 40A, § 6, provides residential structures preferential zoning treatment when the proposed changes [**10] to a nonconforming residential structure will not increase its nonconforming nature. Goldhirsh, 32 Mass. App. Ct. at 458-461 (discussing board of appeal's review of nonconforming structures under G. L. c. 40A, § 6). To fully protect single and two-family residential structures, G. L. c. 41, § 81L, and c. 40A, § 6, must be read together. The Special Permit Granting Authority, in this case the ZBA, cannot merely deny the request on the grounds that the structure is nonconforming as a result of a G. L. c. 41, 81L endorsement, without first determining "whether the proposed changes to the nonconforming residential structure will increase its

nonconforming nature." Id. at 459. By skipping this review, the ZBA effectively negated G. L. c. 40A, § 6, rendering it meaningless in this context. The initial question under the second "except" clause does not guarantee a nonconforming residential structure zoning protection, but it does guarantee that the local board will at least make a determination as to whether the proposed change to the nonconforming residential [**11] structure will increase its nonconforming nature. n3

n3 The Special Permit Granting Authority still retains discretionary authority to deny a permit provided such denial is not based on legally untenable or arbitrary and capricious grounds. Davis v. Zoning Bd. of Chatham, 52 Mass. App. Ct. 349, 355 (2001). Moreover, a "local board of appeals brings to the matter an intimate understanding of the immediate circumstances, of local conditions, and of the background and purposes of the entire by-law ..." Fitzsimonds, 21 Mass. App. Ct. at 57.

As set forth in Willard v. Bd. of Appeals of Orleans, 25 Mass. App. Ct. 15, 21-22 (1987), the Appeals Court held that an application for changes to a nonconforming residential structure [*210] "requires a board of appeals to identify the particular respect or respects in which the existing structure does not conform to the requirements of the present by-law and then determine whether the proposed alteration [**12] or addition would intensify the existing nonconformities or result in additional ones." If the board answers this initial question in the negative, finding that there will be no intensification or addition, the applicant is entitled to a special permit under the second "except" clause of G. L. c. 40A, § 6, and any implementing by-law. If the conclusion is otherwise, the applicant will then be required to show that the proposed change will not be "substantially more detrimental than the existing nonconforming structure or use to the neighborhood." Id. at 21; Fitzsimonds v. Bd. of Appeals of Chatham, 21 Mass. App. Ct. 53, 56-57 (1985); G. L. c. 40A, § 6.

Such a result is entirely consistent with the well settled rule that just because a lot can be divided under G. L. c. 41, § 81 L, does not mean that the resulting lot will be buildable under the zoning ordinance. Smalley v. Planning Bd. of Harwich, 10 Mass. App. Ct. 599, 603 (1980). See also Bisson v. Planning Bd. of Dover, 43 Mass. App. Ct. 504, 506 (1997) (planning board's review [**13] of ANR plan confined to determining whether plan shows a subdivision). What a local board cannot do, however, as the ZBA did in the instant case, is deny an applicant a G. L. c. 40A, § 6 finding without conducting the proper zoning review. Fitzsimonds, 21 Mass. App. Ct. at 56 ("the board should first have considered whether the alteration fit the 'except' clause and, if the answer was no, gone on to the question of 'detriment'"). In the instant case, the ZBA made no determination as to whether the proposed changes to the nonconforming residential structure on Lot 4 would increase its nonconforming nature.

Based upon the foregoing, it is hereby

ORDERED and ADJUDGED that Norwell-Arch's motion for summary judgment is ALLOWED, and the ZBA's cross-motion for summary judgment is DENIED; it is further

Case 1:05-cv-10116-DPW    Document 10-3    Filed 03/24/2005    Page 7 of 21

Page 6

12 LCR 208, *; 2004 Mass. LCR LEXIS 44, **

ORDERED and ADJUDGED that the decision of the ZBA denying Norwell-Arch a special permit finding was in excess of its authority and is annulled; and it is further

ORDERED and ADJUDGED that the matter be remanded to the ZBA for further proceedings consistent with this order; and it is further

ORDERED and ADJUDGED that the ZBA shall, [**14] within sixty (60) days following the date of this decision, conduct a public hearing in this matter and shall render and file its decision with the Norwell Town Clerk within thirty (30) days thereafter; notice of such hearing shall be given pursuant to G. L. c. 40A, § 11 and c. 39, § 23B, and such hearing, and the decision issued pursuant thereto, shall conform to the requirements of G. L. c. 40A, § 15; and it is further;

ORDERED and ADJUDGED that this court shall retain jurisdiction for purposes of any necessary review of the board's further proceedings.

So ordered.

[SEE "EXHIBIT A" IN ORIGINAL]

[SEE "EXHIBIT B" IN ORIGINAL]

2

9 Ploughed Neck Road, East Sandwich
Petition #04-34

# Town Of Sandwich
THE OLDEST TOWN ON CAPE COD



**BOARD of APPEALS**
16 Jan Sebastian Drive
Sandwich, MA 02563
Phone: 508 833 8001
Fax: 508 833 8006
E-mail: planning@townofsandwich.net

### SPECIAL PERMIT
### CERTIFICATE OF DENIAL

**PROPERTY ADDRESS:   9 Ploughed Neck Road, East Sandwich**
**NAME OF APPLICANT:   Patricia Perotti-Cyrus**

On March 4, 2005 the Board of Appeals voted to deny a special permit under Section 2420 of the Sandwich Protective Zoning By-laws for property located at 9 Ploughed Neck Road, East Sandwich as shown on assessor's map 52, parcel 20.

The Board of Appeals certifies that the decision attached hereto is a true and correct copy of its decision to deny a special permit and that copies of said decision, and of all plans referred to in the decision, have been filed with the Planning Board and the Town Clerk.

Any person aggrieved by this decision may appeal to the Superior Court or Land Court as in Section 17 of Chapter 40A, M.G.L. by filing a NOTICE OF ACTION AND COMPLAINT with the Town Clerk within twenty (20) days of the date of filing of this decision.

_____   3/8/05   _____
Board of Appeals Member

TOWN CLERK
TOWN OF SANDWICH

MAR 0 9 2005

3 H  1 0  M  P  M
RECEIVED & RECORDED

1

## PROCEDURAL HISTORY

1. Application for a special permit to repair damage to a structure caused by fire Sandwich Protective Zoning By-law Section 2420, for property located at 9 Ploughed Neck Road, East Sandwich, was made by the above referenced applicant who is the owner.

2. A public hearing, after proper notice was given the public hearing was opened on October 12, 2004 continued on November 23, 2004 and December 14, 2004 and closed on December 14, 2004.

3. The application was accompanied by a copy of an Approval Not Required Plan under MGL Chapter 41, Section 81L, 81P endorsed by the Sandwich Planning Board on October 19, 1994.

4. The Board reviewed the application, the plan and all other materials submitted prior to the close of the public hearing. The Board received and gave due consideration to the testimony given at the public hearing.

5. The following members attended the public hearing:
   Robert Guerin
   Robert Jensen
   James Killion
   Matthew McDonnell
   Erik Van Buskirk

## FINDINGS

1. The Board of Appeals finds that this application meets the requirements of Section 9, M.G.L. Chapter 40A.

2. The Board of Appeals finds that the subject property lies within the Residence - 2 zoning district.

3. The Board of Appeals finds that the subject property has 17,053 SF of area and 140.51' of frontage on Ploughed Neck Road.

4. Section 1330 requirements:
   (a) The Board of Appeals finds that there are conditions peculiar to this case but not generally true for similar permitted uses on other sites in the Residence - 2 zoning district.
   (b) The Board of Appeals finds that nuisance, hazard or congestion will not be created.
   (c) The Board of Appeals finds that there is not substantial harm to the neighborhood.
   (d) The Board of Appeals finds that there is derogation from the intent of the bylaw.
   (e) The Board of Appeals finds that the stated Residence – 2 district objectives will not be satisfied.

5. The Board of Appeals finds that this application does not meet the requirements of Sandwich Protective Zoning By-law Section 1330.

6. The lot at No. 9 Ploughed Neck Road is a 17,053 SF parcel of land on which is located one of six cottages that were part of a seasonal, nonconforming Cottage Colony on approximately two acres of land off Ploughed Neck Road. The cottage at No. 9 Ploughed Neck Road has one bedroom, one bathroom and a kitchen.

7. The subject property is located in Residential-2, in which cottage colonies are not permitted.



2

8. The Zoning By-laws define "Cottage Colony" as "[t]wo or more seasonal dwellings located on the same lot, each designed for independent family living and including cooking facilities."

9. Until 1994, all six cottages in the Cottage Colony, including No. 9, were located on one individual lot.

10. A plan showing the division of the land on which the Cottage Colony was located was endorsed Approval under the Subdivision Control Law Not Required ("ANR") by the Planning Board in 1994, apparently pursuant to the provision of G.L. c. 41, §81L which excludes from the definition of "subdivision" a "division of a tract of land on which two or more buildings were standing when the subdivision control law went into effect in the city or town in which the land lies into separate lots on each of which one of such buildings remains standing." The endorsed ANR plan, which is dated October 11, 1994, is recorded in the Barnstable Registry of Deeds.

11. Section 4710 of the Zoning By-laws prohibits the conversion of an existing cottage colony to "single-family dwelling use under separate ownership unless the lot upon which each building is located complies with the minimum requirements for single-family dwellings in the zoning district in which the land is located." The minimum lot area requirement for single-family use in the R-2 district is 60,000 square feet. The minimum frontage requirement is 200 feet.

12. The lot on which No. 9 Ploughed Neck Road is located does not conform to the minimum requirements for single-family dwellings in the R-2 district.

13. The Cottage Colony was the subject of a lawsuit filed by former owner, Forestdale Realty, Inc., against the Sandwich ZBA in 1995. The 1995 lawsuit challenged a decision by this Board that the Cottage Colony was nonconforming and that the division of the property into individual lots for year round single-family use was not permitted under the Zoning By-laws because the lots and cottages did not conform with applicable dimensional requirements for the R-2 district, as required by Section 4710 of the Zoning By-laws.

14. In April 1996, a Stipulation of Dismissal With Prejudice was filed in Barnstable Superior Court, with respect to the 1995 appeal.

15. In 1995, Forestdale Realty, Inc. established the Cottage Colony property as the Ploughed Neck Condominiums and, thereafter, conveyed out the cottages as condominium units, in violation of the Sandwich Zoning By-laws, Section 4710.

16. In 2001, the condominium was revoked by the then unit owners. Thereafter, the individual cottages with lots as shown on the 1994 ANR plan, were conveyed out in violation of Section 4710.

17. According to the applicants' attorney, the applicant purchased the cottage and land at No. 9, and adjacent No. 11, Ploughed Neck Road as investment properties in September 2002, and has rented them out since then.

18. As conveyed in 2002, and at present, No. 9 Ploughed Neck Road does not meet the applicable minimum area and frontage requirements of the Zoning By-laws and the cottage does not meet required setbacks for a single-family dwelling.

19. The cottage at No. 9 Ploughed Neck Road was damaged by fire in October 2003.

20. The applicant represented that the cottage at No. 9 Ploughed Neck Road has always had a heating system and has always been used year-round. The documentation submitted by the applicant did not support the claim that the cottage was used continuously as a year-round single-family dwelling since prior



3

        to the enactment of the Zoning By-law provisions prohibiting conversion of
cottage colonies except in conformance with Section 4710.

21. The Zoning By-laws define "Dwelling, Single-Family" as "[o]ne dwelling unit on a
single lot irrespective of structure type, ownership or tenure.

22. No. 9 Ploughed Neck Road was part of a seasonal Cottage Colony until at least
1995, and not a single-family dwelling, as defined in the Zoning By-laws.

23. The Cottage Colony was converted to single-family dwelling use in contravention
of Section 4710.

24. No. 9 Ploughed Neck Road is not eligible for protection as a lawfully pre-existing,
nonconforming single-family dwelling on a nonconforming lot since neither single-
family use, nor the lot, were "lawfully existing" at the time of the enactment or
subsequent amendment of the Zoning By-laws governing conversion of cottage
colonies.

25. The Board notes that "seasonal dwelling" is not defined in the current, effective
Protective Zoning By-Law.

26. The Board further recognizes that Article VII, Three Ponds District, Section 7020
of the Protective Zoning By-Law defines "Seasonal Facility" as "a facility that
offers activities that do not occur and are not designed to occur on a year round
basis."

27. The Board finds that applicant has evidenced the existence of heating systems in
the structure that is consistent with a structure designed and appropriate for full-
time, year-round occupation.

28. The Board finds that applicant has demonstrated that the construction and use of
applicant's dwelling/structure pre dates the adoption of zoning.

29. The Board finds that applicant's property is not a **HOTEL** as defined by the
protective zoning by-laws.

30. The Board finds that applicant's property is not a **MOTEL** as defined by the
protective zoning by-laws.

31. The Board notes that **MOTOR COURT** is not defined in the by-laws.

32. The Board finds that applicant's property is not a **LODGING HOUSE** as defined
by the protective zoning by-laws.

33. The Board finds that applicant's proposed repair would not:
    a. Jeopardize public health or safety;
    b. Decrease the value of land and buildings;
    c. Lead to blight and pollution of the environment;
    d. Increase the congestion of traffic;
    e. Increase hazards from fire and other dangers;
    f. Preclude the economical provisions of transportation, water,
       sewerage, schools, parks, and other public facilities;
    g. Decrease housing for persons of all income levels; and or
    h. Deplete or misuse the amenities of the Town.

34. The Board of Appeals finds that the application for special permit does not
substantially conform to the Sandwich Protective Zoning By-Laws

35. The Board of Appeals finds that the Sandwich Fire Department report dated
October 2, 2003 states: "The cottage had no electric power and the meter has
been removed by N'Star"

Motion:      I, James Killion, move to adopt these findings as the findings of the Board
           of Appeals



Second:        Robert Jensen

Vote:          Robert Guerin          No
               Robert Jensen         Yes
               James Killion         Yes
               Matthew McDonnell Yes
               Erik Van Buskirk      Yes

## DECISION:

Motion:        I, James Killion, move to deny the special permit in consideration of the
               findings of the Board of Appeals.
Second:        Matthew McDonnell

Vote:          Robert Guerin          No
               Robert Jensen         Yes
               James Killion         Yes
               Matthew McDonnell Yes
               Erik Van Buskirk      No





# Town Of Sandwich
THE OLDEST TOWN ON CAPE COD



**BOARD of APPEALS**

16 Jan Sebastian Drive
Sandwich, MA 02563
Phone: 508 833 8001
Fax: 508 833 8006
E-mail: planning@townofsandwich.net

## Appeal of the Decision of the Building Inspector
## Certificate of Action

**PROPERTY ADDRESS:   9 Ploughed Neck Road, East Sandwich**
**NAME OF APPLICANT:   Patricia Perotti-Cyrus**

On December 14, 2004 the Board of Appeals voted to uphold the decision of the building inspector that issued a cease and desist order and denied an application for a building permit to perform repair work on the applicant's cottage located at 9 Ploughed Neck Road, East Sandwich, which property was damaged in a fire in the fall of 2003 property as shown on assessor's map 52, parcel 20.

The Board of Appeals certifies that the decision attached hereto is a true and correct copy of its decision in the above referenced matter.

_____    12/14/04   _____
Signature

**TOWN CLERK**
**TOWN OF SANDWICH**

DEC 1 5 2004

__11__ H __40__ M __A__ M
**RECEIVED & RECORDED**

## PROCEDURAL HISTORY

1. An appeal of the decision of the building inspector for property located at 9 Ploughed Neck Road, East Sandwich was made by the above referenced applicant who is the owner.

2. After proper notice was given the public hearing was opened on October 12, 2004, continued on November 23, 2004 and December 14, 2004 and closed on December 14, 2004.

3. The application was accompanied by a copy of an Approval Not Required Plan under MGL Chapter 41, Section 81L, 81P endorsed by the Sandwich Planning Board on October 19, 1994.

4. The Board reviewed the application, the plan and all other materials submitted prior to the close of the public hearing. The Board received and gave due consideration to the testimony given at the public hearing.

5. The following members attended the public hearing:
   Robert Guerin
   Robert Jensen
   James Killion
   Matthew McDonnell
   Erik Van Buskirk

## FINDINGS

1. The applicant states that 9 Ploughed Neck Road is used as a single-family dwelling. The Board of Appeals finds that no information was submitted by the applicant to contradict determinations made by Town Counsel and the Building Inspector that the use remains cottage colony as shown by information contained in the public record for this matter.

2. The Board of Appeals finds that the Sandwich Protective Zoning By-law does not empower the Board of Appeals to grant use variances.

3. The Board of Appeals finds that the conveyance of the property to individual owners to be used as single-family dwellings created a zoning violation because the conveyance took place without complying with Section 4710.

4. the Board of Appeals finds that Town Counsel's of March 12, 2004 to the Building Inspector chronicles the history of the use and ownership of this property. Counsel specifically states: "Because these lots have subsequently come into separate ownership the entire property is in violation of the zoning by-law."

5. The Board of Appeals finds that the plan endorsed under Section 81L does not legitimize the single-family dwelling use.

6. The Board of Appeals finds that the statute of limitations in Chapter 40A, Section 7 does not apply to uses. The Board further finds that even if the statute of limitations did apply the 10 years have not yet expired.

7. The Board of Appeals finds that denial of a building permit is not an action or proceeding under Chapter 40A, Section 7.

8. The Board of Appeals finds that the information submitted by the applicant to show that the year round use of the property pre-dates the adoption of zoning in Sandwich was insufficient.

Petition #04-32

| | |
|---|---|
| Motion: | I, James Killion, move to adopt these findings as the findings of the Board of Appeals. |
| Second: | Robert Guerin |
| Vote: | Robert Guerin        yes |
| | Robert Jensen        yes |
| | James Killion        yes |
| | Matthew McDonnell yes |
| | Erik Van Buskirk     yes |

## DECISION

| | |
|---|---|
| Motion: | I, James Killion, move to uphold the decision of the building inspector for property located at 9 Ploughed Neck Road, East Sandwich in consideration of the findings of the Board of Appeals as stated herein. |
| Second: | Robert Jensen |
| Vote: | Robert Guerin        abstain |
| | Robert Jensen        yes |
| | James Killion        yes |
| | Matthew McDonnell yes |
| | Erik Van Buskirk     no |

# Town Of Sandwich
## THE OLDEST TOWN ON CAPE COD



**BOARD of APPEALS**
16 Jan Sebastian Drive
Sandwich, MA 02563
Phone: 508 833 8001
Fax: 508 833 8006
E-mail: planning@townofsandwich.net

## VARIANCE DECISION

**PROPERTY ADDRESS:**   9 Ploughed Neck Road, East Sandwich
**NAME OF APPLICANT:**   Patricia Perotti-Cyrus

On December 14, 2004 the Board of Appeals voted to deny a variance for property located at 9 Ploughed Neck Road, East Sandwich as shown on assessor's map 52, parcel 20.

The Board of Appeals certifies that the decision attached hereto is a true and correct copy of its decision to deny a variance and that copies of said decision, and of all plans referred to in the decision, have been filed with the Planning Board and the Town Clerk.

Any person aggrieved by this decision may appeal to the Superior Court or Land Court as in Section 17 of Chapter 40A, M.G.L. by filing a NOTICE OF ACTION AND COMPLAINT with the Town Clerk within twenty (20) days of the date of filing of this decision.

Signature _____   12/14/04 _____

**TOWN CLERK**
**TOWN OF SANDWICH**

DEC 1 5 2004

__ H __40__ M __R__ M __
RECEIVED & RECORDED



## PROCEDURAL HISTORY

1. Application for a variance to authorize the use of the property as a single-family residential use with house and usual accessory structures as permitted under zoning by-laws for such use for property located at 9 Ploughed Neck Road, East Sandwich was made by the above referenced applicant who is the owner.

2. After proper notice was given the public hearing was opened on October 12, 2004 continued on November 23, 2004 and December 14, 2004 and closed on December 14, 2004.

3. The application was accompanied by a copy of an Approval Not Required Plan under MGL Chapter 41, Section 81L, 81P endorsed by the Sandwich Planning Board on October 19, 1994.

4. The Board reviewed the application, the plan and all other materials submitted prior to the close of the public hearing. The Board received and gave due consideration to the testimony given at the public hearing.

5. The following members attended the public hearing:
   Robert Guerin
   Robert Jensen
   Jim Killion
   Fred Watt
   Matthew Mc Donnell
   Erik Van Buskirk

## FINDINGS

1. The applicant states that 9 Ploughed Neck Road is used as a single-family dwelling. The Board of Appeals finds that no information was submitted by the applicant to contradict determinations made by Town Counsel and the Building Inspector that the use remains cottage colony as shown by information contained in the public record for this matter.

2. The Board of Appeals finds that the Sandwich Protective Zoning By-law does not empower the Board of Appeals to grant use variances.

3. The Board of Appeals finds that the conveyance of the property to individual owners to be used as single-family dwellings created a zoning violation because the conveyance took place without complying with Section 4710.

4. The Board of Appeals does not find that a literal enforcement of the provisions of this bylaw would involve a substantial hardship, financial or otherwise, to the petitioner or appellant.

5. The Board of Appeals does not find that the hardship is owing to circumstances relating to the soil conditions, shape, or topography of such land or structures but not affecting generally the zoning district in which it is located.

6. The Board of Appeals does not find that desirable relief may be granted without either;

   1. Substantial detriment to the public good; or
   2. Nullifying or substantially derogating from the intent or purpose of this by-law.

Motion:     I, James Killion, move to adopt these findings as the findings of the Board of Appeals.

Second:     Robert Guerin

Vote:

|  |  |
|---|---|
| Robert Guerin | yes |
| Robert Jensen | yes |
| James Killion | yes |
| Matthew Mc Donnell | yes |
| Erik Van Buskirk | yes |

## DECISION

Motion:    I, James Killion, move to deny the variance in consideration of the findings of the Board of Appeals.

Seconded:  Robert Guerin

Vote:

|  |  |
|---|---|
| Robert Guerin | yes |
| Robert Jensen | yes |
| James Killion | yes |
| Matthew Mc Donnell | yes |
| Erik Van Buskirk | yes |