UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PATRICIA PEROTTI-CYRUS,
      Plaintiff,

                                 CIVIL ACTION
                                 NO. 05-10116-DPW

      v.

ROBERT JENSON, Chairman
Of The Board Of Appeals For
The Town Of Sandwich, Et al.,
      Defendants.

<u>PLAINTIFF'S MOTION TO FILE SECOND AMENDED COMPLAINT</u>

      NOW COMES the plaintiff in this matter, and seeks leave of Court to file her second amended Complaint.  As grounds, plaintiff states as follows:

1.      On November 5, 2004, plaintiff properly served the defendant Town with notice of her claim pursuant to G.L. c. 258, a copy of which is attached hereto, together with a copy of the certified mail, return receipt (original attached to Second Amended Complaint, as Exhibit 5).

2.      In accordance with G.L. c. 258, the Town had six (6) months to investigate and respond to plaintiff.

3.      To date, more than six (6) months later, the plaintiff has not received any response from the Town.

4.      Accordingly, plaintiff may now timely file an action against the Town pursuant to G.L. c. 258.

5.      Since plaintiff's claim under G.L. c. 258 arises out of the same "series of events or occurrence of transaction(s)," it makes sense to bring this claim in connection with plaintiff's other pending claims, and

accordingly, plaintiff seeks to amend her Complaint to add a count,

Count VI, against the defendant Town, for violation of and negligence

under G.L. c. 258.

WHEREFORE, plaintiff respectfully requests that this Court allow plaintiff

to file this Second Amended Complaint.


Plaintiff,

PATRICIA PEROTTI-CYRUS,

By her attorney,


  /s/ Julie C. Molloy
Julie C. Molloy        BBO#555176
379 Route 6A
East Sandwich MA 02537
(508) 833-3707

Dated: May 9, 2005

### *CERTIFICATE OF SERVICE*

I, Julie C. Molloy, Esq., hereby certify that a copy of the foregoing was served via U.S. Mail, first class, postage pre-paid, on May 9, 2005, upon the defendants, as follows:

Leonard H. Kesten, Esq.
Deborah Ecker, Esq.
Brody, Hardoon, Perkins & Kesten
One Exeter Plaza, 12th floor
Boston MA 02116

  /s/ Julie C. Molloy

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 05-10116 DPW

_____
                                                          )
PATRICIA PEROTTI-CYRUS,                    )
                                                          )
                  Plaintiff,                        )
                                                          )
         v.                                            )
                                                          )
ROBERT JENSEN, Chairman of the Board of    )
Appeals for the Town of Sandwich, ROBERT    )
GUERIN, JAMES KILLION, MATTHEW          )
McDONNELL, ERIK VAN BUSKIRK,            )
WILLIAM DAWES, and MICHAEL                )
LESPERANCE, as they are Members of the      )
Board of Appeals, DONNA BOARDMAN,        )
Building Inspector and Zoning Enforcement      )
Officer for the Town of Sandwich, and            )
TOWN OF SANDWICH,                              )
                                                          )
                  Defendants.                      )
_____ _____ )

**PLAINTIFF'S AMENDED COMPLAINT APPEALING DECISIONS OF TOWN OF
SANDWICH BOARD OF APPEALS, DECISION OF BUILING INSPECTOR,
REQUEST FOR DECLARATORY JUDGMENT,
AND DEMAND FOR JURY TRIAL**

I.       INTRODUCTION

         The plaintiff hereby files this Amended Complaint, adding a Count III,[1]

appealing the denial by the Board of Appeals of her application for special permit.

Although the Board denied plaintiff's applications appealing the decision of the

Building Inspector, denying her request for a building permit, and for a variance

on December 14, 2004, and filed those decisions with the Town Clerk on

_____
[1] In her original Complaint, plaintiff omitted a Count III, which was intended to appeal the denial
of her special permit.

December 15, 2004, it did not render its decision denying her application for a special permit until March 4, 2005, and filed the same with the Town Clerk only on March 9, 2005.  Accordingly, plaintiff's appeal of the denial of the special permit application did not become ripe until March 9, 2005, and must be filed on or before March 29, 2005, while her appeals of the other two applications had to be filed within (20) twenty days after December 15, 2004 (by no later than January 4, 2005).

As previously noted in the original Complaint, the issues in this case are similar, if not identical, to the issues raised in the matter of _Donald Thibault v. William Dawes, et al._, Barnstable Superior Court, Docket No. 04-CV-0588,[2] and to the issues in the case matters decided by the Massachusetts Land Court, in the matter of _Norwell-Arch, L.L.C. v. Norwell Zoning Board of Appeals_, Misc. Case No. 285113, Mass. Land Court (Hon. J. Trombley) (decided May 24, 2004); 12 LCR 208; 2004 MASS. LCR LEXIS 44.

The heart of the issue, as noted by the Land Court in the _Norwell-Arch, L.L.C._ case, is whether a property containing two or more structures which have existed since before the municipality adopted the Subdivision Control Law, divided into two or more lots through the endorsement of an "approval not required" plan ["ANR plan"], pursuant to G.L. c. 41, s. 81L, such that each structure is located on its own lot, is entitled to the protections set forth in G.L. c. 40A, s. 6 (1st¶), as a "structure lawfully in existence," as used in that paragraph, where the already developed lots created by the ANR plan do not meet zoning

---

[2] Plaintiff in that case has filed a Motion for Summary Judgment, which the Town has opposed, and filed a Cross-Motion for Summary Judgment.  The cross-motions for summary judgment were scheduled for hearing on February 15, 2005, but the hearing was postponed to May 26, 2005, by the Court.

dimensional requirements in effect as of the date of endorsement of the ANR

plan.  As stated by the Land Court:

> Clearly, the General Court intended to provide special protection for residential structures in existence before the adoption of the subdivision control law in each locality when it added the two building exception to G. L. c. 41, 81L, in 1953.  Citgo Petroleum Corp. v. Planning Bd. of Braintree, 24 Mass. App. Ct. 425, 427 (1987); G. L. c. 41, § 81L (excepting from the subdivision control law the "division of a tract of land on which two or more buildings were standing when the subdivision control law went into effect in the city or town in which land lies into separate lots on each of which one of such buildings remains standing").  Similarly, single and two-family residential structures enjoy preferential zoning treatment under the second "except" clause of G. L. c. 40A, § 6.  The second "except" clause of G. L. c. 40A, § 6, provides residential structures preferential zoning treatment when the proposed changes to a nonconforming residential structure will not increase its nonconforming nature.  Goldhirsh [v. McNear], 32 Mass. App. Ct. [455] at 458-461 [(1992)] (discussing board of appeal's review of nonconforming structures under G. L. c. 40A, § 6).  To fully protect single and two-family residential structures, G. L. c. 41, § 81L, and c. 40A, § 6, must be read together.  The Special Permit Granting Authority, in this case the ZBA, cannot merely deny the request on the grounds that the structure is nonconforming as a result of a G. L. c. 41, 81L endorsement, . . .
>
> Norwell-Arch, L.L.C. v. Norwell Zoning Board of Appeals, Misc. Case No. 285113 (page 4, attached as Exhibit 1).

Notwithstanding this decision, which plaintiff pointed out to the Board of

Appeals during the hearings, plaintiff's appeal of the decision of the building

inspector, denying her application for a building permit, and her applications for

special permit and variance relief were denied, on the grounds that the property

is "unlawful" under zoning because the lot created by the ANR plan[3] did not meet

---

[3] Plaintiff's property was one of six cottages on one lot, and each cottage having been in existence since 1948, before the Town of Sandwich adopted Subdivision Control in August 1954, was entitled to division pursuant to G.L. c. 41, s. 81L and s. 81P by endorsement of the ANR plan in October 1994.  Unquestionably, the six newly created lots, each containing one cottage, did not comply with zoning dimensional requirements at the time of the October 1994 ANR plan's

the zoning dimensional requirements in effect as of the date of endorsement of the ANR plan, on October 19, 1994.  As a consequence, plaintiff has been unable to use her cottage since October 2003, when it was damaged in a fire.

At no time since this ANR plan was endorsed or recorded, over ten (10) years ago, has the Town of Sandwich ever sought to enforce any alleged zoning dimensional (hence structural) violation resulting from the endorsement and recording of this ANR plan, locating each cottage on its own lot.  G.L. c. 40A, s. 7, bars enforcement of any structural (dimensional) violation after six (6) years, if the structure was undertaken with a building permit, or ten (10) years, if the structure was undertaken without the benefit of a building permit.  The creation of a dimensional violation through the endorsement of an ANR plan does not, in and of itself, create a "use" violation under zoning, and, in point of fact, by locating each cottage on its own lot, the cottages fall within the definition of "dwelling unit, single family," under the Sandwich zoning by-laws, a by-right use in the R-2 zoning district in which the cottages have been located at all times since October 1994 through the present.

During the Board's hearings, it became clear that the Board of Appeals (through its Counsel) erroneously believes that the creation of a dimensional violation on this peculiar type of ANR plan created a _use_ violation, by virtue of the "conversion" of the cottage colony to six (6) individual lots through the endorsement of the 1994 ANR plan, each containing a single-family residence, as defined in the zoning by-laws, without complying with section 4710 of the zoning

---

endorsement.  This plan was recorded with the Barnstable County Registry of Deeds at Plan Book 506, Page 85, on October 28, 1994.

by-laws, governing conversion of cottage colonies to single-family residences. See Special Permit Decision, attached as Exhibit 2, Findings #10 and 11. This interpretation ignores the reality that, after division via the 1994 ANR plan, the individual cottages, now each located on their own lot, no longer fall within the definition of the "cottage colony" zoning by-law, Section 4710, and accordingly, it is inapplicable. There is no definition of "seasonal" in the zoning by-laws, as found by the Board of Appeals (See Exhibit 2, Finding#25). All of the Ploughed Neck Road cottages have been equipped with heating systems since their construction in 1948, and as such, have always had the "characteristic furnishings and equipment" to allow year-round usage, and in fact they have been used on a year-round basis, thus, no "abandonment" of the year-round usage could have occurred under the abandonment zoning by-law, Section 2410, and they are not seasonal cottages, but instead are year-round units, thus taking them out of the definition of "cottage colony," and not subject to the cottage colony conversion by-law. See Exhibit 2, Finding #27.[4] Ms. Perotti-Cyrus has also presented a G.L. c. 258 Tort Claims Act demand letter to the Town, dated November 5, 2004, to which the Town has six (6) months[5] to respond. To date, no response has been forthcoming.

---

[4] Even assuming that in fact the cottages may only be used on a seasonal basis (which at the end of the day seemed to be the Town's real concern), at present, Ms. Perotti-Cyrus is being deprived of using her cottage even seasonally, because she cannot obtain a building permit to repair the damage to render it habitable. If the Town in fact is correct regarding the seasonal issue, the proper thing to do would be for the building permit to issue so that the cottage can be used, and if the Town feels that a use violation arises by virtue of other than just seasonal use, it may bring an enforcement action against Ms. Perotti-Cyrus seeking to enjoin the same. This was raised at the hearings, to no avail.

[5] As yet, the Town has made no response to the G.L. c. 258 Demand letter, and its response is due on or about May 5, 2005.

<u>COMPLAINT</u>

<u>Parties</u>

1.      Plaintiff, Patricia Perotti-Cyrus ["Plaintiff"], owns the real property, containing a year-round cottage, located at 9 Ploughed Neck Road, East Sandwich, Barnstable County, Massachusetts 02537 ["the Property"], and she resides at One Palmer Road, East Sandwich, Barnstable County, Massachusetts 02537.

2.      Plaintiff purchased the Property on September 11, 2002, which is reflected as Lot 1 on Plan Book 506, Page 85, recorded with the Barnstable County Registry of Deeds, and plaintiff's Deed is recorded at Book 15579, Page 249, in the same registry.

3.      Defendants, Robert Jensen is the Chairman of the Board of Appeals for the Town of Sandwich, and Robert Guerin, James Killion, Matthew McDonnell, Erik Van Buskirk, William Dawes, and Michael Lesperance, are member of the Board of Appeals [hereafter referred to collectively as "Board of Appeals"], at all times relevant, with a principal place of business at the Office of Planning & Development, Town Office Building, 16 Jan Sebastian Drive, Sandwich, Barnstable County, Massachusetts 02563.

4.      Defendant, Donna Boardman, is the Building Inspector and Zoning Enforcement Officer for the Town of Sandwich, at all times relevant, with a principal place of business at the Building Department, Town Office Building, 16 Jan Sebastian Drive, Sandwich, Barnstable County, Massachusetts 02563.

5.      Defendant, Town of Sandwich ["Town"], is a duly incorporated body politic and town of the Commonwealth of Massachusetts, with a principal place of business at 130 Main Street, Sandwich, Barnstable County, Massachusetts 02563.

<u>Factual Background</u>

6.      Plaintiff repeats and reasserts the matters set forth above, incorporating the same herein by reference, and further states as follows:

7.      On October 19, 1994, the Town of Sandwich Planning Board endorsed an ANR plan ["1994 ANR plan"], dividing one large lot containing cottages that had existed since before the Town adopted the Subdivision Control Law, into six (6) smaller lots, with one cottage on each newly created lot, under that provision of G.L.c. 41, s. 81L and s.

81P, allowing such division on an ANR plan so long as the structures pre-date Subdivision Control adoption by a municipality.

8.   The six lots shown on the 1994 ANR plan did not meet the 1994 zoning dimensional requirements in effect in October 1994.

9.   The Town adopted Subdivision Control Law on August 20, 1954.

10.  The Town first adopted zoning in 1960.

11.  The 1994 ANR plan was recorded with the Barnstable County Registry of Deeds on October 28, 1994, at Plan Book 506, Page 85.

12.  "Structural" violations under G.L. c. 40A, s. 7, are violations of the dimensional requirements of zoning.

13.  G.L. c. 40A, s. 3, states "No zoning ordinance or by-law shall regulate or restrict the use of materials, or methods of construction of structures regulated by the state building code, . . . ".

14.  Structural violations of the state building code are solely enforceable by building inspectors pursuant to G.L.c. 143, s. 3A.

15.  An ANR plan showing a violation of dimensional zoning constitutes a structural violation under zoning, if in fact there is any violation.

16.  G.L. c. 40A, s. 7 sets forth two statutes of limitations: a six year statute of limitations regarding structural and use violations begun under an original building permit authorizing such use; and, a ten year statute of limitations for structural violations begun without benefit of a building permit.

17.  G.L. c. 40A, s.7, provides no statute of limitations for use violations not begun under a lawfully issued building permit.

18.  At all times relevant, the Property, since October 1994, through the present, has been located within the R-2 zoning district in Sandwich, which allows single family residential use by right.

19.  Sandwich zoning by-laws define "dwelling" and "dwelling, single family" as follows:

> DWELLING - A building or part of a building used exclusively as the living quarters for one or more families.
>
> DWELLING, SINGLE-FAMILY - One dwelling unit on a single lot irrespective of structure type, ownership or tenure.

(Added STM 9/91)

<u>See</u> Sandwich zoning by-laws, "Definitions," p. 71.

20.    Sandwich zoning by-laws define "cottage colony" as follows:

<u>COTTAGE COLONY</u> - Two or more detached seasonal dwellings located on the same lot, <u>*each designed for independent family living and including cooking facilities*</u>. (Amended May 1, 1995)

<u>See</u> Sandwich zoning by-laws, "Definitions," p. 71. (emphasis added)

21.    Before May 1, 1995, and specifically in October 1994, the definition of cottage colony also limited the definition by defining all of the cottages as each having less than 480 square feet of area.  <u>See</u> Sandwich zoning by-laws, "Definitions," in effect before May 1, 1995.

22.    The Sandwich cottage colony conversion by-law states as follows:

<u>Cottage Colonies</u>.  Any existing cottage colony [two or more detached seasonal dwellings located on the same lot] may not be converted to single-family dwelling use under separate ownership unless the lot upon which each building is located complies with the minimum requirements for single family dwellings in the zoning district in which the land is located, and such non-conforming cottage colony may not be converted to single-family use under condominium, cooperative, time sharing condominium, or any other single-family dwelling use more intensive or frequent than seasonal or intermittent use, unless the lot meets the minimum requirements for Cluster Developments, as set forth in Section 4440. This section shall apply whether or not the lot is situated in a district in which Cluster Development is a prohibited use.

<u>See</u> Sandwich zoning by-laws, Section 4710.

23.    The Sandwich zoning by-laws do not contain any definition of the term "seasonal dwelling."  <u>See</u> Sandwich zoning by-laws, "Definitions," beginning p. 69; <u>see</u> <u>also</u> Board of Appeals Special Permit Decision, Exhibit 2, Finding No. 25.

24.    The Sandwich zoning by-laws further provide with respect to the conversion of seasonal cottage colonies that the following procedure be followed:

> 4740.  Procedures. The conversion of any structure provided herein shall be governed by the procedures contained in Section 4431 through 4437; and, in addition, the Planning Board shall thereafter submit its recommendations to the Board of Appeals within thirty (30) days after receipt of reports from the Board of Health and/or Conservation Commission, or within seventy-five (75) days of the date  of pre-application review, whichever is sooner.  The Board of Appeals shall act upon said application as an application for special permit as set forth in Section 1330 through 1360 and, where applicable, Section 2400.

> See Sandwich zoning by-laws, Section 4740.

> 4431.    Pre-Application Review. To promote better communication and avoid misunderstanding, applicants are encouraged to submit preliminary materials for informal review by the Planning Board prior to formal application.

> 4432.    Submission. Proposed Cluster Developments shall comply with the "Cluster Development Special Permit Regulations" of the Sandwich Planning Board. A Cluster Development shall encompass at least twice the lot area required in the district. A new or existing Cluster Development may include a Village Cluster, which meets the requirements of Section 4444 of the Sandwich Zoning By-laws. In the case of an application to amend an existing Cluster Special Permit to permit a Village Cluster, the procedures in Section 4440 through Section 4448, inclusive shall apply, except as to such materials as the Planning Board may waive as duplicative of materials previously submitted.

> See Sandwich zoning by-laws, Sections 4431 and 4432. [*N.B.* Section 4433 through 4437 do not exist in the by-laws]

> 1330.  Special Permits shall normally be granted unless, because of conditions peculiar to the particular case but not generally true for similar permitted uses on other sites in the same district, it appears that nuisance, hazard

or congestion will be created, or for other reasons there will be substantial harm to the neighborhood or derogation from the intent of the by-law, so that the stated district objectives will not be satisfied. The Special Permit Granting Authority shall place upon each special permit the condition that failure to comply with the conditions set forth in the special permit will result in termination thereof and that it shall expire upon transfer of ownership, prior to initiation of substantial construction on or occupancy of the site, unless such transfer is authorized in the permit, or if no substantial construction or occupancy takes place within the twelve (12) months of special permit approval, excluding such time required to pursue or await the determination of an appeal referred to in Section 17 of Chapter 40A. Extenuating circumstances may be a basis for a six (6) month extension to be granted by the Special Permit Granting Authority. Construction or operations under a building or special permit shall conform to any subsequent amendment of the ordinance or by-law unless the use or construction is commenced within a period of not less than six (6) months after the issuance of the permit and, in cases involving construction, unless such construction is continued through to completion as continuously and expeditiously as is reasonable.

1331.  Special permits shall only be issued following public hearings held within sixty-five (65) days after filing of an application with the Special Permit Granting Authority. A copy of the application shall be given to the Town Clerk forthwith by the applicant.

1332.  Referral. The Special Permit Granting Authority (SPGA) shall refer special permit applications to the Board of Health, Water Quality Review Committee, Conservation Commission, Housing Authority, Planning Board, Board of Appeals, Highway Department, and Town Engineer for written comments and recommendations pertaining to the area of responsibility of that particular board or department, before taking final action on said special permit application. In additions to the above noted boards, the SPGA may refer a special permit application to any other Town agency/board/department for comments and recommendations if it so desires before taking final action on said special permit application. A public hearing on said referral shall not be required. The SPGA

need not send a referral to itself.

Any such board or agency to which applications are referred to for comments shall make its recommendations and send copies thereof to the SPGA and the applicant within thirty-five (35) days of receipt of the referral request by said board or agency or there shall be deemed no opposition or desire to comment. The SPGA shall not act upon said special permit until either comments from referred boards or agencies have been received, or said thirty-five (35) days have elapsed, whichever is sooner. Applications referred to more than one board or agency may be reviewed jointly by said boards or agencies.

1342.  In acting on special permits and special permit amendments under this section, the <u>Board of Appeals shall give consideration to the recommendations, if any, of the Planning Board and the Town Engineer.</u> These recommendations shall be formulated considering the following criteria:

(a)  Protection of adjacent area against detrimental or offensive uses on the site by provision of adequate surface water drainage, buffers against lighting, sight, sound, dust, vibration, odor and allowance of sunlight and air;

(b)  Convenience and safety of vehicular and pedestrian movement within the site and in relation to adjacent areas;

(c)  Adequacy of facilities for handling and disposal of refuse and other production by-products;

(d)  Protection of environmental features on the site and in adjacent areas;

(e)  *<u>Promotion of appropriate arrangement of structures within the site and in relation to existing structures within the district and neighborhood</u>*;

(f)  Co-ordination with and improvement of systems of vehicular and pedestrian access, drainage, water supply, sewage disposal, lighting, landscaping, wetlands, water courses, buildings and others features that support the neighborhood;

(g)  Compliance with all applicable sections of the Zoning By-Law.

<u>2400.   Non-Conforming Uses.</u> The use of any structure or land lawfully existing at the time of the enactment or subsequent amendment of this bylaw may be continued

although such structure or use does not conform with provisions of this by-law, subject to the following conditions and exceptions:

2410.  Abandonment. A non-conforming use of a building or land, which has been abandoned for a period of two (2) years, shall not thereafter be returned to such non-conforming use. A non-conforming use shall be considered abandoned when the premises has been vacant for two years, or when the characteristic equipment and/or furnishings of the non-conforming use have been removed from the premises and have not been replaced by similar equipment, whichever shall occur first.

2420.  Change, Extension Or Alteration. No change, extension or alteration of a pre-existing non-conforming use and no change, extension or alteration of a pre-existing non-conforming structure may be made except upon the issuance of a special permit from the Zoning Board of Appeals. Such a special permit may be granted only if the special permit granting authority finds that the proposed change, extension or alteration of a pre-existing non-conforming use, or change, extension or alteration of a pre-existing non-conforming structure is not substantially more detrimental to the neighborhood than the existing nonconforming use or non-conforming structure.

The following conditions shall apply to any special permit granted under this section:
a). When the permit applicant requests either a change, extension or alteration of a non-conforming use or change, extension or alteration of a non-conforming structure, any change, extension or alteration may occur only upon those parcels of land upon which the pre-existing non-conforming use or structure is located;
b). When the permit applicant requests either a change, extension or alteration of a non-conforming use, or a. change, extension or alteration of a non-conforming structure, the permit applicant shall substantially screen all new parking from abutters and from streets. (5/4/98)

See Sandwich zoning by-laws, Sections 4431, 4432, 1330, 1331, 1332, 1342 (emphasis added to subpar. (e)), 2400, 2410, and 2400.

25.    The Sandwich zoning by-laws grant exemptions and protections from "increases in lot area, width, depth, frontage, yard, or coverage

12

requirements," for vacant lots, in accordance with the requirements of G.L.c. 40A, s. 6 (4th¶), but also with regard to certain developed lots:

> 2550.  Non-Conforming Lots. Application of amended Intensity of Use Regulations to previously created lots is limited by Section 6, Chapter 40A, MGL. In addition, any increase in lot area, width, depth, frontage, yard, or coverage requirements of this by-law shall not apply to erection, extension, alterations, or moving of a structure on a legally created lot not meeting current requirements, provided that either the lot is in an exempted subdivision (see Section 2560) or the applicant documents that:
>
> a.  At the time such increase requirement became applicable to it, the lot:
>    1.  Had at least 5,000 square feet of lot area and 50 feet of frontage on a street; and
>    2.  Conformed to the existing dimensions required at the time of creation,
> b.  The lot is to be used for a single dwelling unit or for non-residential use, provided that no side yard shall be less than 20 feet on a lot having frontage of more than 100 feet but less than 200 feet and that no side yard shall be less than the greater of ten (10) percent of the lot's frontage or six (6) feet on one side and eight (8) feet on the other on a lot having frontage of 100 feet or less,
> c.  And the lot was held in ownership separate from all abutting property on December 31, 1998. (Amended 5/4/98)
>
> Such non-conforming lots may be changed in size or shape or their land area recombined without losing this exemption, so long as the change does not increase the actual or potential number of buildable lots.
>
> See Sandwich zoning by-laws, Section 2550.

26.    The Sandwich zoning by-laws define "abandonment" as follows:

> Abandonment. A non-conforming use of a building or land, which has been abandoned for a period of two (2) years, shall not thereafter be returned to such non-conforming use. *A non-conforming use shall be considered abandoned* when the premises has been vacant for two years, *or when the characteristic equipment and/or furnishings of the non-conforming use have been removed from the premises and have not*

*been replaced by similar equipment*, whichever shall
occur first.

<u>See</u> Sandwich zoning by-laws, Section 2410 (emphasis
added).

27. The Ploughed Neck Road cottages have been used on a year-round
basis for many years, both before and after 1994, continuing through
the present, and all six cottages have been equipped with heating
systems since their construction in 1948.

28. The Town has never sought to enforce a use violation due to the fact
that the Ploughed neck cottages have been used on a year-round basis,
at any time before or after 1994, through the present.

29. On or about March 8, 1995, Forestdale Realty, Inc., owned all of the
Ploughed Neck Road cottages, and created a condominium consisting
of the six cottages. <u>See</u> Master Deed, recorded with Barnstable
Registry of Deeds, Book 9581, Page 262.

30. The Town never issued any special permit for this conversion to a
condominium.

31. On June 1, 2001, Forestdale Realty, Inc., and the one other unit owner,
Paulette Sasville, lawfully terminated the condominium at Ploughed
Neck Road, in accordance with the procedures set forth in G.L. c. 183A,
s. 19, which termination is recorded with the Barnstable Registry of
Deeds in Book 13898, Page 190.

32. Thereafter, Paulette Sasville acquired title to the cottage located on Lot
5, on Plan Book 506, Page 85, the 1994 ANR plan, as a single family
residence, a by-right use in the R-2 zoning district.

33. Forestdale Realty, Inc., conveyed all of its right title and interest in the
cottages located on Lots 1-4, and 6, as shown on the 1994 ANR plan,
recorded at Plan Book 506, Page 85, to West Yarmouth Lodgings, Inc.,
on June 1, 2001, by deed recorded with Barnstable Registry of Deeds,
Book 13898, Page 197.

34. West Yarmouth Lodgings, Inc., thereafter sold the individual lots to
various individuals, including Lots 1 and 2 to plaintiff in this action.

35. A planning board may not refuse to endorse an ANR plan showing the
division of land on which two or more structures have existed since
before the city or town adopted Subdivision Control, such that each
structure is located on its own lot, on the grounds that the resulting lots

violate dimensional zoning requirements as of date of endorsement of ANR plan.

36.     Challenges to the endorsement of an ANR plan must be brought within sixty (60) days of the endorsement of such a plan, pursuant to G.L. c. 249, s. 4.

37.     No person, including the Town, has challenged the endorsement of the 1994 ANR plan, pursuant to G.L. c. 249, s. 4.

38.     In mid-October, 2003, plaintiff's cottage ["Cottage"] located on Lot 1, at 9 Ploughed Neck Road, East Sandwich, was damaged by fire.

39.     The cottage is uninhabitable as a result of this fire and water damage, although overall the damage is minimal.

40.     Plaintiff began repairs without the benefit of a building permit in late 2003/early 2004, but stopped when the Building Inspector issued a cease and desist order.

41.     Thereafter, plaintiff sought to obtain a building permit from the Building Inspector, but was denied the same by the Building Inspector, in July 2004, in reliance upon a March 12, 2004, letter from Town Counsel.

42.     Plaintiff timely filed an appeal of the denial of her building permit application by the Building Inspector, and simultaneously filed applications for special permit and variance relief, on or about August 24, 20o4.

43.     Defendant Board held public hearings on all three zoning applications on October 12, 2004, November 23, 2004, and December 14, 2004, and the public hearing was closed on December 14, 2004.

44.     During these hearings, plaintiff presented evidence that the cottage was not a part of a seasonal cottage colony because: (1) it has always been equipped with a heating system, thus year-round usage has never been abandoned; (2) testimony in the form of affidavits from Forestdale Realty, Inc., and West Yarmouth Lodgings, Inc., that while those entities owned the cottages, they were used on a year-round basis; (3) letters from Forestdale Realty's predecessor owner, Elizabeth Sprague, from 1994, that she had used both the main home and cottages on a year-round basis; (4) after the 1994 ANR plan was endorsed, the "cottage colony" definition no longer applied, because each cottage was now located on its own lot.

45.    Plaintiff also presented evidence that the only violation that arose, if in fact one did arise, in connection with the endorsement of the 1994 ANR plan, it was a dimensional violation, which, under the Zoning Act, G.L. c. 40A, is a structural violation, and further that no use violation arose.

46.    Plaintiff further presented evidence that the fact that no special permit was ever issued by the Town to the property when the condominium was created is further evidence that the Town did not consider this property to fall within the definition of "cottage colony" as defined in the zoning by-laws – if it had, then the Town surely would have had to issue a special permit, yet Town Counsel asserts that the property was lawful as a condominium, but unlawful as single-family residences.

47.    Plaintiff further presented evidence that it appears the Town's real issue is whether the cottages can be used on a year-round basis, or only seasonally, whatever that is, given the lack of a definition for the same, and that plaintiff was being deprived even of using the cottage seasonally, because she has been denied a building permit to repair the damage and the cottage remains uninhabitable in its present state.

48.    Plaintiff further presented evidence that the Board should issue plaintiff her building permit, by overturning the decision of the Building Inspector, and if, thereafter, the Building Inspector feels a use violation arises due to year-round usage, the Building Inspector can seek enforcement of that violation by seeking to enjoin the same.

49.    The defendant Board rejected all of this evidence, and denied both plaintiff's appeal of the Building Inspector's decision, and plaintiff's applications for variance and special permit relief.

50.    Plaintiff has suffered damages, and continues to suffer damages, insofar as the title to her property has been slandered, lost rents, loss of use, legal fees and expenses, expenses incurred in borrowing monies in order to continue to meet her mortgage obligations, which had been subsidized by the rental income she received in connection with rental of the cottage.

51.    As grounds for it's denial of plaintiff's appeal of the decision of the Building Inspector denying plaintiff's application for building permit, the Board made the following findings:

Findings:

1.    The applicant states that 9 Ploughed Neck Road is used as a single-family dwelling.  The Board of Appeals finds that no information was submitted by the applicant to contradict the determinations made by Town Counsel and the Building Inspector that the use

      remains cottage colony as shown by information contained in the
      public record in this matter.

2. The Board of Appeals finds that the Sandwich Protective Zoning By-
laws does (sic) not empower the Board of Appeals to grant use
variances.

3. The Board of Appeals finds that the conveyance of the property to
individual owners to be used as single-family dwellings created a
zoning violation because the conveyance took place without
complying with Section 4710.

4. The Board of Appeals finds that Town Counsel's letter of March 12,
2004 to the Building Inspector chronicles the history of the use and
ownership of this property. Counsel specifically states: "Because
these lots have subsequently come into separate ownership the
entire property is in violation of the zoning by-law."

5. The Board of Appeals finds that the plan endorsed under Section
81L does not legitimize the single-family dwelling use.

6. The Board of Appeals finds that the statute of limitations in Chapter
40A, Section 7, does not apply to uses. The Board finds that even if
the statute of limitations did apply, the 10 years have not yet
expired.

7. The Board of Appeals finds that denial of a building permit is not an
action or proceeding under Chapter 40A, Section 7.

8. The Board of Appeals finds that the information submitted by the
applicant to show that the year round use of the property pre-dates
the adoption of zoning in Sandwich was insufficient.

<u>See</u> Decision of Board of Appeals denying plaintiff's Appeal of Decision
of Building Inspector, Exhibit 3.

52. As grounds for it's denial of plaintiff's variance application, the Board
made the following findings:

<u>Findings:</u>

1. The applicant states that 9 Ploughed Neck Road is used as a single-
family dwelling. The Board of Appeals finds that no information
was submitted by the applicant to contradict the determinations
made by Town Counsel and the Building Inspector that the use
remains cottage colony as shown by information contained in the
public record in this matter.

2. The Board of Appeals finds that the Sandwich Protective Zoning By-
laws does (sic) not empower the Board of Appeals to grant use
variances.

3. The Board of Appeals finds that the conveyance of the property to
individual owners to be used as single-family dwellings created a
zoning violation because the conveyance took place without
complying with Section 4710.

4.  The Board of Appeals does not find that a literal enforcement of the provisions of this by-law would involve a substantial hardship, financial or otherwise, to the petitioner or appellant.
5.  The Board of Appeals does not find the hardship is owing to circumstances relating to the soil conditions, shape, or topography of such land or structures but not generally affecting the zoning district in which it is located.
6.  The Board does not find that desirable relief may be granted without either;
    1.  Substantial detriment to the public good; or
    2.  Nullifying or substantially derogating from the intent and purpose of this by-law.

See Decision of Board of Appeals on Variance Application, Exhibit 4.

53.  As grounds for it's denial of plaintiff's application for a special permit, the Board of Appeals made the following findings:

Findings

1.  The Board of Appeals finds that this application meets the requirements of Section 9, M.G.L. Chapter 40A.
2.  The Board of Appeals finds that the subject property lies within the Residence - 2 zoning district.
3.  The Board of Appeals finds that the subject property has 17,053 SF of lot area and 140.51' of frontage on Ploughed Neck Road.
4.  Section 1330 requirements:
    (a) The Board of Appeals finds that there are conditions peculiar to this case but not generally true for similar permitted uses on other sites in the Residence – 2 zoning district.
    (b) The Board of Appeals finds that nuisance, hazard or congestion will not be created.
    (c) The Board of Appeals finds that there is not substantial harm to the neighborhood.
    (d) The Board of Appeals finds that there is derogation from the intent of the by-law.
    (e) The Board of Appeals finds that the stated Residence -2 district objectives will not be satisfied.
5.  The Board of Appeals finds that this application does not meet the requirements of Sandwich Protective Zoning By-law Section 1330.
6.  The lot at No. 9 Ploughed Neck Road is a 17,053 SF parcel of land on which is located one of six cottages that were part of a seasonal, nonconforming Cottage Colony on approximately two acres of land off Ploughed Neck Road.  The cottage at No. 9 Ploughed Neck Road has one bedroom, one bathroom and a kitchen.
7.  The subject property is located in Residential -2, in which cottage colonies are not permitted.

8. The Zoning By-laws define "Cottage Colony" as "[t]wo or more seasonal dwellings located on the same lot, each designed for independent family living and including cooking facilities."

9. Until 1994, all six cottages in the Cottage Colony, including No. 9, were located on one individual lot.

10. A plan showing the division of the land on which the Cottage Colony was located was endorsed Approval under the Subdivision Control Law Not Required ("ANR") by the Planning Board in 1994, apparently pursuant to the provision of G.L. c. 41, s. 81L which excludes from the definition of "subdivision" a "division of a tract of land on which two or more buildings were standing when the subdivision control law went into effect in the city or town in which the land lies into separate lots on each of which one of such buildings remains standing." The endorsed ANR plan, which is dated October 11, 1994, is recorded with the Barnstable Registry of Deeds.

11. Section 4710 of the Zoning by-laws prohibits the conversion of an existing cottage colony to "single-family dwelling use under separate ownership unless the lot upon which each building is located complies with the minimum requirements for single-family dwellings in the zoning district in which the land is located." The minimum lot area requirement for single-family use in the R-2 district is 60,000 square feet. The minimum frontage requirement is 200 feet.

12. The lot on which No. 9 Ploughed Neck Road is located does not conform to the minimum requirements for single-family dwellings in the R-2 district.

13. The Cottage Colony was the subject of a lawsuit filed by the former owner, Forestdale Realty, Inc., against the Sandwich ZBA in 1995. The 1995 lawsuit challenged a decision by this Board that the Cottage Colony was nonconforming and that the division of the property into individual lots for year round single-family use was not permitted under the applicable Zoning by-laws because the lots and cottages did not conform with applicable dimensional requirements for the R-2 district, as required by Section 4710 of the Zoning By-laws.

14. In April 1996, a Stipulation of Dismissal <u>With Prejudice</u> was filed in Barnstable Superior Court, with respect to the 1995 appeal.

15. In 1995 Forestdale Realty, Inc., established the Cottage Colony property as the Ploughed Neck Condominiums and, thereafter, conveyed out cottages as condominium units, in violation of the Sandwich Zoning By-laws, Section 4710.

16. In 2001, the condominium was revoked by the then unit owners. Thereafter, the individual cottages with lots as shown on the 1994 ANR plan, were conveyed out in violation of Section 4710.

17. According to the applicant's attorney, the applicant purchased the cottage and the land at No. 9 Ploughed Neck Road, and adjacent

No. 11, Ploughed Neck Road as investment properties in September 2002, and has rented them out since then.

18. As conveyed in 2002, and at present, No. 9 Ploughed Neck Road does not meet the applicable minimum area and frontage requirements of the Zoning by-laws and the cottage does not meet required setbacks for a single-family dwelling.

19. The cottage at No. 9 Ploughed Neck Road was damaged by fire in October 2003.

20. The applicant represented that the cottage at No. 9 Ploughed Neck Road has always had a heating system and has always been used year-round.  The documentation submitted by the applicant did not support the claim that the cottage was used continuously as a year-round single-family dwelling since prior to the enactment of the Zoning by-law provisions prohibiting the conversion of cottage colonies except in conformance with Section 4710.

21. The Zoning by-laws define "Dwelling, Single-Family" as "[o]ne dwelling unit on a single lot irrespective of structure type, ownership or tenure."

22. No. 9 Ploughed Neck Road was part of a seasonal Cottage Colony until at least 1995, and not a single-family dwelling, as defined in the Zoning By-laws.

23. The Cottage Colony was converted to single-family dwelling use in contravention of Section 4710.

24. No. 9 Ploughed Neck Road is not eligible for protection as a lawfully pre-existing, nonconforming single-family dwelling on a nonconforming lot since neither the single-family use, nor the lot, were "lawfully existing" at the time of the enactment or subsequent amendment of the Zoning By-laws governing conversion of cottage colonies.

25. The Board notes that "seasonal dwelling" is not defined in the current, effective Protective Zoning By-law.

26. The Board further recognizes that Article VII, Three Ponds District, Section 7020 of the Protective Zoning By-law defines "Seasonal Facility" as "a facility that offers activities that do not occur and are not designed to occur on a year round basis."

27. The Board finds that applicant has evidenced existence of heating systems in the structure that is consistent with a structure designed and appropriate for full-time, year-round occupation.

28. The Board finds that the applicant has demonstrated that the construction and use of the applicant's dwelling/structure pre-dates the adoption of zoning.

29. The Board finds that the applicant's property is not a **HOTEL** as defined by the protective zoning by-laws.

30. The Board finds that the applicant's property is not a **MOTEL** as defined by the protective zoning by-laws.

31. The Board notes that **MOTOR COURT** is not defined in the by-laws.

32. The Board finds that applicant's property is not a **LODGING HOUSE** as defined in the protective zoning by-laws.
33. The Board finds that applicant's proposed repair would not:
   a. Jeopardize public health or safety;
   b. Decrease the value of land or buildings;
   c. Lead to blight and pollution of the environment;
   d. Increase the congestion of traffic;
   e. Increase hazards from fire and other dangers;
   f. Preclude the economical provisions of transportation, water, sewerage, schools, parks, and other public facilities;
   g. Decrease housing for persons of all income levels; and or
   h. Deplete or misuse the amenities of the Town.
34. The Board of Appeals finds that the application for special permit does not substantially conform to the Sandwich Protective Zoning By-laws
35. The Board of Appeals finds that the Sandwich Fire Department report dated October 2, 2003 states: "The cottage had no electric power and the meter has been removed by NStar."

See Decision of Board of Appeals on Special Permit Application, Exhibit 2.

## COUNT I

*Declaratory Judgment pursuant to G.L. c. 231A, s. 1 et seq. that Town's Interpretation of G.L. c. 40A, s. 6 and Town By-laws is in Violation of Home Rule Procedures Act, G.L. c. 43B, s. 13*

54. Plaintiff repeats and reasserts the matters set forth above in paragraphs 1 through 53, incorporating the same herein by reference, and further states as follows:

55. ". . . Nothing in this section shall be construed to permit any city or town, by ordinance or by-law, to exercise any power or function which is inconsistent with any general law enacted by the general court before November eighth, nineteen hundred and sixty-six which applies alike to all cities, or to all towns, or to all cities and towns, or to a class of not fewer than two. . . . G.L. c. 43B, s. 13 (in pertinent part).

56. Defendants' interpretation of Section 6 of the Zoning Act and the Town's zoning by-laws constitutes an "exercise of any power or function which is inconsistent with" the Subdivision Control Law, G.L. c. 41, s. 81L and s. 81P, a "general law enacted by the general court before November [8th, 1966] which applies alike to all cities, or to all towns, or to all cities and towns, or to a class of not fewer than two . . . .," in violation of the limitations set forth in G.L. c. 43B, s. 13.

57.     Further, defendants' interpretation that it may prevent the division of land on which two or more structures have existed since before the city or town adopted subdivision control, such that each structure is located on its own lot, through the endorsement of an ANR plan pursuant to G.L. c. 41, s. 81L, unless the resulting lots meet the dimensional zoning requirements in effect as of the date of the ANR endorsement, through Section 4710 of the zoning by-laws, violates the limitations set forth in G.L. c. 43B, s. 13.

58.     Defendants' interpretation that the 1994 ANR endorsement created a use violation, is erroneous, since if it indeed created any violation, it was a dimensional or structural violation, and not a use violation, insofar as the lots did not meet dimensional requirements of zoning in effect in October 1994.

59.     Defendants' interpretation of its zoning by-laws improperly seeks to regulate form of ownership, which is not a proper subject of zoning.

60.     Defendants' interpretation of G.L. c. 40A, s. 6(1st¶), deeming properties lawfully created on an ANR plan, in the peculiar and unique circumstance where two or more structures existed on the property before the Town adopted Subdivision Control, unlawful under zoning, bears no rational relation to any proper purpose for which zoning may be adopted or enforced.

61.     Defendants' interpretation that the all property shown on the 1994 ANR plan violates zoning due to failure to comply with the "Cottage Colony Conversion" by-law, Section 4710, is erroneous, because upon the recording of the 1994 ANR plan, the cottages were no longer located all on one lot, but instead each cottage was on its' own lot, and therefore does not fall within the definition of "cottage colony."

62.     Defendants' interpretation that the all property shown on the 1994 ANR plan violates zoning due to failure to comply with the "Cottage Colony Conversion" by-law, Section 4710, is erroneous, because each cottage, including plaintiff's, is not seasonal, but instead, being equipped with the "characteristic equipment and furnishings" of a year-round, single-family dwelling, including a heating system, as they have been, they have always been capable of being used on a year-round basis, and this use has never been abandoned under the abandonment by-law, Section 2410 of the zoning by-laws, and further, has been used on a year-round basis for many years.

63.     Defendants' interpretation that a zoning violation arose when the lots were conveyed out (See Decision of Board of Appeals re: Variance, Findings, para. 3), as opposed to when the 1994 ANR plan was endorsed, awkwardly, improperly and erroneously grafts language

from the 4th paragraph (which applies only to vacant, as opposed to developed, land) of Section 6 into the 1st paragraph of Section 6, and further, overlooks the "plain language" of the 4th paragraph states, in pertinent part:

> Any increase in area, frontage, width, yard, or depth requirements of a zoning ordinance or by-law shall not apply to a lot for single and two-family residential use *which at the time of recording or endorsement, <u>whichever occurs sooner</u>* . . .
> G.L. c. 40A, s. 6(4th¶)

64. Defendants' interpretation of G.L. c. 40A, s. 6, awkwardly, improperly and erroneously grafts language from the 4th paragraph into the 1st paragraph of Section 6, because the 4th paragraph deals strictly with vacant land, whereas the land shown on the 1994 ANR plan was developed land.

65. Defendants' interpretation, set forth above, constitutes an exercise of its powers under the zoning by-laws which is inconsistent with the ability to create such lots in the peculiar and limited circumstance where the structures pre-date the Town's adoption of the Subdivision Control Law.

66. Defendants' interpretation that a permit was necessary to convert the cottages or condominiums to single-family dwellings is erroneous, because single-family dwelling is a by-right use in the zoning district in which the property is located.

67. Furthermore, Section 2550 of the Town zoning by-laws, insofar as it applies to developed properties, is inconsistent with both the Subdivision Control Law, G.L.c. 41, s. 81L and s. 81P, and the Zoning Act, G.L.c. 40A, s. 6 (1st¶), insofar as it:

    a. interferes with the ability to create lots on ANR plan in the peculiar and unique circumstance where the structures on such properties existed before the Town adopted Subdivision Control; and

    b. deprives lawfully created properties of the exemptions and protection from any "increase in lot area, width, depth, frontage, yard, or coverage requirements," set forth in G.L.c. 40A, s. 6 (1st¶), unless these properties meet the requirements set forth in Section 2550.

68. As a direct and proximate consequence of defendants' violation of the limitations on its ability to adopt and enforce its zoning by-laws, plaintiff has been harmed and sustained damages, including but not

limited to: loss of use of the 9 Ploughed Neck Road cottage; loss of rents and rental income from the cottage; expenses incurred through borrowing in order to pay her mortgage on her primary home, previously subsidized through the rents received from the rental of the 9 Ploughed Neck Road cottage; legal fees and costs.

WHEREFORE, plaintiff requests that this Court enter an order of declaratory judgment, declaring as follows:

a. The Town's interpretation of G.L. c. 40A, s. 6 (1st¶) violates the limitations placed on municipalities in adopting and enforcing its zoning by-laws, as set forth in G.L. c. 43B, s. 13, due to its inconsistency with G.L.c. 41, ss. 81K, et seq.;

b. The Town's interpretation of its zoning by-laws violates the limitations placed on municipalities in adopting and enforcing zoning by-laws, per G.L. c. 43B, s. 13, insofar as it interprets properties lawfully created on an ANR plan, under the peculiar and unique circumstance where structures existed on the property before the Town adopted Subdivision Control, as being unlawful under zoning, unless at the time the ANR plan is endorsed, the resulting lots meet existing dimensional requirements.

c. The Town's interpretation violates the limits placed on adopting and enforcing zoning by-laws under G.L. c. 43B, s. 13, by determining properties lawfully created, under G.L. c. 41, s. 81L and s. 81P, under the peculiar and unique circumstance where structures existed on the property before the Town adopted Subdivision Control, "unlawful" under zoning unless the properties meet the dimensional zoning requirements in effect as of the date the ANR plan is endorsed, thereby depriving these properties of the protections set forth in G.L. c. 40A, s. 6 (1st¶) .

d. The Town's interpretation that a permit was necessary to convert the cottages or condominiums to single-family dwellings is erroneous, because single-family dwelling is a by-right use in the zoning district in which the property is located.

e. The Town's interpretation of its zoning by-laws improperly seeks to regulate form of ownership, which is not a proper subject of zoning, and therefore exceeds the limits of its powers under zoning.

f. The Town's interpretation that the all property shown on the 1994 ANR plan violates zoning due to failure to comply with the "Cottage Colony Conversion" by-law, Section 4710, is erroneous, because upon the endorsement and recording of the 1994 ANR plan, the cottages were no longer located all on one lot, but instead each

24

cottage was on its' own lot, and thus falling outside the definition of "cottage colony."

g.   Defendants' interpretation that the all property shown on the 1994 ANR plan violates zoning due to failure to comply with the "Cottage Colony Conversion" by-law, Section 4710, is erroneous, because each cottage, including plaintiff's, is not seasonal, but instead, being equipped with the "characteristic equipment and furnishings" of a year-round, single-family dwelling, including a heating system, as they have been, they have always been capable of being used on a year-round basis, and this use has never been abandoned under the abandonment by-law, Section 2410 of the zoning by-laws, and further, has been used on a year-round basis for many years.

h.   The Town's interpretation of G.L. c. 40A, s. 6(1st¶), deeming properties lawfully created on an ANR plan, in the peculiar and unique circumstance where two or more structures existed on the property before the Town adopted Subdivision Control, unlawful under zoning, bears no rational relation to any proper purpose for which zoning may be adopted or enforced, and therefore exceeds the limits of its powers under zoning.

i.   The Town's interpretation that a zoning violation arose in this case when the lots were conveyed out (See Decision of Board of Appeals re: Variance, Findings, para. 3), violates the limits of its powers under zoning, because, first, G.L. c. 40A, s. 6(4th¶) applies only to vacant land, whereas the property shown on the 1994 ANR plan was developed property, and second, because, even if the 4th paragraph applied, the date of the endorsement of the ANR plan occurred sooner than the conveyance out of the lots into individual ownership, and thus it is the date of endorsement, not date of conveyance, which control for purposes of interpreting the statute of limitations set forth in G.L. c. 40A, s.7.

j.   Section 2550 of the Town zoning by-laws, insofar as it applies to developed properties, is inconsistent with both the Subdivision Control Law, G.L.c. 41, s. 81L and s. 81P, and the Zoning Act, G.L.c. 40A, s. 6 (1st¶), because it:

    1)   interferes with the ability to create lots on ANR plan in the peculiar and unique circumstance where the structures on such properties existed before the Town adopted Subdivision Control; and

    2)   deprives lawfully created properties of the exemptions and protection from any "increase in lot area, width, depth, frontage, yard, or coverage requirements," set forth in

G.L.c. 40A, s. 6 (1st¶), unless these properties meet the requirements set forth in Section 2550.

k.  Finally, plaintiff requests that this Honorable Court declare her property to be one "lawfully in existence," used as a by-right use ass a single-family dwelling, entitled to the protections set forth in G.L. c. 40A, s. 6(1st¶), and order the Board of Appeals to overturn the decision of the Building Inspector, and further order the Building Inspector to issue plaintiff a building permit so she may repair her cottage.  Plaintiff further requests that this Court award her damages, including interest, attorney's fees and costs, and such other amounts as the Court deems just and reasonable, given the Town's arbitrary, capricious, whimsical, and legally untenable position and interpretations.

## <u>COUNT II</u>

### *Denial of Appeal of Building Inspector's Denial of Building Permit*

69.  Plaintiff repeats and reasserts the matters set forth above, and incorporates the same herein by reference, as if fully set forth herein, further stating:

70.  The division of plaintiff's property was lawfully done pursuant to G.L. c. 41, s. 81L, on the 1994 ANR plan, and was a division that could not have been denied by the Planning Board of the Town of Sandwich on the grounds of noncompliance with zoning requirements at the time.

71.  Defendants' position that this division was unlawful unless a special permit under Section 4710, the Cottage Colony Conversion by-law, was first obtained has no foundation in law or in fact, as G.L. c. 41, s. 81L and s. 81P, contain no such requirement.

72.  Further, if defendants' felt that the 1994 ANR endorsement was unlawful, due to failure to comply with the provisions of Section 4710 of the zoning by-laws, it had sixty (60) days in which appeal the

endorsement, which it did not due, and which is now barred by the statute of limitations set forth in G.L. c. 249, s. 4.

73.    Upon endorsement of the 1994 ANR plan, each cottage was located upon its own lot, and thus no longer fell within the definition of the term "cottage colony" as used in the zoning by-laws, and therefore, seeking a special permit under Section 4710, was unnecessary.

74.    Defendants' interpretation of the term "seasonal," in the absence of any definition of the same in the zoning by-laws, has no foundation in law or in fact.

75.    Plaintiff's cottage, having been equipped with a heating system since its construction in 1948, was available for year-round usage, and this use has never been abandoned under the abandonment by-law, Section 2410.

76.    Defendants' interpretation that plaintiff's property is unlawful because of failure to obtain a special permit under Section 4710, has no foundation in law or in fact, because plaintiff's cottage is not now and never has been "seasonal."

77.    Defendant's interpretation of G.L. c. 40A, s. 6 and its zoning by-laws, such that an ANR plan, dividing land containing two or more structures before Subdivision Control was adopted such that each structures is located on its own lot, creates a use violation if the dimensional requirements of zoning are not met has no foundation in law or in fact.

78.   The only violation arising as a consequence of the same, set forth in the preceding paragraph, if any, is a structural violation.

79.   A structural violation arises when a dimensional requirement of the zoning by-laws arises.

80.   G.L. c. 40A, s. 7, sets forth two different statutes of limitations upon the enforcement, including through administrative action, such as the denial of a building permit, of six years where the structural violation arises in connection with a building permit, and ten years where the structural violation arises without the benefit of a building permit.

81.   Defendants are violating the statutes of limitations in denying the plaintiff a building permit as a consequence of the alleged structural violation arising out of the 1994 ANR plan.

82.   Defendants' interpretation that the violation arose when the lots were conveyed into separate ownership has no foundation in law or in fact, because this interpretation awkwardly and improperly grafts language from the 4th paragraph of Section, which applies only to vacant land, into the 1st paragraph of Section 6, which deals with lawfully developed property, as was plaintiff's.  Under the 4th paragraph of Section 6, even if it did apply, the first to occur of either endorsement or recording governs the date from which to determine whether a structural violation arose.

83.   Hence, the "structural violation," if any, arose on October 19, 1994, the date the ANR plan was endorsed, and the date of conveyance of the cottages into separate ownership has no bearing.

84.    As a direct and proximate consequence of defendants' violation of the limitations on its ability to adopt and enforce its zoning by-laws, and specifically the denial of her appeal of the decision of the building inspector denying her application for a building permit, plaintiff has been harmed and sustained damages, including but not limited to: loss of use of the 9 Ploughed Neck Road cottage; loss of rents and rental income from the cottage; expenses incurred through borrowing in order to pay her mortgage on her primary home, previously subsidized through the rents received from the rental of the 9 Ploughed Neck Road cottage; legal fees and costs; slander of title, and such other damages as the Court may determine.

WHEREFORE, plaintiff requests that this Court declare that the defendant Building Inspector's decision to deny plaintiff's application for building permit, and defendant Board of Appeals' denial of plaintiff's appeal of the decision of the Building Inspector were incorrect, arbitrary, capricious, whimsical, and legally untenable, and plaintiff further requests that the Court overturn these denials, and order the defendants to issue the plaintiff a building permit to repair her cottage forthwith, together with such other relief as the Court deems just and reasonable, including damages, interest, attorney's fees, costs, and such other amounts as this Court deems just and reasonable.

## COUNT III

### *Denial of Special Permit*

85.     Plaintiff repeats and reasserts the matters set forth above, and incorporates the same herein by reference, as if fully set forth herein, further stating:

86.     Defendants erred in their findings with regard to the plaintiff's application for a special permit.

87.     Contrary to defendants' findings, granting a special permit to the plaintiff would not result in derogation from the intent of the zoning by-laws, nor would the "stated Residence – 2 district objectives [...] not be satisfied, as set forth in the Board's findings No. 4(d) and 4(e).  See Exhibit 2.

88.     The stated district objectives of the Residence -2 district are: "To provide for low-density residential environment in areas of good accessibility while protecting the quality of air, surface water and ground water of the area."  See Sandwich Protective Zoning By-laws, Section 2140.

89.     As found by the Board, the plaintiff's cottage, and indeed all of the cottages which formerly comprised the cottage colony, pre-date the adoption  of zoning by-laws in the Town of Sandwich.  See Exhibit 2, Findings, para. 28.

90.     The Board further found that the 1994 ANR plan was endorsed because the cottages pre-date the adoption of Subdivision Control by the Town

of Sandwich, the result of which was that each of the six cottages were located upon their own lots.  See Exhibit 2, Findings, para. 10.

91.    Upon endorsement of the 1994 ANR plan, the cottages, including plaintiff's, no longer fell within the definition of "cottage colony," as each structure was and is located upon its own lot.

92.    Further, since the endorsement and recording of the ANR plan did not result in the movement of any of the cottages, their relationship to one another and to other structures in the neighborhood and district remained physically unchanged, meaning the structural density was not changed in any manner, hence no derogation from the intent of the by-laws occurred nor could occur, nor were or could this ANR plan contravene the stated objectives of the Residence-2 district, particularly since each one of the cottages pre-dates not only Subdivision Control, but also zoning.

93.    The 1994 ANR plan did not result in any violation of any of the zoning by-laws, including Section 4710, particularly since Section 4710 would not apply, as each cottage was located on its own lot.

94.    Moreover, Section 4710 only applies to *seasonal* cottages, and, as found by the Board of Appeals, plaintiff's "dwelling/structure" is equipped with a heating system, "that is consistent with a structure designed and appropriate for full-time, year-round occupation."  See Exhibit 2, Findings, No. 27.

95.     Upon endorsement of the 1994 ANR plan, plaintiff's cottage fell within the definition of "Dwelling, Single-Family," defined as "[o]ne dwelling unit on a single lot irrespective of structure type, ownership or tenure."

96.     As a direct and proximate consequence of defendants' violation of the limitations on its ability to adopt and enforce its zoning by-laws, and its' denial of her application for a special permit, plaintiff has been harmed and sustained damages, including but not limited to: loss of use of the 9 Ploughed Neck Road cottage; loss of rents and rental income from the cottage; expenses incurred through borrowing in order to pay her mortgage on her primary home, previously subsidized through the rents received from the rental of the 9 Ploughed Neck Road cottage; legal fees and costs; slander of title, and such other damages as the Court may determine.

WHEREFORE, plaintiff requests that this Court declare that the defendant Board of Appeals' denial of plaintiff's application for a special permit was incorrect, arbitrary, capricious, whimsical, and legally untenable, and plaintiff further requests that the Court overturn these denials, and order the defendants to issue the plaintiff a special permit to allow her to repair her cottage forthwith, together with such other relief as the Court deems just and reasonable, including damages, interest, attorney's fees, costs, and such other amounts as this Court deems just and reasonable.

## COUNT IV

### *Denial of Variance*

97.   Plaintiff repeats and reasserts the matters set forth above, and incorporates the same herein by reference, as if fully set forth herein, further stating:

98.   Defendants' erred in finding that enforcement of the by-law would not result in substantial hardship to plaintiff, financial or otherwise, and further erred in finding that the hardship did not relate to the "soil conditions, shape, or topography of such land or structures which but not affecting generally the zoning district in which it is located, and in erred further in finding that it could not grant relief without "either; (1) substantial detriment to the public good; or (2) nullifying or substantially derogating from the intent or purpose of this by-law."

99.   While plaintiff maintains that her cottage is entitled to the protections afforded in G.L. c. 40A, s. 6 (1st¶), as a structure lawfully in existence, without the need for a variance, she also asserts alternatively, should the Court determine that such a variance is needed, that enforcement of the by-law, here Section 4710, would involve a substantial hardship upon her, financially or otherwise.

100.  Endorsement of ANR plans such as this may not be refused by planning boards, thus the creation of such lots cannot be prevented.

101.  Requiring compliance with Section 4710, when in fact each cottage, now located on its own lot, does not meet the definition of cottage colony, imposes a substantial and unreasonable hardship upon the

plaintiff, because the definitions do not apply to her lot, and would require her to meet dimensional requirements which she cannot possibly meet.  Additionally, by refusing to grant a variance, plaintiff suffers serious financial hardship, being deprived of the use of the cottage, loss of rents, additional and exceptional costs and expenses in connection with her mortgage, which previously was subsidized by the receipt of rental income from the cottage, legal fees, costs, and slander of title.

102.    The hardship arises out of the unique and peculiar circumstances of the cottage, allowing it to be located upon its own lot, pursuant to G.L. c. 41, s. 81L and s. 81P, by virtue of the fact that it pre-dates the adoption of Subdivision Control in Sandwich, thus uniquely relating to this structure, but not generally true for the zoning district, since most structures in the R-2 zoning district were built *after* Subdivision Control was adopted.

103.    Granting a variance to the plaintiff will neither cause "substantial detriment to the public good," nor "nullify[...] or substantially derogate[e] from the intent or purpose of" the zoning by-laws.

104.    The defendants' misstate the standard in connection with derogation or nullification of the by-law, in connection with the grant of a variance.

105.    The standard is whether the grant of the variance will derogate from or nullify the intent of the zoning by-laws as a whole, not any particular by-law.

106.    The 1994 ANR plan placed each one of six cottages on its' own lot, however, the lots created did not meet the 1994 dimensional requirements of zoning.

107.    One of the proper purposes of zoning is dimensional zoning, the purpose and intent of which is to regulate the structural density of a particular zoning district.

108.    The cottages shown on the 1994 ANR Plan, having been built in 1948, predate not only Subdivision Control, but also the adoption of zoning by-laws in Sandwich.

109.    By virtue of the fact that the cottages, including plaintiff's, predate zoning, their structural density in this zoning district was already in place before zoning was adopted.

110.    The division of the property into six lots, each with its own cottage, given its pre-existing structural density (since none of the cottages have moved), neither derogates from nor nullifies the intent or purpose of the dimensional zoning by-laws, nor causes any substantial detriment to the public good.

111.    Nor does the fact that the cottages are now in single-family ownership, as opposed to all six cottages being owned by one person, and being rented out to others, derogate from or nullify the intent and purpose of the use regulations of the zoning by-laws, nor cause any substantial detriment to the public good, since the use of cottages under the cottage colony definition: "[t]wo or more detached seasonal dwellings located on the same lot, *each designed for independent family living*

*and including cooking facilities*," is identical to the use of a single-family dwelling, as defined in the zoning by-laws, which defines, as follows, the terms "dwelling:" "building or part of a *building used exclusively as the living quarters* for one or more families," and "single-family dwellings": "*One dwelling unit on a single lot irrespective of structure type, ownership or tenure*."

112.    Finally, while plaintiff maintains that the cottage is not seasonal, by virtue of the fact that it is and has always been equipped with a heating system, granting a variance to allow her to obtain a building permit to repair the cottage so it may be used, will not derogate from nor nullify the intent of the cottage colony by-law, nor cause substantial detriment to the public good, because, if after the cottage has been repaired, the defendants believe that it is being unlawfully used on a year-round basis, may seek to bring an enforcement action pursuant to G.L. c. 40A, s. 7, to enjoin any usage other than seasonally, which would be their right.

113.    Denying the plaintiff a variance, thus preventing the plaintiff from making repairs so that she cannot use the cottage other than seasonally, is not the appropriate way for the defendants to enforce the purported violation.

114.    As a direct and proximate consequence of defendants' violation of the limitations on its ability to adopt and enforce its zoning by-laws,  and its denial of her application for a variance, plaintiff has been harmed and sustained damages, including but not limited to: loss of use of the

9 Ploughed Neck Road cottage; loss of rents and rental income from

the cottage; expenses incurred through borrowing in order to pay her

mortgage on her primary home, previously subsidized through the

rents received from the rental of the 9 Ploughed Neck Road cottage;

legal fees and costs; slander of title, and such other damages as the

Court may determine.

WHEREFORE, plaintiff requests that this Court declare that the defendant

Board of Appeals' denial of plaintiff's variance application was incorrect,

arbitrary, capricious, whimsical, and legally untenable, and further plaintiff

requests that this Court overturn this denial, and order the defendant Board of

Appeals to issue the plaintiff a variance, so she may obtain a building permit to

repair her cottage forthwith, together with such other relief as the Court deems

just and reasonable, including damages, interest, attorney's fees, costs, and such

other amounts as this Court deems just and reasonable.

## COUNT V

*Defendants' Interpretation of G.L. c. 40A, s. 6, and their Zoning By-Laws,
And Section 2550 of the Zoning By-Laws, Constitute Unlawful Spot Zoning*

115.    Plaintiff repeats and reasserts the matters set forth above,

incorporating the same herein by reference, as if fully set forth, and

further states as follows:

116.    Defendants' interpretation of G.L. c. 40A, s. 6 and their zoning by-laws

amounts to unlawful "spot zoning" regarding plaintiff's property, and

other properties, lawfully divided under G.L.c. 41, s. 81L and s. 81P,

depriving them of the protections to which they are lawfully entitled, afforded by G.L. c. 40A, s. 6 (1st¶).

117.    Moreover, Section 2550 of Sandwich's zoning by-laws, unlawfully constitutes spot zoning, depriving lawful nonconforming developed properties of exemption and protection from increases in "lot area, width, depth, frontage, yard, or coverage requirements," unless they meet certain minimal dimensional requirements, as set forth in Section 2550.

118.    "Spot zoning" constitutes selective zoning which violates the uniformity requirements of G.L. c. 40A, s. 4, and constitutes a denial of equal protection under the law guaranteed by the State and Federal Constitutions.

119.    As a direct and proximate consequence of defendants' violation of the limitations on its ability to adopt and enforce its zoning by-laws, plaintiff has been harmed and sustained damages, including but not limited to: loss of use of the 9 Ploughed Neck Road cottage; loss of rents and rental income from the cottage; expenses incurred through borrowing in order to pay her mortgage on her primary home, previously subsidized through the rents received from the rental of the 9 Ploughed Neck Road cottage; legal fees and costs; slander of title; deprivation of equal protection under the state and federal constitutions, in violation of the uniformity requirement of G.L. c. 40A, s.4, , and such other damages as the Court may determine.

WHEREFORE, plaintiff requests that this Court declare that the defendants' interpretation of G.L. c. 40A, s. 6 and its' zoning by-laws, and in particular, Section 2550 of the zoning by-laws, to constitute unlawful "spot zoning," in violation of the uniformity requirements of G.L. c. 40A, s. 4, denying the plaintiff of equal protection under the state and federal constitutions, and declaring the same to be unlawful, aribtrary, capricious, whimsical, and legally untenable, and further plaintiff requests that this Court declare that the plaintiff is entitled to treatment as a lawful, pre-existing, nonconforming structure and property, entitled to the protections set forth in G.L.c. 40A, s. 6(1st¶), and entitled to the building permit which she seeks, together with such other relief as the Court deems just and reasonable, including damages, as set forth in paragraph 105, interest, attorney's fees, costs, and such other amounts as this Court deems just and reasonable.

## COUNT VI

### *Massachusetts Tort Claims Act Claim*

120.  Plaintiff repeats and reasserts the matters set forth above in paragraphs 1 through 119, incorporating the same herein by reference as if fully set forth, and further states as follows:

121.  On November 5, 2004, plaintiff served the defendant Town of Sandwich ["Town"] with a demand letter pursuant to and in accordance with G.L. c. 258, for damages, alleging negligence and that plaintiff has been harmed as a result.  See Exhibit 5, Plaintiff's Demand Letter, together with certified mail return receipt.

122.   Pursuant to G.L. c. 258, the defendant Town had six (6) months in which to investigate and respond to this demand letter.

123.   That time has now passed, and no response has been forthcoming from the Town.

124.   Accordingly, plaintiff brings this action for damages pursuant to G.L. c. 258, sounding in negligence against the Town for its opinion that plaintiff's property is "unlawful," and states that she has suffered damages, including but not limited to (a) diminution of value; (b) loss of rental income; (c) increased costs associated with borrowing in order to make ends meet, in the amount of $250,000, because of the lost rental income; (d) slander of title; (e) denial of equal protection under the state and federal laws and constitution.

WHEREFORE, plaintiff seeks damages in accordance with G.L.c. 258, in an amount to be determined at trial, together with such other relief as the Court deems just and reasonable, including but not limited to interest, attorney's fees, costs, and such other amounts as this Court deems just and reasonable.

<u>JURY TRIAL</u>

Plaintiff demands a trial by jury as to all issues so triable.

Plaintiff,

PATRICIA PEROTTI-CYRUS,

By her attorney,


<u>    /s/ Julie C. Molloy          </u>
Julie C. Molloy        BBO#555176
379 Route 6A
East Sandwich MA 02537
(508) 833-3707

Dated:  May 9, 2005


<u>CERTIFICATE OF SERVICE</u>


   I, Julie C. Molloy, Esq., hereby certify that a copy of the foregoing was served via U.S. Mail, first class, postage pre-paid, on May 9, 2005, upon the defendants, as follows:

Leonard H. Kesten, Esq.
Deborah Ecker, Esq.
Brody, Hardoon, Perkins & Kesten
One Exeter Plaza, 12th floor
Boston MA 02116

<u>    /s/ Julie C. Molloy              </u>

J. COURT MOLLOY, ESQ.

379 ROUTE 6A

EAST SANDWICH MA 02537

| *Telephone* | *E-mail* | *Facsimile* |
|---|---|---|
| *(508) 833-3707* | *jcourtmolloy@verizon.net* | *(508) 833-3711* |

**November 5, 2004**

Mr. Thomas Keyes, Chairman & Board Members
Board of Selectmen
Town of Sandwich
130 Main Street
Sandwich, Massachusetts 02563

      *Re:   Demand Pursuant to G.L. c. 258*
              *Claimant:  Ms. Patricia Perotti-Cyrus*
              <u>*Property Address: 9 Ploughed Neck Road,  East Sandwich MA*</u>

Dear Mr. Keyes and Board Members:

      Please be advised that I represent Ms. Patricia Perotti-Cyrus, the owner of a cottage at 9 Ploughed Neck Road, East Sandwich.   Be further advised that this letter constitutes a demand pursuant to G.L. c. 258, the Massachusetts Tort Claims Act, for damages sustained by Ms. Perotti-Cyrus as a consequence of the failure and refusal of the Building Inspector to issue a building permit to repair her cottage, which was damaged in a fire in October 2003.  The Building Inspector denied Ms. Perotti-Cyrus a building permit earlier this year, as a direct and proximate cause of which Ms. Perotti-Cyrus has been unable to generate income through the rental of this property.

      The Building Inspector's denial was based upon the opinion of Town Counsel to the effect that the cottage is "unlawful" under zoning.  However, in her letter, Town Counsel acknowledges that the seasonal use of the cottage is lawful.  Despite this fact, Ms. Perotti-Cyrus was and is unable to use her cottage even on a seasonal basis because of the denial of the building permit, necessary to perform repairs to render the cottage habitable.  Ms. Perotti-Cyrus has not only suffered damages in the form of lost rental income, but costs incurred in connection with borrowing monies in order to pay the mortgage on her primary home, paid taxes in connection with this property to the Town, and legal fees in connection with seeking a building permit.  Ms. Perotti-Cyrus asserts this claim against the Town for reimbursement of the same.  In addition, Ms. Perotti-Cyrus asserts a claim against the Town for slander of title to her property, by the Town's agent, employee, or representative, in the form of Town Counsel.

      Town Counsel's opinion with respect to Ms. Perotti-Cyrus' property is incorrect for several reasons.  First, Town Counsel asserts that the division of the Ploughed Neck Road property was "unlawful" under zoning because the resulting lots did not comply with dimensional zoning in effect on the date the ANR plan was endorsed.  Assuming that this opinion is correct, which we submit it is not (and which is the subject of litigation in the Thibault matter), the division created a structural violation.  <u>Willard v. Board of Appeals of Orleans</u>, 25 Mass. App. Ct. 15, 21, 514 N.E.2d 369 (1987)(structural violation relates to position of house on lot; use does not change as result of position on lot).  Under G.L. c. 40A, s. 7, the Town had, at best, ten years to enforce a structural violation, after

which time the statute of limitations bars enforcement of the same – in *any* fashion, including through refusal to issue a building permit because of the alleged violation. The purported "violation" arose as of the date of the endorsement of the ANR plan, which occurred in October 1994. Ten years have passed, and at no time has the Town brought an enforcement action arising from the purported structural violation. The Town is now barred from doing so. G.L. c. 40A, s. 7. Any claim that the "violation" arose when the condominium was undone is just plain wrong – either the date of endorsement has relevance or it does not – it does not become some roving date, determined at Town Counsel's whim.

Moreover, Town Counsel's opinion asserts that the termination of the condominium was somehow "unlawful." Regulation of the form of ownership of property most assuredly is improper under zoning. Gamsey v. Building Inspector of Chatham, 28 Mass. App. Ct. 614, 553 N.E.2d 1311 (1990)("fundamental that zoning is concerned with the use, without regard to ownership, of the property involved."); Bannerman v. Fall River, 391 Mass. 328, 461 N.E.2d 793 (1984); CHR General, Inc. v. City of Newton, 387 Mass. 351, 439 N.E.2d 788(1982). Thus, the issue, really, is whether or not the cottage may be used seasonally or year round. There is no question that the Town concedes that the cottage may be used on a seasonal basis, at the very least. Thus the Building Inspector's denial of the building permit, preventing the use of the cottage even on a seasonal basis, was wrongful.

If the Town feels that Ms. Perotti-Cyrus engages in a use violation by using the cottage other than just seasonally, it may pursue a zoning enforcement action against her, pursuant to G.L. c. 40A, s. 7. Notably, it has never done so in the past. To do so through denial of a building permit, however, is improper. Copies of materials submitted to the Board of Appeals are enclosed for your review.

Kindly forward this letter on to Town Counsel and your insurer, so that we can discuss the resolution of this matter.

Very truly yours,


Julie C. Molloy

Enclosures
c:    Ms. Patricia Perotti-Cyrus
      Board of Appeals
      Ms. Donna Boardman, Building Inspector
      Mr. George Dunham, Town Administrator

H Complete items 1,2, and 3. Also complete itfern 4 if
    Restricted Delivery is desired.
B Print your name and address on the reverse so that
    we can return the card to you.
IB Attach this card to the back of the mailpiece, or on
    the front if space permits.

1. Article Addressed to:

PS Form 3811, August 2001.

A. Signature B. Received by *(Printed*

*Name)*

v$_L$K$_j$.jliu^"iVgfe-tf<

^^r^^iSrentfro

I Agent
|_Addressee_

6t<=0f*elM

If YES, enter delivery address below:

*in*
*ru*
*rt-*
*I.T*







UNITED STATES POSTAL

• Sender: Please

Julie C. Molloy,
379 Route 6A
East Sandwich, MA

# J. COURT MOLLOY, ESQ.

### 379 ROUTE 6A
### EAST SANDWICH MA 02537

| *Telephone* | *E-mail* | *Facsimile* |
|---|---|---|
| *(508) 833-3707* | *jcourtmolloy@verizon.net* | *(508) 833-3711* |

**November 5, 2004**

Mr. James Killion, Chairman & Board Members
Board of Appeals
Town of Sandwich
16 Jan Sebastian Drive
Sandwich, Massachusetts 02563

> *Re:    Appeal, Special Permit  & Variance Applications*
> *Appellant/Applicant: Patricia Perotti-Cyrus*
> <u>*Property Address: 9 Ploughed Neck Road,  East Sandwich MA*</u>

Dear Board Members:

At the public hearing on October 12, 2004, certain (mis)statements were made by Town Counsel (Ms. Judith Cutler, Esq.), which require clarification and correction.  These are outlined below:

1.    <u>Condominium Was "Legal"</u>

During the public hearing, and in her letter of March 2004, Town Counsel opined that the property of which 9 Ploughed Neck Road is a part, was "perfectly legal" as a condominium, and that the illegality arose as a consequence of undoing the condominium, and conveying out of the individual lots as single family residences, each located on their own lot.  The fallacy of Town Counsel's opinion, however, should be obvious to this Board, insofar as the "cottage colony" by-law purports to require a special permit even for the conversion of such a property to a condominium.  If the conversion to a condominium was legal, then, logically, it follows that "conversion" to individual lots with single family residences is also legal, without the need for a special permit from this Board.

Specifically, Section 4710 of the zoning by-laws states:

**4710.    Cottage Colonies.** Any **existing cottage colony** may not be converted to single-family dwelling use under separate ownership unless the lot upon which each building is located complies with the minimum requirements for single family dwellings in the zoning district in which the land is located, and such non-conforming cottage colony may not be converted to single-family use under condominium, cooperative, time sharing condominium, or any other single-family dwelling use more intensive or frequent than seasonal or intermittent use, unless the lot meets the minimum requirements for Cluster Developments, as set forth in **Section 4440**. This section shall apply whether or not the

Board of Appeals
November 5, 2004
Page 2
_____

lot is situated in a district in which Cluster Development is a prohibited use.

Town Counsel's acknowledgement that the condominium was lawful under zoning also acknowledges that the lots as separate lots, each with their own single-family residence is also lawful.  This is so because no special permit was ever applied for or granted to convert the property to a condominium.  No deed restriction was ever recorded limiting the use of the cottages to seasonal use only.  Therefore, in order for Town Counsel's statement that the condominium form of ownership, without any seasonal restriction, was a lawful use under zoning, by implication necessarily means that the property did not fall within the definition of "cottage colony."  This is so because the property, as a whole, did not contain the minimal dimensional requirements purportedly required to convert the property to condominium ownership.

Tellingly, the Town cannot produce any document evidencing any agreement limiting the use of the property to seasonal only usage.

2.    Allegation Regarding ANR plans

Town Counsel asserted at the October 12th hearing that my suggestion that anyone  could record an ANR plan showing a violation under zoning as of the date of endorsement (with the example of dividing a lot through the middle of a house) misses, or more egregiously ignores, a central point.  It is not my position that *any* ANR plan is not subject to dimensional requirements.  Instead, it is my opinion that only those ANR plans dividing property on which two or more structures have existed since before the municipality adopted the Subdivision Control Law, such that each lot contains one such structure after division, are not subject to dimensional regulations in effect as of the date of division.

Town Counsel's example (dividing a lot containing twice the required area and frontage, with a house in the middle, such that dividing line splits house in half, with half on each new resulting lot) is flawed in two respects: (1) in her example, the division did not result in structures each entirely on their own lot; and (2) in her example, the structures had not existed since before the municipality adopted the Subdivision Control Law.  It is not my opinion that this type of a plan would be entitled to protection as a lawful division, and, moreover, there are zoning violations that could be handled through zoning, thus the suggestion that my opinion would allow this is incorrect.  In the first instance, this type of a plan would show a zoning structural violation for which the Town could seek enforcement pursuant to G.L. c. 40A, s. 7.

However, such a plan might have legitimacy, if in fact the owner intended to demolish the existing home and construct one new residence on each resulting lt.  However, if the structure were in a district allowing only one residence per lot

Board of Appeals
November 5, 2004
Page 3
_____

meeting dimensional requirements, as do all districts in Sandwich, the owner would not be able to obtain a building permit to construct the two new residences without first demolishing the existing house in the middle. Were the owner to attempt to do so, the Building Inspector could rightfully decline to issue a building permit on the grounds that a use violation would arise, unless and until the existing home had been demolished.

There is absolutely nothing in the Town's zoning by-laws that suggests that the division of properties such as this is "unlawful" unless the dimensional requirements are met. Section 2410 speaks to "buildings hereafter erected." Section 2550 speaks to the "erection, extension, alterations, or moving of a structure on a legally created lot." First, this lot was legally created, pursuant to G.L. c. 41, s. 81P. Second, even if Section 2550 had any bearing, Ms. Perotti-Cyrus does not seek to "erect, extend, alter, or move" the structure – she simply seeks to repair the existing structure.

3.    "Cottage Colony" Definition

The definition of cottage colony contains two (2) crucial components. The first is that the cottages at issue are "seasonal," while the second states that there must be more than one cottage per lot. After endorsement of the ANR plan, the cottages are no longer on the same lot, but instead, each cottage is on its own lot. As such, the definition of cottage colony no longer applies. Town Counsel's assertion that it does, because of the doctrine of "merger," despite the fact that each cottage is on it own lot misstates the law.

The Town's zoning by-laws have never been applied to lots that have already been developed in applying the "merger" theory under zoning. Instead, the "merger" theory is only applied with regard to vacant lots. Thus, if a person owns a developed lot and also owns an abutting vacant lot, each or one of which contains less than the required dimensional requirements, merger applies, and the vacant and developed lots become one for zoning purposes. Marinelli v. Board of Appeals of Stoughton, 440 Mass. 255, 797 N.E.2d 893 (2003); Preston v. Board of Appeals of Hull, 51 Mass. App. Ct. 236, 744 N.E.2d 1126 (2001). The lots resulting from the endorsement of the ANR plan in October 1994 were not subject to the doctrine of merger because they were not (and are not) vacant.

Additionally, the cottages, having been equipped with heating systems since their construction, have been "occupied," as that term is defined in the State Building Code, as year-round properties. The local by-laws contain no definition of the terms "seasonal" limiting that definition to actual use. In the absence of any such definition, the fact that each cottage was equipped with heating systems lends itself to an interpretation that each structure was "occupied" on a year-round basis, since each was designed, intended and arranged to be occupied on a

Board of Appeals
November 5, 2004
Page 4
_____

year-round basis.  The actual occupancy depended upon market forces, which is irrelevant to this Board's consideration.

An examination of the zoning by-law relating to abandonment is also helpful.  Section 2410 of the zoning by-laws states as follows:

**2410.  Abandonment.** A non-conforming use of a building or land, which has been abandoned for a period of two (2) years, shall not thereafter be returned to such non-conforming use. A non-conforming use shall be considered abandoned when the premises has been vacant for two years, or when the *characteristic equipment and/or furnishings* of the non-conforming use have been removed from the premises and have not been replaced by similar equipment, whichever shall occur first.

The cottages have had heating systems since their construction, and have been capable of use on a year-round basis at all times.  Unless the Town is willing to take the position that cottages in other areas of town, such as in the Town Neck or North Shore Boulevard areas, but on their own lots at all times, are limited to seasonal usage only, where they have only actually been used on a seasonal basis, despite the fact that they have had heating systems at all times, and in the absence of a definition of the term "seasonal," the Town should not adopt such an interpretation here.

There are two issues here: (1) the Town's assertion that the ANR division was unlawful and (2) the issue of the seasonal restriction that the Town asserts was a condition of the settlement (despite the fact that there is no settlement agreement to document this).  The ANR division created a structural violation. Willard v. Board of Appeals of Orleans, 25 Mass. App. Ct. 15, 21, 514 N.E.2d 369 (1987)(structural violation relates to position of house on lot; use does not change as result of position on lot).  Under G.L. c. 40A, s. 7, the Town had, at best, ten years to enforce a structural violation, after which time the statute of limitations bars enforcement of the same – in *any* fashion, including through refusal to issue a building permit because of the alleged violation.  The purported "violation" arose as of the date of the endorsement of the ANR plan, which occurred in October 1994.  Ten years have passed, and at no time has the Town brought an enforcement action arising from the purported structural violation.  The Town is now barred from doing so.  G.L. c. 40A, s. 7.  Any claim that the "violation" arose when the condominium was undone is just plain wrong – either the date of endorsement has relevance or it does not – it does not become some roving date, determined at Town Counsel's whim.

As to the issue of use, whether the cottage is owned as a condominium or single-family residence on its own lot is not a proper zoning issue.  Gamsey v. Building Inspector of Chatham, 28 Mass. App. Ct. 614, 553 N.E.2d 1311 (1990)("fundamental that zoning is concerned with the use, without regard to ownership, of the property involved.");  Bannerman v. Fall River, 391 Mass. 328,

Board of Appeals
November 5, 2004
Page 5
_____

461 N.E.2d 793 (1984); <u>CHR General, Inc. v. City of Newton</u>, 387 Mass. 351, 439 N.E.2d 788(1982).  Thus the issue is really whether or not the cottage may be used seasonally or year round.  There is no question that the Town concedes that the cottage may be used on a seasonal basis, at the very least.

For this reason alone this Board should overrule the Building Inspector's denial of a building permit.  At present, Ms. Perotti-Cyrus cannot even use her cottage on a seasonal basis, because repairs are necessary to render it habitable.  She applied for a building permit earlier this year to do the repair work, but this was denied.  She has been prevented even from using the cottage this past summer season, wrongfully.  If the Town wishes to bring an enforcement action against her to prevent her from using the cottage on a year-round basis, it may do so.  Attempting to use this process, which prevents her from using the cottage even seasonally, however is just plain wrong, and exposes the Town to liability.  <u>See</u> attached G.L. c. 258 Demand Letter to Town.

Moreover, the Town has on various occasions granted special permits to these very types of properties, including the Belfry Inn & Bistro (6 & 8 Jarves Street) and Century 21/Cape Sails (133 & 135 Route 6A) properties without ever asserting any "unlawfulness" related to them, despite the fact that in each of those cases one of the lots "created" "violated" dimensional zoning at the time the respective ANR plans were endorsed.

On behalf of Ms. Perotti-Cyrus, I implore the Board to bring a halt to this nonsense, and issue her the building permit to which she is entitled.  Thank you for your attention and consideration in this matter.

Very truly yours,


Julie C. Molloy

Enclosures