UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PATRICIA PEROTTI-CYRUS,
      Plaintiff,                         CIVIL ACTION
                                      NO. 05-10116-DPW

      v.

ROBERT JENSON, Chairman
Of The Board Of Appeals For
The Town Of Sandwich, Et Al.,
      Defendants.

<u>PLAINTIFF'S MOTION TO FILE LATE THE ATTACHED OPPOSITION TO
DEFENDANTS' MOTION TO SEVER AND STAY COUNTS AND REMAND
COUNTS, AND FOR PROTECTIVE ORDER REGARDING DEPOSITION OF
JUDITH C. CUTLER, ESQ.</u>

NOW COMES the plaintiff in this matter, and seeks leave of Court to file

the attached Opposition to Defendants' Motion to Sever and Stay Counts and

Remand Counts, and for Protective Order Regarding Deposition of Judith C.

Cutler, Esq.  As grounds, plaintiff states that, for whatever reason, she did not

receive a copy of Defendants' Motion electronically, despite the fact that the EMC

filing system has assured plaintiff's counsel that notice was sent and to the

correct email address.  Plaintiff's counsel only learned of this Motion in telephone

discussion with Defendants' counsel today, June 14, 2005.[1]  Defendants will not

be prejudiced if this Motion is allowed and the Opposition is allowed to be filed,

however, plaintiff will be irreparably harmed if her Opposition is not filed, as the

Court would allow defendants' Motion, leading to further harm caused to the

---

[1] Plaintiff's counsel notes that she also learned for the first time today that the deposition plaintiff
noticed of the Building Inspector, Donna Boardman, could not go forward tomorrow, as the
Building Inspector is on vacation for two weeks.

plaintiff in having to litigate two separate actions, in two separate fori, increasing her costs and expenses in this matter.

WHEREFORE, plaintiff respectfully requests that this Honorable Court allow her to file the attached Opposition, and further requests that a hearing be held in this matter.

Plaintiff,

PATRICIA PEROTTI-CYRUS,

By her attorney,


  /s/Julie C. Molloy
Julie C. Molloy        BBO#555176
379 Route 6A
East Sandwich MA 02537
(508) 833-3707

Dated:  June 14, 2005


CERTIFICATE OF SERVICE

I, Julie C. Molloy, Esq., hereby certify that a copy of the foregoing was served via U.S. Mail, first class, postage pre-paid, on June 15th, 2005, upon the defendants, as follows:

Leonard H. Kesten, Esq.
Deborah Ecker, Esq.
Brody, Hardoon, Perkins & Kesten
One Exeter Plaza, 12th floor
Boston MA 02116

  /s/ Julie C. Molloy

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PATRICIA PEROTTI-CYRUS,
       Plaintiff,                            CIVIL ACTION
                                             NO. 05-10116-DPW

       v.

ROBERT JENSON, Chairman
Of The Board Of Appeals For
The Town Of Sandwich, Et Al.,
       Defendants.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO SEVER AND STAY
COUNTS AND REMAND COUNTS, AND FOR PROTECTIVE ORDER
REGARDING DEPOSITION OF JUDITH C. CUTLER, ESQ.**

      NOW COMES the plaintiff, Patricia Perotti-Cyrus, in this matter and

opposes defendant's Motion to Sever and Stay this action, as well as to limit the

deposition of Judith C. Cutler, Esq.

    1.      <u>Motion to Sever and Stay Civil Rights Claims and to Remand State Law
           Claims to Superior Court.</u>

      Although it is entirely within this Court's discretion whether to sever the

claims, stay the civil rights claims, and remand the state law claims to the

Superior Court, the plaintiff notes that this should be done only after the Court

determines:

      "(1)  whether the claims arise out of the same transaction or
             occurrence;

      (2)  whether the claims present some common question of law or fact;

      (3)  w[h]ether the settlement of the claims or judicial economy would
             be facilitated;

      (4)  whether prejudice would be avoided if severance were granted;
             and

(5) whether different witnesses and documentary proof are required for the separate claims."

Disparte v. Corp. Exec. Board, 223 F.R.D. 7 (U.S.D.C. 2004), *citing* Morris v. Northrop Grumman Corp., 37 F. Supp. 2d 556, 580 (E.D.N.Y. 1999).

It was the defendants who decided to remove this matter from Barnstable Superior Court to this Honorable Court, despite the fact that *all* of the plaintiff's claims could have been tried and resolved by the Barnstable Superior Court. This removal was unnecessary, and affected a hardship on the plaintiff by now having to travel to Boston for any hearings before this Honorable Court. Severing the plaintiff's claims would result in hardship and prejudice to the plaintiff, having to adjudicate the matter in two different fori. "[S]evered claims become entirely independent actions to be tried, and judgment thereon, independently." Ibid.

In this instance, plaintiff urges this Court to deny the defendants' Motion for severance, stay and remand, and instead retain jurisdiction of the entire case, because:

(1)  the claims arise out of the same transaction or occurrence;

(2)  the claims present some common question of law or fact;

(3)  the settlement of the claims and judicial economy would be facilitated;

(4)  plaintiff will be prejudiced if severance were granted, as she will be forced to try to separate, entirely independent actions, in two different fori; and

(5)  different witnesses and documentary proof are *not* required for the separate claims.

Having made their bed, the defendants should be forced to lie in it – or, alternatively, this Honorable Court should remand the *entire* matter to the

Barnstable District Court.  Plaintiff also fears that this is a ploy of the defendants'

part to have the state law claims remanded, with Attorney Cutler then defending

those claims, which would prevent the plaintiff from taking her deposition.

Attorney Cutler attended virtually each and every hearing on this matter

before the Board of Appeals, and it was based on her interpretation of the zoning

by-laws and state law that the Board of Appeals ["Board"] rendered its decision.

As such, she is a witness, with factual knowledge regarding the facts, the

proceedings, and the legal interpretation she provided to the Board, and should

not be allowed also to represent the Board before the Barnstable Superior Court,

should this matter be remanded.

Although there is pending before the Barnstable Superior Court a Motion

for summary judgment, in a similar case, _Thibault v. Jensen, et al._, Barnstable

Superior Court C.A. No. 2004-00588, that motion, filed with that Court in

January of this year, it has yet to be heard.  It was initially scheduled for hearing

on February 15, 2005, then continued by the Court to May 26, 2005, and then

continued again by the Court to September 8, 2005.  It would not be at all

surprising if the hearing were again continued by the Court again, to some later

date this fall.  All the while, discovery in that case, upon motion of the same

defendants in this action, has been stayed.    In all likelihood, if this matter were

remanded, the defendants would argue that discovery should be stayed, and have

that Court consider motions for summary judgment, further delaying the

resolution of this matter.

According to the Scheduling Order in this case, discovery must be

completed by September 30, 2005, and the parties may file motions for summary

judgment between October 1 through November 30, 2005.  It is quite possible that discovery and motions for summary judgment will be completed, heard and ruled upon before the Barnstable Superior Court hears the *Thibault* cross-motions for summary judgment!

WHEREFORE, plaintiff respectfully requests that this Honorable Court deny the defendants' Motion for severance, stay and remand in this matter.

2.    <u>Motion for Protective Order Limiting Deposition of Judith C. Cutler, Esq.</u>

Next, in their Memorandum of Reasons(#8), the defendants assert that:

> Plaintiff's attorney has taken particular aim at the opinions of Town Counsel [Judith C. Cutler, Esq.] over the course of the years regarding the interpretation of the statute.  Because the Plaintiff has filed a claim for damages along with her request for declaratory judgment, she is afforded the opportunity not only to have the Board of Appeals' decisions reviewed, but also to conduct discovery.  Accordingly, the Plaintiff has noticed the deposition of Town Counsel presumably to argue at deposition with Town Counsel regarding her interpretation of the law as applied to both properties.  Such a deposition is improper as Town Counsel continues to represent the Board of Appeals in the pending *Thibault* case.

In the first instance, as noted above, Attorney Cutler attended virtually every hearing in the *Thibault* case, offering input to the Board during public hearings, which raises questions as to whether she should continue her representation of the Board, as she is a material witness in that case.  If in the *Thibault* case, plaintiff is not successful in connection with his motion for summary judgment,

he intends to seek removal of Attorney Cutler as counsel on the grounds that she is material witness.[1]

The tenor of defendants' statement in paragraph 8 suggests animosity on plaintiff's counsel's part towards Attorney Cutler. This suggestion is unwarranted, despite the fact that Attorney Cutler suggested to this plaintiff, Patricia Perotti-Cyrus, during the Board's hearings, that her remedy, having purchased what Attorney Cutler opines is an "unlawful property," was to "sue the seller and his attorney for fraud,"[2] a statement that was entirely unwarranted by Attorney Cutler, since her role as counsel to the Board is to advise it regarding the law and by-laws, and the interpretation of the same – not to advise applicants in such a manner. Moreover, Attorney Cutler's remark was made with knowledge on her part that plaintiff's counsel in this matter had represented the seller – thus she was pointedly accusing plaintiff's counsel of fraud (to which exception is taken, and for which, to date, no apology has been forthcoming).

In light of the two decisions from the Land Court attached hereto, plaintiff's theory and interpretation of the law are well-founded, if one relies on the _Norwell-Arch, L.L.C. v. Town of Norwell Board of Appeals_, and in light of the same, it was eminently inappropriate to allege that any fraud had been

---

[1] During the hearings on the _Thibault_ matter, the Court should know, while Attorney Cutler provided the Board with a copy of a Land Court decision by the Hon. Judge Trombly, dated May 10, 2004, holding that these types of ANR divisions are unlawful under zoning unless dimensional regulations in effect at the time of endorsement of the ANR plan are met, Norton v. Town of Duxbury Planning Board, Misc. Case No. 256473, a copy of which is attached as Exhibit 1, Attorney Cutler failed to apprise the Board of a May 24, decision by the Hon. Judge Trombly, Norwell-Arch, L.L.C. v. Town of Norwell Board of Appeals, Misc. Case No. 285113 (also attached, Exhibit 2), which held that structures on these types of ANR plans _are_ lawful, pre-existing structures, under par. 1 of Section 6 of the Zoning Act, G.L. c. 40A.

[2] This is memorialized in the minutes of the public hearing held on October 12, 2004, as Town Counsel "explained that someone misrepresented what the zoning situation was to the new properties…". See Exhibit 3, Board of Appeals Minutes, October 12, 2004, p. 5, ¶3, last sentence.

committed upon anyone – particularly where there is <u>*no*</u> appellate court decision definitively stating where structures such as plaintiff's, in existence when the Town of Sandwich adopted the Subdivision Control Law, in August 1954.[3] Plaintiff's counsel has no intention of "arguing" the Thibault matter with Attorney Cutler, but instead to ask questions, both legal and factual, as they pertain to this case, the laws and zoning by-laws, and questions regarding documents Attorney Cutler has been requested to produce, per the Notice of Taking Deposition attached hereto, as Exhibit 5.

That this case and the <u>*Thibault*</u> case both present similar issues is irrelevant, and, in fact, it is surprising that the <u>*Thibault*</u> case has not been removed to U.S. District Court by the defendants, since in that action, Thibault seeks damages for violation of his rights to equal protection under the law, in Count IV of his First Amended Complaint. <u>See</u> Exhibit 6, <u>*Thibault v. Robert Jensen et al.*</u>, First Amended Complaint, Count IV, ¶54.

WHEREFORE, plaintiff respectfully requests that this Honorable Court deny defendants' Motion with regard to limiting or depriving plaintiff the

---

[3] Although the Town had in fact adopted subdivision control before that time, its adoption of the same was not effective until it complied with the recording requirements set forth in G.L. c. 41, s. 81N, which states that adoption of the subdivision control law is not effective until notice of such adoption is recorded with registry of deeds. Sandwich did not record such notice until August 20, 1954, when notice of the adoption of the law was recorded with the Barnstable Registrar of Deeds, in Book 883, Pages 194-202, as noted in the Memorandum of Law in support of the Motion for Summary Judgment in the <u>*Thibault*</u> case, a copy of which is attached for this Court's review as Exhibit 4.

opportunity to tale Town Counsel's deposition.

Plaintiff,

PATRICIA PEROTTI-CYRUS,

By her attorney,


  /s/ Julie C. Molloy
Julie C. Molloy        BBO#555176
379 Route 6A
East Sandwich MA 02537
(508) 833-3707

Dated:  June 14, 2005


<u>CERTIFICATE OF SERVICE</u>

I, Julie C. Molloy, Esq., hereby certify that a copy of the foregoing was served via U.S. Mail, first class, postage pre-paid, on June 15th, 2005, upon the defendants, as follows:

Leonard H. Kesten, Esq.
Deborah Ecker, Esq.
Brody, Hardoon, Perkins & Kesten
One Exeter Plaza, 12th floor
Boston MA 02116

      /s/ Julie C. Molloy

*County:*   PLYMOUTH, **ss.**

*Case No:*   **MISCELLANEOUS    CASE NO. 256473**

*Date:*   May 10, 2004

*Parties:*   **ROBERT P. NORTON and MARY D. NORTON, Plaintiffs,**

v.

PETER DONAHUE, WILLIAM ZACHMAN, GEORGE WADSWORTH, DAVID MATTHEWS, AMY MACNAB, and ANN WELD, as they comprise THE TOWN OF DUXBURY

PLANNING BOARD, Defendants.

MISCELLANEOUS CASE NO. 283993

ROBERT P. NORTON and MARY D. NORTON, Plaintiffs,

v.

ELIZABETH LEWIS, PAUL KALOUS, SALLY WILSON, STEPHEN JONES, and THOMAS MCCLURE, as they comprise the TOWN OF DUXBURY ZONING BOARD OF APPEALS, and RICHARD MACDONALD DIRECTOR OF INSPECTIONAL SERVICES FOR THE TOWN OF DUXBURY, Defendants.

-   1-

*Decision Type:* **DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

These cases arise out of the desire of plaintiffs Robert P. Norton and Mary D. Norton (the "Nortons") to divide the land on which their home and a barn are located into two parcels, said land being known as and numbered 180 Tremont Street in Duxbury. In Land Court Misc. Case No. 256473 the Nortons appeal, pursuant to G. L. c. 41, s. 81BB, a decision of the defendant Town of Duxbury Planning Board (the "Planning Board") refusing to endorse a plan which they caused to be submitted to the Planning Board with a request that it be endorsed as one not requiring approval under the Subdivision Control Law (the "Planning Board case"). In Land Court Misc. Case No. 283993 the Nortons appeal, pursuant to G. L. c. 40A, s. 17, a decision of the defendant Town of Duxbury Zoning Board of Appeals ("ZBA") upholding a decision of the Director of Inspectional Services ("Inspectional Services") (collectively, the "municipal defendants") refusing to issue the Nortons a building permit which would allow them to demolish the barn and construct a single family residence on the newly created lot shown on the plan submitted to the Planning Board (the "ZBA case").[1]

The Nortons filed the Planning Board case on May 13, 1999. An answer was filed by the Planning Board on May 19, 1999. On June 6, 2000, the Planning Board filed a motion for summary judgment, together with affidavits of Robert S. Troy and Thomas Broadrick. The Planning Board's memorandum in support of its motion was filed on July 17, 2000. On August 10, 2000, the Nortons filed a cross-motion for summary judgment, an opposition to the Planning Board's

motion, and a brief in support of their motion for summary judgment. After a hearing on

----------------------

[1] The two cases were consolidated by former Land Court Chief Justice Peter W. Kilborn following a telephonic conference between counsel on October 10, 2002.

- 2-

August 17, 2000, Chief Justice Peter W. Kilborn granted partial summary judgment for the Nortons, ruling from the bench that the house and barn currently existing on the Nortons' property were "separate structures" and that the barn was a "substantial structure." At the same time, the municipal defendants conceded that the home and barn have existed on the property since before the subdivision control law went into effect in Duxbury. There was still a question as to whether the barn currently exists in the same location where it has been since that time. I am now convinced, based on evidence produced by the Nortons, that the barn. has not been moved.

The Nortons filed the ZBA case on September 23, 2002. The municipal defendants filed an answer on October 9, 2002. On June 12, 2003, the ZBA filed a motion for summary judgment in the now consolidated cases, together with an affidavit of Richard MacDonald, and a memorandum in support of the motion. The Nortons filed a cross-motion for summary judgment on September 16, 2003, together with a memorandum in support, a statement of undisputed material facts, and affidavits of Paul J. Driscoll and Anthony La Greca. The municipal defendants filed a memorandum in opposition to the Nortons' cross-motion on October 27, 2003. On November 4, 2003, a hearing was held (Trombly, J.) as which the cross-motions for summary judgment were argued and taken under advisement.

The facts are undisputed and I find them to be as follows:

1. The Nortons are the owners of a parcel of land known as 180 Tremont Street in Duxbury, having acquired the property by deed dated September 11, 1996, and recorded at the

- 3-

Plymouth County Registry of Deeds in Book 14672, Page 90.[2] Prior to that date, title to the property had been held in the names of the Nortons as Trustees of the Robert P. and Mary D. Norton Trust by virtue of a deed to the trust dated 1954 and recorded in Book 8402, Page 91.

2. The grantors in the 1954 deed were Frank and Elsie Nudd who had lived in the house on the property along with Ms. Nudd's father. When the Nortons

purchased the property, the house and barn which currently exist thereon had already been there for many years, perhaps for as many as one hundred but at least fifty years.

3. Since purchasing the property in 1954, the Nortons have made several additions to the house, making it substantially larger than it was at the time of purchase. The barn, which was at one time used for storage and to house animals, is now used only for storage and as a workshop. The barn has never been used for residential purposes.

4. At some point, the Nortons decided to divide their land into two lots and to sell one of the newly created lots to their married daughter and her husband in order that they could construct a new house on the lot where the barn is presently located. The presently existing barn would be demolished.

5. On or about April 18, 1999, the Nortons filed with the Planning Board an "Application for Endorsement Believed Not to Require Approval" (the "ANR Application"). The ANR Application was accompanied by a Plan of Land dated October 28, 1998, entitled "Plan of Land in Duxbury, Mass. Assr's #150-010-001" (the "ANR Plan"). This plan depicted the division of the Norton property into two lots, designated as Lot A and Lot B. A reduced copy of this plan is

----------------------
[2] All references to recorded documents refer to instruments recorded at the Plymouth County Registry of Deeds.

-    4-

attached hereto as "Exhibit A."

6. The ANR Plan shows Lot A as containing six tenths of an acre (25,986 square feet) and having 42.49 feet of frontage on Tremont Street. Lot B on the ANR Plan contains ninety-two hundredths of an acre (40,040 square feet) and would have two hundred feet of frontage on Tremont Street. The existing house is located on Lot A while the existing barn in located on Lot B.

7. Current zoning by-laws for the Town of Duxbury require a minimum area of forty thousand (40,000) square feet and minimum frontage of two hundred feet for land in the district in which the Norton property is located. Thus, while Lot B on the ANR Plan would comply with these requirements, Lot A would not. In addition, the house on Lot A would also be in violation of the sideyard setback requirements under the current zoning by-laws because, at its nearest point, it would be only 7.4 feet from the proposed side property line. If the barn were to remain on Lot B, it too would be in violation of the sideyard setback requirements.

8. The Nortons' ANR Application sought the Planning Board's endorsement on two grounds, the first being that "[t]he division of the tract of land shown on the plan is not a subdivision because every lot shown on the plan has frontage of such distance as is presently required by the Duxbury Protective By-law under Section 502 which requires 200 feet for erection of a building on such lot." In other words, the Nortons sought endorsement because the lot sought to be built Lipon (Lot B) complied with the frontage and area requirements.

9. The Nortons' second grounds for seeking ANR endorsement was their contention that the plan complied with the requirements of G. L. c. 41, s. 81L, because "[t]he division of the tract of land shown on the [ANR] plan is not a subdivision because two or more buildings ... were

- 5-

standing on the land prior to August 18, 1950, the date when the subdivision control law went into effect in ... Duxbury ... and one of such buildings remains standing on each of the lots/said buildings as shown and located on the accompanying plan."

10. On April 26, 1999, the Planning Board conducted a public hearing on the ANR Application and voted unanimously to refuse the Nortons' request for ANR endorsement. Notice of this action was filed in the office of the Town Clerk on April 27, 1999. The Planning Board has since offered to endorse the ANR Plan. The offer has not been accepted by the Nortons.

11. On or about March 27, 2002, the Nortons formally applied to Inspectional Services seeking a building permit to construct a single-family dwelling on Lot B. By letter dated April 26, 2002, Inspectional Services denied the application for several reasons, one of them being that Lot B was not yet in existence because of the fact that the ANR plan had not been endorsed. However, the primary reason given by Inspectional Services for refusing to issue the building permit was that while Lot B appeared to meet the minimum requirements of the zoning by-laws, it was nevertheless not eligible to receive a permit because the creation of Lot B resulted in the remaining land (Lot A) being rendered non-conforming and not in compliance with the zoning by-law. The letter from Inspectional Services concluded: "I am of the opinion that 'infectious invalidity' would apply, and the new lot would be 'infected' with an invalidity of the created non-conforming parcel."

12. On May 16, 2002, the Nortons appealed Inspectional Service's decision to the ZBA pursuant to G. L. c. 40A, s. 8, and Article 906.1 of the Duxbury Protective By-Law. After a public hearing, the ZBA denied the Nortons' appeal and affirmed the decision of Inspectional Services. The ZBA decision, dated September 3, 2002, and filed with the Town Clerk on

- 6-

September 5, 2002, differentiated between allowing a "grandfathered" lot to continue to exist and allowing such a lot to be further divided, the obvious result creating an even more nonconforming lot. The ZBA rejected the Nortons' argument that "a specific prohibition of the action must exist" before such a newly created and apparently lawful lot may be rendered unbuildable because of the fact that the remaining lot is non-conforming.

"Summary judgment is granted where there are no issues of genuine material fact, and the moving party is entitled to judgment as a matter of law." Ng Bros. Constr., Inc. v. Cranney, <u>436 Mass. 638</u>, 643-644 (2002); Mass. R. Civ. P. 56(c). I find and rule that there are no material facts at issue in the present case which would preclude judgment as a matter of law. Summary judgment is therefore appropriate.

There are two major issues before me in these consolidated cases: 1) whether the Nortons, were entitled to receive an approval not required endorsement on their ANR plan which they submitted to the Planning Board dividing their property into Lots A and B; and II) whether, if the Nortons were entitled to such endorsement, are they then entitled to a building permit to construct a single family house on Lot B notwithstanding the fact that the creation of Lot B renders Lot A non-conforming?

### I. The ANR Plan

Ordinarily, when a plan is submitted to a planning board seeking an endorsement that it does not require approval under the subdivision control law, the only issue to be considered by the board is whether or not the plan submitted constitutes a subdivision of land. Bisson v.

-    7-

Planning Bd. of Dover, <u>43 Mass. App. Ct. 504</u>, 506 (1997) (planning board's review confined to determining whether plan shows a subdivision). However, G. L c. 41, s. 81P, dealing with the procedure for approval of plans thought not to require approval as. subdivisions, must be read in conjunction with G. L. c 41, s. 81L, where it is stated:

> "the division of a tract of land on which two or more buildings were standing when the subdivision control law went into effect in the city or town in which the land lies into separate lots on each of which one of such buildings remains standing, shall not constitute a subdivision." (Emphasis supplied).

The Nortons contend that the barn and house currently existing on their property were in existence when the subdivision control law went into effect in Duxbury in 1950, and so I find. The municipal defendants have alleged that there is some evidence that the barn may have been moved over the years, but have not

submitted credible evidence to support that allegation. The Nortons have submitted affidavits of themselves and of a longtime Duxbury resident, Anthony La Greca, to support the proposition that neither structure has been moved. Thus, the ANR plan submitted by the Nortons to the Planning Board in 1999 was entitled to an approval not required endorsement by the Planning Board because it comes under the exception set forth in G. L. c. 41, s. 81L.

II. The Building Permit

Having determined that the Nortons' ANR plan should have been endorsed by the Planning Board as one not requiring approval under G. L. c. 41, s. 81L, I now address whether the Nortons were entitled to the building permit which they sought to construct a single family house on the newly created Lot B. One does not automatically follow from the other. Lots created by the exception contained in G. L. c. 41, s. 81L, must stand or fall on their own for zoning

- 8-

purposes. The Appeals Court has stated, "just because a lot can be divided under [G. L. c. 41, s. 81L] does not mean that the resulting lots will be buildable under the zoning ordinance." Smalley v. Planning Bd. of Harwich, 10 Mass. App. Ct. 599, 603 (1980).

The municipal defendants contend that Inspectional Services and the ZBA properly ruled that the Nortons were not entitled to a building permit for Lot B based on the doctrine of infectious invalidity. Under the doctrine of infectious invalidity a property owner may not create a valid building lot by dividing it from another parcel rendered nonconforming by such division. Alley v. Building Inspector of Danvers, 354 Mass. 6 (1968); Planning Bd. of Nantucket v. Bd. of Appeals of Nantucket, 15 Mass. App. Ct. 733, 737 (1983), further apellate review denied, 389 Mass. 1104 (1983). Both Alley and Nantucket involved instances where a land owner sought to divide a conforming lot into one conforming lot and one nonconforming lot. Alley, 354 Mass. at 7; Nantucket, 15 Mass. App. Ct. at 737. Such is the Nortons' desire in the present case. Lot B would be conforming as to frontage and minimum area requirements, and although the barn, in its present location would be in violation of sideline setback requirements, the Nortons plan on destroying it and building a single family residence on Lot B so as to comply with all zoning requirements. Lot A, on which the Norton house currently exists, would violate frontage, area, and setback provisions of the Duxbury zoning by-law. As the town views it, allowing a nonconforming lot to continue to exist under a provision of a zoning by-law is one thing, but allowing the creation of a new non-conforming lot is quite another. I agree.

In opposing the infectious invalidity argument of the municipal defendants, the Nortons argue that the doctrine only applies where explicit and prohibitory zoning by-law language exists. They contend that the Duxbury zoning by-law contains no precise language making it a violation

-   9-

to create a new non-conforming lot and that they violated no provision of the by-law in creating the two new lots. Accordingly, it is the Nortons' position that the doctrine of infectious invalidity does not apply and that they are entitled to a building permit. For this argument, the Nortons cite two Land Court cases, Bouffard v. Peabody Zoning Bd. of Appeals, 3 LCR 230 (1995) (Misc. Case No. 199217), and Murphy v. Musmon, Land Court Misc. Case No. 147997 (June 27, 1991). Neither is persuasive nor instructive to the present case.

   The Nortons also seek to rely on Section 504 of the Duxbury by-law which provides:

   "No lot, yard, court or other open space already having less than the minimum
                requirements in this bylaw shall be further divided or
                reduced with respect to such minimum requirement or
                requirements." (Emphasis supplied).

The Nortons contend that since their land presently complies with the dimensional requirements as set forth in the by-laws, that Section 504 is therefore not applicable. Such an interpretation, however, stands Section 504 on its head. Clearly, Section 504 seeks to prohibit an owner of an already non-conforming parcel of land from doing anything to make it even more nonconforming. It does not mean, as contended by the Nortons, that the owner of a conforming parcel can take steps to make it non-conforming. Like most municipalities, Duxbury has provisions in its zoning by-law allowing already existing lots and structures to be "grandfathered." Section 501 states, "[n]o building or structure in any district shall be located, constructed, changed, enlarged or permitted and no use of premises in any district shall be permitted except in conformity to the intensity and dimensional regulations set forth herein and in Section 106." Section 106 allows nonconforming uses to remain if they were already in existence at the time the zoning by-law was adopted or amended. Nothing in the by-law allows the creation of a non-conforming use or lot.

   -   10-

   Based on the foregoing, I rule that the Nortons were entitled to have their ANR plan endorsed by the Planning Board as "approval not required" under G. L. c. 41, s. 81L, creating Lots A and B, but they were not entitled to a building permit to construct a house on Lot B. The ZBA did not exceed its authority or act capriciously or arbitrarily in upholding the decision of Inspectional Services. Accordingly, the Nortons' motion for summary judgment is DENIED insofar as it relates to the ZBA decision and ALLOWED as it relates to the Planning Board decision, and the municipal defendants' motion for summary judgment is DENIED as it relates to the Planning Board decision but ALLOWED as it relates to the ZBA decision.

Judgment to enter accordingly.

*Judge:*     **/s/Charles W. Trombly, Jr.**
Justice

*Norwell-Arch, L.L.C. v. Norwell Zoning Board of Appeals*, Misc. Case No. 285113, Mass. Land Court (Hon. J. Trombley) (decided May 24, 2004); 12 LCR 208; 2004 MASS. LCR LEXIS 44

LEXSEE

NORWELL-ARCH, LLC. V. EARL S. OPDYKE III, ABIGAIL R. CHILDS, AND G. BRIAN SHONTZ, AS MEMBERS OF THE NORWELL ZONING BOARD OF APPEALS

MISC. CASE NO. 285113

MASSACHUSETTS LAND COURT

12 LCR 208; 2004 MASS. LCR LEXIS 44

May 24, 2004, Decided

HEADNOTES: Nonconformity Finding-Grandfather Lot-Buildings in Existence at the Time of the Adoption of the Subdivision Control Law-Subsequent Addition

SYLLABUS: [**1] The Norwell Zoning Board could not simply deny a special permit to alter a nonconforming structure merely because the structure had been rendered nonconforming by an ANR division pursuant to § 81L but would have to determine whether the proposal would intensify existing nonconformities.

COUNSEL: Richard Serkey, Esq., Winokur Winokur Serkey & Rosenberg, P.C. for Plaintiff.

Robert E. Galvin, Esq., Galvin & Galvin, SP for Defendant.

JUDGES: Charles W. Trombly, Jr., Justice

OPINIONBY: TROMBLY, JR.

OPINION:

[*208]    ORDER ALLOWING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND ORDER OF REMAND

On November 12, 2002, plaintiff Norwell-Arch, Inc. ("Norwell-Arch"), filed this case pursuant to G. L. c. 40A, § 17, appealing a decision of the Norwell Zoning Board of Appeals (the "ZBA") denying its application for a special permit under Sections 1420 and 1642 of the Norwell Zoning Bylaws which would allow it to construct an addition to a nonconforming single family dwelling. As permitted by G. L. c. 40A, § 17, the ZBA did not file an answer. Norwell-Arch then filed a request that the case be [**2] assigned for a pre-trial conference, which the court scheduled for September 29, 2003. At the conference, counsel

12 LCR 208, *; 2004 Mass. LCR LEXIS 44, **

discussed the case with the court (Trombly, J.) and concluded that the case could be decided upon the filing of motions for summary judgment. The motions, which had not yet been filed, were scheduled for argument on November 13, 2003.

On November 7, 2003, Norwell-Arch filed its motion for summary judgment, together with a memorandum in support, and supporting exhibits and documentation. On November 10, 2003, the ZBA filed its cross-motion for summary judgment and memorandum in support. The court (Trombly, J.) held a hearing on November 13, 2003, at which the cross-motions were argued and taken under advisement.

I find the material facts to be substantially undisputed and to be as follows:

1. By deed dated September 27, 2000, and recorded at the Plymouth County Registry of Deeds n1 in Book 18915, Page 6, Norwell-Arch acquired a parcel of land containing two single family dwellings situated on the northerly side of Grove Street in Norwell. Both buildings had been in existence since before the Subdivision Control Law went into effect in Norwell in 1953. The [**3] parcel conveyed was shown as Lot 2 on a plan referred to in the deed, a copy of the plan is attached hereto as "Exhibit A."

n1 All references herein to recorded instruments or plans relate to items recorded at the Plymouth County Registry of Deeds.

2. The land which is the subject of this litigation is located in Residential District A and in the Norwell Aquifer Protection (Overlay) District which requires a minimum lot size of one acre pursuant to Section 2421 of the Norwell Zoning Bylaw.

[Paragraph 3 omitted in original.]

4. On January 7, 2002, the Norwell Planning Board endorsed as "Approval Not Required" a plan subdividing the aforementioned Lot 2 into two new lots, designated as Lot 3 and Lot 4 (the "ANR Plan"). The ANR Plan was entitled to endorsement pursuant to G. L. c. 41, § 81L, whereby a plan is entitled to endorsement if the planning board determines that two or more buildings were standing on the land being divided when the subdivision control law went [**4] into effect in that community, and each of the new lots holds one of those structures. A copy of the ANR Plan showing Lots 3 and 4 is attached hereto as "Exhibit B."

5. On April 22, 2002, Norwell-Arch conveyed Lot 3 as shown on the ANR Plan to Keith A. Hague and Angela A. Hague by deed recorded in Book 21943, Page 83. The ANR Plan was also recorded at that time, in Plan Book 45, Page 500. It appears that Lot 3 does not conform in some respects to the provisions of the Norwell Zoning Bylaw, but is not at issue in this case.

6. On September 17, 2002, Norwell-Arch submitted an application to the ZBA seeking a special permit pursuant to G. L. c. 40A, § 6, in order to construct an addition to the single family dwelling on Lot 4 as shown on the ANR Plan. This proposed addition, according to Norwell-Arch, would not increase the nonconforming nature of the dwelling and would comply with all applicable property line setback requirements. n2

12 LCR 208, *; 2004 Mass. LCR LEXIS 44, **

n2 In March, 2002, Norwell-Arch submitted an application to the ZBA seeking permission to raze the existing building on Lot 4 and to replace it with a new building. This application was denied by the ZBA for several reasons and is the subject of an appeal by Norwell-Arch in Land Court Misc. Case No. 282462, which is still pending before this court.

[**5]

7. At the time Norwell-Arch's application was submitted, Lot 4 was already nonconforming in that it did not conform to the frontage requirement of the Norwell Zoning Bylaw, having only 50.81 feet of frontage, considerably less than the required 80 feet. Its width at the required setback line was also inadequate, being less than the required 150 feet. In addition, the existing house on Lot 4 was nonconforming with respect to its side setback line.

8. The ZBA conducted a public hearing on Norwell-Arch's application on October 16, 2002, after which it voted two to one to deny the application. The ZBA's decision was filed in the office of the Town Clerk on October 30, 2002. In its decision and at the [*209] hearing, the ZBA informed Norwell-Arch that its application should have sought a variance, rather than a special permit, because Lot 4 "was non-conforming as a result of ... [the] ... subdivision under 81L."

***

"Summary judgment is granted where there are no issues of genuine material fact, and the moving party is entitled to judgment as a matter of law." Ng Bros. Constr., Inc. v. Cranney, 436 Mass. 638, 643-644 (2002); Mass. R. Civ. [**6] P.

56(c). I find that there are no material facts at issue and that summary judgment is, therefore, appropriate in this matter.

Norwell-Arch averred in its application that it, as the owner of a nonconforming lot containing a nonconforming single family dwelling as a result of a plan endorsed under G. L. c. 41, § 81L, was entitled to a special permit finding under G. L. c. 40A, § 6, which would allow it to construct an addition that would not increase the nonconforming nature of the existing dwelling and would comply with all applicable property line setback requirements. For this position, Norwell-Arch relies on the second "except" clause of G. L. c. 40A, § 6 P 1, providing zoning protection for single and two-family residential structures. G. L. c. 40A, § 6 provides in pertinent part, that:

> except as hereinafter provided, a zoning ordinance or by-law shall not apply to structures ... lawfully in existence ... before the first publication of notice of the public hearing on such ordinance or by-law required by section five, but shall apply ... to any reconstruction, extension [**7] or structural change ... except where alteration, reconstruction, extension or structural change to a single or two-family residential structure does not increase the nonconforming nature of said structure. (emphasis added).

Norwell-Arch further relies on Section 1642 of the Norwell Zoning Bylaw which states, "as provided in G. L. c. 40A, s. 6, a nonconforming single- or two-family dwelling may be altered or extended provided that doing so does not increase

12 LCR 208, *; 2004 Mass. LCR LEXIS 44, **

the nonconforming nature of said structure."

The ZBA argues that Norwell-Arch is not entitled to any zoning protection under G. L. c. 40A, § 6, because Lot 4 is an unlawful nonconforming structure established by Norwell-Arch's own voluntary act pursuant to G. L. c. 41, § 81L. Neither Lot 3 nor Lot 4 as shown on the ANR Plan were in compliance with the Norwell Zoning Bylaw in effect at the time the ANR Plan was endorsed. The ZBA, therefore, contends that Lot 4, lacking sufficient frontage and width, and having a structure thereon which is in violation of several set back and side yard requirements, is not a lawful nonconforming structure but rather an [**8] unlawful structure with no zoning protection afforded to it. Thus, it argues, Norwell-Arch must first seek and obtain a variance to bring the lot into zoning compliance before it may perform any alterations or changes outside of the existing footprint of the existing structure.

Norwell-Arch contends that it does not matter how Lot 4 and the dwelling thereon came into existence and became nonconforming, and that a nonconforming single family dwelling may be treated as lawfully nonconforming when the nonconformity was established voluntarily under G. L. c. 41, § 81L. See Goldhirsh v. McNear, 32 Mass. App. Ct. 455, 459 (1992) ("In applying the second 'except' clause of Section 6 and the by-law to the present structure, the appropriate focus is not how or when the nonconforming building came to be used as a single-family dwelling. Rather, the question is whether the proposed changes to the nonconforming residential structure will increase its nonconforming nature."); Serieka v. Town of Winchester Bd. of Zoning Appeals, 1 LCR 91, 92 (1993) (Misc. Case No. 183095)

("A nonconforming single or two-family structure [**9] is not disqualified from being treated as lawfully nonconforming under G. L. c. 40A, s. 6 even if the nonconformity was established by a variance").

Clearly, the General Court intended to provide special protection for residential structures in existence before the adoption of the subdivision control law in each locality when it added the two building exception to G. L. c. 41, 81L, in 1953. Citgo Petroleum Corp. v. Planning Bd. of Braintree, 24 Mass. App. Ct. 425, 427 (1987); G. L. c. 41, § 81L (excepting from the subdivision control law the "division of a tract of land on which two or more buildings were standing when the subdivision control law went into effect in the city or town in which land lies into separate lots on each of which one of such buildings remains standing"). Similarly, single and two-family residential structures enjoy preferential zoning treatment under the second "except" clause of G. L. c. 40A, § 6. The second "except" clause of G. L. c. 40A, § 6, provides residential structures preferential zoning treatment when the proposed changes [**10] to a nonconforming residential structure will not increase its nonconforming nature. Goldhirsh, 32 Mass. App. Ct. at 458-461 (discussing board of appeal's review of nonconforming structures under G. L. c. 40A, § 6). To fully protect single and two-family residential structures, G. L. c. 41, § 81L, and c. 40A, § 6, must be read together. The Special Permit Granting Authority, in this case the ZBA, cannot merely deny the request on the grounds that the structure is nonconforming as a result of a G. L. c. 41, 81L endorsement, without first determining "whether the proposed changes to the nonconforming residential structure will increase its

nonconforming nature." Id. at 459. By skipping this review, the ZBA effectively negated G. L. c. 40A, § 6, rendering it meaningless in this context. The initial question under the second "except" clause does not guarantee a nonconforming residential structure zoning protection, but it does guarantee that the local board will at least make a determination as to whether the proposed change to the nonconforming residential [**11] structure will increase its nonconforming nature. n3

n3 The Special Permit Granting Authority still retains discretionary authority to deny a permit provided such denial is not based on legally untenable or arbitrary and capricious grounds. Davis v. Zoning Bd. of Chatham, 52 Mass. App. Ct. 349, 355 (2001). Moreover, a "local board of appeals brings to the matter an intimate understanding of the immediate circumstances, of local conditions, and of the background and purposes of the entire by-law ..." Fitzsimonds, 21 Mass. App. Ct. at 57.

As set forth in Willard v. Bd. of Appeals of Orleans, 25 Mass. App. Ct. 15, 21-22 (1987), the Appeals Court held that an application for changes to a nonconforming residential structure [*210] "requires a board of appeals to identify the particular respect or respects in which the existing structure does not conform to the requirements of the present by-law and then determine whether the proposed alteration [**12] or addition would intensify the existing nonconformities or result in additional ones." If the board answers this initial question in the negative, finding that there will be no intensification or addition, the applicant is entitled to a special permit under the second "except" clause of G. L. c. 40A, § 6, and any implementing by-law. If the conclusion is otherwise, the applicant will then be required to show that the proposed change will not be "substantially more detrimental than the existing nonconforming structure or use to the neighborhood." Id. at 21; Fitzsimonds v. Bd. of Appeals of Chatham, 21 Mass. App. Ct. 53, 56-57 (1985); G. L. c. 40A, § 6.

Such a result is entirely consistent with the well settled rule that just because a lot can be divided under G. L. c. 41, § 81 L, does not mean that the resulting lot will be buildable under the zoning ordinance. Smalley v. Planning Bd. of Harwich, 10 Mass. App. Ct. 599, 603 (1980). See also Bisson v. Planning Bd. of Dover, 43 Mass. App. Ct. 504, 506 (1997) (planning board's review [**13] of ANR plan confined to determining whether plan shows a subdivision). What a local board cannot do, however, as the ZBA did in the instant case, is deny an applicant a G. L. c. 40A, § 6 finding without conducting the proper zoning review. Fitzsimonds, 21 Mass. App. Ct. at 56 ("the board should first have considered whether the alteration fit the 'except' clause and, if the answer was no, gone on to the question of 'detriment'"). In the instant case, the ZBA made no determination as to whether the proposed changes to the nonconforming residential structure on Lot 4 would increase its nonconforming nature.

Based upon the foregoing, it is hereby

ORDERED and ADJUDGED that Norwell-Arch's motion for summary judgment is ALLOWED, and the ZBA's cross-motion for summary judgment is DENIED; it is further

12 LCR 208, *; 2004 Mass. LCR LEXIS 44, **

ORDERED and ADJUDGED that the decision of the ZBA denying Norwell-Arch a special permit finding was in excess of its authority and is annulled; and it is further

ORDERED and ADJUDGED that the matter be remanded to the ZBA for further proceedings consistent with this order; and it is further

ORDERED and ADJUDGED that the ZBA shall, [**14] within sixty (60) days following the date of this decision, conduct a public hearing in this matter and shall render and file its decision with the Norwell Town Clerk within thirty (30) days thereafter; notice of such hearing shall be given pursuant to G. L. c. 40A, § 11 and c. 39, § 23B, and such hearing, and the decision issued pursuant thereto, shall conform to the requirements of G. L. c. 40A, § 15; and it is further;

ORDERED and ADJUDGED that this court shall retain jurisdiction for purposes of any necessary review of the board's further proceedings.

So ordered.

[SEE "EXHIBIT A" IN ORIGINAL]

[SEE "EXHIBIT B" IN ORIGINAL]

Mr. Jensen discussed the changes to the property and the absence of a building permit for construction of an enclosed porch.

Attorney Judith Cutler stated the applicant would need a special permit and a variance and briefly discussed the requirements for the proposed non-conformity.

Mr. Kirrane discussed setbacks and pre-existing, non-conforming status.

Mr. Iadarola stated he was opposed to a variance allowing the porch to stay. Mr. Iadarola said he would like to see the porch removed.

Mr. Kirrane said the porch was the only access to the house.

Mr. Guerin stated he would like to see any building department permits for the property.

Mr. Killion moved the Board continue the public hearings regarding Petition #04-31 -Special Permit and Petition #04-30 - Variance, 16 Chadwell Avenue, Edward & Patricia Falcione to October 26, 2004 at 7:00 P.M. Mr. Watt seconded. The vote was unanimous.

**8:00 P.M.**
**<u>Public Hearings</u>**
**<u>Petition #04-32 - Appeal of Decision of Building Inspector. Petition #04-34 -</u>**
**<u>Special Permit & Petition #04-33 - Variance</u>**
**<u>9 Ploughed Neck Road                                                                            </u>**.
**<u>Patricia Perotti - Cvrus</u>**
Attorney Julie Molloy requested that all three public.hearings be heard concurrently.
Mr. Jensen read the Public Hearing Notice into the record for Petition #04-32. Mr. Jensen read the following letters into the record:

- Building Department, Donna Boardman, Inspector of Buildings, letter dated 9/17/04.

Mr. Jensen read the Public Hearing Notice into the record for Petition #04-34. Mr. Jensen read the following letters into the record:

- Board of Health, David B. Mason, Health Agent, letter dated 9/16/04.
- Sandwich Fire Department, Ron Santos, Fire Prevention Officer, letter dated 9/13/04.

Mr, Jensen read the Public Hearing Notice into the record for Petition #04-33. Mr. Jensen read the following letter into the record:

- Sandwich Fire Department, Ron Santos, Fire Prevention Officer, letter dated 9/13/04.

.Minutes                                    October *12,* 2004

Attorney Molloy, Patricia Perotti-Cyrus & William Cyrus were present. Attorney Molloy stated the structure, located at 9 Ploughed Neck Road was damaged by a fire on October 2, 2003. Ms. Molloy said the damage was mostly cosmetic and that the applicants would like to repair the damage, which occurred over one year ago. The applicants don't wish to expand the structure only repair the damage. The applicants have been unable to obtain a building permit to start repair work. Ms. Molloy stated th.e property was divided by an ANR plan in 1994, Each of the six cottages was given its own lot.

Mr. Jensen reiterated that the cottages were located on one lot and are now on six individual lots. Ms. Molloy stated the cottages are now single-family residences on individual lots. Ms. Molloy stated in her opinion, after the ANR plan was endorsed, the cottages were no longer a cottage colony as they each have their own lot.   Ms. Molloy stated the cottages existed before 1954 and that each cottage had its own heating system. The Mr. And Mrs. Cyrus purchased 9 & 11 Ploughed Neck Road as investment properties and have rented out the properties as a source of income. Since the fire, they have been unable to rent 9 Ploughed Neck Road and have had to obtain loans from friends to "keep them afloat", Ms. Molloy stated the cottages have never been used as a "seasonal use". Ms. Molloy discussed the structures being physically occupied and used year round. Ms. Molloy said the structures have one bedroom, a kitchen and a bathroom.

Mr. Killion asked Ms. Molloy if she was able to produce documents showing year round occupancy use. The Board discussed a previous building inspector's determination that all but one of the cottages had been used seasonally and that the cottages were part of a "cottage colony". The Board reviewed prior letters from Town Counsel regarding the property and previous litigation.

Attorney Cutler stated that for zoning purposes the cottages are still on one lot, as the ANR endorsed plan does not give zoning validity. Ms. Cutler also discussed condominium status of the property and merged lots.

Attorney Molloy disagreed with Ms. Cutler's interpretations and discussed the ANR plan endorsement, cottage colony and case law.

Mr. Jensen stated the ANR lots don't meet minimum setback requirements or minimum lot area.

Ms. Molloy stated there are no minimum dimensional requirements as the structure has been located on the property since 1948.

Mr. Killion asked what the use of the property currently was and Ms. Molloy answered that it is currently not being used; but, that before the fire, it was rented out year round as far as the owners were able to find tenants to rent to.

Mr. Watt asked when the property was purchased by Ms. Perotti-Cyrus "In 2002".

Board of Appeals Minutes                                    October 12,2004

Mr. Guerin asked if the property was being taxed and Ms. Molloy answered that each of the cottages were being taxed separately. Mr. Killion stated that an ANR plan still doesn't mean the lots are legal.

Ms. Cutler explained to the board taxation is a separate issue. If the owners felt they were unfairly taxed they could seek an abatement. The seasonal use under condominium status was legal however, after the condominium status was dissolved there were zoning violations. Ms. Cutler discussed the history of the property and that since 1994 the property owner was warned that the cottages could not be separated for year round use as single-family lots. The property owner knew what the situation was as a subsequent lawsuit was dismissed with prejudice. A property owner cannot create an illegal situation and then claim it is lawful. Ms. Cutler discussed the subdivision control law, ANR endorsement, condominium status and allowed uses. Ms. Cutler again reminded the board that a cottage colony could not be used year round.

Mr. Guerin asked how many owners there were for the six cottages and Ms. Molloy answered five. Mr. Guerin asked if it is the case that none of the owners could be issued permits to rebuild. Attorney Cutler explained that someone misrepresented what the zoning situation was to the new property owners -the lawsuit dismissed with prejudice acts as a decision in favor of the town.

There was no comment from the public present.

Mr. Killion moved the Board continue the public hearings regarding Petition #04-32 -Appeal of Decision of the Building Inspector, Petition #04-34 - Special Permit & Petition #04-33 - Variance, 9 Ploughed Neck Road, Patricia Perotti - Cyrus to November 23, 2004 at 7:00 P.M.   Mr. Watt seconded. The vote was unanimous.

Mr. Killion moved that the Board adjourn. Mr. Watt seconded. The vote was unanimous.

The meeting adjourned at 8:42 P.M.

Respectfully submitted, Joyce Bartlett

COMMONWEALTH OF MASSACHUSETTS

BARNSTABLE, ss.                                    SUPERIOR COURT DEPT.
                                                   OF THE TRIAL COURT
                                                   C.A. NO. 04-0588

_____
                                  )
DONALD THIBAULT,                  )
                                  )
            Plaintiff,            )
                                  )
      v.                          )
                                  )
WILLIAM DAWES, et al.             )
                                  )
            Defendants.           )
_____)

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Plaintiff, Donald Thibault, submits this Memorandum of Law in support of his Motion for Summary Judgment. The issues presented here are: (1) whether the Town is barred by the statute of limitations from denying the plaintiff a building permit; (2) whether plaintiff's structures and property constitute structures "lawfully in existence" under Section 6 (1st ¶) of the Zoning Act; (3) whether the Town is misinterpreting Section 2550 of the Town zoning by-law, and whether this interpretation constitutes unlawful "spot zoning." Plaintiff asks that this Court enter judgment in his favor and against the Town.

I.    Summary Judgment Standard

Massachusetts Rule of Civil Procedure 56(c) provides that Summary Judgment is appropriate "...if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Mass. R. Civ. P. Rule 56(c).  Summary Judgment is also appropriate against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Celotex Corporation v. Myrtle Nell Catrett, Administratrix, ____ U.S. ____, 106 S.Ct. 2548, 2553 (1986).  In this case, there is no dispute as to the material facts, and hence only a question of law exists, which this Court may properly resolve.

2.    Plaintiff's Property and Structures Are Lawful Under Zoning

A.    *Municipalities May Not Refuse Endorsement of this Type of ANR Plan*

Plaintiff's property came into existence in 1966, through the endorsement[1] of an ANR[2] plan dividing land upon which two of more structures were located before Sandwich adopted the Subdivision Control Law,[3] such that the resulting lots each contained a structure.  G.L. c. 41, ss. 81L and 81P.  The particular provision of the statute exempts such divisions from the Subdivision Control Law, stating:

> the division of a tract of land upon which two or more buildings were located when the Town adopted the Subdivision Control Law, into separate lots on each of which one of such buildings remains standing shall not constitute a subdivision.
>
> G.L. c. 41, s. 81L.

It is well established that a municipality, acting through its planning board, may not refuse the endorsement of this type of an ANR Plan on grounds that the resulting lots do

---

[1] In actuality, the Planning Board failed to act within the requisite time frame, then 14 days, and the ANR plan was constructively endorsed.
[2] "ANR" stands for "Approval Not Required" under the Subdivision Control Law.
[3] Sandwich adopted the Subdivision Control Law on August 20, 1954, when notice of the adoption of the law was recorded with the Barnstable Registrar of Deeds, in Book 883, Pages 194-202. G.L. c. 41, s. 81N (notice of adoption of law must be recorded with registry of deeds).  Plaintiff's home was built in 1875; the neighboring home at 374 Route 6A, which was formerly part of the larger parcel, was built in 1935.

not meet the zoning dimensional requirements in effect as of the date the plan is submitted for endorsement.  G.L. c. 41, s.81L; <u>Citgo Petroleum Corp. v. Planning Board of Braintree</u>, 24 Mass. App. Ct. 425, 427, 509 N.E.2d 284 (1987); <u>Smalley v. Planning Board of Harwich</u>, 10 Mass. App. Ct. 599, at 604, 410 N.E.2d 1219 (1980).  The question is whether structures on such lots are "structures . . . lawfully in existence" under Section 6 (1st¶) of the Zoning Act (Chapter 40A), by virtue of: (a) the Town's failure to take any enforcement action within the statute of limitations; or (b) the plain language of the statute.  A further question is whether a municipality may frustrate the ability to create such lots, under G.L. c. 41, ss. 81L and 81P, by limiting the definition of a "structure lawfully in existence" under Section 6 (1st¶) and local zoning by-laws to only those structures on lots that met the dimensional requirements in effect when the lot was "created."  There are no appellate court decisions directly on point, and decisions of the Land Court go both ways.[4]

Plaintiff contends that the resulting lots and the structures upon the same are entitled to the protections afforded structures "lawfully in existence," as used in the first paragraph of Section 6 (1st¶) of the Zoning Act, G.L. c. 40A, by virtue of the Town's failure to take any enforcement action over the past 38 years (G.L. c. 40A, s. 7) and the "plain language" of the Zoning Act, which gives meaning to *both* the Zoning Act and the Subdivision Control Law, thereby avoiding a "barrenness of accomplishment." <u>Adamowicz v. Town of Ipswich</u>, 395 Mass. 757, 761, 481 N.E.2d 1368 (1985) ("[b]arrenness of accomplishment [that] is not lightly to be imputed to the legislative

---

[4] Copies of two decisions adopting plaintiff's interpretation, <u>Shkliew et al. v. Board of Appeals of Salisbury</u>, Land Court, Misc. Case No. 174671 (July 6, 1992; Hon. Robert V. Cauchon), and <u>Liston v. Board of Appeals of Dartmouth</u>, Land Court, Misc. Case No. 180789 (December 10, 1996; Hon. Robert V. Cauchon), are attached.

branch of the government."); <u>Nyquist v. Board of Appeals of Acton</u>, 359 Mass. 462, 466, 269 N.E.2d 654 (1971) (irrational "result that cannot have been intended by the Legislature"); <u>Doliner v. Planning Board of Millis</u>, 343 Mass. 1, 5, 175 N.E.2d 919 (1961)(court's duty to reconcile separate statutory provisions, found in separate chapters, to accomplish harmoniously legislative purpose). Plaintiff further contends that Section 2550 of the Town's zoning by-laws, which attempts to limit the definition of structures "lawfully in existence," is invalid because it exceeds the limits of the Town's zoning powers. <u>Bloom v. City of Worcester</u>, 363 Mass. 136, 293 N.E.2d 268 (1973)(municipalities may not exercise powers or functions which are inconsistent with the general laws). These issues arose when the plaintiff sought a building permit to construct a new accessory structure on his property, specifically a three-bay garage, in compliance with current setback requirements.

B.      *Town Barred By Statute of Limitations, G.L.c. 40A, s.7*

According to the defendants, plaintiff's property is "unlawful" because upon the date of constructive endorsement of the ANR plan in May 1966, the resulting lots did not contain the then required 125 feet of frontage. At no time since May 1966 – over thirty-eight years ago -- has the Town sought to enforce this alleged violation. <u>See</u> Answer of Defendants, ¶29. Insofar as zoning regulates structures, it does so through dimensional requirements, which set forth lot area, frontage, setback, and coverage requirements. When dimensional requirements are violated, a structural violation arises. G.L. c. 40, s. 7. Section 7 of the Zoning Act sets out a statute of limitations period during which a municipality may enforce structural violations. <u>Ibid.</u>; <u>Lord v. Zoning Board of Appeals of Somerset</u>, 30 Mass. App. Ct. 226, 567 N.E.2d 954 (1991) (Section 7 sets forth two separate limitations periods for actions brought to redress

zoning violations); <u>Stewart v. Finkelstone</u>, 206 Mass. 28, 92 N.E. 37 (1910) (unreasonable delay in seeking to enforce rights will result in laches barring action to enforce the same); <u>Cooke v. Barrett</u>, 155 Mass. 413, 29 N.E. 625 (1892) (where party is cognizant of his rights, but fails to avail himself of the same, "suffer[ing] other parties to incur expenses and enter into engagements and contracts of a burdensome character," laches applies). Regardless of which limitation period (6 or 10 years) is applied, the Town has failed to take any action to redress the purported structural violation within the applicable statute of limitations. <u>Evans v. Building Inspector of Peabody</u>, 5 Mass. App. Ct. 805, 806, 360 N.E.2d 186 (1977). Plaintiff's property was lawfully divided under G.L. c. 41, s.81P, in effect a "permit" authorizing the division of his land, in 1966. The property has been used for single-family residential purposes since that time, a permissible, by-right use within the district in which it is located. In denying plaintiff's building permit application and requiring him to obtain a variance, defendants erroneously assert that the "creation" of plaintiff's property, through division by an ANR plan, resulted in a use violation. This interpretation mistakenly mixes "apples and oranges," and instead, if a violation arose (which plaintiff denies, as set forth in the following sections), it was a structural violation. <u>Willard v. Board of Appeals of Orleans</u>, 25 Mass. App. Ct. 15, 20-21, 514 N.E.2d 369 (1987)("nonconformities arise out of the position of a house on a lot of land rather than out of the use which is being or is proposed to be made of the house or of the lot on which the house is and would continue to be located"). This purported structural violation arose and has existed since May 1966 – far more than six years after the "permit" allowing the division of his land was issued by the planning board – during which time the Town has taken no action to

"enforce" the "violation."[5]  The statute of limitations set forth in Section 7 of G.L. c. 40A unquestionably bars the defendants from doing so, and instead they must treat plaintiff's property as a "structure lawfully in existence."

C.    *Plaintiff's Property  Entitled to Protection as a Structure "Lawfully in Existence".*

Consideration of this issue begins with a review of not only the Zoning Act, G.L. c. 40A, and the Subdivision Control Law, G.L. c. 41, ss. 81K, et seq., but also the Home Rule Amendment, and an acknowledgment that the Legislature has "supreme zoning power."  Mass. Const. Amend. Art. 89; <u>Board of Appeals v. Housing Appeals Committee</u>, 363 Mass. 339, 294 N.E.2d 393 (1973).  The Legislature first enacted a "zoning act" in 1920s, and the current act was adopted in 1975, allowing municipalities to adopt zoning by-laws.  <u>Opinion of the Justices to the House of Representatives</u>, 234 Mass. 597, 127 N.E. 525 (1920) (zoning act rightfully does not interfere with "rights already acquired by existing use or construction of buildings in general . . .".)  Thereafter, in 1953, it enacted the Subdivision Control Law.  G. L. c. 41, ss. 81K, et seq.  It has amended both laws on numerous occasions.[6]  A municipality may adopt and/or enforce zoning by-laws only insofar as they are not inconsistent with the Massachusetts Constitution or laws enacted by the General Court.  Mass. Const. Amend. Art. 89, s.6; G.L. c. 43B, s. 13; <u>Bloom v. Worcester</u>, 363 Mass. 136, 293 N.E.2d 268.  The Home Rule Procedures Act states, in pertinent part:

---

[5] Whether the Town could actually <u>succeed</u> in a enforcement action is questionable, in light of the <u>Citgo</u> and <u>Smalley</u> cases, but, assuming, *arguendo*, that it could, the fact remains that it is barred from doing so at this late date, and should not be permitted to attempt to do so administratively through the building permit process.

[6] Notably, despite the fact that the <u>Smalley</u> decision was rendered in 1980, the Legislature has not amended either paragraph one of G.L. c. 40A, s.6, to express any limits on the definition of the term "structure lawfully in existence," nor the definition of the term "subdivision," to place any dimensional limits on this type of ANR plan, under G.L. c. 41, s. 81L, since that time.

> Nothing in this section shall be construed to permit any city or town, by ordinance or by-law, to exercise any power or function which is inconsistent with any general law enacted by the general court before November eighth, nineteen hundred and sixty-six which applies alike to all cities, or to all towns, or to all cities and towns, or to a class of not fewer than two.

> G.L. c. 43B, s. 13.

Both the Zoning Act and the Subdivision Control Law unquestionably apply to more than two municipalities.  G.L. c. 40A and c. 41, s. 81N.  The Zoning Act sets forth "the limits on the exercise of zoning power by [a] municipality."  SCIT, Inc. v. Planning Board of Braintree, 19 Mass. App. Ct. 101, 107, 472 N.E.2d 269 (1984).  Section 6 of the Zoning Act fully deals with the integration of nonconforming structures and uses, providing varying levels of protection and limiting municipalities ability to enforce zoning in connection with the same.[7]  Paragraph one of Section 6 sets forth the limits of zoning with regard to structures and uses "lawfully in existence:"

> Except as hereinafter provided, a zoning ordinance or by-law shall not apply to *structures* or uses *lawfully in existence* . . . , but shall apply to any change or substantial extension of such use, . . . , to any reconstruction, extension or structural change of such structure and to any alteration of a structure begun after the first notice of said public hearing to provide for its use for a substantially different purpose or for the same purpose in a substantially different manner or to a

---

[7] The first paragraph protects lawfully developed and existing properties, providing different levels of protection for different uses. G.L. c. 40A, s.6 (1st¶).  The second paragraph protects properties lawfully under development, provided development continues to completion within a reasonable time.  G.L. c. 40A, s.6 (2nd¶).  The third paragraph provides that where a use has been abandoned for two years, it may be deemed abandoned. G.L. c. 40A, s. 6 (3rd¶).  Paragraph 4 provides that vacant lots held in separate ownership, meeting certain dimensional requirements, are always protected from increases in certain dimensional zoning requirements, and that up to three vacant lots held in common ownership are protected for a period of five years.  G.L. c. 40A, s.6(4th¶).  The fifth paragraph provides protection for lots on approved definite plans of subdivisions for eight years.  G.L. c. 40A, s.6 (5th¶).  The sixth paragraph provides protection for land shown on an ANR plan from changes in permitted uses for a period of three years.  G.L. c. 40A, s.6 (6th¶).  Paragraphs 7 and 8 toll the running of time under paragraphs 5 and 6 until appeals of decisions involving subdivision and ANR plans.  G.L. c. 40A, s.6 (7th and 8th ¶¶).  Finally, the ninth paragraph provides that an owner may waive the protections afforded him under Section 6, by the recording a plan to that affect.  G.L. c. 40A, s.6 (9th¶).

> substantially greater extent except where alteration, reconstruction, extension or structural change to a single or two-family residential structure does not increase the nonconforming nature of said structure. . . .
>
> G.L. c. 40A, s. 6 (first paragraph, in pertinent part) (*emphasis added*).

Nothing in the plain language of paragraph one gives any grounds to conclude that the term "structure . . . lawfully in existence" is tied in any way to the "date of endorsement of a plan" creating lots such as this.[8] Marinelli v. Board of Appeals of Stoughton, 440 Mass. 255, 259, 797 N.E.2d 893 (2003) ("primary source of insight into the intent of the Legislature is the language of the statute," interpreted in accordance with its plain language); Mass. Broken Stone Co. v. Weston, 430 Mass. 637, 640, 723 N.E.2d 7 (2000)("Where the language of a statute is clear, courts must give effect to its plain and ordinary meaning..."). Certainly the division of such properties is lawful – G.L. c. 41, ss. 81L and 81P expressly provide for it. Limiting the words "lawfully in existence" to mean only those properties meeting minimum dimensional requirements in effect when a plan is endorsed impermissibly adds language not found in the plain language of the statute. Lord v. Board of Appeals of Somerset, 30 Mass. App. Ct. 226, 228, 567 N.E.2d 954 (1991)(courts will not add language where statute is clear and unambiguous); Marinelli v. Board of Appeals of Stoughton, 440 Mass. at 259, 797 N.E.2d 893; Mass. Broken Stone Co. v. Weston, 430 Mass. at 640, 723 N.E.2d 7. Such an interpretation impermissibly interferes with both Section 6 (1st¶) of the Zoning Act

---

[8] Plaintiff notes that he asserts this position only with regard to the division of properties on which structures have existed since before the municipality adopted the Subdivision Control Law, and not otherwise. The cases upon which the Town will undoubtedly rely all involve the creation of a new, vacant lot in connection with ANR plans, and are therefore distinguishable. Having been developed prior to the adoption of either zoning or Subdivision Control, the question is not, as it is in the case of vacant lots created through the ANR process, whether the lots are "buildable," because, as is patently obvious, they have already been built upon.

and Subdivision Control Law, specifically with reference to these types of ANR plans.  If structures on these types of ANR plans are lawful under zoning only when the resulting lots contain the dimensional requirements in effect as of the date the plan is endorsed, municipalities may effectively prohibit the creation of such lots through zoning, rendering the language in Section 81L of Chapter 41 mere "surplusage."[9]  Citgo Petroleum Corp. v. Planning Board of Braintree, 24 Mass. App. Ct. at 427, 509 N.E.2d 284.

The fact that the Legislature did not so limit the term "lawfully in existence" is evidenced not only by the lack of such language in paragraph one of Section 6, but also by the fact that it *did* use such express language in paragraph four of Section 6 (which applies to vacant land[10]).  G.L. c. 40A, s. 6 (compare paras. 1 and 4); Lord v. Board of Appeals of Somerset, 30 Mass. App. Ct. at 228, 567 N.E.2d 954; Murray v. Board of Appeals of Barnstable, 22 Mass. App. Ct. 473, 478-9, 494 N.E.2d 1364 (1986)(absence of language indicates that it was not intended).   The lack of any such language in paragraph one argues against the Town's interpretation.  Marinelli v. Board of Appeals of Stoughton, 440 Mass. at 259, 797 N.E.2d 893.

---

[9] Indeed, the Town has indicated that in considering zoning relief for these types of properties, relief would not be appropriate if the owner of a larger parcel sought it because that person could "cure" the zoning defect by recombining the lots.  However, if an "innocent buyer" unwittingly purchased one of these properties, he might be entitled to relief.  The Town's position suggest a "conferral of a roving and virtually unlimited power to discriminate as to uses between landowners similar situated."  SCIT, Inc. v. Planning Board of Braintree, 19 Mass. App. Ct. at 108, 472 N.E.2d 269.

[10] Dial Away Co., Inc. v. Zoning Board of Appeals of Auburn, 41 Mass. App. Ct. 165, 168, 669 N.E.2d 446 (1996) (paragraph 4 of Section 6 applies only to vacant land, while paragraph 1 of Section 6 applies to lots upon which structures have already been constructed); Willard v. Board of Appeals of Orleans, 25 Mass. App. Ct. at 18, 514 N.E.2d 369("There is nothing to suggest on the face of the fourth paragraph to suggest that it was intended to apply to anything but vacant land").  Most assuredly, properties of this type are not vacant land.  The Dial Away case indicates that paragraph 1 of Section 6 applies to properties such as plaintiff's.

Zoning by-laws are not intended to "interfere with 'rights already acquired by existing use or construction. . . .'" Opinion of the Justices to the House of Representatives, 234 Mass. 597, 127 N.E. 525. A "nonconforming building" is one that is in existence before the adoption of the zoning by-law. Cullen v. Building Inspector of North Attleborough, 353 Mass. 671, 677-8, 234 N.E.2d 727 (1968). It is inconceivable that the Legislature, having comprehensively addressed in Section 6 the zoning status of every other type of division or subdivision of land permitted under G.L. c. 41, s. 81K, et seq., did not intend that these properties be afforded the protections set forth in paragraph 1 of Section 6 -- particularly where a municipality cannot refuse endorsement of this type of an ANR plan. SCIT, Inc. v. Planning Board of Braintree, 19 Mass. App. Ct. at 106, 472 N.E.2d 279; Citgo Petroleum Corp. v. Planning Board of Braintree, 24 Mass. App. Ct. at 427, 509 N.E.2d 284; Smalley v. Planning Board of Harwich, 10 Mass. App. Ct. 599, 410 N.E.2d 1219. If municipalities could limit the ability to create such lots through zoning, the ability to create them under G.L. c. 41, ss. 81L and 81P would be frustrated, amounting to a "barrenness of accomplishment" and an "irrational result." Adamowicz v. Town of Ipswich, 395 Mass. at 760, 481 N.E.2d 1368; Nyquist v. Board of Appeals of Acton, 359 Mass. 462, 466, 269 N.E.2d 654 (1971) (irrational "result that cannot have been intended by the Legislature"). Effectively, reading such words into Section 6 (1st¶) would be tantamount to repealing portions of the Subdivision Control Law. Registrar of Motor Vehicles v. Board of Appeal, 382 Mass. 580, 586, 416 N.E.2d 1373 (1981)(courts "loath to find that a prior statute  superseded . . . in absence of express words to that effect or clear implication."); Murray v. Board of Appeals of Barnstable, 22 Mass. App. Ct. at 478, 494 N.E.2d 1364("where language ...is clear and unambiguous it should be followed even if injustice or hardship results"). Moreover,

only a limited number of properties that may avail themselves of this ability – "[i]t is too late for speculators to buy tracts of back land, cover them with shacks, and divide them into lots accordingly." Citgo Petroleum Corp. v. Planning Board of Braintree, 24 Mass. App. Ct. at 427, 509 N.E.2d 284.

Nor does affording such properties status as "structures lawfully in existence" derogate from the purposes of zoning, because, having already been developed as of a particular date (in Sandwich not only before Subdivision Control was adopted, but also before any zoning was adopted),[11] the Legislature reasonably could have determined that the purposes of "prevent[ing] overcrowding of land" and "avoid[ing] undue concentration of population"[12] – in other words, regulating the structural density of an area – were already moot. Board of Appeals v. Housing Appeals Committee, 363 Mass. 339, 294 N.E.2d 393. If the structures have existed since before the Town adopted both Subdivision Control and zoning, to the extent that there is any "overcrowding of land and density of population," it exists regardless of whether the structures are on one lot or if each structure is located on its own lot. Pierce v. Wellesley, 336 Mass. 517, 521, 146 N.E.2d 666 (1957) (zoning by-laws are invalid where there "'is no substantial relation between it and the furtherance of any of the general objects' stated in the enabling legislation."); Rogers v. Town of Norfolk, 432 Mass. 374, 380, 734 N.E.2d 1143 (2000)

---

[11] A different question might be presented if a municipality had adopted zoning *before* it had adopted Subdivision Control, but such is not the case in Sandwich. Even assuming a municipality had already adopted zoning, to the extent that any structures had been constructed in violation of dimensional requirements, allowing the creation of new lots in this fashion would not cure other pre-existing violations, for which that municipality could have sought enforcement.

[12] In part, G.L. c. 40A, preceding s. 1 states (in pertinent part, emphasis added):

> This act is designed to provide standardized procedures for the administration and promulgation of municipal zoning laws. This section is designed to suggest objectives for which zoning might be established which include, but are not limited to, the following:-- . . . *; to prevent overcrowding of land, to avoid undue concentration of population*; . . . .

(legitimate purpose of zoning is to preserve the character of a neighborhood).   The character of the neighborhood is not changed by the division of one large lot containing two single-family homes into two resulting lots, each containing one house; nor does such a division result in a change of use – both single-family homes continue to use the land in the same manner as they did prior to division.  Willard v. Board of Appeals of Orleans, 25 Mass. App. Ct. at 21, 514 N.E.2d 369 (use does not change by virtue of change in structure's relation to dimensional requirements); see also Goldhirsh v. McNear, 32 Mass. App. Ct. 455, 460, 590 N.E.2d 709 (1992); Bannerman v. Fall River, 391 Mass. 328, 461 N.E.2d 793 (1984); CHR General, Inc. v. City of Newton, 387 Mass. 351, 439 N.E.2d 788(1982).

Furthermore, reading such a requirement into paragraph one of Section 6 would produce an "irrational result."  Nyquist v. Board of Appeals of Acton, 359 Mass. at 466, 269 N.E.2d 654.  Properties that had been developed and thus divided, located on Water, School and Canary Streets, under G.L. c. 41, ss. 81L and 81P, before the Town adopted zoning, but which did not meet the minimal dimensional requirements when Sandwich adopted zoning,[13] are considered "lawful," while a property with identical characteristics, but divided after Sandwich adopted zoning would be considered unlawful.  Each of the properties on Water, School and Canary Streets, like plaintiff's property, contain less than 100 feet of frontage, less than has been required since zoning was adopted.[14]  The only not distinction between the plaintiff's property and the others is the date the ANR plan was endorsed.  Essentially, the Town's position amounts to "spot zoning."  Van Renselaar v. Springfield, 58 Mass. App. Ct. 104, 108, 787 N.E.2d

---

[13] See Facts, ¶32.
[14] See footnote 13, supra.

1148 (2003)("spot zoning" impermissibly singles properties with identical characteristics out for different treatment). Moreover, the Town has not only treated other similarly divided properties, ANR plans for which were endorsed *after* the Town adopted zoning, and which contained less than the required dimensions in effect as of the date of endorsement, as lawful, but indeed has granted special permits in connection with the use of the same to at least two of these properties, known as the Belfry Inn & Bistro at 8 Jarves Street and Century 21/Cape Sails at 133 Route 6A.[15] The fact that the Town has not enforced dimensional violation against either the Belfry Inn or Century 21 properties, and instead has granted special permits in connection with the use of these properties further demonstrates the lack of logic in the Town's position.

It could well be that the Legislature enacted the language in Section 81L in order to redress the result in the case of <u>Howland v. Building Inspector of Cambridge</u>, 328 Mass. 155, 102 N.E.2d 423 (1951), but there is no way to tell if this was the case.[16] <u>Citgo Petroleum Corp. v. Planning Board of Braintree</u>, 24 Mass. App. Ct. at 427 fn.3, 509 N.E.2d 284 (<u>Howland</u> case may have been cause for including language in Section 81L, but record does not so state). The Legislature, with its "supreme zoning power," could have reasonably concluded that where such structural density was already in existence, cities and towns had forfeited any right to exercise "any local power or function on the same subject," provided the structural density existed as of the date Subdivision Control was adopted. <u>Bloom v. City of Worcester</u>, 363 Mass. at 155, 293 N.E.2d 268. What *is* certain is that paragraph one of Section 6, Chapter 40A, contains *no* limiting language

---

[15] <u>See</u> Facts, ¶¶33-43.
[16] In the <u>Howland</u> case, Mr. Howland had unsuccessfully sought permission to divide his lot, which contained three homes that all pre-dated the adoption of zoning in Cambridge, into separate lots, so that he could sell the houses separately and realize more of a profit. <u>Howland v. Building Inspector of Cambridge</u>, 328 Mass. 155, 102 N.E.2d 423. His request was denied by the building inspector, on the grounds that the resulting lots violated the dimensional zoning by-laws in effect. <u>Ibid.</u>

when defining a "structure lawfully in existence," and an ANR plan of this type is a lawful division of property, despite nonconformity with current dimensional regulations.  To hold that structures on such ANR plans are not "lawfully in existence" would result in an exercise of zoning powers in a manner which would impermissibly frustrate the purpose and implementation of both the Zoning Act and the Subdivision Control Law, in excess of a municipality's zoning powers.  <u>Board of Appeals v. Housing Appeals Committee</u>, 363 Mass. at 360, 294 N.E. 2d 393.

Accordingly, the plaintiff requests that this Court issue an order declaring the plaintiff's property to be a "structure…lawfully in existence," under G.L. c. 40A, s. 6(1st¶), entitled to the protections set forth therein, that no variance was necessary, reverse the decision of the Board of Appeals, denying plaintiff's appeal of the decision of the Building Inspector, and further order that the Building Inspector issue a building permit to the plaintiff; alternatively, plaintiff requests that the Court find that the Board of Appeals should have granted plaintiff's application for a special permit, and reverse the Board's decision denying the same.

D.       *Town Misinterprets Section 2550 of Town Zoning By-law*

Dimensional requirements and use requirements are two separate and distinct zoning matters, the interaction of which comes into play only when the use of a property is begun – meaning that, with respect to vacant land, whether it may be put to use and developed (through construction) will depend on whether there is sufficient area to meet dimensional requirements then in effect.  The dimensional requirements are fixed for an entire district, regardless of use, and apply to "all buildings hereafter erected," whereas, for the most part, uses are permitted, by right or (mostly) by special permit

without regard to dimensions.[17]  See Sandwich Zoning By-laws, Section 2510.  The fact that plaintiff's property was divided did not effect, in and of itself, any change in use, and the Town's position that this is the case is mistaken.  Willard v. Board of Appeals of Orleans, 25 Mass. App. Ct. at 21, 514 N.E.2d 369.  Nonetheless, the Town incorrectly interprets Section 2550[18] in connection with its' position that the division of property on these types of ANR plans requires compliance with dimensional regulations in effect as

---

[17] There are a few exceptions to this, specifically with regard to agricultural uses, riding stables and spas. See Sandwich Zoning By-laws, Section 2310.  Farms with pigs, foxes, mink, more than 100 cattle, 1000 poultry or riding stables are allowed by right only on parcels of land containing 5 acres or more (in accordance with the limits on zoning contained in G.L. c. 40A, s. 3); and spas are allowed only in certain districts on parcels of land containing more than 25 acres of area.

[18] Section 2550 provides:

> Non-Conforming Lots.  Application of amended Intensity of Use Regulations to previously created lots is limited by Section 6, Chapter 40A, MGL. In addition, any increase in lot area, width, depth, frontage, yard, or coverage requirements of this by-law shall not apply to erection, extension, alterations, or moving of a structure on a legally created lot not meeting current requirements, provided that either the lot is in an exempted subdivision (see Section 2560) or the applicant documents that:
>
> a.  At the time such increase requirement became applicable to it, the lot:
>
> 1.  Had at least 5,000 square feet of lot area and 50 feet of frontage on a street; and
> 2.  Conformed to the existing dimensions required at the time of creation,
>
> b.  The lot is to be used for a single dwelling unit or for non-residential use, provided that no side yard shall be less than 20 feet on a lot having frontage of more than 100 feet but less than 200 feet and that no side yard shall be less than the greater of ten (10) percent of the lot's frontage or six (6) feet on one side and eight (8) feet on the other on a lot having frontage of 100 feet or less,
>
> c.  And the lot was held in ownership separate from all abutting property on December 31, 1998. (Amended 5/4/98)
>
> Such non-conforming lots may be changed in size or shape or their land area recombined without losing this exemption, so long as the change does not increase the actual or potential number of buildable lots.
>
> See Town of Sandwich Zoning By-laws, Section 2550.

of the date the ANR plan is endorsed. The specific problematic language is that "conformed to the existing dimensions when created," found in clause (a)(2) of Section 2550.

As applied to property developed (meaning shown on a subdivision plan and buildings erected upon such land) *after* zoning was adopted (in 1960), Section 2550 presents no problem. Presumably, for property developed after zoning was adopted, any vacant lots developed complied with minimal dimensional requirements when they were developed, or, if they did not, were either lots "grandfathered" because they were held in separate ownership, thus protected from increases in dimensional requirements by virtue of Section 6 (4th¶), or developed in accordance with a cluster or other special permit.[19] Indeed, Section 2550 is intended to be permissive, allowing not only *initial* development on such lots in accordance with the dimensional requirements in effect when a lot was "created," but also allowing additions, alterations and extensions to such properties, not only through additions to original structures, but also exempting such properties from compliance with current dimensional requirements, and instead applying those dimensional requirements in effect as of the date a property was shown on a plan, and thereby "created." <u>Willard v. Board of Appeals of Orleans</u>, 25 Mass. App. Ct. at 17, 514 N.E.2d 369. The "grandfathering" from application on increased dimensional requirements for lots held in separate ownership is extended not only to original construction, but forever.

In the absence of this by-law, additions or new structures on developed property would require compliance with current dimensional requirements, at least as to setback

---

[19] Cluster special permits allow development on vacant lots smaller than required by dimensional requirements, provided a certain amount of the development is dedicated to open space.

and lot coverage requirements as set forth in Section 6(1st¶),[20] absent a special permit.

Britton v. Zoning Board of Appeals of Gloucester, 59 Mass. App. Ct. 68, 794 N.E.2d 1198

(2003); Goldhirsh v. McNear, 32 Mass. App. Ct. at 460, 590 N.E.2d 709; Rockwood v.

Snow Inn Corp., 409 Mass. 361, 364, 566 N.E.2d 608 (1991).

> If the first and second sentences [of Section 6(1st¶)] are read together, the statute permits extensions and changes to nonconforming structures if (1) the extensions or changes themselves comply with the ordinance or by-law, and (2) [if not a single- of two-family residence, and the extension or change does not comply with the ordinance or by-law] the structures as extended or changed are found to be not substantially more detrimental to the neighborhood than the preexisting nonconforming structure or structures.
>
> . . .
>
> . . . as to a single or two-family residence, . . . the zoning ordinance or by-law applies to a reconstruction, extension, or change that "would intensify the existing nonconformities or result in additional ones."

Ibid., 409 Mass. at 364, 566 N.E.2d 608.   The Sandwich Zoning By-laws, and

specifically Section 2550, are, therefore, "permissive in spirit," having pre-determined,

through the by-law that changes and extensions, whether by addition to an existing

structure, or the construction of additional structures, where a lot does not meet current

dimensional requirements, may be made in accordance with the dimensional

requirements in effect when the lot was "created."    Murray v. Board of Appeals of

Barnstable, 22 Mass. App. Ct. at 478, 494 N.E.2d 1364 (by-law permissive in spirit

where it sanctions nonconformities).

---

[20] Essentially, under Section 6(1st¶), the relevant questions relating to the issue of dimensional nonconformity in connection with an extension or alteration of a developed property are only the setback, lot coverage and height issues, since the addition to an existing structure will not affect the lot area or frontage in any way.

The Town, however, contends that properties such as plaintiff's are not even entitled to the minimum protections set forth in Section 6 (1st¶).  As set forth in the preceding section, there is nothing in Section 6(1st¶) warranting such an interpretation, nor in Section 2550 requiring or warranting such an interpretation.[21]  Section 2550's application is limited to the "erection, extension, alteration, or moving of a structure on a legally created lot not meeting current [dimensional] requirements," and even if plaintiff is not afforded the protections set forth in Section 2550, his property is still entitled to protection under Section 6(1st¶).  Plaintiff may build the new accessory structure either in conformity with current setback, coverage and height requirements,[22] or upon grant of a special permit from the Board of Appeals, upon a finding that this new structure in not more nonconforming than the existing structures.  <u>Britton v. Zoning Board of Appeals of Gloucester</u>, 59 Mass. App. Ct. 68, 794 N.E.2d 1198.

Therefore, the question is whether Section 2550 is invalid because it constitutes "spot zoning?"  In effect, Section 2550 affords preferential treatment to one class of properties, extending the "grandfathering" protections from increases in dimensional requirements, provided the lawfully developed lot was shown on a plan <u>and</u> built upon either (1) before or (2) after zoning was adopted, but does not afford that extended protection to a second class of properties, consisting of those developed before zoning was adopted, but shown on a plan after zoning was adopted, <u>unless</u> the lot met

---

[21] If Section 2550 attempted to do so, it would be impermissibly inconsistent with the protections afforded under Section 6(1st¶), violating the limitations on municipalities zoning powers.  <u>Bloom v. Worcester</u>, 363 Mass. 136, 293 N.E.2d 268.

[22] In point of fact, plaintiff's proposed garage conforms with current setback and lot coverage requirements, and its construction will not intensify any existing nonconformity.  Accordingly, his building permit application should have been granted by the Building Inspector, and his appeal of her denial of the same should have been granted by the Board of Appeals, or that Board should have granted his special permit application because no new nonconformities are created, as set forth in the preceding section.

dimensional requirements in effect on the date of the plan.  The only distinction between these two classes of properties is the date shown on the plan "creating" the lots upon which the structures are located — in every other respect, the "characteristics" of the properties — they do not conform to current dimensional requirements.  <u>Van Renselaar v. Springfield</u>, 58 Mass. App. Ct. at 108, 787 N.E.2d 1148  ("spot zoning" impermissibly singles properties with identical characteristics out for different treatment).

However, Section 2550 is susceptible of an interpretation that neither impermissibly exceeds the Town's zoning power (as set forth in the previous section), nor results in "spot zoning."  <u>Murray v. Board of Appeals of Barnstable</u>, 22 Mass. App. Ct. at 478, 494 N.E.2d 1364 ("zoning by-law must be read in its complete context and be given a sensible  meaning within that context;" "where [it] is faulty, lacks precision or is ambiguous, a court may utilize general rules of construction, presumptions and interpretational aids to glean its meaning").  If no minimum dimensional requirements are required in connection with the creation of lots which contained two or more structures when Subdivision Control was adopted, such lots can be deemed to have "conformed to the existing dimensions required at the time of creation [of the lot]," as required under clause (a)(2) of Section 2550.  The by-law should be further interpreted as providing "grandfathering" protection from any increases in dimensional requirements adopted after the date shown on the ANR plan that "created" such properties.  Only by interpreting the by-law in this way can impermissible "spot zoning" be avoided and the by-law be determined to be valid.  <u>Ibid.</u>

Accordingly, plaintiff requests that this Court find plaintiff's property "conformed to the existing dimensions required at the time of creation," and that he is entitled to the

extended "grandfathering" protections afforded under Section 2550 of the Sandwich Zoning By-laws, based on the date of endorsement on the ANR plan that "created" plaintiff's property.   Plaintiff further requests that the Court:

a.     reverse the Board of Appeals' denial of his appeal of the decision of the Building Inspector and determine that no variance or special permit relief was required;

b.     order the Board of Appeals to grant plaintiff's appeal of the decision of the Building Inspector, and order the Building Inspector to issue his building permit;

c.     alternatively, reverse the denial by the Board of Appeals of plaintiff's special permit application, and order the Board to issue a special permit to the plaintiff.

Plaintiff,

DONALD THIBAULT,

By his attorney,

_____
Julie C. Molloy        BBO#555176
379 Route 6A
East Sandwich MA 02537
(508) 833-3707

Dated:

20

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PATRICIA PEROTTI-CYRUS,
       Plaintiff,                    CIVIL ACTION
                                  NO. 05-10116-DPW

       v.

ROBERT JENSON, Chairman
Of The Board Of Appeals For
The Town Of Sandwich, et al.,
       Defendants.

NOTICE OF TAKING DEPOSITION
OF JUDITH C. CUTLER, ESQ.

TO:    Deborah I. Ecker, Esq.
       Brody, Hardoon, Perkins & Kesten L.L.P.
       One Exeter Plaza, 12th floor
       Boston, Massachusetts 02116

      PLEASE TAKE NOTICE that the plaintiff in this action, Patricia Perotti-Cyrus, will take the deposition of Judith C. Cutler, Esq., pursuant to Fed.R.Civ.P. Rules 26, 30 and 30(b)(6), on Tuesday, May 10, 2005, beginning at 10:00 a.m., and continuing from day-to-day thereafter.  This deposition will take place at the Law Office of Julie C. Molloy, Esq., 379 Route 6A, East Sandwich MA 02537, before an authorized officer pursuant to Rule 30(c).   The deponent is requested to bring with her all records and materials as described in Schedule "A," attached, pursuant to Fed.R.Civ.P. Rule 30(b)(5).

You are invited to attend and cross-examine.

Plaintiff,

PATRICIA PEROTTI-CYRUS,

By her attorney,

_____
Julie C. Molloy        BBO#555176
379 Route 6A
East Sandwich MA 02537
(508) 833-3707

Dated:  April 7, 2005

<u>CERTIFICATE OF SERVICE</u>

     I, Julie C. Molloy, Esq., hereby certify that a copy of the foregoing was served via U.S. Mail, first class, postage pre-paid, on April ____, 2005, upon the defendants, as follows:

Leonard H. Kesten, Esq.
Deborah Ecker, Esq.
Brody, Hardoon, Perkins & Kesten
One Exeter Plaza, 12th floor
Boston MA 02116

_____

SCHEDULE "A"

1.   Any and all bills submitted to the Town of Sandwich in connection with the applications for zoning relief filed by plaintiff with the Town of Sandwich Board of Appeals in 2004.

2.   Any and all documents, including but not limited to notes, memoranda, letters, etc., memorializing any and all communications, whether oral or written, to or from any member of the Town of Sandwich Building Department, Town of Sandwich Office of Planning & Development, Town of Sandwich Planning Board, Town of Sandwich Board of Appeals, and/or the Town of Sandwich Board of Selectmen, or any employee, agent, representative, or servant of any of those identified regarding the applications for zoning relief filed by plaintiff with the Town of Sandwich Board of Appeals in 2004.

3.   Any and all documents, including but not limited to documents memorializing any and all communications, whether oral or written, with any member of the Town of Sandwich Building Department, Town of Sandwich Office of Planning & Development, Town of Sandwich Board of Appeals, Town of Sandwich Planning Board, and/or the Town of Sandwich Board of Selectmen, or any employee, agent, representative, or servant of any of those identified, regarding any application for zoning relief filed by Forestdale Realty, Inc., in connection with the property at issue in 1994/1995.

4.   Any and all documents that support your contention that the property divided via an ANR plan, because the property contains two or more structures before the municipality adopted the Subdivision Control Law, is "unlawful" unless the resulting lots comply with zoning dimensional requirements in effect as of the date of endorsement or recording of such an ANR plan.

5.   Any and all documents pertaining to this issue identified in No. 4, above, which you have handled for any other municipality represented by you as Town Counsel, including but not limited to communications between yourself and that municipality, pleadings if the matter resulted in litigation, any judgments entered in any such cases.

6.   Any and all documents that support your contention that the property divided via an ANR plan, because the property contains two or more structures before the municipality adopted the Subdivision Control Law, is "unlawful" unless the resulting lots comply with zoning dimensional requirements in effect as of the date of endorsement or recording of such an ANR plan, and that this creates a zoning "use" violation.

7.     Any and all documents which support your contention that the termination of the condominium at Ploughed Neck Road was unlawful, or otherwise improper.

8.     Any and all documents which support your contention that the 1994 ANR plan in some way caused either: (1) a substantial detriment to the neighborhood or the public good; (2) a nullification of the intent and purposes of the dimensional zoning by-laws; or (3) any substantial derogation from the intent or purpose of the dimensional zoning by-laws.

9.     Any and all documents that support your contention that the person who sold the cottage at issue to the plaintiff committed any type of fraud upon the plaintiff.

10.    Any and all opinions you have rendered to any municipality to whom you serve as Town Counsel on the issue of these types of ANR plans.

COMMONWEALTH OF MASSACHUSETTS

BARNSTABLE, ss.                                    SUPERIOR COURT DEPT.
                                                   OF THE TRIAL COURT
                                                   C.A. NO. 04-CV-0588

_____
                                )
DONALD THIBAULT,                )
                                )
            Plaintiff,          )
                                )
      v.                        )
                                )
WILLIAM DAWES, ROBERT GUERIN,   )
ROBERT JENSEN, JAMES KILLION,   )
FREDERICK WATT, MATTHEW         )
McDONNELL, ERIK VAN BUSKIRK,    )
as they are members of the Town of )
Sandwich Board of Appeals,      )
DONNA BOARDMAN, Building        )
Inspector, Town of Sandwich, and the )
TOWN OF SANDWICH,               )
                                )
            Defendants.         )
_____)

PLAINTIFF'S AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

Introduction

        This action relates to real property, owned by the plaintiff, Donald

Thibault, and located at 372 Route 6A, Town of Sandwich (East), Barnstable

County, Commonwealth of Massachusetts, 02537, and the application of zoning

by-laws of the Town of Sandwich to the same.  In summary, the case presents the

question of where the division of the property pursuant to G.L. c. 41, s. 81L,

where the property has been and continues to be occupied by structures since

1954, when the Town of Sandwich adopted the Subdivision Control Law, G.L. c.

41, s. 81L, et seq., leaves the structures on the property under zoning, including

the Zoning Act, G.L. c. 40A, s. 1, et seq.  The plaintiff contends that the structures

1

on the resulting lots, after division under G.L. c. 41, s. 81L, are "structures or uses lawfully in existence or lawfully begun," pursuant to paragraph of G.L. c. 40A, s. 6.  The defendants, however, assert that unless the ANR plan dividing the property created lots met the dimensional zoning requirements in effect at the time of recording or endorsement of the ANR plan, the property is "unlawful" under zoning, absent zoning relief, and, as such, the owner of the property is never entitled to a building permit.

This interpretation strips the property owner of the right to maintain his/her property, and imposes limitations on the use of the property different from others similarly situated, without foundation or legal basis.  In addition, the Town's interpretation of the state Zoning Act and the local by-laws contradicts the limitations of the Home Rule Procedures, as set forth in G.L. c. 43B, s. 13, which prohibits cities or towns from the "exercise any power or function which is inconsistent with any general law enacted by the general court before November eighth, nineteen hundred and sixty-six which applies alike to all cities, or to all towns, or to all cities and towns, or to a class of not fewer than two."  G.L. c. 43B, s. 13.  By interpreting the zoning by-laws in a manner that renders the division of the property under G.L. c. 41, s. 81L "unlawful," the Town effectively nullifies the ability of a property owner to avail him/herself of the ability to divide property under that statute, inconsistent with the General Law allowing the division of such property.

In connection with this, plaintiff also appeals the denial of his appeal of a decision by the Building Inspector of the Town of Sandwich, denying his application for a building permit, the denial of his application for a special

permit, and the grant, with conditions, of his application for a variance, under the Town of Sandwich Zoning By-laws.

FACTS

1. Plaintiff, Donald Thibault, owns and resides at 372 Route 6A, Town of Sandwich (East), Barnstable County, Commonwealth of Massachusetts, 02537.

2. Defendants William Dawes, Robert Guerin, Robert Jensen, James Killion, Frederick Watt, Matthew McDonnell, and Erik Van Buskirk are members of the Town of Sandwich Board of Appeals ["Board of Appeals"], with a principal place of business at 16 Jan Sebastian Drive, Town of Sandwich, Barnstable County, Commonwealth of Massachusetts 02563.

3. Defendant Donna Boardman is the Building Inspector, Town Of Sandwich, with a principal place of business at 16 Jan Sebastian Drive, Town of Sandwich, Barnstable County, Commonwealth of Massachusetts 02563.

4. Defendant Town Of Sandwich is a municipality, with a principal place of business at 130 Main Street, Town of Sandwich, Barnstable County, Commonwealth of Massachusetts 02563.

5. Plaintiff Donald Thibault has owned 372 Route 6A, East Sandwich since May 10, 1988, when he purchased the property from Gene Raymond, as reflected in the deed recorded with the Barnstable County Registry of Deeds, Book 6251, Page 320.

6.    On or about March 5, 1966, plaintiff Thibault's predecessor in interest,
      Chester B. Raymond, recorded a plan of land, which divided a larger
      parcel ["Raymond property"] into plaintiff Thibault's parcel and a
      neighboring parcel (now owned by Jane Dunworth-Baker and located
      at 374 Route 6A, East Sandwich), with the Barnstable County Registry
      of Deeds, in Plan Book 202, Page 101 ["ANR plan"].

7.    This was plan was endorsed by default and failure of the Town of
      Sandwich Planning Board to act within the requisite time frame,
      pursuant to G.L. c. 41, s. 81P.

8.    This plan divided the Raymond property as an "Approval Not Required
      under the Subdivision Control Law," plan ["ANR" plan] because it
      contained two of more structures that had existed, and continued to
      exist, since before the Town of Sandwich adopted the Subdivision
      Control Law, in accordance with that provision of the law, which states
      that the "division of a tract of land on which two or more buildings
      were standing when the subdivision control law went into effect in the
      city or town in which the land lies into separate lots on each of which
      one of such buildings remains standing, shall not constitute a
      subdivision."  G.L. c. 41, s. 81L, definition of term "subdivision," last
      clause.

9.    The Town of Sandwich adopted the Subdivision Control Law on the
      summer of 1954.

10.   The Town of Sandwich adopted zoning in early 1960s.

4

11.     Plaintiff Thibault's home was built in 1875, while the neighboring

parcel, now owned by Jane Dunworth-Baker, contains a cape-style

house that was built in 1930, according to the Town of Sandwich

Assessor's records.

12.     Both plaintiff Thibault's home and the Baker-Dunworth home predate

not only the adoption of the Subdivision Control Law by the Town of

Sandwich, but also the adoption of zoning in the Town.

13.      The relevant provisions of the Town of Sandwich zoning by-laws area s

follows:

**2400.   Non-Conforming Uses.** The use of any structure or land lawfully
existing at the time of the enactment or subsequent amendment of this
bylaw may be continued although such structure or use does not
conform with provisions of this by-law, subject to the following
conditions and exceptions**:**

. . .

**2420.Change, Extension Or Alteration.** No change, extension or alteration
of a pre-existing non-conforming use and no change, extension or
alteration of a pre-existing nonconforming structure may be made except
upon the issuance of a special permit from the Zoning Board of Appeals.
Such a special permit may be granted only if the special permit granting
authority finds that the proposed change, extension or alteration of a pre-
existing non-conforming use, or change, extension or alteration of a pre-
existing non-conforming structure is not substantially more detrimental to
the neighborhood than the existing nonconforming use or non-conforming
structure.

**2510**. All buildings *hereafter erected* in any district shall be located on a lot such
that all the requirements set forth in Section 2600 are conformed with,
*except where specifically exempted by this by-law or by General Law*.
Construction or operations under a building or special permit shall
conform to any subsequent amendment of the ordinance or by-law unless
the use or construction is commenced within a period of not less than six
(6) months after issuance of the permit and, in cases involving
construction, unless such construction is continued through to completion
as continuously and expeditiously as is reasonable.

Town of Sandwich Protective Zoning By-laws (emphasis added); See
Exhibit 1.

14.    In 1966, after division of the Raymond property, plaintiff Thibault's
       parcel was left with some seven (7) acres of lot area, and 99.39 feet of
       frontage along Route 6A, while the Baker-Dunworth parcel was left
       with 10,464 square feet of lot area and 81 feet of frontage.

15.    As of March 7, 1966, the Town of Sandwich dimensional regulations
       required 20,000 square feet of lot area, and 125 feet of frontage.[1]

16.    Neither of the lots shown on the ANR plan had the 125 feet of frontage,
       and the smaller lot (not plaintiff Thibault's, but his neighbor, Baker-
       Dunworth) did not have 20,000 square feet of lot area.  Plaintiff
       Thibault's lot had and continues to have in excess of 7 acres of lot area.

17.    The Town of Sandwich zoning by-laws have been amended at various
       times since March of 1966, such that the district in which the plaintiff's
       land lies now requires 60,000 square feet of lot area and 200 feet of
       frontage.[2]

18.    In 2003, plaintiff Thibault sought to obtain a variance from the Board
       of Appeals to construct a three-bay, one and one-half story garage on

[1] Although the plan bears a date from the Land Surveyor of March 5, 1966, that date was a
Saturday.  On March 7, 1966, a Monday, Town Meeting voted to amend the zoning by-laws,
increasing the dimensional requirements.  The Town Clerk endorsed the plan on May 6, 1966,
indicating that the Planning Board had failed to act on it within the then-required 14 days,
pursuant to G.L. c. 41, s. 81P, and accordingly the plan was constructively approved.  This tends to
indicate that the plan was submitted to the Planning Board sometime after March 7, 1966, and
accordingly the zoning by-laws in effect on that date are set forth.

[2] Plaintiff, having more than seven (7) acres of lot area, has some 304,920 square feet of lot area,
or sufficient lot area to create 5.082 lots under current zoning.

his property, meeting current front, side and rear-yard setback requirements.

19.    His application for variance was denied by the Board of Appeals on the ground that the division of the land was unlawful under zoning, and further on the basis that plaintiff could subdivide his land and cure the dimensional violation, relating to frontage deficiency.

20.    Thereafter, plaintiff Thibault submitted an application for a building permit to construct his three-bay garage, which application was denied on the grounds that the property was unlawful under zoning as a consequence of the division of the land under s. 81L and s. 81P of G.L. c. 41.

21.    Plaintiff Thibault appealed the denial of his building permit by the Building Inspector within the time frame required by law, and simultaneously filed an application for a special permit to construct his garage, and a variance to authorize the use of his property for single family residential usage, a by-right allowed use in the R-2 residential zoning district in which his property is located, together with accessory structures and uses allowed customarily and by-right in this zoning district.

22.    The public hearing was opened on the plaintiff's appeal of the denial of the building permit, and his application for a special permit and application for a variance in July 2004, and continued on August 24, 2004, when the public hearing was closed.

23.    The defendant Board of Appeals denied plaintiff's appeal of the
decision of the Building Inspector, and his application for special
permit.  <u>See</u> Exhibit 3, Denial of Appeal of Decision of Building
Inspector <u>and</u> Exhibit 4, Denial of Special Permit Application.

24.    The Board of Appeals granted the application for variance, but imposed
several conditions, including Conditions 5, 6 and 7:

(5) The footprint of the structure labeled "Existing Garage" and located
near the westerly property line shall not be expanded horizontally
and this structure shall not be expanded vertically.

(6) This property shall be used solely for one (1) single family dwelling
with existing accessory structures and the proposed three (3) bay
garage.  All accessory uses and any new accessory structures, other
than the proposed three (3) bay garage are prohibited.  The three
(3) bay garage structure shall not be used as a dwelling unit.

(7) This property shall not be subdivided nor shall it be divided under
the provisions of MGL Chapter 41, Section 81-P or 81-L.

<u>See</u> Variance, Exhibit 3.

25.    Within the Town of Sandwich, provided one's lot was "lawfully
created," property owners of developed property are allowed to
construct accessory structures, such as garages, provided the new
construction meets current setbacks, despite the fact that the lot may
be nonconforming with current zoning.

26.    The Town, including the Building Inspector and the Board of Appeals,
asserts that plaintiff's property is "unlawful" because, when the ANR

plan creating two parcels out of one larger parcel was recorded by the predecessor-in-interest, the resulting "lots" did not meet the minimal dimensional requirements set forth in the zoning by-laws at that time.

27.    The Town, including the Building Inspector and the Board of Appeals, contend that plaintiff Thibault, and owners of similarly situated properties, are never entitled to a building permit, even to perform ordinary maintenance and repairs on existing structures, absent zoning relief, if an ANR plan dividing such properties effects such division such that, at the time of recording or endorsement of the ANR plan, the resulting parcels do not meet minimum zoning dimensional requirements in effect at that time.

28.    Since owning this property, plaintiff Thibault in the past has obtained building permits, including to construct a shed dormer addition to his home, without any issue of the alleged "unlawfulness" of his property becoming an issue.

29.    The Town of Sandwich, through the Building Inspector or otherwise, has never commenced any zoning enforcement action against this property resulting from the alleged "unlawful" division of the property by the recording of the 1966 ANR plan.

30.    Plaintiff's property has always been used in a manner allowed by-right in the R-2 residential zoning district that it is located, as a single-family residence, with accessory uses, including home occupation.

31.    The Home Rule Procedures Act prohibits any municipality from, "by ordinance or by-law, to exercise any power or function which is

inconsistent with any general law enacted by the general court before November eighth, nineteen hundred and sixty-six which applies alike to all cities, or to all towns, or to all cities and towns, or to a class of not fewer than two." G.L. c. 43B, s. 13, in part.

32.     As a consequence of the defendants' position, the plaintiff has suffered damages, including the evisceration of any value of his property, his single largest asset, by virtue of the opinion and interpretation of the zoning by-laws to the effect that his property, absent zoning relief, is "unlawful," and effectively, therefore, he must allow his historic home to fall to the ground.

33.     Plaintiff is also harmed insofar as he cannot sell his property in good faith affirming that he is not aware of any zoning violations pertaining to his property, regardless of the validity of the alleged violations.

34.     As a consequence of the conditions imposed by the defendant Board of Appeals, the plaintiff is deprived of certain by-right uses otherwise permitted in the zoning district in which his property is located, and is deprived of the right to subdivide or further divide his property pursuant to G.L. c. 41, s. 81L or s. 81P.

COUNT I

*Violation of Home Rule Procedures Act, G.L. c. 43B, s. 13*

35.     Plaintiff repeats and reasserts the matters set forth above, and incorporates the same herein by reference, as if fully set forth herein, further stating:

36.    The defendants interpretation of the application of the zoning by-laws violates the Home Rule Procedures Act, insofar as it is inconsistent with general laws, specifically G.L. c. 41, ss. 81L and 81P.

37.    The defendants' interpretation and application of the zoning by-laws effectively means that a property owner may only avail him/herself of the ability to lawfully divide property on which two or more structures had and have existed since before the municipality adopted the Subdivision Control Law, *only where* such division creates resulting parcels meet minimal zoning dimensional requirements in effect when such and ANR plan is endorsed or recorded.

38.    Such an interpretation, however, renders the final sentence of the definition of the term "subdivision," as set forth in G.L. c. 41, s. 81L, meaningless, null and void, because this contingency is already covered in the second clause of the definition of the term "subdivision," which states: ". . . *provided*, however, that the division of a tract of land into two or more lots *shall not be deemed* to constitute a subdivision within the meaning of the subdivision control law if, at the time when it is made, every lot within the tract so divided has frontage on (a) a public way or a way which the clerk of the city or town certifies is maintained and used as a public way, or (b) a way shown on a plan theretofore approved and endorsed in accordance with the subdivision control law, or (c) a way in existence when the subdivision control law became effective in the city or town in which the land lies, having, in the opinion of the planning board, sufficient width, suitable grades and

adequate construction to provide for the needs of vehicular traffic in relation to the proposed use of the land abutting thereon or served thereby, and for the installation of municipal services to serve such land and the buildings erected or to be erected thereon. Such frontage shall be of at least such distance as is then required by zoning or other ordinance or by-law if any, of said city or town for erection of a building on such lot, and if no distance is so required, such frontage shall be of at least twenty feet."

G.L. c. 41, s. 81L, "Subdivision," in relevant part.; see also Citgo Petroleum Corp. v. Planning Board of Braintree, 24 Mass. App. Ct. 425, 427, 509 N.E.2d 284 (1987); Smalley v. Planning Board of Harwich, 10 Mass. App. Ct. 599, at 604, 410 N.E.2d 1219 (1980).

39.    The defendants' position also is inconsistent with the Zoning Act itself, insofar as paragraph 1 of Section 6 of Chapter 40A, which states that zoning by-laws shall not apply "structures or uses lawfully in existence or lawfully begin." G.L. c. 40A, s. 6, 1st ¶.

40.    Nothing in the first paragraph of Section 6 states that the "lawfulness" or the existence or beginning of any structure or use has any relation to the date of endorsement or recording of an ANR plan. G.L. c. 40A, s. 6, 1st ¶.

41.    Indeed, the only place in Section 6 where the date of recording or endorsement of a plan has any bearing is in the fourth paragraph, which inarguably only applies to vacant land. G.L. c. 40A, s. 6, 4th ¶; see also Dial Away Co., Inc. v. Zoning Board of Appeals of Auburn, 41

Mass. App. Ct. 165, 168, 669 N.E.2d 446 (1996) (paragraph 4 of Section 6 applies only to vacant land, while paragraph 1 of Section 6 applies to lots upon which structures have already been constructed); <u>Willard v. Board of Appeals of Orleans</u>, 25 Mass. App. Ct. 15 at 18, 514 N.E.2d 369 (1987) ("There is nothing to suggest on the face of the fourth paragraph to suggest that it was intended to apply to anything but vacant land").

WHEREFORE, plaintiff requests that this Court declare that the defendants' interpretation of its by-laws is inconsistent with the general laws set forth above, and declaring the same invalid, and further declaring that the plaintiff's property is not "unlawful" under zoning, but instead finding that both the structures and use of the property are and have been "lawfully in existence" and "lawfully begun," and further that no zoning relief was necessary to cure any purported "unlawfulness," but instead that the defendant Building Inspector should have granted plaintiff's application for building permit, without seeking zoning relief from the defendant Board of Appeals, and further that the defendant Board of Appeals should have granted plaintiff's appeal of the denial of the building permit by the Building Inspector, together with such other relief as the Court deems just and reasonable.  Alternatively, plaintiff requests that this Court find that while the structures existing on the property since before 1954 are lawfully in existence and lawfully begun, a special permit is required to "change, alter or extend" the same, by building an additional structure because the parcel does not conform with current zoning dimensional requirements, and that the standard to be applied by the Board of Appeals is whether the proposed new structure creates any new nonconformities on the parcel.  G.L. c. 40A, s. 6, 1st ¶;

13

Britton v. Board of Appeals of Gloucester, 59 Mass. App. Ct. 68, 794 N.E.2d 1198
(2003).

COUNT II

*Denial of Appeal of Building Inspector's Denial of Building permit*

42. Plaintiff repeats and reasserts the matters set forth above, and
    incorporates the same herein by reference, as if fully set forth herein,
    further stating:

43. The division of plaintiff's property was lawfully done pursuant to G.L.
    c. 41, s. 81L, a division that could not have been denied by the Planning
    Board of the Town of Sandwich on the grounds of noncompliance with
    zoning requirements at the time.

44. Plaintiff's proposed new structure, a three (3) bay garage, is situated to
    comply with existing setback requirements.

45. Plaintiff's new proposed garage does not increase or exacerbate in any
    manner the dimensional nonconformity at issue, the shortage of
    frontage which came into being with the recording of the ANR plan,
    nor does it exacerbate any other dimensional nonconformities which
    may exist relating to existing structures, in terms of setback violations.

46. As the defendants interpret the Sandwich zoning by-laws, new
    structures may be added to developed properties that were lawfully
    created, provided any such new structures meet existing dimensional
    setback requirements.

WHEREFORE, plaintiff requests that this Court declare that the defendant
Building Inspector's decision to deny plaintiff's application for building permit,

and defendant Board of Appeals' denial of plaintiff's appeal of the decision of the
Building Inspector were incorrect, and further that the Court overturn these
denials, and order the defendants to issue the plaintiff a building permit for his
proposed garage forthwith, together with such other relief as the Court deems
just and reasonable.

COUNT III

*Denial of Special Permit Application*

47.     Plaintiff repeats and reasserts the matters set forth above, and
        incorporates the same herein by reference, as if fully set forth herein,
        further stating:

48.     Defendant Board of Appeals improperly denied the plaintiff's
        application for a special permit, insofar as the proposed new structure
        meets current setback requirements, and does not exacerbate any
        existing nonconformities.

        WHEREFORE, plaintiff requests that this Court declare that the defendant
Board of Appeals' denial of plaintiff's application for a special permit was
incorrect, and further that the Court overturn these denials, and order the
defendants to issue the plaintiff a special permit for the construction of his
proposed garage forthwith, together with such other relief as the Court deems
just and reasonable.

## COUNT IV

*Issuance of Variance with Conditions –*

*Violation of Equal Protection and Invalid Taking*

49.   Plaintiff repeats and reasserts the matters set forth above, and incorporates the same herein by reference, as if fully set forth herein, further stating:

50.   Defendant Board of Appeals' imposition of the three conditions set forth above imposed conditions deprives the plaintiff of certain uses of his property, otherwise allowed by law.

51.   Specifically, Condition #5 prohibiting the plaintiff from expanding his existing garage denies him equal protection under the law to seek to change, alter or extend a pre-existing nonconforming structure, pursuant to Section 2420 of the Sandwich zoning by-laws.

52.   Further, Condition #6 deprives the plaintiff of certain by-right accessory uses of his property, including home occupation, which is how plaintiff makes his livelihood.

53.   Finally, Condition #7 deprives the plaintiff of the ability to subdivide or further divide his property as may be permitted under the Subdivision Control Law, G.L. c. 41, ss. 81L and 81P, despite the fact that, with 7 acres of lot area, plaintiff conceivably could divide his property into 5 separate lots.

54.   Defendant Board of Appeals decisions in this regard is unreasonable, arbitrary and capricious, depriving him of equal protection to avail

16

himself of certain benefits allowed by law, and constituting a taking of certain of his property rights without just compensation.

WHEREFORE, plaintiff requests that this Court declare that imposition of the foregoing conditions to be invalid, and vacating the same, together with such other relief as this Court deems just and reasonable, including any damages as may be appropriate.

Plaintiff,

DONALD THIBAULT,

By his attorney,

_____
Julie C. Molloy          BBO#555176
379 Route 6A
East Sandwich MA 02537
(508) 833-3707

October 14, 2004