UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO.: 05-10116DPW

PATRICIA PEROTTI-CYRUS
Plaintiff,

v.

ROBERT JENSEN, Chairman of the Board
of Appeals for the Town of Sandwich,
ROBERT GUERIN, JAMES KILLION,
MATTHEW McDONNELL, ERIK VAN
BUSKIRK, WILLIAM DAWES, and
MICHAEL LESPERANCE, as they are
Members of the Board of Appeals,
DONNA BOARDMAN, Building
Inspector and Zoning Enforcement Officer
for the Town of Sandwich, and TOWN OF
SANDWICH,
Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF ITS OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### I.    Introduction

The dispositive issue that compels judgment for the defendants is whether as the

defendants argue an endorsement of a plan "Approval Under the Subdivision Control

Law Not Required" (an ANR Plan) applies only with respect to the inapplicability of

the Subdivision Control Law and does not give the endorsed plan any zoning validity

and does not mean that the resulting lots will be lawful under the local zoning

regulations. That issue has been the crux of a long-standing dispute between the prior

owner of the cottage colony located on Ploughed Neck Road and the Town of Sandwich

over whether the endorsement of a plan by the Sandwich Planning Board in October

1994 as "Approval under the Subdivision Control Law Not Required" (the "ANR Plan")

1

gives the endorsed plan zoning validity, exempting the property from the requirements contained in the Town of Sandwich Protective Zoning By-law ("the Zoning By-law"). The Town of Sandwich has consistently taken the position that an ANR endorsement applies only with respect to the inapplicability of the Subdivision Control Law and does not give the endorsed plan any zoning validity and does not mean that the resulting lots will be lawful under the local zoning regulations. See, Smalley v. Planning Board of Harwich, 10 Mass.App.Ct. 599, 603 (1980); Citgo Petroleum Corp. V. Planning Board of Braintree, 24 Mass. App. Ct. 425 (1987). Aware that this was the Town's position, the prior property owner sold the lots to the Plaintiff for single family dwelling use either without full disclosure or misrepresenting the status of the lots being sold.

On or about October 2003, there was fire in one of the Plaintiff's cottages located at 9 Ploughed Neck Road. The Plaintiff applied for a building permit to perform renovation work on the cottage. The Building Inspector, after conferring with Town Counsel, denied her building permit application. The Plaintiff appealed the Building Inspector's denial of her permit application to the Town of Sandwich Zoning Board of Appeals (the "ZBA"), applied for a variance and filed an application for a special permit to be able to perform renovation work on her cottage. At the hearings on her applications and her appeal of the Building Inspectors denial of her building permit application, the Plaintiff's attorney, who had represented the prior property owner, asserted yet again that the Plaintiff's property was a single family dwelling and was exempt from the zoning regulations as a result of the Planning Board's endorsement of the ANR plan in October 2004. This argument was the same one made by the prior property owner on several occasions and was again rejected by the Zoning Board of Appeals. The Plaintiff appealed the decision of the Zoning Board of Appeals by filing the subject lawsuit.

2

In Count I of her Complaint, the Plaintiff seeks a declaration that the Town's interpretation of G.L. c. 40A, § 6 and the Town By-laws is in violation of the Home Rule Procedures Act, G.L. c. 43B, § 13 because the Town's interpretation of Chapter 40A and its zoning by laws are inconsistent with the Subdivision Control Law Act, G.L. c. 41, §§ 81L and 81P. In Counts II, III and IV of her Complaint, the Plaintiff seeks a declaration that the Town of Sandwich Zoning Board of Appeals' (the "ZBA") decisions denying the Plaintiff's appeal of the Building Inspector's Denial of her application for a building permit, denying her special permit application and denying her request for a variance were incorrect, arbitrary and capricious and legally untenable. Finally in Count V of her Complaint, the Plaintiff claims that the ZBA's interpretation of G.L. c. 40A, § 6 and their zoning by-laws constitutes unlawful spot zoning in violation of her equal protection rights under the state and federal constitutions. All of the Plaintiff's claims are based on her belief that an ANR endorsement by a Planning Board gives the plan zoning validity and exempts the property from local zoning regulations. The Plaintiff's interpretation of the statutes and bylaws is incorrect and was incorrect when rejected by the ZBA at the time that it was presented by the prior property owner. Any recourse the Plaintiff may have for the damages alleged is against the seller of the Property who apparently misrepresented the status of the cottage and property at the time that it was sold to the Plaintiff.[1]

Whether the Town has accurately interpreted and applied the statutes and regulations at issue is purely a matter of law appropriate for summary judgment disposition. As there are no material facts in dispute, the Defendants, Robert Jensen,

---

[1] The Plaintiff testified at her deposition that Ms. Molloy, her attorney in the subject lawsuit represented Mr. Miller, the prior property owner at the time of the sale and that they have been very instrumental in helping her with her situation. She has not received any attorneys' bills to date. Defendants' Exhibit 9 at pp. 20, 38-40.

Chairman of the Board of Appeals for the Town of Sandwich, Robert Guerin, James Killion, Mathew McDonnell, Erik Van Buskirk, William Dawes and Michael Lesperance, as they are Members of the Zoning Board of Appeals, Donna Boardman, Building Inspector and Zoning Enforcement Officer for the Town of Sandwich and the Town of Sandwich (hereinafter the "defendant", "ZBA" or the "Town) request that this honorable Court deny the Plaintiff's motion for summary judgment and grant the Defendants' cross motion for summary judgment as to all of the Plaintiff's claims.

## II.    Statement of Undisputed Material Facts

In October 1994, the Town of Sandwich Planning Board endorsed a plan as "Approval Under the Subdivision Control Law Not Required" (the "ANR Plan") that showed the division of a Cottage Colony owned by Elizabeth Sprague consisting of approximately two acres of land off Ploughed Neck Road on which six cottages were located (the "Property"). **Plaintiff's Exhibit 2.** The ANR Plan shows a division of the Property such that each of the six existing cottages would be located on an individual lot of land. None of the six lots shown on the ANR Plan met the minimum lot area requirements for the R-2 zoning district in which the Property is located, nor did the cottages shown on the plan meet the applicable minimum setback requirements. Nevertheless, because the cottages were constructed in 1948, before the Subdivision Control Law came into effect in the Town of Sandwich, the plan showing a division of land on which the cottages were located into six separate lots, on each of which lot one of the cottages was to remain standing, did not constitute a "subdivision" of land subject to subdivision control. Accordingly, pursuant to G.L. c. 41, § 81P and § 81L, the Planning Board was required to signify by means of the ANR endorsement that the 1994 plan of the Sprague land did not show a "subdivision" as defined by the Subdivision Control Law. The ANR endorsement by the Planning Board in October

4

1994, applied only with respect to the inapplicability of the Subdivision Control Law. The ANR endorsement took no position with regard to whether the resulting lots were lawful under the local zoning regulations. The ANR Plan for the Property when endorsed specifically set forth that "the above endorsement does not constitute compliance with the Protective Zoning By-laws of the Town of Sandwich". **Plaintiff's Exhibit 2.**

Shortly after the subject ANR Plan was endorsed, the Building Inspector at the time determined that all but one of the cottages had been used only for seasonal or intermittent use, that the land and structures thereon constituted a "cottage colony" as defined in Article VII-2 of the Zoning By-Law then in effect, and that the conversion to single-family dwelling use would violate Section 4710 of the Zoning By-law. The subject property at the time was owned by Forestdale Realty, Inc. ("Forestdale"). **Defendant's Exhibit 1 – Letters dated December 29, 1994, February 10, 1995, May 30, 1995, February 8, 1999, July 23, 2001 and March 12, 2004 from Kopelman and Paige.** The president and treasurer of Forestdale was Harry B. Miller, Jr. When Forestdale was advised by the Building Inspector in 1994 that the subject property constituted a cottage colony and was therefore, subject to the limitations set forth in Section 4710 of the Zoning By-law concerning the conversion to single-family use and/or separate ownership, Forestdale appealed the Building Inspector's determination to the Town of Sandwich Zoning Board of Appeals ("ZBA") and, simultaneously petitioned the ZBA for a special permit to relocate five of the six cottages in such a way as to make them more (but not fully) conforming with the Zoning By-law's set back requirement.

The ZBA upheld the Building Inspector's determination that the subject property constituted a cottage colony and was therefore, subject to the limitations in Section 4710 of the Zoning By-law concerning conversion to single-family dwelling use under

5

separate ownership. The ZBA also denied the special permit petition for relocation of the cottages for the reason that the proposed conversion to single-family dwelling use, under separate ownership, would have violated Section 4710. Forestdale appealed the ZBA's decisions by filing a complaint in the Barnstable Superior Court. Forestdale subsequently dismissed its Superior Court Complaint appealing the ZBA's decision, "with prejudice" in 1996. That dismissal acted as a final adjudication of the appeal, leaving the ZBA's decision undisturbed and the underlying zoning issues resolved in favor of the Town of Sandwich. At the time of the dismissal, Forestdale, through its attorney, agreed to limit the Property to seasonal occupancy based upon the then-Building inspector's determination that the Zoning By-law would not prohibit the conversion to condominium form of ownership (as opposed to single-family, separate ownership) provided that the cottages were restricted to seasonal use. **Defendants Exhibit 2 – Stipulation of Dismissal; Defendants Exhibit 3 – Letters dated August 17, 1995 and September 19, 1995 to and from the Building Inspector.** Moreover, Forestdale had already created a condominium for the property and recorded the Ploughed Neck Condominium Master Deed in 1995 without any seasonal use restrictions thereby violating further provisions of Section 4710 which prohibit conversion of a nonconforming cottage colony "to single-family use under condominium ...or any other single-family dwelling use more intensive or frequent than seasonal or intermittent use, unless the lot meets the minimum requirements for Cluster Developments as set forth in Section 4440." According to the Master Deed, the Ploughed Neck Condominium consisted of the entire Property, i.e., all six cottages and the land as shown on the 1994 ANR Plan. The cottages/units were to be owned by individual Condominium unit owners, while the common areas were to consist of the "entire premises" including the land on which the units were located. Only Unit 1 was

6

sold, while Forestdale continued to own the other five units. **Defendants Exhibit 4 – Master Deed Condominium and Termination of Condominium.**

The Condominium unit owners subsequently voted in 2001 to revoke the Condominium. Thus as a result of the revocation of the Condominium, all the unit owners became proportionate shareowners of the Property as a whole. Up until the time of the revocation, there were only two unit owners. Unit 1 (the subject cottage) was owned by Paulette Sasville, Trustee of Paulette Sasville Realty Trust (the "Trust") while Forestdale retained ownership of the remaining units. The June 2001 document revoking the Condominium also purports to include the conveyance of all of the Trust's interest in the Property (including Unit 1) to Forestdale while Forestdale purported to convey its interest in Unit 5 and the land shown on the ANR Plan as Lot 5 to the Trust. Forestdale then conveyed its interest in the Property to West Yarmouth Lodgings, Inc, the vice president, treasurer and clerk of which was Mr. Harry B. Miller, Jr. (also the president of Forestdale). West Yarmouth Lodgings, Inc. in turn sold Lots 1, 2, 3, 4 and 6 shown on the ANR Plan each with a cottage to individual buyers in 2001.

Prior to their sale of the cottages to individual buyers in 2001, attorney Julie Molloy (the Plaintiff's attorney here) advised the then owner of the property, Mr. Miller of West Yarmouth Lodgings, Inc., that she believed that "these properties are legitimate single-family residences, in compliance with the Town of Sandwich Protective Zoning Bylaws." **Defendants Exhibit 5.** This despite the Town's prior and known position on the subject and despite the dismissal of the prior lawsuit with prejudice in favor of the Town on this very issue. **Defendants Exhibit 2.** The subject cottage and lot at 9 Ploughed Neck Road was sold by West Yarmouth Lodgings to the Plaintiff in September 2002.

7

The Plaintiff's cottage was damaged by fire on or about October 2, 2003.
**Defendants Exhibit 6 – Sandwich Fire Department Incident Report.** Following the
fire, the Plaintiff applied for a building permit to repair the cottage. The Building
Inspector requested an opinion from Town Counsel, Kopelman and Paige, as to
whether or not a building permit may issue in connection with the proposed rebuilding
of the cottage. Town Counsel advised that in her opinion, the Building Inspector was
correct in her assessment that the proposed rebuilding would be in violation of the
Sandwich Protective Zoning By-law as neither the cottage nor the lot on which it is
located complies with the Zoning By-law and neither the cottage nor the lot has the
benefit of any "grandfather" protections. **Defendants Exhibit 1.** In a letter dated March
12, 2004, Town Counsel advised the Building Inspector:

> In my opinion, the revocation of the Condominium brought the entire Property
> (land and cottages) back under a single, undivided ownership, as it had been
> prior to the creation of the Condominium and the original sale of Condominium
> unit No. 1. The revocation of the Condominium did not, in my opinion, lawfully
> divide ownership of the property such that each former condominium unit was
> left on a lot of land which could be conveyed out into separate ownership. The
> purported division of ownership recited in the 2001 Condominium revocation
> document occurred, illegally, in my opinion, because it included a conveyance of
> one of the cottages and a lot of land to separate ownership in violation of Section
> 4701 of the Zoning By-law. This violation destroyed any grandfathered
> protections the nonconforming Cottage Colony may have enjoyed at this point.
> The violation was compounded when West Yarmouth Lodgings, Inc. conveyed
> the five individual cottages and lots in 2001 and 2002.

Town Counsel further opined that:

> Pursuant to Section 4701 of the Zoning By-law a Cottage Colony "may not be
> converted to single- family dwelling use under separate ownership <u>unless the lot
> upon which each building is located complies with the minimum requirements
> for single-family dwellings in the zoning district in which the land is located.</u>"
> [emphasis added]. The same Zoning By-law provision applied in 1994 when the
> ANR Plan showed the division of the Property into the six lots, and in 1995 when
> the Building Inspector advised the then-owner of the subject property
> (Forestdale) that Section 4710 applied to prevent the conversion to separate
> single-family dwelling uses. Clearly, Forestdale accepted the applicability of
> Section 4710 when it created the Condominium in 1995 and dismissed its appeal
> from the ZBA's decision <u>with prejudice</u> in 1996.

8

If, following the revocation of the Condominium, the entire Property had remained in common ownership as provided in G.L. c. 183A, § 19, and if the Property had continued in seasonal use only, the Cottage Colony would have continued as a lawfully pre-existing nonconforming use, in my opinion. When the ownership of the Property was divided, however, such division was in violation of Section 4710, in my opinion, and the resulting individually-owned cottages and lots are not lawful under the Zoning By-law. Further, if the use of the Property changed from seasonal to year-round, the Cottage Colony would have lost its previously protected nonconforming use status, even if held under one, undivided ownership.

As stated in this firm's previous opinion letters on this subject in 1994, 1995, 1997 and 2001, the "lots" shown on the 1994 ANR plan have no status as legal lots for single family use merely by virtue of having been shown on the plan as endorsed by the Planning Board. Moreover, because those lots have subsequently come into separate ownership, the entire Property is in violation of the Zoning By-law. Therefore, it is my opinion that you may refuse to issue a building permit for any repairs, rebuilding, expansions or alterations of the cottages, including No. 9 Ploughed Neck Road.

**Defendants Exhibit 1.**

The Building Inspector denied the Plaintiff's application for a building permit. The Plaintiff filed an appeal of the denial of her building permit application and simultaneously filed applications for a special permit and for variance relief with the ZBA. Public hearings were held by the ZBA on the Plaintiff's permit applications on October 12, 2004, November 23, 2004 and December 14, 2004. By decisions dated December 14, 2004, the ZBA denied the Plaintiff's special permit application and affirmed the decision of the Building Inspector denying the Plaintiff's application for a building permit. By a decision dated March 4, 2005, the ZBA also denied the Plaintiff's variance request. **Defendants Exhibit 7 – Variance Decision, Appeal of Decision of Building Inspector Certificate of Action, and Special Permit Certificate of Denial.**

III.    **Argument**

The Plaintiff makes the same arguments as those made by the prior property owners in their attempt to convert a cottage colony to single family dwellings. Those

arguments were rejected by the ZBA then, and were again rejected by the ZBA when the Plaintiff submitted her appeal of the Building Inspector's denial of her application for a building permit, her application for a special permit and her request for a variance. While the Plaintiff seeks to complicate the matter, the crux of all of her claims is her erroneous assertion that the ANR endorsement by the Planning Board in October 1994 gave the property zoning validity. The statutes and case law are clear however, that an ANR endorsement applies only with respect to the inapplicability of the Subdivision Control Law, G.L. c. 41, §§ 81P and 81L, and does not give the endorsed plan any zoning validity. Accordingly, while the Defendants admit that the Planning Board endorsed the ANR Plan in 1994, and that the ANR plan shows a cottage on each of the six lots, the endorsement of the ANR plan does not mean that the lots have any zoning validity or that the undersized lots shown on the ANR Plan could be lawfully conveyed out under separate ownership for single family dwelling use, absent zoning relief. Accordingly, the Plaintiff cannot prevail on any of the five counts contained in her Amended Complaint as she will not be able to show that the Defendant's interpretation of the Zoning Act, G.L. c. 40A, §6 and the Town of Sandwich Protective By-laws violates the Home Rules Procedures Act, violates the Subdivision Control Law or that the ZBA's decisions were incorrect, arbitrary, capricious, whimsical or legally untenable. Further, the Plaintiff will not be able to show that the ZBA's decisions constituted spot zoning.

A. **The Endorsement of the ANR Plan did not Exempt the Cottage Colony From the Town of Sandwich Zoning Bylaws and the Defendants Interpretation and Application of its Bylaws Is Not Inconsistent With Any General Law In Violation of the Home Rule Act.**

1. **The ANR Endorsement Did Not Give the Property Zoning Validity**

The Plaintiff claims that because of the Planning Board's endorsement of the ANR Plan in October 1994, the cottage colony is exempt from the Town of Sandwich

10

Protective Zoning By-laws (the "Zoning By-laws") specifically Section 4710, the Cottage Colony Conversion By-law, because each of the cottages was now located on it's own lot and therefore no longer met the definition of the term "cottage colony". This argument highlights the Plaintiff's misplaced belief that an ANR endorsement somehow gives the property zoning validity as the Plaintiff admits that the lots were undersized at the time of the ANR endorsement and did not comply with the Zoning By-laws at the time that the ANR Plan was endorsed in October 1994. Section 4710 of the Zoning By-laws in existence in 1994, states in relevant part:

> **4710. Cottage Colonies.** Any existing cottage colony may not be converted to single –family dwelling use under separate ownership unless the lot upon which each building is located complies with the minimum requirements for single family dwellings in the zoning district in which the land is located, and such non-conforming cottage colony may not be converted to single-family use under condominium, cooperative, time sharing or any other single-family dwelling use more intensive or frequent than seasonal or intermittent use, unless the lot meets the minimum requirements for Cluster Developments, as set forth in Section 4440.

It is undisputed that at the time the ANR Plan was endorsed the subject lot upon which the cottage is located did not comply with the minimum requirements for single family dwellings in the zoning district in which the cottage colony was located. As such, regardless of the ANR endorsement, the lots could not be converted to single-family dwelling use under separate ownership, as they did not meet the lot size required under the zoning by-laws for single-family dwellings at the time of the ANR endorsement. The endorsement of the ANR Plan creating six lots on the original parcel,

11

did not create six dimensionally conforming lots. Unless each lot has the required area and other dimensions required for the proposed single-family use it is not lawful to create such new lots or to change the use of the property regardless of the number of lots that are formed through the approval not required (ANR) process.  As the Courts have noted, "just because a lot can be divided under this exception [to the Subdivision Control Law] does not mean that the resulting lots will be buildable under the zoning [bylaw]." Citgo Petroleum Corp. v. Planning Board of Braintree, 24 Mass. App.Ct. 425 (1987). "[A]n endorsement under G.L. c. 41, §81P, gives a parcel of land "no standing under the zoning ordinance." Smalley v. Planning Board of Harwich, 10 Mass. App. Ct. 599, 603 (1980).

As the endorsement of the ANR Plan in 1994 did not exempt the property from the zoning bylaws, including the dimensional requirements contained in the By-laws for single family use and for the conversion of a cottage colony, and as it is not disputed that the lot upon which the cottage is located did not comply with the minimum requirements for single family dwellings in the zoning district in which the cottage colony was located at the time the ANR Plan was endorsed, the lots could not be converted to single family dwelling use under separate ownership as the Plaintiff claims.

2.    **The Defendants' interpretation of the Zoning By-Laws Does Not Violate the Home Rule Act.**

The Plaintiff believes that the Defendants' interpretation of the zoning by-laws as set forth above is "untenable" and in violation of the limits placed upon municipalities under the Home Rule Act, G.L. c. 43B, § 13.[2]  Specifically, the Plaintiff asserts that both

---

[2] .  Specifically the Plaintiff claims that the "defendants' position, in reliance upon Town Counsel's opinions, that the division of land through the endorsement of an 'approval under the

the Town's Cottage Colony zoning by-law and its Non-Conforming Lots zoning by-law and the Town's interpretation of these zoning by-laws are "impermissibly inconsistent with the Subdivision Control Law, rendering the lawful division of land containing two or more structures since before the adoption of Subdivision Control, unlawful under zoning, unless, the resultant lots meet dimensional requirements in effect when such an ANR Plan is endorsed." See Plaintiffs' Memorandum of Law at p. 7. Whether or not the Plaintiff has standing to bring a claim under the Home Rule Act, the Defendants' interpretation and application here of the two zoning by-laws is not inconsistent with the Subdivision Control Law and therefore does not violate the Home Rule Act, G.L. c. 43B, § 13.

The Plaintiff is correct that the Courts have made clear, that a "municipality's planning board may not refuse to endorse an ANR plan, where two or more structures have existed since before the municipality adopted the Subdivision Control Law, and the ANR plan divides the property such that each structure is located on its own lot, despite the fact that the resultant lots do not meet then-current dimensional requirements." See Plaintiff's Memorandum of Law at p. 5 citing, Citgo Petroleum Corp. v. Planning Board of Braintree, 24 Mass. App. Ct. 427 (1987) and Smalley v. Planning Board of Harwich, 10 Mass. App. Ct. 604 (1980). The Plaintiff fails to read

---

subdivision control law not required,' commonly known as an 'ANR plan,' pursuant to G.L. c. 41, s. 81L by virtue of the provision that a parcel of land upon which two or more structures have existed since before the municipality adopted the Subdivision Control Law (G.L. c. 81K et seq.), such that each structure is located on its own lot —as was done in this case—is unlawful, unless, at the time of the endorsement of such an ANR plan, the resulting lots, each containing their own structure, met the zoning dimensional requirements in effect as of the date of endorsement of the ANR plan as required under Sections 2550 and 4710 of the Sandwich zoning by-laws", is untenable and a twisting of the zoning bylaws in violation of the Home Rule Act. See Plaintiff's Memorandum of Law in Support of Her Motion For Summary Judgment ("Plaintiff's Memorandum of Law") at p. 3.

further into the cases cited. The Court in <u>Citgo</u>, went on to state that "just because a lot can be divided under this exception does not mean that the resulting lots will be buildable under the zoning ordinance. <u>Citgo</u>, 24 Mass. App. Ct. 425, 427 (1987). Likewise, the Court in <u>Smalley</u> opined that a § 81P endorsement "gives the lots no standing under the zoning ordinance…. In acting under § 81P, a planning board's judgment is confined to determining whether a plan shows a subdivision." <u>Smalley</u> at p. 604. Further the <u>Smalley</u> Court opined that "[n]or can we say that the recording of a plan showing a zoning violation, as this one does, can serve no legitimate purpose. The recording of a plan such as the plaintiff's may be preliminary to an attempt to obtain a variance, or to buy abutting land which would bring the lot into compliance, or even to sell the nonconforming lot to an abutter and in that way bring it into compliance. In any event, nothing that we say here in any way precludes the enforcement of the zoning by-law should the recording of her plan eventuate in a violation." <u>Id</u> at p 604. The definition of the word "lot" sets out nothing but physical characteristics rather than zoning limitations.

The Defendants' position here and in past actions taken concerning the property is entirely consistent with the Courts' rulings in similar cases, that an ANR endorsement by a Planning Board does <u>not</u> give the property zoning validity. Rather a Planning Board's judgment to endorse an ANR plan under section 81P, is confined to determining whether a plan shows a subdivision. Here the Planning Board in October 1994, by its endorsement of the ANR Plan merely determined that the Plan did not show a subdivision under the Subdivision Control Act. The subsequent actions taken by the ZBA in applying the zoning by-laws to the property were not inconsistent with the purpose and intent of the Subdivision Control Law, specifically that portion of the statute that required the Planning Board to endorse the ANR Plan signifying that the

14

land did not show a "subdivision" as defined in the Subdivision Control Law. As set forth in the cases cited above, nothing in the Subdivision Control Law precludes the enforcement of zoning by-laws and nothing in the Subdivision Control Law requires that the lots resulting from an ANR endorsement be buildable. It cannot be disputed that the resulting lots do not comply with the dimensional requirements contained in the zoning by-laws to allow for the conversion of a cottage colony to single family dwelling use to be conveyed out under separate ownership. The fact that the prior property owner sold the lots to separate owners does not negate the zoning by-laws and does not make the bylaws and their application impermissibly inconsistent with the Subdivision Control Law.

### 3.    Sections 4710 and 2550 of the Zoning By-laws do not Violate the Zoning Act, M.G.L. c. 40A.

The Plaintiff also appears to argue that sections 4710 and 2550 of the zoning by-laws violate section Six of the Zoning Act, General Laws, chapter 40A because the by-laws do not serve any legitimate zoning purpose. <u>See</u>, Plaintiff's Memorandum of Law at pp. 5, 6, 8, 9, and 1 4. Specifically, the Plaintiff asserts that there "is no legitimate reason why structures so divided on this type of an ANR plan should not be considered a "structure lawfully in existence" under the first paragraph of Section 6 –certainly the division of properties containing structures pre-dating the adoption of Subdivision Control, such that each structure is situated on its own lot, is lawfully done pursuant to G.L. c. 41, §§ 81L and 81." <u>See</u> Plaintiff's Memorandum of Law at p. 6. The Plaintiff claims that because the structures predate the adoption of Subdivision Control, they are entitled to protections set forth in the first paragraph of the Zoning Act, G.L. c. 40A, § 6. <u>See</u> Plaintiff's Memorandum of law at p. 9. She argues that the second "except" clause in section 6 provides protection to the cottages because it provides residential structures

15

preferential zoning treatment when the proposed changes to a nonconforming residential structure will not increase its nonconforming nature. The Plaintiff correctly cites the Land Court's decision in <u>Norwell Arch v. The Norwell Zoning Board of Appeals</u>, 12 LCR 208 (May 24, 2004) in which the Court opines that, "[t]o fully protect single and two-family residential structures, G.L. c. 41, § 81L and chapter 40A, § 6 must be read together." The Special Permit Granting Authority cannot merely deny the request on the grounds that the structure is nonconforming as a result of a G.L. c. 41, § 81L endorsement, without first determining "whether the proposed changes to the nonconforming residential structure will increase its nonconforming nature." <u>Norwell Arch v. Norwell Zoning Board of Appeals</u>, 12 LRC at p. 10. The Plaintiff does not properly apply the <u>Norwell Arch</u> decision to the facts here and does not properly apply Section 6 of the Zoning Act in that she refuses to recognize that her cottage is not a single family dwelling afforded such protection and that once the Ploughed Neck property allegedly changed from seasonal to year round use, the property, even if held under one, undivided ownership, lost its previously protected nonconforming use status. Accordingly, the inquiry to be made under <u>Norwell Arch</u>, (whether the proposed changes to the nonconforming residential structure would increase the nonconforming nature of the property) is not relevant as the property had lost its previously protected nonconforming use status when the lots were sold to individual ownership for year-round single family use. If, following the revocation of the Condominium, the Ploughed Neck property had remained in common ownership and if the property had continued in a seasonal use only, the cottage colony (not the plaintiff's lot under separate ownership) would have continued as a lawfully preexisting nonconforming use. When the ownership of the property was divided the resulting individually owned cottages and lots were not lawful under the Zoning By-

16

law as such division was in violation of Section 4710.  Further, if the use of the Property

changed from seasonal to year-round, the Cottage Colony would have lost its

previously protected nonconforming use status, even if held under one, undivided

ownership

The Cottage Conversion By-law and the Non-conforming Lots Zoning By-law do

not violate Section 6 of the Chapter 40A simply because the Plaintiff does not like the

result when those by-laws are applied to her lot that when conveyed to her was not

lawful under the Zoning By-law and when changed from seasonal to year round use

lost its previously protected nonconforming use status.  As the By-laws are not

inconsistent with the Zoning Act, they do not violate the Home Rule Act as the Plaintiff

claims.  Accordingly, Count I of the Plaintiff's Complaint must be dismissed and

judgment entered in favor of the Defendants.

## II.    The Defendants' Interpretation of Zoning By-laws and the Zoning By-laws Themselves Do Not Constitute Spot Zoning.

Spot zoning occurs when there is a singling out of one lot for different treatment

from that accorded to similar surrounding land indistinguishable from it in character,

all for the economic benefit of the owner of that lot.  See, Rando v. Town of North

Attleborough, 44 Mass. App. Ct. (1998).  "Amendments [to zoning by-laws] that impose

more restrictive treatment on given parcels than is imposed on other parcels in the same

zoning district are often characterized as "reverse spot zoning"  W.R. Grace & Co. v. Cit

of Cambridge, 56 Mass.App.Ct. 559, 569 (2002). Here, the Plaintiff's lot has not been

singled out for different treatment from that accorded to similar surrounding land

indistinguishable from it in character for the economic benefit of the owner of that land

and no amendment to any zoning by-law has imposed a more restrictive treatment on

her lot than that imposed on parcels similarly situated in the same zoning district.

Certainly, the lots that make up the cottage colony and other cottage colonies in the Town of Sandwich have been treated in a like manner.

The Plaintiff's arguments that this in fact constitutes "reverse spot zoning" are nonsensical. First, she appears to be simply repeating her argument that an endorsement of an ANR plan does or should exempt the lots created from any zoning requirements in effect at the time that the plan is endorsed and once endorsed the lots created are lawful for purposes of zoning. The Plaintiff's argument again is not correct. The case law is clear, that the endorsement of an ANR plan does not give a lot any zoning validity but rather, an ANR endorsement applies only with respect to the inapplicability of the Subdivision Control Law as discussed above.

Next, the Plaintiff claims that Section 2550 of the Zoning By-law constitutes "spot zoning" because "it limits its protection from increases in zoning only to those properties developed after zoning was adopted by the Town which occurred in 1960, some six years after the Town adopted Subdivision Control in Sandwich and is thus inherently unconstitutional and constitutes 'spot zoning' or singling out of those properties lawfully developed after zoning was adopted for protection from increases in zoning thereby providing an economic benefit to those properties, while depriving those properties lawfully developed before zoning was adopted from those protections." See, Plaintiff's Memorandum of Law at 15, 16. How this convoluted argument relates to the Plaintiff's property is not clear, as the Plaintiff's lot was not "created" by the endorsement of an ANR plan until 1994, well after the adoption of zoning in the Town of Sandwich. At that time the lot did not comply with the dimensional requirements contained in the zoning by-laws and should not have been conveyed to individual owners for single family use. The fact that it was affords it no greater protection and does not make the application of a bylaw that applies to lots that

18

at one time did comply with the dimensional requirements spot zoning. Had the property remained under common ownership and continued in seasonal use, only the cottage colony would have continued as a lawfully preexisting nonconforming use. When the Property was divided, however, such division was in violation of 4710 and the resulting individually owned cottages and lots were not lawful. The intensity and use regulation contained in Section 2550 of the zoning by-laws as applied to nonconforming lots such as the Plaintiffs does not violate Chapter 40A, Section 6 but rather, seeks some protection for previously created non-conforming lots that complied with the dimensional requirements when created from the application of amended intensity of use regulations as allowed by Chapter 40A. The Zoning Act generally permits cities and towns to adopt any zoning provisions which are constitutionally permissible. The constitutional test is whether the by-law is clearly arbitrary and unreasonable, having no substantial relation to the public health, safety morals or general welfare. W.R. Grace v. Cambridge City Council, 56 Mass. App. Ct. at 566. As Section 2550 is wholly consistent with the protections afforded under Chapter 40A, the by-law is clearly reasonable and does not constitute spot zoning or "reverse spot zoning".

Further, the Plaintiff seeks to compare her property to the "numerous **single family residences** located within the same zoning district and in the area surrounding plaintiff's property", Plaintiff's Memorandum of Law at p. 19 (emphasis added). The Plaintiff's cottage is not considered a single family dwelling for zoning purposes merely because the prior owner conveyed the cottages and lots to individual owners for single family dwelling use. To prevail on her constitutional claims against the Defendants, the Plaintiff must compare herself to similarly situated properties in like zoning districts in the Town of Sandwich. The properties similarly situated to the Plaintiff's are not single-

family residences, but are in fact other cottages colonies. As the Plaintiff is no doubt aware, similar issues have arisen with other cottage colonies in the Town of Sandwich and those properties have been treated similarly to that of the Plaintiff's property. **Defendants Exhibit 8 – Complaint in <u>Molloy v. Cleveland,</u>** Barnstable Superior Court C.A. No. 04-587. The Plaintiff's property has not been singled out but rather, she has been treated the same as compared to other similarly situated properties.[3]

Finally, the Plaintiff argues that the "cottages" by virtue of the fact that they predate both the adoption of the Subdivision Control and zoning in Sandwich do not derogate from the goal of "preventing the overcrowding of land" as set forth in Section 1100(a) of the Town of Sandwich Zoning By-laws, since the structures already existed. The Plaintiff totally ignores the plain fact that the cottages as they existed prior to the adoption of the Subdivision Control Law and zoning were just that, cottages that were all located on one parcel with common ownership used seasonally or intermittently. While the cottages did exist, they were not for single family dwelling use. Any such conversion to a use more intensive or frequent without the appropriate dimensional requirements, <u>does </u>derogate from the very purpose of the zoning bylaws.

As the Plaintiff will not be able to show that the Town of Sandwich Zoning By-laws constitute spot zoning or "reverse spot zoning", Count V of her Complaint must be dismissed and judgment entered in favor of the Defendants.

---

[3] In her Memorandum of Law the Plaintiff cites to a building permit issued to another owner of a cottage on Ploughed Neck Road. As the Plaintiff is no doubt aware the property owner at 15 Ploughed Neck Road sought a permit to re-shingle her cottage which requires only a " quick permit" issued by the building department and not necessarily reviewed by the Building Inspector.

III.    **The Defendants Denial of the Plaintiff's Special Permit Application, Request for Variance and Decision upholding the Building Inspector's Denial of her Building Permit Applications were not arbitrary Capricious whimsical and legally untenable.**

In Counts II, III and IV of her Complaint, the Plaintiff claims that the ZBA's decisions in denying her Special Permit Application, denying her Variance Request and in upholding the Building Inspector's denial of her application for a building permit are arbitrary, capricious, whimsical and legally untenable. Nothing was arbitrary or capricious about the decisions. What is abundantly clear is that the prior property owners, with Mr. Miller's interest in the property as a constant, cannot accept that the cottage colony that he purchased in 1994 may not be converted to single-family dwelling use under separate ownership. After proper notice was given, a public hearing was held on October 12, November 23 and December 14, 2004. During the hearing the Plaintiff was allowed to submit evidence and the ZBA heard testimony. After the close of the hearing the ZBA reviewed the Plaintiff's application, the plan and all other materials submitted prior to the close of the hearing and gave due consideration to the testimony given at the public hearing. The ZBA then issued three separate written decisions on each application containing its findings. Among other findings, the ZBA found :

Appeal of Decision of Building Inspector:

1.    The applicant states that 9 Ploughed Neck Road is used as a single-family dwelling. The Board of Appeals finds that no information was submitted by the applicant to contradict determinations made by Town Counsel and the Building Inspector that the use remains a cottage colony as shown by information contained in the public record for this matter...

21

3.      ....the conveyance of the property to individual owners to be used as
single-family dwellings created a zoning violation because the conveyance took
place without complying with Section 4710.

4....Town Counsel's [letter] of March 12, 2004 to the Building Inspector
chronicles the history of the use and ownership of this property. ...

5.      ....the plan endorsed under Section 81L does not legitimize the single-
family dwelling use.

8.      ...the information submitted by the applicant to show that the year round
use of the property pre-dates the adoption of zoning in Sandwich was
insufficient.

**Defendants Exhibit 1.** Such findings were contained in the three written decisions
issued, and based on their findings the ZBA denied the Plaintiff's application for a
special permit, denied the Plaintiff's appeal of the building inspector's denial of her
application for a building permit and denied her variance request. All three decisions
were based on substantial evidence in the record and were anything but whimsical,
arbitrary or capricious.

Likewise, as set forth in Sections I and II above, the ZBA's decisions were not
legally untenable. Rather what is untenable, is the fact that the prior property owner
sold the subject cottage to the Plaintiff under separate ownership knowing full well the
legal status of the property and that the Town did not agree with his or his attorney's
opinion that the cottages were "legitimate single-family residences, in compliance with
the Town of Sandwich Protective Zoning By-laws." **Defendants Exhibit 5.**

Since the endorsement of the ANR Plan in October 1994, the property owners (of
which Mr. Miller has been a constant presence) have tried to convert the former cottage
colony to six single-family dwellings to be conveyed out under separate ownership and

to be used year round to no avail. The prior property owner, knowing that the Defendants would not allow such a conversion of a cottage colony to single family dwelling use without compliance with the zoning bylaws, conveyed the lots and cottages thereon out under separate ownership anyway. His doing so does not somehow legally convert the cottage colony to single family dwellings where the conversion could not have occurred prior to the sale of the lots to individual owners. If the Plaintiff has any recourse, it is against the prior property owner who misrepresented the status of the property sold.

### Conclusion

Wherefore, the Defendants respectfully request that this Honorable Court deny the Plaintiff's Motion for Summary Judgment and grant the Defendants' Cross Motion For Summary Judgment entering judgment in favor of the Defendant as to all claims contained in the Plaintiff's Amended Complaint.

Respectfully submitted,
The Defendants,
Town of Sandwich, et al,
By their attorneys,


/s/ Deborah I. Ecker
Leonard H. Kesten, BBO# 542042
Deborah I. Ecker, BBO# 554623
BRODY, HARDOON, PERKINS & KESTEN, LLP
One Exeter Plaza
Boston, MA 02116
(617) 880-7100

DATED: January 31, 2006

23

LEONARD KOPELMAN
DONALD G. PAIGE
ELIZABETH A. LANE
JOYCE FRANK
JOHN W. GIORGIO
BARBARA J. SAINT ANDRE
JOEL B. BARD
EVERETT J. MARDER
PATRICK J. COSTELLO

JOSEPH L. TEHAN, JR.
WILLIAM HEWIG III
THERESA M. DOWDY

KOPELMAN AND PAIGE, P.C.

ATTORNEYS AT LAW
101 ARCH STREET
BOSTON, MASSACHUSETTS 02110-1137

BOSTON OFFICE
(617) 951-0007
FAX (617) 951-2735

NORTHAMPTON OFFICE
(413) 585-8632

WORCESTER OFFICE
(508) 752-0203

DEBORAH A. ELIASON
JEANNE S. MCKNIGHT
JUDITH C. CUTLER
ANNE-MARIE M. HYLAND
RICHARD BOWEN
CHERYL ANN BANKS
DAVID J. DONESKI
SANDRA CHARTON
BRIAN W. RILEY
MARY L. GIORGIO
KATHLEEN E. CONNOLLY
JOHN G. GANNON
KURT B. FLIEGAUF
MICHELE E. RANDAZZO



RECEIVED
9
TOWN OF SANDWICH
PLANNING AND DEVELOPMENT

December 29, 1994

Theodore Misiaszek
Building Inspector
270 Quaker Meetinghouse Road
East Sandwich, MA  02537

Re: Lots 1-6 Ploughed Neck Road
    Barnstable Plan Book 506, Page 85.

Dear Mr. Misiaszek,

You have requested an opinion regarding the zoning status of six structures located on property known as "Lots 1-6 Ploughed Neck Road" (the "Property"). It is my understanding that the Planning Board endorsed a plan for these lots as "Approval Not Required" under the Subdivision Control Law on October 19, 1994. You have determined that all but one of the six structures historically has been used only for seasonal or intermittent use and that the structures are, therefore, a "cottage colony" as defined by Article VII-2 of the Protective Zoning By-Law. It is my further understanding that the Property's owners claim that each of the six lots contains "a single-family residence which predates zoning" located on it and that their legal counsel has asked for your concurrence with this claim.

It is my opinion that you should advise the present owners of the Property, through their legal counsel, of your opinion that the Property constitutes a "cottage colony" under Article 4710 of the Protective Zoning By-Law and, as such, may not be converted to single-family dwelling use under separate ownership unless the lot upon which each building is located complies with the minimum requirements for single family dwellings in the zoning district in which the property is located.

The Planning Board apparently endorsed the plan in reliance upon the exception found in G.L.c.41, §81L that "the division of a tract of land on which two or more buildings were standing when the subdivision control law went into effect ... shall not constitute

KOPELMAN AND PAIGE, P.C.

Theodore Misiaszek
December 29, 1994
Page 2

a subdivision." However, this endorsement does not mean that the resulting lots are buildable under the Zoning By-law. See, <u>Citgo Petroleum Corp.</u> v. <u>Planning Board of Braintree</u>, 24 Mass. App. Ct. 425, 427 (1987). It will be up to you, as the Town's Zoning Enforcement Officer pursuant to Article 1240, to enforce the Zoning By-law in the event that the recording of the plan endorsed by the Planning Board results in a zoning violation. See, <u>Smalley</u> v. <u>Planning Board of Harwich</u>, 10 Mass. App. Ct. 599, 604 (1980).

If you have any questions regarding this matter, please, do not hesitate to call me.

Very truly yours,

Judith C. Cutler

JCC/IMQ/fe

LEONARD KOPELMAN
DONALD G. PAIGE
ELIZABETH A. LANE
JOYCE FRANK
JOHN W. GIORGIO
BARBARA J. SAINT ANDRE
JOEL B. BARD
EVERETT J. MARDER
PATRICK J. COSTELLO

JOSEPH L. TEHAN, JR.
WILLIAM HEWIG III
THERESA M. DOWDY
DEBORAH A. ELIASON

## KOPELMAN AND PAIGE, P. C.

ATTORNEYS AT LAW

101 ARCH STREET

BOSTON, MASSACHUSETTS 02110-1137

BOSTON OFFICE
(617) 951-0007
FAX (617) 951-2735

NORTHAMPTON OFFICE
(413) 585-8632

WORCESTER OFFICE
(508) 752-0203

JEANNE S. MCKNIGHT
JUDITH C. CUTLER
ANNE-MARIE M. HYLAND
RICHARD BOWEN
CHERYL ANN BANKS
DAVID J. DONESKI
SANDRA CHARTON
ILANA M. QUIRK
BRIAN W. RILEY
MARY L. GIORGIO
KATHLEEN E. CONNOLLY
JOHN G. GANNON
KURT B. FLIEGAUF
MICHELE E. RANDAZZO
PETER J. FEUERBACH

February 10, 1995

Mr. Theodore Misiaszek
Building Inspector
Office of the Building Inspector
270 Quaker Meetinghouse Road
East Sandwich, MA 02537

Re:  Forestdale Realty, Inc.
     Lots 1-6 Ploughed Neck Road
     Barnstable Plan, Book 506, Page 85

Dear Mr. Misiaszek:

You have requested an opinion regarding the assertion by Forestdale Realty Inc., ("Forestdale) through its counsel, that the property known as "Lots 1-6 Ploughed Neck Road" (the "Property") does not constitute a "cottage colony" as defined by Article VII of the Sandwich Protective By-Law (the "Zoning By-Law").  The basis for Forestdale's contention is that the Property does not fit the definition of a "cottage colony" because one of the six units located on the Property contains more than 480 square feet.  I have reviewed the exchange of letters, both dated January 26, 1995, between you and Michael A. Dunning, counsel for Forestdale.  I have also reviewed the plan for the Property that was endorsed by the Sandwich Planning Board, as approval not required under the Subdivision Control Law ("ANR"), on October 19, 1994.  It is my understanding that six dwellings are located on the Property and that five out of the six contain less than 480 square feet.

In my opinion, as set forth in greater detail below, Mr. Dunning's contention that the Property does not constitute a "cottage colony" within the meaning of Article IV, §4700 and as defined by Article VII of the Zoning By-Law because one of the six units contains more than 480 square feet is incorrect.



BUILDING DEPARTMENT
DATE: 2-17-95
RECEIVED

PRINTED ON RECYCLED PAPER

KOPELMAN AND PAIGE, P.C.
Mr. Theodore Misiaszek
Building Inspector
February 10, 1995
Page 2

A "cottage colony" is specifically defined by the Zoning By-Law as:

> <u>Two or more</u> detached seasonal dwellings located on the same lot, each designed for independent family living and including cooking facilities, and each containing not more than 480 square feet.  Zoning By-Law, Article VII (Definitions).  [Emphasis added].

The Zoning By-Law further provides that any existing "cottage colony" may not be converted to singe-family use under separate ownership unless the lot upon which each building is located complies with the minimum requirements for single family dwellings. Zoning By-Law, Article IV, §4700.  It is not disputed that, after the enactment of Articles IV and VII of the Zoning By-Law and up until October 19, 1994, the six units located on the Property were located on the same lot and that five out of the six units contain less than 480 square feet.

Mr. Dunning's assertion that "if one of the dwellings has an area greater than 480 square feet, then it follows that the dwellings on this lot cannot be determined to be a "cottage colony," does not comport with the basic principles relating to construction of by-law language.  It is well settled that the language of a zoning by-law must be followed where it is clear and unambiguous; and, that when such a by-law is unclear or ambiguous, it must be read in its complete context and be given a sensible meaning within that context and that the intent of the by-law is to be ascertained from all its terms and parts as well as the subject matter to which it relates.  <u>Murray</u> v. <u>Board of Appeals of Barnstable</u>, 22 Mass. App. Ct. 473, 478 (1986).

In my opinion, the language set forth in the definition of a "cottage colony" clearly and unambiguously defines a cottage colony as "two or more detached seasonable dwellings" that meet certain conditions.  Zoning By-Law, Article VII.  In my further opinion, the fact that an additional dwelling that does not meet all of the required conditions for a cottage colony is located on the same lot with "two or more" that do is immaterial.  The required conditions contained in the definition of a "cottage colony" modify the term "two or more detached seasonable dwellings," not the term "the same lot".  Furthermore, even if the language of the definition of a "cottage colony" were not as clear and unambiguous as it is, any lack of clarity or ambiguity would be cured by the language in Article IV, §4700 which supplies both the context and intent of the by-law to prevent the conversion of under-sized seasonal or intermittent-use structures, as in this case, to single-family

KOPELMAN AND PAIGE, P.C.
Mr. Theodore Misiaszek
Building Inspector
February 10, 1995
Page 3

dwelling use unless each such structure is located on a lot that complies with underlying zoning requirements.

As this firm opined to you in its letter dated December 29, 1994, the effect of the ANR endorsement by the Planning Board on October 19, 1994 does not mean that the resulting lots are buildable under the Zoning By-Law.  See, Citgo Petroleum Corp. v. Planning Board of Braintree, 24 Mass. App. Ct. 425, 427 (1987). Even if Forestdale's contention were correct, moreover, neither the Zoning By-law nor G.L. c. 40A authorize the division of the property into lots which fail to conform to the By-law's minimum dimensional requirement for single-family house lots. Consequently, whether or not the property is regarded as a "cottage colony", zoning relief is necessary before Forestdale can validly treat the Property as six separate lots, in my opinion.

If you have any questions regarding this matter, please do not hesitate to contact me.

Very truly yours,

Judith C. Cutler

JCC/IMQ/nh
cc:  Board of Selectmen

LEONARD KOPELMAN
DONALD G. PAIGE
ELIZABETH A. LANE
JOYCE FRANK
JOHN W. GIORGIO
BARBARA J. SAINT ANDRE
JOEL B. BARD
EVERETT J. MARDER
PATRICK J. COSTELLO

JOSEPH L. TEHAN, JR.
WILLIAM HEWIG III
THERESA M. DOWDY
DEBORAH A. ELIASON

KOPELMAN AND PAIGE, P. C.

ATTORNEYS AT LAW

101 ARCH STREET

BOSTON, MASSACHUSETTS 02110-1137

BOSTON OFFICE
(617) 951-0007
FAX (617) 951-2735

NORTHAMPTON OFFICE
(413) 585-8632

WORCESTER OFFICE
(508) 752-0203

JEANNE S. MCKNIGHT
JUDITH C. CUTLER
ANNE-MARIE M. HYLAND
RICHARD BOWEN
CHERYL ANN BANKS
DAVID J. DONESKI
SANDRA CHARTON
ILANA M. QUIRK
BRIAN W. RILEY
MARY L. GIORGIO
KATHLEEN E. CONNOLLY
JOHN G. GANNON
KURT B. FLIEGAUF
MICHELE E. RANDAZZO
PETER J. FEUERBACH

RECEIVED
JUN 1 1995
Zoning Board
of Appeals

May 30, 1995



CONFIDENTIAL - NOT A PUBLIC DOCUMENT

Zoning Board of Appeals
Sandwich Town Hall
130 Main Street
Sandwich, MA 02563

Re:  Forrestdale Realty, Inc. v. Joseph Killory, et al.
     (Sandwich Zoning Board of Appeals)
     Barnstable Superior Court C.A. No. 95-25-CV-340

Dear Members of the Zoning Board of Zoning:

Enclosed please find a letter from the attorney for Forrestdale Realty, Inc., expressing his client's willingness to impose a seasonal restriction on the use of the six cottages in order to achieve a settlement of the above-referenced action.

As you may recall, this matter involves Forrestdale Realty, Inc.'s appeal of the Board's decision denying an application for a special permit under Section 2420 of the Sandwich Zoning By-laws to change a six-unit pre-existing, cottage colony by relocating five of the six dwellings. The ultimate intent of the applicant was to divide ownership of the land on which the cottages are located into separate, nonconforming lots. The Board denied the application on the grounds that the conversion of the cottage colony into separate, single-family dwellings would violate the limits set forth in Section 4710 of the Zoning By-laws which require each lot to conform to current, dimensional requirements. The Board's decision went on to say that the proposed conversion would necessitate zoning relief beyond that requested by the applicant.

It is unclear whether Forrestdale is seeking an opportunity to remand the matter to the Board for further consideration of the special permit application, or for consideration of other

KOPELMAN AND PAIGE, P.C.

**CONFIDENTIAL – NOT A PUBLIC DOCUMENT**
Zoning Board of Appeals
Page 2
May 30, 1995

zoning relief, i.e., dimensional variances.  In my opinion, the latter relief is needed to accomplish Forrestdale's objectives.

Please review the enclosed proposal and advise me whether or not the Board would be willing to grant either the original special request or a variance request under the condition that the cottages are restricted to seasonal use.  If the Board is willing to proceed on either basis, I will ask the plaintiff's attorney to draft up a stipulation for remand and a new hearing. I look forward to hearing from you within the next two weeks regarding your position.

Thank you in advance for your assistance.  Please do not hesitate to contact me if you have any questions concerning this matter.

Very truly yours,

Judith C. Cutler

JCC/ma
Enc.
cc:  Board of Selectmen (w/o enc.)

LEONARD KOPELMAN
DONALD G. PAIGE
ELIZABETH A. LANE
JOYCE FRANK
JOHN W. GIORGIO
BARBARA J. SAINT ANDRE
JOEL B. BARD
EVERETT J. MARDER
PATRICK J. COSTELLO
JOSEPH L. TEHAN, JR.
ANNE-MARIE M. HYLAND
THERESA M. DOWDY
DEBORAH A. ELIASON
RICHARD BOWEN

EDWARD M. REILLY
DIRECTOR WESTERN OFFICE

WILLIAM HEWIG III
JEANNE S. McKNIGHT
JUDITH C. CUTLER
KATHLEEN M. O'DONNELL

**KOPELMAN AND PAIGE, P. C.**

ATTORNEYS AT LAW

31 ST. JAMES AVENUE

BOSTON, MASSACHUSETTS 02116-4102

(617) 556-0007
FAX (617) 654-1735

PITTSFIELD OFFICE
(413) 443-6100

NORTHAMPTON OFFICE
(413) 585-8632

WORCESTER OFFICE
(508) 752-0203

DAVID J. DONESKI
SANDRA M. CHARTON
ILANA M. QUIRK
PATRICIA A. CANTOR
JOHN R. HUCKSAM, JR.
THOMAS P. LANE, JR.
BRIAN W. RILEY
ROBERT PATTEN
MARK R. REICH
MARY L. GIORGIO
KATHLEEN E. CONNOLLY
CHRISTOPHER J. GROLL
MICHELE E. RANDAZZO
DARREN R. KLEIN
THOMAS W. MCENANEY
JONATHAN M. SILVERSTEIN
TIMOTHY J. ERVIN
KATHARINE I. GOREE
CHRISTOPHER J. POLLART
LISA V. WHELAN
LAURA N. KLING
GREGG J. CORBO
AMANDA ZURETTI

February 8, 1999

BY FACSIMILE (508) 888-8655

Zoning Board of Appeals
Sandwich Town Hall
130 Main Street
Sandwich, MA 02563

Re:     127 Main Street -
        Special Permit for Bed and Breakfast on Newly Created Nonconforming Lot

Dear Members of the Board of Appeals:

You have requested an opinion concerning whether the premises at 127 Main Street may be lawfully used as a so-called bed and breakfast. The above referenced property is a non-conforming lot, recently created pursuant to a provision of the subdivision control law that allows such division without subdivision approval, where a parcel contains multiple buildings in existence on the date the subdivision control law went into effect in a particular community. The remainder of the original lot is now in separate ownership and contains a barn, with the applicant for a special permit seeking permission to use the residence for commercial lodging as a bed and breakfast. I understand that neither of the two lots meets the Zoning Bylaw's current dimensional standards.

In my opinion, both lots are in violation of the Zoning Bylaw and neither is eligible for a special permit to conduct a new use. Endorsement of a plan creating two lots on the original parcel did not create two dimensionally conforming lots, and the grant of a special permit for the requested use will not cure the dimensional violation. Unless each lot has the required area and other dimensions presently required for conducting the proposed use, it is not lawful to create such new lots or to change the use of the property, regardless of the number of lots that are formed through the approval not required (ANR) process.

KOPELMAN AND PAIGE, P.C.

Zoning Board of Appeals
February 8, 1999
Page 2

The Zoning Bylaw expressly provides at Section 1330 that special permits may not issue when the proposal would create "derogation from the intent of the by-law. . . ." In my opinion, the violation of the dimensional requirements of the district in which the land is located is derogation from the intent of the Zoning Bylaw. As the court noted in Citgo Petroleum Corp. v. Planning Board of Braintree, 24 Mass. App. Ct. 425 (1987), "just because a lot can be divided under this exception [to the subdivision control law] does not mean that the resulting lots will be buildable under the zoning [bylaw]." The reasoning of Citgo is equally applicable to this proposal for the issuance of a special permit to authorize a use, because regardless of whether a special permit issues, each of the two lots, being newly formed, must comply with all provisions of the current zoning bylaw.

The grant of the requested special permit will not "legitimize" the unlawful use of the lot and structure on either the lot with the barn or the lot containing the residence. While the Board could not grant a variance of any type as part of the pending proceedings, since the procedural requirements have not been met for application and notice prior to a hearing on a variance, the necessary variance or variances could not be lawfully granted on the facts available to me. There appears not to be the unique soil condition or shape of the lot necessary for the grant of a variance, nor is there any apparent hardship. The courts have made it clear that deficient size is not the equivalent of the "shape" referred to in the statute. Further, since the ostensible need for such variances would have been created by the former and present owners, it is solely self-created and not true "hardship." If creating undersized lots by dividing an existing lot could support the grant of a variance, then anyone who so desired would have ample incentive to ignore the dimensional requirements of the Zoning Bylaw.

If the landowner is aggrieved by the denial of the requested special permit in such circumstances as this, he or she has either a bad bargain or a contract dispute with the seller of the lot, not entitlement to relief by the grant of a special permit or variance. If the Board has any additional questions about this matter, I would be happy to address them.

Very truly yours,

Elizabeth A. Lane

EAL/lb
cc:    Board of Selectmen

67982.1/SAND/9999

LEONARD KOPELMAN
DONALD G. PAIGE
ELIZABETH A. LANE
JOYCE FRANK
JOHN W. GIORGIO
BARBARA J. SAINT ANDRE
JOEL B. BARD
EVERETT J. MARDER
JOSEPH L. TEHAN, JR.
ANNE-MARIE M. HYLAND
THERESA M. DOWDY
DEBORAH A. ELIASON
RICHARD BOWEN
DAVID J. DONESKI
JUDITH C. CUTLER
ILANA M. QUIRK
KATHLEEN E. CONNOLLY

EDWARD M. REILLY
DIRECTOR WESTERN OFFICE

DAVID C. JENKINS
WILLIAM HEWIG III
JEANNE S. McKNIGHT

KOPELMAN AND PAIGE, P. C.

ATTORNEYS AT LAW

**Received**

1 ST. JAMES AVENUE

BOSTON, MASSACHUSETTS 02116-4102

OCT 2 5 2001

**Board of Appeals**

(617) 556-0007

FAX (617) 654-1735

PITTSFIELD OFFICE
(413) 443-6100

NORTHAMPTON OFFICE
(413) 585-8632

WORCESTER OFFICE
(508) 752-0203

July 23, 2001

KATHLEEN M. O'DONNELL
SANDRA M. CHARTON
PATRICIA A. CANTOR
THOMAS P. LANE, JR.
BRIAN W. RILEY
MARK R. REICH
MARY L. GIORGIO
CHRISTOPHER J. GROLL
DARREN R. KLEIN
THOMAS W. McENANEY
JONATHAN M. SILVERSTEIN
KATHARINE I. GOREE
GEORGE X. PUCCI
LAUREN F. GOLDBERG
JASON R. TALERMAN
GREGG J. CORBO
AMANDA ZURETTI
LISA CARRABINO ADAMS
ELIZABETH R. CORBO
SUSAN P. PACHT
DANIEL C. HILL
VICKI S. MARSH
BRIAN E. GLENNON, II
JONATHAN D. EICHMAN
AMY E. KWESELL

## BY FACSIMILE (508) 833-0018

Mr. Robert Walton
Building Inspector/Zoning Enforcement Officer
Sandwich Town Offices
16 Jan Sebastian Drive
Sandwich, MA 02563

Re:    Forestdale Realty, Inc. v. Board of Appeals
(Formerly Barnstable Division District Court 9525-CV-340)
Barnstable Superior Court C.A. No. 95-CV00280

Dear Mr. Walton:

You have requested an opinion regarding the status of the above-referenced litigation. As you know, this litigation concerned efforts by Forestdale Realty, Inc. ("FRI") to convert a seasonal cottage colony use at property, that is located in an R-2 Zoning District and known as "Lots 1-6, Ploughed Neck Road" (the "Property"), to a year-round, single-family dwelling use on six separately owned parcels of land.

In my opinion, the 1995 decisions of the Building Inspector and Board of Appeals (i.e., that the Property constitutes a cottage colony and cannot be converted to single-family dwellings on six separate lots to be held in separate ownership) are binding under the res judicata doctrine. In my opinion, therefore, unless and until appropriate zoning relief is obtained for the Property, the Property cannot be used for six separate single-family dwellings that are separately owned.

As set forth below in detail, the 1995 decisions by the Building Inspector and the Board of Appeals initially were appealed, but then were dismissed, with prejudice, by FRI in 1996. Under the res judicata doctrine, a prior judgment may be applied as binding precedent in a current situation, if three elements are present. The three elements are as follows: (1) the parties or their successors must be the same in both the prior adjudication and the current dispute; (2) the disputed cause of action must be the same in both the prior adjudication and the current dispute; and (3) the prior adjudication must be a final judgment. Gloucester Marine Railways Corp. v.

KOPELMAN AND PAIGE, P.C.
Members of the Planning Board
July 23, 2001
Page 2

Charles Parisi, Inc., 36 Mass. App. Ct. 386, 390, review denied, 418 Mass. 1104 (1994). A dismissal that is entered "with prejudice" is 'an adjudication on the merits as fully and completely as if the order had been entered after trial.'" Tuite & Sons, Inc. v. Shawmut Bank, N.A., 43 Mass. App. Ct. 751, 754 91991), quoting Bagley v. Moxley, 407 Mass. 633, 637 (1990).

## HISTORY OF THE LITIGATION:

At some point prior to December of 1994, the Planning Board endorsed a plan as "Approval Not Required" for the Property. I have not reviewed this plan, but understand that it created six separate parcels of land under G.L. c.41, §81L and §81P. Apparently each of the structures was determined to pre-date zoning and, thus, eligible for separate parcel endorsement under §81L. Such an endorsement, however, did not mean that each of the resulting parcels of land conforms to applicable zoning requirements. See, Citgo Petroleum Corp. v. Planning Board of Braintree, 24 Mass. App. Ct. 425, 427 (1987). The Appeals Court has held that, an endorsement under G.L. c.41, §81P gives a parcel of land "no standing under the zoning ordinance." Smalley v. Planning Board of Harwich, 10, Mass. App. Ct. 599, 603 (1980).

On January 27, 1995, the Building Inspector determined that the Property is a "cottage colony," within the meaning of Sandwich Protective Zoning By-law §4710. He further determined that, as a result, the seasonal cottages at the Property may not be converted to single-family dwellings to be held under separate ownership unless and until each cottage is located on a separate lot that complies with the minimum requirements for a building lot in the R-2 District.

During February of 1995, FRI appealed the Building Inspector's decision to the Board of Appeals. In addition, FRI applied to the Board for a special permit for the Property to extend, alter or change a pre-existing nonconforming structure or use to allow the cottages to be used as single-family dwellings. On February 28, 1995, the Board held a public hearing on both matters. On March 15, 1995, the Board of Appeals issued a decision in which it upheld the Building Inspector's January 27, 1995 determination and denied FRI's special permit application. The Board determined that six conforming to support each of the six structures would be required before the proposed single-family use could be allowed, unless variance relief were obtained. No application for such relief had been received.

On April 3, 1995, FRI appealed the Board's decisions to District Court. Thereafter, the litigation was removed to Superior Court. On April 1, 1996, FRI voluntarily dismissed its appeal, with prejudice. It is my understanding that FRI intended to continue what it believed to be a protected seasonal use of the Property. To my knowledge, no variance relief was ever requested or granted to allow the proposed single-family use at the Property.

On April 18, 1997, FRI's counsel contacted Town Counsel and inquired about a "settlement" that had been "worked out" pursuant to which "five of the six dwellings" would be "limited to seasonal use" and asked that the allowed season be expanded. FRI was informed that

KOPELMAN AND PAIGE, P.C.
Members of the Planning Board
July 23, 2001
Page 3

any extension or change to any protected pre-existing, nonconforming use or structure at the Property would require further zoning relief.

On July 16, 2001, FRI's new counsel provided the Director of Planning with an opinion letter in which FRI appears to attempt to renew its earlier claim that the Property consists of six separate lots on which six separately owned single-family dwellings may be located as of right under current zoning provisions.

CONCLUSION:

In summary, it is my opinion that a final adjudication has been obtained that the Property is a seasonal cottage colony and that it may not be converted to a single-family dwelling use, where each cottage is to be separately owned, unless and until appropriate zoning relief is obtained.

If you have further questions regarding this matter, please do not hesitate to contact me.

Very truly yours,

Ilana M. Quirk

IMQ/jmv
cc:    Board of Selectmen
       Board of Appeals
       Director of Planning
132280/sand/0032

LEONARD KOPELMAN
DONALD G. PAIGE
ELIZABETH A. LANE
JOYCE FRANK
JOHN W. GIORGIO
BARBARA J. SAINT ANDRE
JOEL B. BARD
JOSEPH L. TEHAN, JR.
THERESA M. DOWDY
DEBORAH A. ELIASON
RICHARD BOWEN
DAVID J. DONESKI
JUDITH C. CUTLER
KATHLEEN E. CONNOLLY
DAVID C. JENKINS
MARK R. REICH
BRIAN W. RILEY
DARREN R. KLEIN
JONATHAN M. SILVERSTEIN

EDWARD M. REILLY
DIRECTOR WESTERN OFFICE

WILLIAM HEWIG III
JEANNE S. McKNIGHT

**KOPELMAN AND PAIGE, P. C.**

ATTORNEYS AT LAW

31 ST. JAMES AVENUE

BOSTON, MASSACHUSETTS 02116-4102

(617) 556-0007
FAX (617) 654-1735

PITTSFIELD OFFICE
(413) 443-6100

NORTHAMPTON OFFICE
(413) 585-8632

WORCESTER OFFICE
(508) 752-0203

KATHLEEN M. O'DONNELL
SANDRA M. CHARTON
PATRICIA A. CANTOR
THOMAS P. LANE, JR.
MARY L. GIORGIO
THOMAS W. McENANEY
KATHARINE GOREE DOYLE
GEORGE X. PUCCI
LAUREN F. GOLDBERG
JASON R. TALERMAN
JEFFREY A. HONIG
MICHELE E. RANDAZZO
GREGG J. CORBO
RICHARD T. HOLLAND
LISA C. ADAMS
ELIZABETH R. CORBO
MARCELINO LA BELLA
VICKI S. MARSH
JOHN J. GOLDROSEN
SHIRIN EVERETT
BRIAN E. GLENNON, II
JONATHAN D. EICHMAN
LAURA H. PAWLE
TODD A. FRAMPTON
JACKIE COWIN
SARAH N. TURNER

March 12, 2004

BY FACSIMILE - (508) 833-0018

Ms. Donna Boardman
Building Inspector
Sandwich Town Offices
16 Jan Sebastian Drive
Sandwich, MA 02563-2139

Re:  Zoning Status of Property Known As No. 9 Ploughed Neck Road

Dear Ms. Boardman:

You have requested an opinion as to whether or not a building permit may issue in connection with a proposed rebuilding of a cottage which was recently damaged by fire. The subject cottage, which is identified as No. 9 Ploughed Neck Road, is part of a former rental, Cottage Colony which was converted to condominium ownership in 1995. The condominium was subsequently terminated by vote of the unit owners in 2001, and the cottages and land were conveyed out into separate ownership. You have forwarded to me a copy of a January 9, 2004 letter from Attorney Kevin Kirrane, in which Attorney Kirrane contends that the subject cottage is located on a lot, legally created under G.L. c. 41, §81P and that, although the lot does not conform to current lot area requirements, the cottage may be rebuilt lawfully on the lot so as to conform with current setback requirements. You have told me that you believe that a building permit in this instance would violate zoning. Based upon the information available to me, it is my opinion that you are correct in your assessment that the proposed rebuilding would be in violation of the Sandwich Protective Zoning By-law ("the Zoning By-law"), as neither the cottage nor the lot on which it is located complies with the Zoning By-law, and neither the cottage nor the lot has the benefit of any "grandfather" protections.

KOPELMAN AND PAIGE, P.C.

Ms. Donna Boardman
Building Inspector
March 12, 2004
Page 2

<u>Background</u>

The lot to which Attorney Kirrane refers is shown as "Lot 1" on a plan endorsed by the Sandwich Planning Board in October, 1994 as "Approval under the Subdivision Control Law Not Required" ("the ANR Plan"). The ANR Plan showed the division of a former Cottage Colony, owned by Elizabeth Sprague, consisting of approximately two acres of land off Ploughed Neck Road, on which six cottages were located ("the Property"). The ANR Plan shows a division of the Property such that each of the six existing cottages would be located on an individual lot of land. None of the six lots shown on the ANR Plan meet the minimum lot area requirements for the R-2 zoning district in which the Property is located; nor do the cottages shown on the plan meet applicable minimum setback requirements. Nevertheless, because the cottages were constructed in 1948, before the Subdivision Control Law came into effect in the Town, the plan showing a division of the land on which the cottage were located into six separate lots, on each of which lot one of the cottages was to remain standing, did not constitute a "subdivision" of land subject to subdivision control. Accordingly, pursuant to G.L. c. 41, §81P and §81L, the Planning Board was required to signify by means of the ANR endorsement that the 1994 plan of the Sprague land did not show a "subdivision," as defined in the Subdivision Control Law.

It should be noted, however, that an ANR endorsement applies only with respect to the inapplicability of the Subdivision Control Law and does not give the endorsed plan any <u>zoning</u> validity, and does not mean that the resulting lots will be lawful under the local zoning regulations. <u>Smalley</u> v. <u>Planning Board of Harwich</u>, 10 Mass.App.Ct. 599, 603 (1980); <u>Citgo Petroleum Corp.</u> v. <u>Planning Board of Braintree</u>, 24 Mass.App.Ct. 425 (1987). Thus, the undersized lots shown on the ANR Plan could not be lawfully conveyed out as individual lots for single-family dwelling use, absent zoning relief. In fact, shortly after the ANR Plan was signed, the then-Building Inspector, Theodore Misiaszek, determined that all but one of the cottages had been used only for seasonal or intermittent use, that the land and structures thereon constituted a "Cottage Colony" as defined in Article VII-2 of the Zoning By-law then in effect, and that conversion to individual, single-family dwelling use would violate Section 4710 of the Zoning By-law.

A Cottage Colony is no longer a permitted use in the R-2 district. Moreover, Section 4710 of the Zoning By-law expressly prohibits the conversion of a Cottage Colony to single-family dwelling use under separate ownership "unless the lot upon which each building is located complies with the minimum requirements for single-family dwellings in the district in which the land is located." The minimum single-family lot area requirement for the R-2 district in which the Property is located is 60,000 s.f. The lots shown on the ANR plan range in size from 10,367 s.f. to 18,367 s.f., however. The minimum frontage requirement in the R-2 district is 200 feet, whereas only two of

KOPELMAN AND PAIGE, P.C.
Ms. Donna Boardman
Building Inspector
March 12, 2004
Page 3

the lots meet that requirement. None of the cottages are located such that they could conform to the minimum side, rear and front setbacks of the R-2 District.

The Property was conveyed in October, 1994 to Forestdale Realty, Inc. ("Forestdale"). The president and treasurer of Forrestdale was Harry B. Miller, Jr. When Forestdale was advised by Mr. Misiaszek that the subject property constituted a "Cottage Colony" and was, therefore, subject to the limitations in Section 4710 of the Zoning By-law concerning the conversion to single-family use and/or separate ownership, Forestdale appealed the Building Inspector's determination to the Zoning Board of Appeals ("ZBA") and, simultaneously, petitioned the ZBA for a special permit to relocate five of the six cottages in such a way as to make them more (but not fully) conforming with the Zoning By-law's setback requirements.

The ZBA upheld the Building Inspector's determination that the subject property constituted a "Cottage Colony" and was, therefore, subject to the limitations in Section 4710 of the Zoning By-law concerning conversion to single-family dwelling use under separate ownership. The ZBA also denied the special permit petition for relocation of the cottages for the reason that the proposed conversion to single-family dwelling use, under separate ownership, would have violated Section 4710. Forestdale appealed the ZBA's decisions, but ultimately dismissed its appeal "with prejudice" in 1996. As discussed in Attorney Ilana Quirk's opinion to the Sandwich Building Inspector, dated July 23, 2001, that dismissal acted as a final adjudication of the appeal, leaving the ZBA's decision undisturbed, and the underlying zoning issues resolved in favor of the Town. Notably, Attorney Kirrane's firm represented Forrestdale in its appeal and, therefore, should be well-aware of this fact.

At the time of the dismissal, Forestdale, through its attorney, agreed to limit the Property to seasonal occupancy, based upon the then-Building Inspector, Mr. Misiaszek's, determination that the Zoning By-law would not prohibit the conversion to condominium form of ownership (as opposed to single-family, separate ownership) provided that the cottages were restricted to seasonal use. I have found no evidence that the agreed upon seasonal restrictions were ever instituted. Moreover, Forestdale had already created a condominium for the Property and recorded the Ploughed Neck Condominium Master Deed in 1995, without any seasonal use restrictions, thereby violating further provisions of Section 4710 which prohibit conversion of a nonconforming cottage colony "to single-family use under condominium...or any other single-family dwelling use more intensive or frequent than seasonal or intermittent use, unless the lot meets the minimum requirements for Cluster Developments as set forth in Section 4440." The Property exceeds the density limitations for a Cluster Development under Section 4440.

KOPELMAN AND PAIGE, P.C.

Ms. Donna Boardman
Building Inspector
March 12, 2004
Page 4

According to the Master Deed, the Ploughed Neck Condominium ("the Condominium") consisted of the entire Property, i.e., all six cottages (designated as Condominium Units 1, 2, 3, 4, 5 and 6) and the land described as Lots 1, 2, 3, 4, 5, and 6 as shown on the 1994 ANR plan. The cottages/units were to be owned by individual Condominium unit owners, while the common areas were to consist of the "entire premises" including the land on which the units were located. The Condominium unit owners were entitled to an "undivided interest" in the common areas. In fact, it appears that only Unit 1 was sold, while Forestdale continued to own the other five units.

According to the information provided to me, the Condominium unit owners subsequently voted in 2001 to revoke the Condominium. In accordance with the provisions of G.L. c. 183A, §19, which provides for removal of all or a portion of a condominium:

> Upon such removal, the condominium, including all the units...thus removed shall be owned in common by the unit owners... The undivided interest in the property owned in common held by each unit owner shall be equal to the percentage of the undivided interest of such owner in the common areas and facilities.

Thus, as a result of the revocation of the Condominium, all the unit owners became proportionate share owners of the Property, as a whole. Up until the time of the revocation, however, there were only two unit owners. Unit 1 (the subject cottage) was owned by Paulette Sasville, Trustee of Paulette Sasville Realty Trust ("the Trust"), while Forrestdale retained ownership of the remaining units. The June, 2001 document revoking the Condominium, also purports to include a conveyance of all of the Trust's interest in the Property (including Unit 1 and the land shown on the ANR Plan as Lot 1) to Forrestdale, while Forrestdale purported to convey its interest in Unit 5 and the land shown on the ANR Plan as Lot 5 to the Trust. Forrestdale then conveyed its interests in the Property to West Yarmouth Lodgings, Inc., the vice president, treasurer and clerk of which was Mr. Harry B. Miller, Jr. (who was also president and treasurer of Forrestdale). West Yarmouth Lodgings, Inc., in turn, sold Lots 1, 2, 3, 4 and 6 shown on the ANR Plan, each with a cottage, to individual buyers in 2001 and 2002. The subject cottage and lot at 9 Ploughed Neck Road was sold by West Yarmouth Lodgings, Inc. to Patricia Perotti-Cyrus in September, 2002. The cottage has since been damaged by fire.

KOPELMAN AND PAIGE, P.C.
Ms. Donna Boardman
Building Inspector
March 12, 2004
Page 5

<u>Discussion</u>

In my opinion, the revocation of the Condominium brought the entire Property (land and cottages) back under a single, undivided ownership, as it had been prior to the creation of the Condominium and the original sale of Condominium unit No. 1. The revocation of the Condominium did not, in my opinion, lawfully divide ownership of the property such that each former Condominium unit was left on a lot of land which could be conveyed out into separate ownership. The purported division of ownership recited in the 2001 Condominium revocation document occurred, illegally, in my opinion, because it included a conveyance of one of the cottages and a lot of land to separate ownership in violation of Section 4701 of the Zoning By-law. This violation destroyed any grandfathered protections the nonconforming Cottage Colony may have enjoyed at this point. See, Powers v. Building Inspector of Barnstable, 363 Mass. 648, 653 (1973). The violation was compounded when West Yarmouth Lodgings, Inc. conveyed the five individual cottages and lots in 2001 and 2002.

Pursuant to Section 4701 of the Zoning By-law, a Cottage Colony "may not be converted to single-family dwelling use under separate ownership <u>unless the lot upon which each building is located complies with the minimum requirements for single-family dwellings in the zoning district in which the land if located.</u>" [emphasis added]. The same Zoning By-law provision applied in 1994 when the ANR Plan showed the division of the Property into the six lots, and in 1995 when the Building Inspector advised the then-owner of the subject property (Forestdale) that Section 4710 applied to prevent the conversion to separate, single-family dwelling uses. Clearly, Forestdale accepted the applicability of Section 4701 when it created the Condominium in 1995 and dismissed its appeal from the ZBA's decision, <u>with prejudice</u>, in 1996.

If, following the revocation of the Condominium, the entire Property had remained in common ownership, as provided in G.L. c. 183A, §19, and if the Property continued in seasonal use only, the Cottage Colony would have continued as a lawfully preexisting nonconforming use, in my opinion. When the ownership of the Property was divided, however, such division was in violation of Section 4710, in my opinion, and the resulting individually-owned cottages and lots are not lawful under the Zoning By-law. Further, if the use of the Property changed from seasonal to year-round, the Cottage Colony would have lost its previously protected nonconforming use status, even if held under one, undivided ownership.

As stated in this firm's previous opinion letters on this subject in 1994, 1995, 1997 and 2001, the "lots" shown on the 1994 ANR plan have no status as legal lots for single family use merely by virtue of having been shown on the plan as endorsed by the

KOPELMAN AND PAIGE, P.C.
Ms. Donna Boardman
Building Inspector
March 12, 2004
Page 6

Planning Board. Moreover, because those lots have subsequently come into separate ownership, the entire Property is in violation of the Zoning By-law. Therefore, it is my opinion that you may refuse to issue a building permit for any repairs, rebuilding, expansions or alterations of the cottages, including No. 9 Ploughed Neck Road.

Please do not hesitate to contact me if you require further assistance in this matter.

Very truly yours,

Judith C. Cutler

JCC/mjm
Enc.
cc:    Board of Selectmen
215077/SAND/9999

COMMONWEALTH OF MASSACHUSETTS

BARNSTBLE, ss.

SUPERIOR COURT
NO. 95-CV00280

FORESTDALE REALTY, INC.,                    )
                                            )
                Plaintiff,                  )
                                            )
v.                                          )          STIPULATION OF DISMISSAL
                                            )
JOSEPH KILLORY, MADLON CATERINO,            )
WILLIAM DAWES, JOHN BRYANT and              )
LEONARD LANDALL, as they are                )
members of the Zoning Board of              )
Appeals for the Town of Sandwich,           )
                                            )
                Defendants.                 )

        It is hereby stipulated by and between the parties that the
case be dismissed, with prejudice and without costs.

                            Plaintiff,
                            By its attorney,


                            Michael A. Dunning, Esq.
                            DUNNING, FORMAN, KIRRANE & TERRY
                            P. O. Box 560
DATED: April 1 , 1996       Mashpee, MA  02649
                            508-477-6500
                            BBO # 138640


                            Defendant,
                            By its attorney,


                            Judith C. Cutler, Esq.
                            KOPELMAN AND PAIGE, P.C.
                            31 St. James Avenue
                            Boston, MA  02116
                            BBO #

FREST/D4/J/3/14/96

# DUNNING, FORMAN, KIRRANE & TERRY
## COUNSELORS AT LAW

SUITE A
SHELLBACK PLACE
133 Route 28
BOX 560
MASHPEE, MA 02649

MICHAEL A. DUNNING*
KEVIN M. KIRRANE
ELIZABETH A. McNICHOLS
JEROME J. FORMAN**
PAMELA E. TERRY
PETER R. HICKEY
BRIAN F. GARNER
CAROLYN M. GARRAHAN***

508-477-6500
LOWER CAPE 508-255-7816
FAX 508-477-5697

RICHARD L. TERRY
OF COUNSEL

* Also admitted Illinois Bar
** Also admitted New Jersey Bar
*** Also admitted District of Columbia Bar

August 17, 1995

Theodore Misiaszek, Building Inspector
Town of Sandwich
270 Quaker Meetinghouse Road
East Sandwich, MA 02537

Re:  Forestdale Realty, Inc.
     v. Killory, et al

Dear Mr. Misiaszek:

When we met with Attorney Judith Cutler in my office on the date of your deposition back on July 6, 1995, we discussed the resolution of the action against the Board of Appeals by the filing of a Stipulation, which called for a seasonal restriction.

Subsequently, I forwarded a proposed Stipulation to Attorney Cutler, which provided as follows:

"That use of the condominium units is expressly prohibited during the period from November 1st of one year through April 30th of the succeeding year (restricted period herein), except units may be used on an occasional basis during weekends and specified holidays (being Thanksgiving, Christmas, New Years and Easter) by unit owners; provided that no rentals of units during the restricted period shall be permitted.  Further provided, that unit 6, which is a year-round unit, is not subject to the seasonal restriction"

Subsequently, Attorney Cutler advised me that the Board of Appeals, in view of the fact that the settlement was based upon your interpretation of the Zoning By-Law, thought that the best way to handle it would be for you to confirm that the foregoing is your interpretation of the law, and for the appeal of the Board of Appeals decision to be dismissed.



RECEIVED
BUILDING DEPARTMENT
DATE: 8-18-95

Theodore Misiaszek, Building Inspector
August 17, 1995
Page 2

This is acceptable to us, provided that you can confirm in writing that the condominiumization of the property, with the seasonal restriction referred to above, is in conformity with the Zoning By-Law of the Town of Sandwich. Once you have done this, I will, together with Attorney Cutler, provide for the Stipulation of Dismissal of the pending action.

Would you kindly either send me a letter to this effect, or return the enclosed photocopy of this and signify your acceptance of this interpretation on the copy, and return it to me.

For your information, enclosed please find your letter of December 14, 1994, which apparently confirms our joint understanding that unit 6 is a year-round dwelling, and that the others are subject to the seasonal restriction.

Thank you for your attention to this.

Very truly yours,

Michael A. Dunning

MAD/kp
Enclosure

cc:  Judith C. Cutler, Esq.
     Forestdale Realty, Inc.

# TOWN OF SANDWICH

THE OLDEST TOWN ON CAPE COD

(508) 888-4200



OFFICE OF THE BUILDING INSPECTOR

THEODORE MISIASZEK

September 19, 1995

Michael A. Dunning, Esq.
Dunning, Forman, Kirrane & Terry
133 Route 28
Box 560
Mashpee, MA  02649

Re:  Forestdale Realty, Inc.
     v. Killory, et al

Dear Attorney Dunning,

    In answer to your letter of September 13, 1995 I have
agreed to issue moving permits to Mr. Miller provided that the
lots are recombined into one lot and that the seasonal restrictions
be left in place, thereby bringing the property into compliance
with zoning as a seasonal use only and as a preexisting, nonconforming
use, which will allow for moving of the structures without a special
permit provided they meet setbacks for the year the lot was created.

                              Sincerely,

                              Theodore Misiaszek
                              Building Inspector

TM/cbs

231-033

BP:09581-0262 95-03-08  3:59 #11303

## MASTER DEED

## OF

## PLOUGHED NECK CONDOMINIUM

Forestdale Realty, Inc., a Massachusetts corporation, with a principal address of 33 Route 130, Forestdale, MA 02644 ("Declarant" herein), the sole owner of the premises in the Town of Sandwich, Barnstable County, MA, hereinafter described, by duly executing and recording this Master Deed does hereby submit said premises to the provisions of Chapter 183A of the General Laws of Massachusetts and proposes to create and does hereby create a condominium to be governed by and subject to the provisions of Chapter 183A, and to that end declares and provides the following:

1. **Name:** The name of the condominium shall be

PLOUGHED NECK CONDOMINIUM

2. **Description of Land:** The premises which constitute the condominium consist the land, with the buildings thereon, situated in the Town of Sandwich, Barnstable County, MA and described in Exhibit "A", annexed hereto and made a part hereof.

3. **Description of the Buildings:** There are six (6) buildings designated, described, containing units and consisting of stories as follows;

a. There are six Buildings, each consisting of one story, of wood frame construction with asphalt shingle roof. Each said building has a crawl space or partial cellar and contain one unit, designated Units 1, 2, 3, 4, 5 and 6.

1

*Margin handwritten notes:*
Page 55, Page
Plan Book 570, Plan Book
Site Plans:
Floor Plan:
Ploughed Neck Rd
E. Sandwich, MA - Locus

24

Bk 13898 Pg190 #38697
06-01-2001 @ 03:59p

### Termination of Condominium
### and Condominium Association

WHEREAS, the Condominium known as Ploughed Neck Condominium was created by Master Deed, recorded with the Registry of Deeds for Barnstable County, at Book 9581, Page 262; and

WHEREAS, the By-laws for the Condominium are recorded with the Registry of Deeds for Barnstable County, at Book 9581, Page 286; and

WHEREAS, all of the Unit Owners are desirous of terminating this Condominium and the Master Deed pertaining to the same, in accordance with Section 19 of Chapter 183A of the General Laws, as reflected on a plan of land recorded with the Registry of Deeds for Barnstable County, at Plan Book 510, Page55; and

WHEREAS, in 1995, a Plan was approved by the Town of Sandwich Planning Board and thereafter duly recorded with the Registry of Deeds for Barnstable County, at Plan Book 506, Page 85, pursuant to Sections 81L and 81P of Chapter 41; and

WHEREAS, upon termination of this Condominium, Forestdale Realty, Inc. shall own, and Paulette Sasville as Trustee of the Paulette Sasville Realty Trust hereby conveys all right title and interest she may have to, Units No. 2, 3, 4, 5, and 6, as depicted on a site plan of condominiums recorded with the Barnstable County Registry of Deeds, Plan Book 510, Page 55, also reflected as Lots Nos. 1, 2, 3, 4, and 6 on a plan of land recorded with the Registry of Deeds for Barnstable County, at Plan Book 506, Page 85, pursuant to Sections 81L and 81P of Chapter 41, and Paulette Sasville as Trustee of Paulette Sasville Realty Trust shall own, and Forestdale Realty, Inc. hereby conveys all right title and interest it may have to, Unit No. 1, as reflected on a site plan of condominiums recorded with the Barnstable County Registry of Deeds, Plan Book 510, Page 55, and also reflected as Lot No. 5 on a plan of land recorded with the Registry of Deeds for Barnstable County, at Plan Book 506, Page 85, pursuant to Sections 81L and 81P of Chapter 41; and

WHEREAS, Forestdale Realty, Inc., conveyed out Unit No. 1, on a site plan of condominiums recorded with the Barnstable County Registry of Deeds, Plan Book 510, Page 55, together with all buildings or structures located thereon, and which Unit and parcel is further depicted as Lot No. 5 on a plan of land recorded with the Barnstable County Registry of Deeds, Plan Book 506, Page 85, of the Ploughed Neck Condominium, to Paulette Sasville, as Trustee of Paulette Sasville Realty Trust, on February 2, 1996, together with a sixteen and sixty-seven one hundredths (16.67 %) percent interest in all common areas and facilities; and

WHEREAS, upon and in connection with the termination of the condominium and master deed, Paulette Sasville, as Trustee of the Paulette Sasville Realty Trust and Forestdale Realty, Inc., hereby convey to Forestdale Realty, Inc.,

all right title and interest they may have in or to Lots 1, 2, 3, 4, and 6, together with all buildings or structures located thereon, as further depicted on a plan of land recorded with the Barnstable County Registry of Deeds, Plan Book 506, Page 85, also shown as Units No. 2, 3, 4, 5, and 6, on a site plan of the Ploughed Neck Condominium, recorded with the Barnstable County Registry of Deeds, Plan Book 510, Page 55; and

WHEREAS, Forestdale Realty, Inc., and Paulette Sasville, as Trustee of the Paulette Sasville Realty Trust, hereby convey to Paulette Sasville, as Trustee of the Paulette Sasville Realty Trust, all right title and interest they may have to and/or in Lot No. 5, together with all buildings or structures located thereon, as reflected on a plan of land recorded with the Registry of Deeds for Barnstable County, at Plan Book 506, Page 85, pursuant to Sections 81L and 81P of Chapter 41, and also shown as Units No. 1 on a site plan of the Ploughed Neck Condominium, recorded with the Barnstable County Registry of Deeds, Plan Book 510, Page 55; and

The Unit owners hereby unanimously vote and agree to terminate this Condominium and do so terminate the same, effective immediately. Further, the organization of unit owners is hereby dissolved. Water service as provided by the Town of Sandwich Water District to the Lots Nos. 1, 2, 3, 4, 5, and 6, shall be due and payable upon receipt by each of the owners of Lots Nos. 1, 2, 3, 4, 5, and 6, in equal one-sixth shares, until such time as each such Lot owner installs or causes to be installed for each such Lot separate water metering in accordance with the requirements of the Town of Sandwich Water District.

These Lots are further described as follows:

Unit No. 4/Lot No. 2:    Containing eighteen thousand three hundred and sixty seven (18,367) square feet, more or less, and beginning at the southwesterly corner of Ploughed Neck Road and land now or formerly owned by Robert A. Rousseau et ux., thence running North 36° 14' 20" West for one hundred and fifty (150.00) feet , more or less, to a point and corner;

THENCE running North 19° 32' 52" East for one hundred and fifteen (115.00) feet, more or less, along property now or formerly owned by C.C.J. Nominee Trust, Jonathan and Logan Clark, Trustees, to the property line of Unit/Lot No. 3;

THENCE running North 84° 41' 25" East for one hundred and eight (108.66) feet, more or less, to a point and corner;

THENCE running South 78° 26' 28" East for eight two (82.00) feet, more or less, to a driveway;

THENCE running North 03° 34' 06" West along said driveway depicted on a plan recorded with the Barnstable County Registry of Deeds at Plan Book 506, Page 85, for forty-three (43.27) feet, more or less, to the property line of Lot No. 1;

THENCE running South 60° 34' 32" East for sixty-four (64.07) feet, more or less, to a point and corner;

THENCE running North 51° 57' 25" East for one hundred and forty-seven (147.39) feet, more or less, to a point and corner;

THENCE running North 36° 35' 20" West for one hundred and five (105.00) feet, more or less, to Ploughed Neck Road;

THENCE running South 53° 24' 40" West for forty (40.00) feet, more or less to the point of beginning.

Unit No. 5/Lot No. 1:   Containing seventeen thousand and fifty-three (17,053) square feet, more or less, and beginning at the point where Lot No. 2, Lot No. 1, and the driveway shown on a plan recorded with the Barnstable County Registry of Deeds at Plan Book 506, Page 85, and thence running along Ploughed Neck Road South 53° 24' 40" West for one hundred forty (140.51) feet, more or less, to the property line with Lot No. 2, along Ploughed Neck Road;

THENCE running North 36° 35' 20" West for one hundred and five (105.00) feet, more or less, to a point and corner;

THENCE running North 51° 57' 25" East for one hundred and forty-seven (147.39) feet, more or less, to a point and corner;

THENCE running South 60° 34' 32" East for sixty-four (64.07) feet, more or less, to the driveway depicted on a plan recorded with the Barnstable County Registry of Deeds at Plan Book 506, Page 85;

THENCE running North 03° 34' 06" West along said driveway depicted on a plan recorded with the Barnstable County Registry of Deeds at Plan Book 506,

Page 85, for sixty (60.33) feet, more or less, to the point of beginning.

**Unit No. 3/Lot No. 3:**     Containing fourteen thousand nine hundred and forty-four (14,944) square feet, more or less, and beginning at the point where Lot No. 2, Lot No. 3, and the driveway, shown on a plan recorded with the Barnstable County Registry of Deeds at Plan Book 506, Page 85, intersect;

THENCE running South 78° 26' 28" East for eight-two (82.00) feet, more or less, to a point and corner;

THENCE running North 19° 32' 52" East for one hundred ninety-seven (196.84) feet, more or less, along property now or formerly owned by C.C.J. Nominee Trust, Jonathan and Logan Clark, Trustees, to Heritage Way;

THENCE running North 86° 49' 510 East for forty (40.00) feet, more or less, along Heritage Way;

THENCE running North 19° 32' 52" East for ninety-three (93.01.00) feet, more or less, to a point and corner;

THENCE running North 51° 06' 36" West for eighty-three (83.06) feet, more or less, a point and corner;

THENCE running North 62° 25' 18" West for sixty (60.00) feet, more or less, to a driveway, depicted on a plan recorded with the Barnstable County Registry of Deeds at Plan Book 506, Page 85;

THENCE running North 03° 34' 06" West along said driveway depicted on a plan recorded with the Barnstable County Registry of Deeds at Plan Book 506, Page 85, for twenty-seven (26.87) feet, more or less, to the point of beginning.

**Unit No. 4/Lot No. 2:**     Containing ten thousand seven hundred and fifty-six (10,756) square feet, more or less, and beginning at the point where Lot No. 3, Lot No. 4, and the driveway, shown on a plan recorded with the Barnstable County Registry of Deeds at Plan Book 506, Page 85, intersect;

THENCE running North 62° 25' 18" West for sixty (60.00) feet, more or less, to a point and corner;

THENCE running North 51° 06' 36" West for eighty-three (83.06) feet, more or less, a point and corner;

THENCE running North 19° 32' 52" East for ninety-three (93.01.00) feet, more or less, to Heritage Way;

THENCE running North 86° 49' 10" East for fifty-two (51.68) feet, more or less, along Heritage Way;

THENCE running North 03° 10' 50" West for one hundred and twenty (120.00) feet, more or less, to a point and corner;

THENCE running North 75° 14' 43" West for forty-eight (48.01.00) feet, more or less, to a driveway, depicted on a plan recorded with the Barnstable County Registry of Deeds at Plan Book 506, Page 85;

THENCE running North 03° 34' 06" West along said driveway depicted on a plan recorded with the Barnstable County Registry of Deeds at Plan Book 506, Page 85, for forty-three (42.62) feet, more or less, to the point of beginning.

**Unit No. 1/Lot No. 5:**    Containing twelve thousand nine hundred and ninety-five (12,995) square feet, more or less, and beginning at the point where Lot No. 4, Lot No. 5, and a driveway, as depicted on a plan recorded with the Barnstable County Registry of Deeds at Plan Book 506, Page 85, intersect;

THENCE running North 75° 14' 43" West for forty-eight (48.01) feet, more or less, to a point and corner;

THENCE running North 03° 10' 50" West for one hundred and twenty (120.00) feet, more or less, to Heritage Way;

THENCE running North 86° 49' 10" East for one hundred and eighty (180.00) feet, more or less, to Ploughed Neck Road;

THENCE running South 03° 10' 50" East for one hundred and thirty-eight (137.63) feet, more or less, along Ploughed Neck Road, to a driveway, as depicted on a plan recorded with the Barnstable County Registry of Deeds at Plan Book 506, Page 85;

THENCE running North 03° 34' 06" West along said driveway depicted on a plan recorded with the Barnstable County Registry of Deeds at Plan Book 506, Page 85, to the point of beginning.

Unit No. 6/Lot No. 6:    Containing thirteen thousand eight hundred forty three (13,843) square feet, more or less, and beginning at the point where Lot No. 5, Lot No. 6, and a driveway, as depicted on a plan recorded with the Barnstable County Registry of Deeds at Plan Book 506, Page 85, intersect;

THENCE running North 03° 34' 06" West along said driveway depicted on a plan recorded with the Barnstable County Registry of Deeds at Plan Book 506, Page 85, for two hundred and forty (239.78) feet, more or less, to Ploughed Neck Road;

THENCE running South 03° 10' 50" East along Ploughed Neck Road, to the point of beginning, as as depicted on a plan recorded with the Barnstable County Registry of Deeds at Plan Book 506, Page 85.

WHEREAS, Forestdale Realty, Inc., hereby conveys and transfers all right, title and interest it has in Lots Nos. No. 1, 2, 3, 4, and 6, as reflected on a plan of land recorded with the Registry of Deeds for Barnstable County, at Plan Book 506, Page 85, pursuant to Sections 81L and 81P of Chapter 41, to West Yarmouth Lodgings, Inc.

Witness our hands and seals this 30 day of May 2001.

Forestdale Realty, Inc.
By:

_Harry B. Miller Jr_

Harry Miller, President
and duly authorized representative of
Forestdale Realty, Inc.

## COMMONWEALTH OF MASSACHUSETTS

BARNSTABLE, ss.                                    May 31, 2001

The personally appeared before me the above-named Harry Miller, President, and acknowledged the execution of the foregoing to be his free act and deed, and duly authorized on behalf of Forestdale Realty, Inc.

Julie C. Molloy, Notary Public
My Commission expires 10/18/02

Paulette Sasville Realty Trust
By:

Paulette Sasville, Trustee
and duly authorized representative of
Paulette Sasville Realty Trust

## COMMONWEALTH OF MASSACHUSETTS

BARNSTABLE, ss.                                    May 31, 2001

The personally appeared before me the above-named Paulette Sasville, Trustee and acknowledged the execution of the foregoing to be her free act and deed, duly authorized on behalf of the Paulette Sasville Realty Trust..

VALDO KISS    , Notary Public
My Commission expires: 11/8/02

**BARNSTABLE REGISTRY OF DEEDS**

# J. Court Molloy
### ATTORNEY AT LAW

ADMITTED: MA, UT, RI & ME
US DISTRICT COURT (MA & CO)
US CIRCUIT COURT (1ST & 10TH)
US SUPREME COURT

379 ROUTE 6A
E. SANDWICH, MA 02537
TEL. (508) 833-3707
FAX (508) 833-3711

June 26, 2001



Mr. Harry B. Miller, Jr., Vice President
West Yarmouth Lodgings, Inc.
P.O. Box 946
Forestdale, Massachusetts 02644

    Re:    _17 Ploughed Neck Road, East Sandwich MA_

Dear Mr. Miller:

    In recent discussions with the Town of Sandwich Building Inspector, Mr. Robert F. Walton, expressed concerns regarding property owned by West Yarmouth Lodgings, Inc., which is located at 17 Ploughed Neck Road, in East Sandwich ("the "Property"). This letter addresses those concerns, and lead to the inescapable conclusion that these properties are legitimate single-family residences, in compliance with the Town of Sandwich Protective Zoning Bylaws, and indeed, in congruence with the R-2 residential zoning in the East Sandwich area.

1.    Current Status of Ownership of the Property:

    Although in 1995 the property had been "condominiumized" pursuant to G.L. c. 183A, §1, et seq., the Unit Onwers of the Condominium voted to terminate the condominium in accordance with anda s provided in G.L. c. 183A, §19, which termination was recorded with the Barnstable County Registry of Deeds as a condition precedent to this Loan. Section 19 is entitled "_Removal of Condominium or Portion Thereof from Provisions of Chapter [183A]_," and provides as follows:

    (a)    Seventy-five per cent of the unit owners, or such greater percentage as is stipulated in the by-laws, may remove all of a condominium or portion thereof from the provisions of this chapter by an instrument to that effect, duly recorded, provided that the holders of all liens upon any of the units affected consent thereto by instruments duly recorded. Upon such removal, the condominium, including all the units, or the portion

Mr. Harry B. Miller, Jr., Vice President
June 26, 2001
Page 2

---

thereof thus removed shall be owned in common by the
unit owners and the organization of unit owners shall be
dissolved, unless it is otherwise provided in the removal
instrument. The undivided interest in the property
owned in common held by each unit owner shall be
equal to the percentage of the undivided interest of such
owner in the common areas and facilities.

(b)     Such removal shall not bar the subsequent resubmission
of the land and buildings involved to the provisions of
this chapter.

G.L. c. 183A, §19.

2.    The ANR Plan:

In "undoing" the condominium, the property reverted back to its prior status,
which was that of six separate lots, created pursuant to Section 81P of Chapter 41.
This statute provides that a Planning Board must endorse a plan for which approval
is not required under the subdivision control law when:

. . . the board finds that the plan does not require such
approval, . . . , and such endorsement shall be
conclusive on all persons. Such endorsement shall not
be withheld unless such plan shows a subdivision.

G.L. c. 41, §81P.

With respect to the Property, the Subdivision Control Law did not and does not
apply because the Property falls within an exception to the Subdivision Control
Law, as set forth in the definitions section of the same, Section 81L of Chapter 41,
which states, in pertinent part:

. . . *the division of a tract of land on which two or more*
*buildings were standing when the subdivision control*
*law went into effect* in the city or town in which the
land lies *into separate lots on each of which one of such*
*buildings remains standing*, shall not constitute a
subdivision.

G.L. c. 41, §81L (emphasis added).

Mr. Harry B. Miller, Jr., Vice President
June 26, 2001
Page 3

---

The validity of this provision has been expressly addressed and upheld by the Appeals Court for the Commonwealth of Massachusetts, in the matter of *Citgo Petroleum Corp. v. Planning Board of Braintree*, 24 Mass. App. Ct. 425, 509 N.E.2d 284 (1987). In this decision, the Appeals Court rejected the Town of Braintree Planning Board's argument that such a division of land constituted a subdivision and had to comply with frontage requirements. The Appeals Court's comments in that decision are very pertinent here, and accordingly are set forth in detail:

> The general revision of the Subdivision Control Law effected by St. 1953, c. 674, §7, inserted into G. L. c. 41, §81L, which defines "subdivision", a new exclusion: namely, *"[T]he division of a tract of land on which two or more buildings were standing when the subdivision control law went into effect in the city or town in which the land lies into separate lots on each of which one of such buildings remains standing ...."* Perhaps the existence of the exclusion is not widely known; perhaps it is so clear as not to require interpretation. For whatever reason, we find no reported case in which the effect of the exclusion has been determined. . . .
>
> . . .
>
> As applied to this case, the text of the statutory exclusion is unambiguous, . . . . *The exclusion for lots with two or more buildings is distinct from the more commonly used exception, also in §81L, for plans where every lot has the requisite frontage on a public way or other suitable way as defined in the statute.* Thus, the board's argument that the lot to be sold . . . lacks adequate frontage misses the point. If plans under the provision in question must also qualify under the frontage exception, then the provision in question is surplusage. . . . [T]his language in §81L is not the result of legislative oversight. The original versions of the Subdivision Control Law, appearing in St. 1936, c. 211, and St. 1947, c. 340, did not contain this exception. It was added, as mentioned above, in the 1953 general revision. The legislative history of the 1953 statute shows that the drafters were quite aware of what they were doing, although it does not explain their reasons. *Report of the Special Commission on Planning and Zoning, 1953 House Doc. No. 2249, at 54.* . . . , a building, to qualify under this provision, must have been

Mr. Harry B. Miller, Jr., Vice President
June 26, 2001
Page 4

---

in existence when the Subdivision Control Law went into effect in the town. . . . . In short, we see no sufficient reason to refuse application of the plain language of the exclusion in this case.

*Citgo Petroleum Corp. v. Planning Board of Braintree*, 24 Mass. App. Ct. 425, 509 N.E.2d 284 (1987).

The Property received an endorsement as a Plan of Land for which Approval under the Subdivision Control Law is not required (an "ANR Plan") from the Planning Board for the Town of Sandwich on October 19, 1994. This ANR Plan was recorded with the Barnstable County Registry of Deeds, Plan Book 506, Page 85 ("ANR Plan") shortly thereafter.

This ANR endorsement was made properly because all of the structures on the Property were constructed in 1948, as per the records maintained by and available for review at the Board of Assessors for the Town of Sandwich. The Town of Sandwich did not adopt the Subdivision Control Law or zoning until the 1950s. *See also SMI Investors (Delaware), Inc. v. Planning Board of Tisbury*, 18 Mass. App. Ct. 408, 466 N.E.2d 525 (1984)("The endorsements of a planning board – whether an approval of a plan under §81U or a notation that approval is not required under §81P – are a prerequisite to recordability of the plan, §81X, and hence, as a practical matter, to marketability of the lots shown thereon.") Accordingly, each lot was "legally created" and remains a legal individual lot. Indeed, the Town of Sandwich Planning Board would be required to endorse this Plan again today if you wished to present it for endorsement again as a plan of land for which approval is not required under the Subdivision Control Law.

Further, any challenge to the grant of an ANR endorsement by a planning board is one in the nature of certiorari under G.L. c. 249, §4 and *must* be brought within sixty days after the date upon which the endorsement is made. Thus, any suit challenging the Planning Board's 1994 endorsement of the ANR Plan for the Property, would have had to have been brought no later than December 19, 1994. Therefore the time frame in which any challenge to this ANR endorsement has long since passed.

3.    Status of Lots & Buildings Thereon Under Town of Sandwich Protective Zoning By-laws:

As previously noted, each of the structures located on Lots 1 through 6 were constructed in 1948, at a time when the Town of Sandwich had *not* enacted or adopted any zoning by-laws. As such, these structures were lawfully constructed, and constitute a valid and lawful non-conforming structures as that term is defined

Mr. Harry B. Miller, Jr., Vice President
June 26, 2001
Page 5

---

under Section 2400 of the Protective Zoning By-laws. This Section provides as follows:

> NON-CONFORMING USES. The use of *any structure* or land *lawfully existing at the time of the enactment or subsequent amendment of this bylaw* may be continued *although such structure or use does not conform with provisions of this bylaw,* . . .

Although the Property owner up to 1994, Elizabeth Sprague, operated the structures as a "cottage colony," each unit, when constructed, was available *and outfitted* for year-round usage, *each containing individual heating units.* Because the structures and usage were commenced prior to the adoption or enactment of any zoning, zoning use and setback requirements later adopted or enacted by the Town of Sandwich did not apply to the same. Further, up until the early 1970s, the Property was in fact located in a commercial district, and as such was lawful conforming use. In and after the 1970s, after adoption of an amendment to the zoning by-laws by the Town of Sandwich designating the area in which the Property is located as R-2 Residential, the Property continued as a valid pre-existing, non-conforming commercial use as a year-round cottage colony and/or year-round rental units.

In October 1994, Mrs. Sprague obtained endorsement of the ANR Plan from the Town of Sandwich Planning Board, which rendered the Property a parcel made up of six individual lots, upon each of which there was located, and there remains located, one year-round single-family dwelling unit. Interestingly, as defined under the Town of Sandwich Protective Zoning By-laws, a single-family dwelling is defined therein as:

> DWELLING, SINGLE-FAMILY - One dwelling unit on a single lot irrespective of structure type, ownership or tenure.

A "dwelling" is defined as:

> DWELLING UNIT - Living quarters for a single family and not more than two (2) boarders or lodgers, with cooking, living, sanitary, and sleeping facilities, independent of any other unit.

Mr. Harry B. Miller, Jr., Vice President
June 26, 2001
Page 6

A "cottage colony," the definition of which was adopted at the 1995 Annual Town Meeting, is defined as:

> COTTAGE COLONY - two of more detached seasonal dwellings located *on the same lot*, each designed for independent family living and including cooking facilities.[1]

The facts relating to the Property are that, since 1994, prior to the amendment to the Sandwich zoning bylaws, adding a definition of "cottage colony," each structure *has* been located on a separate lot, with no two structures located on any one lot. Each structure has been equipped for year-round usage since 1948, when they were constructed, and contains cooking facilities (kitchen), sleeping facilities (bedroom), and sanitary facilities (bathroom), independent of "any other unit." Based upon this, it is clear that the structures each constitute a single-family dwelling as defined under the Town of Sandwich Protective Zoning By-laws, and not a "cottage colony."[2]

Because the structures were constructed before *any* zoning by-laws existed in the Town of Sandwich, they need not comply with the "Intensity of Use" regulations as set forth in the current Protective Zoning By-laws because of the provisions of Section 2550, regarding Non-Conforming Lots, of these Protective Zoning By-laws. Section 2550 provides as follows:

> NON-CONFORMING LOTS.    Application of amended Intensity of Use Regulations to previously created lots is limited by Section 6, Chapter 40A [of the General Laws]. *In addition, any increase in lot area, width, depth, frontage, yard or coverage requirements of this by-law shall not apply to the erection, extension, alterations, or moving of a structure on a legally created lot not meeting current requirements*, provided that either the lot is in an exempted subdivision (see Section 2560) . . .

---

[1] This definition was adopted at the Annual Town Meeting held on May 1, 1995.

[2] Incidentally, the definition of "cottage colony" by its very nature seems to imply that the units are single-family dwellings, as it defines the same as structures "designed for independent family living" and requires that they include "cooking facilities." The definition of dwelling unit states "[l]iving quarters for a single family . . ., with cooking, living, sanitary, and sleeping facilities, independent of any other unit." Each structure in question not only each has its own kitchen, but also its own "sanitary" facility (bathroom) and "sleeping" facility (bedroom(s)).

Mr. Harry B. Miller, Jr., Vice President
June 26, 2001
Page 7

Section 6 of Chapter 40A states:

> Except as hereinafter provided, a zoning ordinance or by-law shall not apply to structures . . . lawfully in existence or lawfully begun, . . ., but shall apply . . . to any reconstruction, extension or structural change of such structure and to any alteration of a structure begun after the first notice of said public hearing to provide for its use for a substantially different purpose or for the same purpose in a substantially different manner or to a substantially greater extent except where alteration, reconstruction, extension or structural change to a single or two-family residential structure does not increase the nonconforming nature of said structure
>
> . . .
>
> The provisions of [Section 6] shall not be construed to prohibit a lot being built upon, if at the time of the building, building upon such lot is not prohibited by the zoning ordinances or by-laws in effect in a city or town.

As previously noted, the dwelling units located upon the lots in question were constructed in 1948, at which time the Town of Sandwich had not adopted or enacted _any_ zoning by-laws, and, today, each such structure exists on a legally created lot,[3] each such lot created in accordance with the provisions of the Subdivision Control Law, G.L. c. 41, §81P.

Additionally, as I am sure you are aware, the General Laws provide for limitations upon the enforcement of zoning bylaws or violations thereof, after the expiration of six (6) years regarding structures constructed in accordance with the duly issued building permits, and ten (10 years regarding uses. G.L. c. 40A, §7. Section 7 states, in pertinent part:

> . . . no action, criminal or civil, the effect or purpose of which is to compel the abandonment, limitation or modification of the _use allowed by said permit_ or the _removal, alteration or relocation of any structure erected in reliance upon said permit_ by reason of any alleged

---

[3] It is interesting to note that the Protective Zoning By-laws for the Town of Sandwich do _not_ specifically contain a definition of the term "lot." Instead, the definition of the same is by inference a vacant lot, in light of the definition of single-family dwelling, which states that the same is "one dwelling unit on a _single lot_ irrespective of structure type, ownership or tenure."

Mr. Harry B. Miller, Jr., Vice President
June 26, 2001
Page 8

---

> *violation of the provisions of this chapter*, or of any ordinance or by-law adopted thereunder, shall be maintained, unless such action, suit or proceeding is commenced. . . within six years next after the commencement of the alleged violation of law; and provided, further that no action, criminal or civil, the effect or purpose of which is to *compel the removal, alteration, or relocation of any structure by reason of any alleged violation of the provisions of this chapter, or any ordinance or by-law adopted thereunder, or the conditions of any variance or special permit*, shall be maintained, unless such action, suit or proceeding is commenced . . . lies within ten years next after the commencement of the alleged violation.

G.L. c. 40A, §7 (emphasis added).

The dwellings were constructed sometime in 1948, and, obviously, the time frame for enforcing any violation relative to the buildings themselves has long since passed. Since the cottage colony definition, adopted in 1995, requires that two of more units be located on the same lot, and since from 1994 onward none of these dwellings have been located on the same lot, but instead each has existed on its own separate lot in accordance with the 1994 ANR Plan, the time frame for enforcement of any alleged violation (which my client denies in any event) pursuant to Section 7 of Chapter 40A, has also passed, as has the time frame for appealing the endorsement of the ANR Plan for these lots. Accordingly, the inescapable conclusion is that each structure falls within the definition, under the Town's bylaws, for a single-family residential dwelling, each existing on a legally created lot.

Finally, the wording *"exempted subdivision"* as used in Section 2550 of the Protective Zoning By-laws applies to ANR Plans such as this ANR Plan, by virtue of the fact that there exists no definition of an "exempted subdivision" in the Protective Zoning By-laws. Indeed, Section 2560, to which reference is made, of the Protective Zoning By-laws was deleted at the 1992 Annual Town Meeting. The only logical and rational meaning to be given to the term and wording "exempted subdivision", under these circumstances, is property exempt from the Subdivision Control Law. The only such property which is "exempt" from the Subdivision Control Law is as defined in Section 81L of Chapter 41. This ANR Plan was endorsed by the Town of Sandwich Planning Board as exempt from the Subdivision Control Law, and accordingly, the property falls within the protections of Section 2550 of the Protective Zoning By-laws as an "exempted subdivision."

Mr. Harry B. Miller, Jr., Vice President
June 26, 2001
Page 9

_____

    For all of these reasons, the lots and structures thereon are in compliance with the Town of Sandwich Protective Zoning Bylaws, and constitute single-family dwellings, in conformity with the use designation for that area of Town, which is R-2 residential. I would be happy to discuss this matter with you further, should you have any questions.

                      Very truly yours,

                      Julie C. Molloy

## Sandwich Fire Department

10/02/2003 | 0002436 | 0

**K1**  Person / Entity  Involved

(774) 641-4177

Business name (if applicable) | Phone

| | Paul | | Bestford | |
|---|---|---|---|---|
| Prefix | First Name | MI | Last Name | Suffix |

Check if same address as incident

| 31 | | Conant | | ST | |
|---|---|---|---|---|---|
| Number | Prefix | Street or Highway | | Street Type | Suffix |

| | | Centerville |
|---|---|---|
| Post Office Box | Apt./Suite/Room | City |

| MA | |
|---|---|
| State | Zip |

**K2**  Owner

☐ Same as Person Involved

(508) 833-3570

Business name (if applicable) | Phone

| | William | | Cyrus | |
|---|---|---|---|---|
| Prefix | First Name | MI | Last Name | Suffix |

Check if same address as incident

| 1 | | Palmer | | RD | |
|---|---|---|---|---|---|
| Number | Prefix | Street or Highway | | Street Type | Suffix |

| | | Sandwich |
|---|---|---|
| Post Office Box | Apt./Suite/Room | City |

| MA | 02563 | Insurance Co. | |
|---|---|---|---|
| State | Zip | Total Insurance | |

**L**  Remarks

Received call from water dept. stating personnel on location reporting building fire at address.  On arrival found smoke showing from all sides of cottage approx. 20' X 20'.  A 2 inch pre-connected line extended to front door with vertical ventilation performed prior to entry by removeing rear bathroom window.  Interior attack performed with fire extinguished quickly without incident.  Positive pressure ventilation utilized to remove smoke and gases.  It was determined that the fire originated in the couch in living room from discarded smoking materials.  It was later found the cottage had no electric power at the time of the fire and the meter was removed by NSTAR.  Owner on location and building released to him at photos were taken. Units returned without incident.

RECEIVED

SEP  2 2004

BOARD OF APPEALS

**M**  Authorization

| 100 | X  Thomas A Corriveau | Capt. | Suppressio | 10/02/2003 |
|---|---|---|---|---|
| Officer in charge ID | | Position or Rank | Assignment | Date |
| 100 | X  Thomas A Corriveau | Capt. | Suppressio | 10/02/2003 |
| Member Making Report | | Position or Rank | Assignment | Date |

## Sandwich Fire Department

10/02/2003          0002436     0

**NFIRS-3 Structure Fire**

### I1 Structure Type
1 ☑ Enclosed Building
2 ☐ Portable/mobile structure
3 ☐ Open structure
4 ☐ Air supported
5 ☐ Tent
6 ☐ Open platform (e.g. piers)
7 ☐ Underground structure
8 ☐ Connective structure
0 ☐ Other type of structure

### I2 Building Status
1 ☐ Under construction
2 ☑ Occupied & operating
3 ☐ Idle, not routinely used
4 ☐ Under major renovation
5 ☐ Vacant and secured
6 ☐ Vacant and unsecured
7 ☐ Being demolished
0 ☐ Other
U ☐ Undetermined

### I3 Bldg Height
1

Stories at or above grade level

0

Stores below grade level

### I4 Main Floor Size

400

Total square feet

**OR**

0                    0
Length (ft)   BY   Width (ft)

### J1 Fire Origin
1          ☐ Below grade

Story of Fire Origin

### J2 Fire Spread
2 ☐ Confined to room of origin
3 ☐ Confined to floor of origin
4 ☑ Confined to building of origin
5 ☐ Beyond building of origin

### J3 No. of Stories Damaged by Flame
Count the ROOF as part of the highest story

0 Number of stories w/ minor damage (1 to 24% flame damage)

1 Number of stories w/ significant damage (25 to 49% flame damage)

0 Number of stories w/ heavy damage (50 to 74% flame damage)

0 Number of stories w/ extreme damage (75 to 100% flame damage)

### K Material Contributing Most to Flame Spread
☑ No flame spread OR same as material first ignited OR unable to determine

K1 _____

Item contributing most

K2 _____

Type of material contributing most

### L1 Presence of Detectors
N ☑ None Present
1 ☐ Present
U ☐ Undetermined

### L2 Detector Type
1 ☐ Smoke
2 ☐ Heat
3 ☐ Combination smoke - heat
4 ☐ Sprinkler, water flow detection
5 ☐ More than 1 type present
0 ☐ Other_____
U ☐ Underdetermined

### L3 Detector Power Supply
1 ☐ Battery only
2 ☐ Hardwire only
3 ☐ Plug in
4 ☐ Hardwire with battery
5 ☐ Plugin with battery
6 ☐ Mechanical
7 ☐ Multiple Detectors & PS
0 ☐ Other_____
U ☐ Undetermined

### L4 Detector Operation
1 ☐ Fire too small to activate
2 ☐ Operated
3 ☐ Failed to operate
U ☐ Undetermined

### L5 Detector Effectiveness
1 ☐ Alerted occupants they resonded
2 ☐ Occupants failed to respond
3 ☐ There were no occupants
4 ☐ Failed to alert occupants
U ☐ Undetermined

### L6 Detector Failure Reason
1 ☐ Power failure, shutoff
2 ☐ Improper installation or placement
3 ☐ Defective
4 ☐ Lack of maintenance, cleaning
5 ☐ Battery missing or disconnected
6 ☐ Battery discharged or dead
0 ☐ Other_____
U ☐ Undetermined

### M1 Presence of Auto. Exting. System
N ☑ None Present
1 ☐ Present

### M2 Type of Automatic Extinguishment
1 ☐ Wet pipe sprink.      6 ☐ Halogen sys
2 ☐ Dry pipe sprink.      7 ☐ CO2 system
3 ☐ Other sprink sys      0 ☐ Other system
4 ☐ Dry chem. sys        U ☐ Undetermined
5 ☐ Foam system

### M3 Automatic Extinguishment System Operation
1 ☐ Operated & effective
2 ☐ Operated & not effective
3 ☐ Fire too small to activate
4 ☐ Failed to operate
0 ☐ Other
U ☐ Undetermined

### M4 Number of Sprinklers

### M5 Failure Reason
1 ☐ System shut off
2 ☐ Not enough agent
3 ☐ Agent discharged but did not reach fire
4 ☐ Wrong type of system
5 ☐ Fire in unprotected area
6 ☐ System damaged
7 ☐ Lack of maintenance
8 ☐ Manual intervention
0 ☐ Other _____
U ☐ Undetermined

RECEIVED
SEP 2 2004
BOARD OF APPEALS

# Sandwich Fire Department

**A**

| 01261 | MA | 10/02/2003 | HQ | 0002436 | 000 |
|---|---|---|---|---|---|
| FDID | State | Incident Date | Station | Incident Number | Exposure |

☐ Delete
☐ Change
☐ No Activity

**NFIRS-2 Fire**

---

**B  Property Details**

**B1** ___1___    ☐ Not Residential

No. of residential units in building of origin

**B2** ___1___    ☐ Bldgs not involved

No. of buildings involved

**B3** ___0___    ☐ None
                  ☐ Less than one acre

Acres burned (outside fire)

**C  On -Site Materials or Products**    ☑ None

NNN ___
On-site materials (1)

1 ☐ Bulk storage or warehousing
2 ☐ Processing or manufacturing
3 ☐ Packaged goods for sale
4 ☐ Repair or Service

___
On-site materials (2)

1 ☐ Bulk storage or warehousing
2 ☐ Processing or manufacturing
3 ☐ Packaged goods for sale
4 ☐ Repair or Service

___
On-site materials (3)

1 ☐ Bulk storage or warehousing
2 ☐ Processing or manufacturing
3 ☐ Packaged goods for sale
4 ☐ Repair or Service

---

**D  Ignition**

**D1** _14_ Area of origin
Common room, den, family roo

**D2** _63_ Heat Source
Heat from undetermined smokin

**D3** _21_ Item first ignited
Upholstered sofa, chair, vehicle

**D4** _71_ Type of material first ignited
Fabric, fiber, cotton, blends, ray

☐ Confined to item

**E1  Cause of Ignition**    ☐ Exposure Report

1 ☐ Intentional
2 ☑ Unintentional
3 ☐ Failure of equipment
4 ☐ Act of nature
5 ☐ Cause under investigation
U ☐ Undetermined after invest.

**E2  Factors Contributing**    ☐ None

NN None
Factor contributing to ignition (1)

Factor contributing to ignition (2)

**E3  Human Factors Contributing to Ignition**

1 ☐ Asleep    ☑ None
2 ☐ Possibly impaired by alcohol or drugs
3 ☐ Unattended person
4 ☐ Mentally disabled
5 ☐ Physically disabled
6 ☐ Multiple persons
7 ☐ Age was a Factor

Estimated age
1 ☐ Male    2 ☐ Female

---

**F1  Equipment Involved in Ignition**    ☑ None

NNN None
Equipment involved

Brand ___
Model ___
Serial # ___
Year ___

**F2  Equipment Power**

Equipment Power Source

**F3  Equipment Portability**

1 ☐ Portable
2 ☐ Stationary

Portable equipment normally can be moved by one person, is designated to be used in multiple locations.

**G  Fire Suppression Factors**    ☑ None

NNN None
Fire suppression factor (1)

Fire suppression factor (2)

Fire suppression factor (3)

---

**H1  Mobile Property Involved**    ☑ None

1 ☐ Not involved in ign, burned
2 ☐ Involved in ign, did not burn
3 ☐ Involved in ignition and burned

Mobile property model ___
License Plate Number ___    State ___    VIN Number ___

☐ Car Stolen

**H2  Mobile Property Type & Make**

Mobile property type ___

Mobile property make ___

___    Year ___

**Local Use**

☐ Pre-Fire Plan Available

Some of the information presented in this report may be based upon reports from other agencies:

☐ Arson report attached
☐ Police report attached
☐ Coroner report attached
☐ Other reports attached

RECEIVED
SEP 2 2004
BOARD OF APPEALS



# Town Of Sandwich
### THE OLDEST TOWN ON CAPE COD

**BOARD of APPEALS**

16 Jan Sebastian Drive
Sandwich, MA 02563
Phone: 508 833 8001
Fax: 508 833 8006
E-mail: planning@townofsandwich.net

## VARIANCE DECISION

**PROPERTY ADDRESS:   9 Ploughed Neck Road, East Sandwich**
**NAME OF APPLICANT:   Patricia Perotti-Cyrus**

On December 14, 2004 the Board of Appeals voted to deny a variance for property located at 9 Ploughed Neck Road, East Sandwich as shown on assessor's map 52, parcel 20.

The Board of Appeals certifies that the decision attached hereto is a true and correct copy of its decision to deny a variance and that copies of said decision, and of all plans referred to in the decision, have been filed with the Planning Board and the Town Clerk.

Any person aggrieved by this decision may appeal to the Superior Court or Land Court as in Section 17 of Chapter 40A, M.G.L. by filing a NOTICE OF ACTION AND COMPLAINT with the Town Clerk within twenty (20) days of the date of filing of this decision.

_____    12/14/04
Signature

TOWN CLERK
TOWN OF SANDWICH

DEC 1 5 2004

// H 40 M 8 M0
RECEIVED & RECORDED

## PROCEDURAL HISTORY

1. Application for a variance to authorize the use of the property as a single-family residential use with house and usual accessory structures as permitted under zoning by-laws for such use for property located at 9 Ploughed Neck Road, East Sandwich was made by the above referenced applicant who is the owner.

2. After proper notice was given the public hearing was opened on October 12, 2004 continued on November 23, 2004 and December 14, 2004 and closed on December 14, 2004.

3. The application was accompanied by a copy of an Approval Not Required Plan under MGL Chapter 41, Section 81L, 81Pendorsed by the Sandwich Planning Board on October 19, 1994.

4. The Board reviewed the application, the plan and all other materials submitted prior to the close of the public hearing. The Board received and gave due consideration to the testimony given at the public hearing.

5. The following members attended the public hearing:
   Robert Guerin
   Robert Jensen
   Jim Killion
   Fred Watt
   Matthew Mc Donnell
   Erik Van Buskirk

## FINDINGS

1. The applicant states that 9 Ploughed Neck Road is used as a single-family dwelling.  The Board of Appeals finds that no information was submitted by the applicant to contradict determinations made by Town Counsel and the Building Inspector that the use remains cottage colony as shown by information contained in the public record for this matter.

2. The Board of Appeals finds that the Sandwich Protective Zoning By-law does not empower the Board of Appeals to grant use variances.

3. The Board of Appeals finds that the conveyance of the property to individual owners to be used as single-family dwellings created a zoning violation because the conveyance took place without complying with Section 4710.

4. The Board of Appeals does not find that a literal enforcement of the provisions of this bylaw would involve a substantial hardship, financial or otherwise, to the petitioner or appellant.

5. The Board of Appeals does not find that the hardship is owing to circumstances relating to the soil conditions, shape, or topography of such land or structures but not affecting generally the zoning district in which it is located.

6. The Board of Appeals does not find that desirable relief may be granted without either;

   1. Substantial detriment to the public good; or
   2. Nullifying or substantially derogating from the intent or purpose of this by-law.

Motion:    I, James Killion, move to adopt these findings as the findings of the Board of Appeals.

Second:    Robert Guerin



Vote:

| | |
|---|---|
| Robert Guerin | yes |
| Robert Jensen | yes |
| James Killion | yes |
| Matthew Mc Donnell | yes |
| Erik Van Buskirk | yes |

## DECISION

Motion:      I, James Killion, move to deny the variance in consideration of the findings of the Board of Appeals.

Seconded:    Robert Guerin

Vote:        

| | |
|---|---|
| Robert Guerin | yes |
| Robert Jensen | yes |
| James Killion | yes |
| Matthew Mc Donnell | yes |
| Erik Van Buskirk | yes |

# Town Of Sandwich
### THE OLDEST TOWN ON CAPE COD



**BOARD of APPEALS**
16 Jan Sebastian Drive
Sandwich, MA 02563
Phone: 508 833 8001
Fax: 508 833 8006
E-mail: planning@townofsandwich.net

## Appeal of the Decision of the Building Inspector
## Certificate of Action

**PROPERTY ADDRESS:   9 Ploughed Neck Road, East Sandwich**
**NAME OF APPLICANT:   Patricia Perotti-Cyrus**

On December 14, 2004 the Board of Appeals voted to uphold the decision of the building inspector that issued a cease and desist order and denied an application for a building permit to perform repair work on the applicant's cottage located at 9 Ploughed Neck Road, East Sandwich, which property was damaged in a fire in the fall of 2003 property as shown on assessor's map 52, parcel 20.

The Board of Appeals certifies that the decision attached hereto is a true and correct copy of its decision in the above referenced matter.

_____ _____ _12/14/04_
**Signature**

**TOWN CLERK**
**TOWN OF SANDWICH**

DEC 1 5 2004

_11_ H _40_ M _A_ M
**RECEIVED & RECORDED**

## PROCEDURAL HISTORY

1. An appeal of the decision of the building inspector for property located at 9 Ploughed Neck Road, East Sandwich was made by the above referenced applicant who is the owner.

2. After proper notice was given the public hearing was opened on October 12, 2004, continued on November 23, 2004 and December 14, 2004 and closed on December 14, 2004.

3. The application was accompanied by a copy of an Approval Not Required Plan under MGL Chapter 41, Section 81L, 81P endorsed by the Sandwich Planning Board on October 19, 1994.

4. The Board reviewed the application, the plan and all other materials submitted prior to the close of the public hearing. The Board received and gave due consideration to the testimony given at the public hearing.

5. The following members attended the public hearing:
   Robert Guerin
   Robert Jensen
   James Killion
   Matthew McDonnell
   Erik Van Buskirk

## FINDINGS

1. The applicant states that 9 Ploughed Neck Road is used as a single-family dwelling. The Board of Appeals finds that no information was submitted by the applicant to contradict determinations made by Town Counsel and the Building Inspector that the use remains cottage colony as shown by information contained in the public record for this matter.

2. The Board of Appeals finds that the Sandwich Protective Zoning By-law does not empower the Board of Appeals to grant use variances.

3. The Board of Appeals finds that the conveyance of the property to individual owners to be used as single-family dwellings created a zoning violation because the conveyance took place without complying with Section 4710.

4. the Board of Appeals finds that Town Counsel's of March 12, 2004 to the Building Inspector chronicles the history of the use and ownership of this property. Counsel specifically states: "Because these lots have subsequently come into separate ownership the entire property is in violation of the zoning by-law."

5. The Board of Appeals finds that the plan endorsed under Section 81L does not legitimize the single-family dwelling use.

6. The Board of Appeals finds that the statute of limitations in Chapter 40A, Section 7 does not apply to uses. The Board further finds that even if the statute of limitations did apply the 10 years have not yet expired.

7. The Board of Appeals finds that denial of a building permit is not an action or proceeding under Chapter 40A, Section 7.

8. The Board of Appeals finds that the information submitted by the applicant to show that the year round use of the property pre-dates the adoption of zoning in Sandwich was insufficient.



Motion:        I, James Killion, move to adopt these findings as the findings of the Board
               of Appeals.
Second:        Robert Guerin
Vote:          Robert Guerin          yes
               Robert Jensen          yes
               James Killion          yes
               Matthew McDonnell yes
               Erik Van Buskirk       yes

## DECISION
Motion:        I, James Killion, move to uphold the decision of the building inspector
               for property located at 9 Ploughed Neck Road, East Sandwich in
               consideration of the findings of the Board of Appeals as stated herein.
Second:        Robert Jensen
Vote:          Robert Guerin          abstain
               Robert Jensen          yes
               James Killion          yes
               Matthew McDonnell yes
               Erik Van Buskirk       no

 

# Town Of Sandwich
## THE OLDEST TOWN ON CAPE COD

**BOARD of APPEALS**
16 Jan Sebastian Drive
Sandwich, MA 02563
Phone: 508 833 8001
Fax: 508 833 8006
E-mail: planning@townofsandwich.net

## SPECIAL PERMIT
## CERTIFICATE OF DENIAL

**PROPERTY ADDRESS:**  **9 Ploughed Neck Road, East Sandwich**
**NAME OF APPLICANT:**  **Patricia Perotti-Cyrus**

On March 4, 2005 the Board of Appeals voted to deny a special permit under Section 2420 of the Sandwich Protective Zoning By-laws for property located at 9 Ploughed Neck Road, East Sandwich as shown on assessor's map 52, parcel 20.

The Board of Appeals certifies that the decision attached hereto is a true and correct copy of its decision to deny a special permit and that copies of said decision, and of all plans referred to in the decision, have been filed with the Planning Board and the Town Clerk.

Any person aggrieved by this decision may appeal to the Superior Court or Land Court as in Section 17 of Chapter 40A, M.G.L. by filing a NOTICE OF ACTION AND COMPLAINT with the Town Clerk within twenty (20) days of the date of filing of this decision.

_____  3/8/05
**Board of Appeals Member**

_____

TOWN CLERK
TOWN OF SANDWICH

MAR 0 9 2005

3 H 10 M P M
**RECEIVED & RECORDED**



1

## PROCEDURAL HISTORY

1. Application for a special permit to repair damage to a structure caused by fire Sandwich Protective Zoning By-law Section 2420, for property located at 9 Ploughed Neck Road, East Sandwich, was made by the above referenced applicant who is the owner.

2. A public hearing, after proper notice was given the public hearing was opened on October 12, 2004 continued on November 23, 2004 and December 14, 2004 and closed on December 14, 2004.

3. The application was accompanied by a copy of an Approval Not Required Plan under MGL Chapter 41, Section 81L, 81P endorsed by the Sandwich Planning Board on October 19, 1994.

4. The Board reviewed the application, the plan and all other materials submitted prior to the close of the public hearing. The Board received and gave due consideration to the testimony given at the public hearing.

5. The following members attended the public hearing:
   Robert Guerin
   Robert Jensen
   James Killion
   Matthew McDonnell
   Erik Van Buskirk

## FINDINGS

1. The Board of Appeals finds that this application meets the requirements of Section 9, M.G.L. Chapter 40A.

2. The Board of Appeals finds that the subject property lies within the Residence - 2 zoning district.

3. The Board of Appeals finds that the subject property has 17,053 SF of area and 140.51' of frontage on Ploughed Neck Road.

4. Section 1330 requirements:
   (a) The Board of Appeals finds that there are conditions peculiar to this case but not generally true for similar permitted uses on other sites in the Residence - 2 zoning district.
   (b) The Board of Appeals finds that nuisance, hazard or congestion will not be created.
   (c) The Board of Appeals finds that there is not substantial harm to the neighborhood.
   (d) The Board of Appeals finds that there is derogation from the intent of the bylaw.
   (e) The Board of Appeals finds that the stated Residence – 2 district objectives will not be satisfied.

5. The Board of Appeals finds that this application does not meet the requirements of Sandwich Protective Zoning By-law Section 1330.

6. The lot at No. 9 Ploughed Neck Road is a 17,053 SF parcel of land on which is located one of six cottages that were part of a seasonal, nonconforming Cottage Colony on approximately two acres of land off Ploughed Neck Road. The cottage at No. 9 Ploughed Neck Road has one bedroom, one bathroom and a kitchen.

7. The subject property is located in Residential-2, in which cottage colonies are not permitted.



2

8. The Zoning By-laws define "Cottage Colony" as "[t]wo or more seasonal dwellings located on the same lot, each designed for independent family living and including cooking facilities."

9. Until 1994, all six cottages in the Cottage Colony, including No. 9, were located on one individual lot.

10. A plan showing the division of the land on which the Cottage Colony was located was endorsed Approval under the Subdivision Control Law Not Required ("ANR") by the Planning Board in 1994, apparently pursuant to the provision of G.L. c. 41, §81L which excludes from the definition of "subdivision" a "division of a tract of land on which two or more buildings were standing when the subdivision control law went into effect in the city or town in which the land lies into separate lots on each of which one of such buildings remains standing." The endorsed ANR plan, which is dated October 11, 1994, is recorded in the Barnstable Registry of Deeds.

11. Section 4710 of the Zoning By-laws prohibits the conversion of an existing cottage colony to "single-family dwelling use under separate ownership unless the lot upon which each building is located complies with the minimum requirements for single-family dwellings in the zoning district in which the land is located." The minimum lot area requirement for single-family use in the R-2 district is 60,000 square feet. The minimum frontage requirement is 200 feet.

12. The lot on which No. 9 Ploughed Neck Road is located does not conform to the minimum requirements for single-family dwellings in the R-2 district.

13. The Cottage Colony was the subject of a lawsuit filed by former owner, Forestdale Realty, Inc., against the Sandwich ZBA in 1995. The 1995 lawsuit challenged a decision by this Board that the Cottage Colony was nonconforming and that the division of the property into individual lots for year round single-family use was not permitted under the Zoning By-laws because the lots and cottages did not conform with applicable dimensional requirements for the R-2 district, as required by Section 4710 of the Zoning By-laws.

14. In April 1996, a Stipulation of Dismissal With Prejudice was filed in Barnstable Superior Court, with respect to the 1995 appeal.

15. In 1995, Forestdale Realty, Inc. established the Cottage Colony property as the Ploughed Neck Condominiums and, thereafter, conveyed out the cottages as condominium units, in violation of the Sandwich Zoning By-laws, Section 4710.

16. In 2001, the condominium was revoked by the then unit owners. Thereafter, the individual cottages with lots as shown on the 1994 ANR plan, were conveyed out in violation of Section 4710.

17. According to the applicants' attorney, the applicant purchased the cottage and land at No. 9, and adjacent No. 11, Ploughed Neck Road as investment properties in September 2002, and has rented them out since then.

18. As conveyed in 2002, and at present, No. 9 Ploughed Neck Road does not meet the applicable minimum area and frontage requirements of the Zoning By-laws and the cottage does not meet required setbacks for a single-family dwelling.

19. The cottage at No. 9 Ploughed Neck Road was damaged by fire in October 2003.

20. The applicant represented that the cottage at No. 9 Ploughed Neck Road has always had a heating system and has always been used year-round. The documentation submitted by the applicant did not support the claim that the cottage was used continuously as a year-round single-family dwelling since prior



to the enactment of the Zoning By-law provisions prohibiting conversion of cottage colonies except in conformance with Section 4710.

21. The Zoning By-laws define "Dwelling, Single-Family" as "[o]ne dwelling unit on a single lot irrespective of structure type, ownership or tenure."

22. No. 9 Ploughed Neck Road was part of a seasonal Cottage Colony until at least 1995, and not a single-family dwelling, as defined in the Zoning By-laws.

23. The Cottage Colony was converted to single-family dwelling use in contravention of Section 4710.

24. No. 9 Ploughed Neck Road is not eligible for protection as a lawfully pre-existing, nonconforming single-family dwelling on a nonconforming lot since neither single-family use, nor the lot, were "lawfully existing" at the time of the enactment or subsequent amendment of the Zoning By-laws governing conversion of cottage colonies.

25. The Board notes that "seasonal dwelling" is not defined in the current, effective Protective Zoning By-Law.

26. The Board further recognizes that Article VII, Three Ponds District, Section 7020 of the Protective Zoning By-Law defines "Seasonal Facility" as "a facility that offers activities that do not occur and are not designed to occur on a year round basis."

27. The Board finds that applicant has evidenced the existence of heating systems in the structure that is consistent with a structure designed and appropriate for full-time, year-round occupation.

28. The Board finds that applicant has demonstrated that the construction and use of applicant's dwelling/structure pre dates the adoption of zoning.

29. The Board finds that applicant's property is not a **HOTEL** as defined by the protective zoning by-laws.

30. The Board finds that applicant's property is not a **MOTEL** as defined by the protective zoning by-laws.

31. The Board notes that **MOTOR COURT** is not defined in the by-laws.

32. The Board finds that applicant's property is not a **LODGING HOUSE** as defined by the protective zoning by-laws.

33. The Board finds that applicant's proposed repair would not:
    a. Jeopardize public health or safety:
    b. Decrease the value of land and buildings;
    c. Lead to blight and pollution of the environment;
    d. Increase the congestion of traffic;
    e. Increase hazards from fire and other dangers;
    f. Preclude the economical provisions of transportation, water, sewerage, schools, parks, and other public facilities;
    g. Decrease housing for persons of all income levels; and or
    h. Deplete or misuse the amenities of the Town.

34. The Board of Appeals finds that the application for special permit does not substantially conform to the Sandwich Protective Zoning By-Laws

35. The Board of Appeals finds that the Sandwich Fire Department report dated October 2, 2003 states: "The cottage had no electric power and the meter has been removed by N'Star"

Motion:    I, James Killion, move to adopt these findings as the findings of the Board of Appeals



4

9 Ploughed Neck Road, East Sandwich
Petition #04-34

Second:     Robert Jensen

Vote:       Robert Guerin        No
            Robert Jensen        Yes
            James Killion        Yes
            Matthew McDonnell     Yes
            Erik Van Buskirk     Yes

## DECISION:

Motion:     I, James Killion, move to deny the special permit in consideration of the
            findings of the Board of Appeals.
Second:     Matthew McDonnell

Vote:       Robert Guerin        No
            Robert Jensen        Yes
            James Killion        Yes
            Matthew McDonnell     Yes
            Erik Van Buskirk     No

COMMONWEALTH OF MASSACHUSETTS

BARNSTABLE, ss.

SUPERIOR COURT DEPT.
OF THE TRIAL COURT
C.A. NO. 04- *587*



TOWN CLERK
TOWN OF SANDWICH

SEP 2 8 2004

2 H 37 M *P* M 9

RECEIVED & RECORDED

---

CHRISTOPHER G. MOLLOY, and
BRIAN SMITH,

         Plaintiffs,

      v.

WILLIAM A. CLEVELAND,
VERONICA S. CLEVELAND, Trustees
of the CLEVELAND REALTY TRUST,
WILLIAM DAWES, ROBERT GUERIN,
ROBERT JENSEN, JAMES KILLION,
FREDERICK WATT, MATTHEW
McDONNELL, ERIK VAN BUSKIRK,
as they are members of the Town of
Sandwich Board of Appeals,
DONNA BOARDMAN, Building
Inspector, Town of Sandwich, and the
TOWN OF SANDWICH,

         Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

---

PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT

Introduction

      This action relates to the application of certain zoning by-laws of the Town

of Sandwich to a condominium, created in 2002, by the defendants, William A.

Cleveland and Veronica S. Cleveland, Trustees of the Cleveland Realty Trust, at

property located at 376 Route 6A, East Sandwich MA. This condominium is

know as the "Whaleback Condominiums." After the condominium was created,

and several units had been sold, including two units sold to the plaintiffs, the

Town of Sandwich informed the Clevelands that zoning relief was required to be

1

obtained by them from the Town of Sandwich Board of Appeals. The Clevelands

submitted applications for a special permit and a variance to the Board of

Appeals, public hearings for which were held in July and August 2004.

Thereafter, the Board of Appeals denied both the special permit and variance

applications, which decisions were filed on September 2, 2004, and September 9,

2004. Plaintiffs file this appeal in order that zoning relief, either in the form of a

special permit, and seek a declaration, pursuant to G.L.c. 231A, s. 1, as to the

applicability of the "cottage colony" section of the Town of Sandwich Zoning By-

Laws to their own properties and to that of the Clevelands.

Facts

1.      Plaintiff, Christopher G. Molloy, owns unit #12 of the condominium

        located at 376 Route 6A, East Sandwich, Barnstable County, MA

        02573.

2.      Plaintiff, Brian Smith, owns unit #11 of the condominium unit located

        at 376 Route 6A, East Sandwich, Barnstable County, MA 02537.

3.      The defendants, William A. Cleveland and Veronica S. Cleveland,

        Trustees of the Cleveland Realty Trust, created the 16-unit

        condominium known as the "Whaleback Condominiums," located at

        376 Route 6A, East Sandwich, Barnstable County, MA 02537, in or

        about 2002.

4.      The defendants, William Dawes, Robert Guerin, Robert Jensen, James

        Killion, Frederick Watt, Matthew McDonnell, and Erik Van Buskirk are

        members of the Town of Sandwich Board of Appeals ["Board of

        Appeals"], with a principal place of business at 16 Jan Sebastian Drive,

Town of Sandwich, Barnstable County, Commonwealth of

Massachusetts 02563.

5.    Defendant Donna Boardman is the Building Inspector, Town Of

Sandwich, with a principal place of business at 16 Jan Sebastian Drive,

Town of Sandwich, Barnstable County, Commonwealth of

Massachusetts 02563.

6.    Defendant Town Of Sandwich is a municipality, with a principal place

of business at 130 Main Street, Town of Sandwich, Barnstable County,

Commonwealth of Massachusetts 02563.

7.    The Whaleback Condominiums consist of some 16 free-standing

cottages, which were constructed before 1954, and each of which is

equipped with a heating system, with a bedroom, kitchenette, and

bathroom.

8.    Before creating the Whaleback Condominium, the Clevelands, through

counsel, inquired with the Town about whether zoning relief needed to

be obtained to create the condominium, and were told that they did not

need to do so.

9.    Each of the structures which make up the condominium units at the

Whaleback were constructed before 1954, before the Town of Sandwich

had adopted either the Subdivision Control Law or any zoning.

10.   The Clevelands operated the cottages, prior to creating the

condominium as rental units, renting the same throughout the year as

demand warranted.

11.    The Town of Sandwich zoning by-laws define the term "cottage colony" as: "**COTTAGE COLONY -** Two or more detached seasonal dwellings located on the same lot, each designed for independent family living and including cooking facilities. **(Amended May 1, 1995)**".   Town of Sandwich Zoning By-laws, "Definitions."

12.    The zoning by-laws also define the term "dwelling" as:

"**DWELLING** - A building or part of a building used exclusively as the living quarters for one or more families.

**DWELLING, SINGLE-FAMILY** - One dwelling unit on a single lot irrespective of structure type, ownership or tenure. **(Added STM 9/91)**

**DWELLING, TWO-FAMILY** - Two dwelling units on a single lot irrespective of structure type, ownership or tenure. **(Added STM 9/91)**

**DWELLING, MULTI-FAMILY** - Three or more dwelling units on a single lot irrespective of structure type, ownership or tenure.

**DWELLING UNIT** - Living quarters for a single family and not more than two (2) boarders or lodgers, with cooking, living, sanitary, and sleeping facilities, independent of any other unit."

Town of Sandwich Zoning By-laws, "Definitions."

13.    With the exception of the "seasonal" aspect of "cottage colonies," there is virtually no distinction between the definition of "cottage colony" and "dwelling unit" under the Sandwich zoning by-laws.

14.    The zoning by-laws further regulate the conversion of cottage colonies to condominium or single-family ownership, as follows:  "**Cottage Colonies. Any existing cottage colony** may not be converted to single-family dwelling use under separate ownership unless the lot upon which each building is located complies with the minimum requirements for single family dwellings in the zoning district in which

4

the land is located, and such non-conforming cottage colony may not be converted to single-family use under condominium, cooperative, time sharing condominium, or any other single-family dwelling use more intensive or frequent than seasonal or intermittent use, unless the lot meets the minimum requirements for Cluster Developments, as set forth in **Section 4440**. This section shall apply whether or not the lot is situated in a district in which Cluster Development is a prohibited use." Town of Sandwich Zoning By-laws, Section 4710.

15.  There is no definition of the term "seasonal" contained in the Sandwich Zoning By-laws.

16.  Section 2420 of the Sandwich Zoning By-laws governs the change, alteration or extension of pre-existing nonconforming uses, providing:

**2420. Change, Extension Or Alteration.** No change, extension or alteration of a pre-existing non-conforming use and no change, extension or alteration of a pre-existing nonconforming structure may be made except upon the issuance of a special permit from the Zoning Board of Appeals. Such a special permit may be granted only if the special permit granting authority finds that the proposed change, extension or alteration of a pre-existing non-conforming use, or change, extension or alteration of a pre-existing non-conforming structure is not substantially more detrimental to the neighborhood than the existing nonconforming use or non-conforming structure.

Town of Sandwich Zoning By-laws, Section 2420.

17.  The Whaleback Condominiums are located in the R-2 residential district, which allows as a by-right use only single-family residential dwellings, and limited accessory uses.

18.  A condominium is a single-family dwelling unit, as defined in the zoning by-laws.

19.  The State Building Code defines "occupied" as: "Occupied: As applied to a building, shall be construed as though followed by the words "or intended, arranged or designed to be occupied." 780 C.M.R. 202.0.

20.  At all times relevant, the cottage sin question have been occupied for year-round usage, as they are "intended, arranged [and] designed to be occupied in all weather, insofar as they contain heating sytems.

21.  The cottages are not seasonal, and instead are "multi-family dwellings" as defined in the zoning by-laws.

22.  Multi-family dwellings are a use currently allowed only by special permit in the R-2 zoning district in which the Whaleback Condominiums are located in the Town of Sandwich.

23.  There is no restriction or limitation imposed by the zoning by-laws regarding the "condominium-ization" of multi-family dwellings.

24.  The Whaleback Condominium cottages, as multi-family dwellings, predate the existence of all zoning in Sandwich, including the "Multi-family dwelling" definition and use limitation, and therefore constitute lawful pre-existing, nonconforming uses under the Sandwich zoning by-laws.

25.  After creating the Whaleback Condominium, and selling several units, the Clevelands received notice from the Town of Sandwich that zoning relief was required to be obtained.

26.  The Clevelands submitted two applications, one for a special permit and the other for a variance.

27. The Clevelands' special permit application sought to change the multi-family dwellings to single-family condominiums, and offered to limit, by deed restriction, certain of the units (not those owned by plaintiffs) to seasonal only use. The variance sought similar relief.

28. The Town of Sandwich has not brought any zoning enforcement action against the Clevelands.

29. Two public hearings were held on the Clevelands' applications in July and August 2004, and the public hearing was closed on August 24, 2004.

30. At these hearings, the Clevelands presented documentary evidence and testimony that the cottages were not seasonal, and had not been occupied only "seasonally."

31. The Board of Appeals denied both the Clevelands' requests for special permit and variance, filing their decisions with the Town Clerk on September 2, 2004, and September 9, 2004. The variance application was denied on the grounds that use variances are not permitted under the zoning by-laws. The special permit application was denied without prejudice.

32. Plaintiffs have been harmed insofar as the lawfulness of their use of their condominiums is now called into question, by the Town requiring a submission regarding the conversion to condominium, but then denying the application regarding the same. According to the Town, the condominiums are "unlawful," and as such, the Building

Department would deny any building permit application that the plaintiffs might submit to maintain or repair their units.

## COUNT I

*Special Permit Application and Declaratory Judgment*

33. Plaintiffs repeat and reassert the matters set forth above, incorporating the same by reference as if fully set forth herein, and further stating:

34. The Clevelands presented sufficient evidence through documents and testimony that the cottages are not seasonal in connection with the special permit application, including records from the Town's census records indicating various persons identified the cottages as their primary residence, the fact that the units have always been equipped with heating systems, and occupancy records kept by the Clevelands.

35. Since the cottages are not seasonal, the restriction on condominium conversion, as set forth in Section 4710 of the zoning by-laws, does not apply to the Whaleback Condominiums.

36. Instead, the cottages are multi-family dwellings, as defined in the Definitions Section of the By-law.

37. There is no restriction on the creation of a condominium with regard to multi-family dwellings under the Town of Sandwich zoning by-laws.

38. Indeed, any effort by the Town to regulate the type of ownership of multi-family dwellings would constitute an unlawful attempt to regulate ownership and civil relationships.

39. The correct provision of the by-law to be applied, if any, is Section 2420, regarding pre-existing, nonconforming uses, to change the multi-family dwellings to condominiums.

40. Plaintiffs have suffered and will continue to suffer damages until the lawfulness of their condominium units has been determined and declared by the Court.

WHEREFORE, plaintiffs request that this Court declare the rights of the parties, and further:

(1) Find that the cottages do not meet the definition of "cottage colony" under the Sandwich Zoning By-laws, because they are not "seasonal"; and

(2) Find that the cottages constitute "multi-family dwellings" under the Sandwich Zoning By-laws; and

(3) Declare that no permits are required to convert the multi-family dwelling to condominiums; or

(4) If the Court finds that a special permit is required, because the condominium conversion operates a change of use from non-seasonal cottage colony or multi-family housing in single ownership to condominium ownership, declare that a special permit should issue, because the change proposed through condominium conversion is not substantially more nonconforming than the existing non-seasonal cottage colony or multi-family housing.

(5) Such other relief as the Court deems just and reasonable.

## COUNT II

### *William A. Cleveland and Veronica S. Cleveland, Trustees of Cleveland Realty Trust*

41.    Plaintiffs repeat and reassert the matters set forth above, incorporating the same herein by reference as if fully set forth herein, and further state as follows:

42.    Plaintiffs purchased their condominium units from the Clevelands in the year 2003, in reliance upon the Clevelands' representation and warranty that the units were in compliance with the zoning by-laws of the Town of Sandwich.

43.    After purchasing their units, plaintiffs discovered that in fact the units are not in compliance with the zoning by-laws of the Town of Sandwich.

44.    Plaintiffs seek to have the sale of the condominiums set aside, and to have the purchase price refunded to them.

WHEREFORE, plaintiffs request that the Court enter judgment in their favor against the Clevenlands, and enter an award of damages in the amount of the purchase price of the units, together with interest, costs and such other amounts as the Court deems just and reasonable.

Plaintiffs,

CHRISTOPHER G. MOLLOY and
BRIAN SMITH,

By their attorney,

_____

Julie C. Molloy        BBO#555176
379 Route 6A
East Sandwich MA 02537
(508) 833-3707

Dated:  September 29, 2004

ORIGINAL

Volume: I
Pages: 1-60

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. No. 05-10116-DPW

PATRICIA PEROTTI-CYRUS,

        Plaintiff

vs.

ROBERT JENSON, CHAIRMAN OF
THE BOARD OF APPEALS FOR THE
TOWN OF SANDWICH, et al.,

        Defendants



NOV 2 1 2005
By_____

DEPOSITION OF:  PATRICIA PEROTTI-CYRUS

BRODY, HARDOON, PERKINS & KESTEN

One Exeter Plaza

12th Floor

Boston, MA 02116

November 7, 2005

Virginia Dodge
Registered Professional Reporter

DUNN & GOUDREAU

1    A.    He's the owner of Forestdale Realty.

2    Q.    So did you speak with Mr. Miller about the purchase

3    of No. 9 --

4    A.    Yes.

5    Q.    I just have to finish.

6    A.    Oh, I'm sorry.

7    Q.    That's okay -- Ploughed Neck Road?

8    A.    Yes.

9    Q.    And what conversation did you have?

10   A.    We spoke to him about purchasing the property.

11   Q.    Did you speak with him at all about any prior

12   litigation he had concerning the property at

13   No. 9 Ploughed Neck Road?

14   A.    No.

15   Q.    Was Mr. Miller represented at the time of the sale

16   of No. 9 Ploughed Neck Road?

17   A.    Yes.

18   Q.    And who was he represented by?

19   A.    Ms. Molloy.

20   Q.    At that time, did Ms. Molloy tell you about any

21   litigation that Forestdale Realty had had with the Town of

22   Sandwich concerning the Ploughed Neck Road property?

23   A.    No.

24   Q.    Were you represented by Ms. Jason?

```
 1   A.     Yes.

 2   Q.     Did you have any discussion at the time you

 3   purchased No. 9 Ploughed Neck Road with Mr. Miller about

 4   the use of the property?

 5   A.     Yes.

 6   Q.     What conversations did you have?

 7   A.     Just the rental.

 8   Q.     Any other conversations?

 9   A.     No.  Not that I remember.

10   Q.     Did you discuss at all whether the property could be

11   used as a single-family dwelling?

12   A.     Yes.

13   Q.     Who did you discuss that with?  Mr. Miller?

14   A.     Yes.

15   Q.     And what did Mr. Miller say to you about that?

16   A.     It had been.

17   Q.     Mr. Miller told you prior to your purchase of

18   No. 9 Ploughed Neck Road that it had been used as a

19   single-family dwelling?

20   A.     Yes.

21   Q.     Did he tell you whether the Town had objected to the

22   property being designated as a single-family dwelling

23   prior to your purchase of No. 9 Ploughed Neck Road?

24   A.     No.
```

1  Q.    Did Ms. Molloy tell you prior to your purchase of

2  No. 9 Ploughed Neck Road that the Town had objected to the

3  designation of that parcel as a single-family dwelling?

4  A.    No.

5  Q.    And you didn't learn any of that until after the

6  fire, correct?

7  A.    Yes.

8  Q.    When you purchased No. 9 Ploughed Neck Road, did

9  you -- were you represented by Ms. Jason as well?

10  A.    Yes.

11  Q.    And did Ms. Jason -- strike that.

12       When's the first time that you had contact with

13  anyone from the Town of Sandwich concerning the properties

14  at No. 9 and 11 Ploughed Neck Road?

15  A.    Right after the fire at No. 9.

16  Q.    So prior to that time, you hadn't discussed the

17  property with anyone from the Town of Sandwich?

18  A.    No.

19  Q.    Have you spoken with any of the other owners of

20  parcels at Ploughed Neck Road?

21  A.    Yes.

22  Q.    And prior to your purchase of the property, did you

23  speak with any of those owners?

24  A.    No.

| | |
|---|---|
| 1 | Q.    Did he tell you that she gave him a reason? |
| 2 | A.    No. |
| 3 | Q.    Why did you think at that time that the Town would |
| 4 | not give you a building permit to repair -- |
| 5 | A.    We didn't know why. |
| 6 | Q.    So what did you do? |
| 7 | A.    I hired an attorney. |
| 8 | Q.    You hired Ms. Molloy? |
| 9 | A.    No. |
| 10 | Q.    Who did you hire? |
| 11 | A.    I called Kevin Kirrane. |
| 12 | Q.    And he represented you? |
| 13 | A.    Yes. |
| 14 | Q.    And how long did Mr. Kirrane represent you in this |
| 15 | matter with the board? |
| 16 |          MS. MOLLOY:   Just objection to the form. |
| 17 | A.    Maybe a month or two. |
| 18 | Q.    (By Ms. Ecker)   Why did you change attorneys? |
| 19 | A.    That was when Janine had called and said she |
| 20 | understood we were having some difficulties. |
| 21 | Q.    And she recommended that you contact Ms. Molloy? |
| 22 | A.    Yes. |
| 23 | Q.    Did you ask Janine how she learned that you were |
| 24 | having difficulties? |

1  A.    No, I didn't.

2  Q.    Since you were denied a building permit by the Town

3  of Sandwich, have you thought about bringing a lawsuit

4  against the prior owner of the property?

5  A.    No, I have not.

6  Q.    Why not?

7  A.    Because I feel that they've been very instrumental

8  in helping me with the situation.  The properties had been

9  rented all along.  He rented them.  I rented them.  The

10  people before rented them.  So I really don't see what the

11  issue is.

12  Q.    When you say they've been very instrumental in

13  helping you, what do you mean?

14  A.    They have been -- they've offered their assistance.

15  Q.    In what way?

16  A.    When it does come time to repair.

17  Q.    The building?

18  A.    Yeah.

19  Q.    Will they pay for the repairs?

20  A.    No.

21  Q.    They'll just assist you in the repairs?

22  A.    Yes.

23  Q.    Did they offer to pay for counsel for you?  "They"

24  being Forestdale Realty.

1    A.    It wasn't mentioned, but it wasn't not mentioned

2    either.

3    Q.    Have they paid for your counsel?

4    A.    As far as I know, no.

5    Q.    Have you received bills for your attorney?

6    A.    No, I have not.

7    Q.    Have you discussed with either Janine or Mr. Miller

8    or anyone from Forestdale Realty their prior lawsuit with

9    the Town of Sandwich regarding these properties?

10   A.    No, I have not.

11   Q.    You haven't asked -- since you heard there was prior

12   litigation, you haven't asked Mr. Miller about that?

13   A.    No, I haven't.

14   Q.    Why not?

15   A.    Because all I'm concerned with is what concerns me

16   and that property.  Whatever he had going before, that's

17   his business.  This is mine, and this is my livelihood,

18   and I'm concerned what's happening with me.

19   Q.    Has anyone made representations to you about the

20   prior litigation that Forestdale Realty had against the

21   Town other than your attorney?

22   A.    No.

23   Q.    Have you asked anyone from the Town about that?

24   A.    No.