UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PATRICIA PEROTTI-CYRUS,
    Plaintiff,

CIVIL ACTION
NO. 05-10116-DPW

v.

ROBERT JENSON, Chairman
of The Board of Appeals For
The Town of Sandwich, et al.,
    Defendants.

PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS SUBMITTED IN
CONNECTION WITH HER MOTION FOR SUMMARY JUDGMENT

NOW COMES the plaintiff in this action, Patricia Perotti-Cyrus [hereinafter "Ms. Perotti-Cyrus"], and submits this statement of undisputed facts in connection with her Motion for Summary Judgment:

1. Ms. Perotti-Cyrus purchased and owns, in her own name alone, two (2) cottages located at 9 and 11 Ploughed Neck Road, East Sandwich, Barnstable County, in September 2002 and August 2001, respectively, as investment property, for the purpose of renting the homes out. See Exhibit 1, Deposition Transcript of Patricia Perotti-Cyrus ["Perotti-Cyris Transcript"], p.6, l.12 through p.7, l.1, and p.11, l.12 through p.13, l.7.

2. 9 Ploughed Neck Road is at issue in this action.

3. Ms. Perotti-Cyrus has never received any notice from the Town of Sandwich Zoning Enforcement Officer, the Building Inspector, Donna Boardman, of any zoning violations regarding 11 Ploughed Neck Road, at any time from August 2001 through the present. See Exhibit 1, Perotti-Cyrus Transcript, p. 57, l.9-15

4. Ms. Perotti-Cyrus never received any notice from the Town of Sandwich Zoning Enforcement Officer, the Building Inspector, Donna Boardman, of any zoning violations regarding 9 Ploughed Neck Road, anytime before October 2003. See Exhibit 1, Perotti-Cyrus Transcript, p. 22, l.1-18.

5. Ms. Perotti-Cyrus paid $110,000 for each of the two cottages, in cash. See Exhibit 1, Perotti-Cyrus Transcript, p. 29, l.8-14.

6. Ms. Perotti-Cyrus rented out both 9 and 11 Ploughed Neck Road immediately after purchasing the same, with monthly rent in the amount of Seven Hundred ($700.00) each. See Exhibit 1, Perotti-Cyrus Transcript, p. 23, l.18-20 and p. 25, l.8-19.

7. Ms. Perotti-Cyrus rented 9 Ploughed Neck Road to Paul Bestford shortly after she purchased the property in September 2002 through the date of the fire on October 10, 2003, for the sum of $700 per month. See Exhibit 1, Perotti-Cyrus Transcript, p. 23, l.18 through p. 24, l.19.

8. 9 Ploughed Neck Road has not been rented out, and has been empty since the October 2003 fire. See Exhibit 1, Perotti-Cyrus Transcript, p. 45, l.22-24.

9. 11 Ploughed Neck Road has been rented by Ms. Perotti-Cyrus to Joe Roman from August 2001, through the present, on a year-round basis, at $700 per month. See Exhibit 1, Perotti-Cyrus Transcript, p. 25, l. 8-21; p.45, l.16-21.

10. In October 2003, there was a fire in the 9 Ploughed Neck Road dwelling. See Exhibit 1, Perotti-Cyrus Transcript, p. 16, l.6-8.

11. As a consequence of the fire, the dwelling suffered some minimal damage, including: mostly smoke damage to the living room, the knotty pine walls and furniture; the sofa was destroyed; microwave melted; refrigerator door melted; some holes in the wall made by firefighters; water damage; one or two windows had broken panes. See Exhibit 1, Perotti-Cyrus Transcript, p. 32, l.5-19, p. 33, l.9-10.

12. 9 Ploughed Neck Road contains a small dwelling, containing two rooms, an open living room and kitchen area, and one bedroom, plus one bathroom. See Exhibit 1, Perotti-Cyrus Transcript, p. 33, l.14-22.

13. There was no damage to the bathroom as a result of the fire, only a little damage to the bedroom, and no damage to the roof or the exterior of the building. See Exhibit 1, Perotti-Cyrus Transcript, p. 33, l.24 through p. 34, l.15.

14. The fire started as a consequence of a cigarette in the sofa. See Exhibit 1, Perotti-Cyrus Transcript, p. 28, l.13-14.

15. Ms. Perotti-Cyrus has recently listed 11 Ploughed Neck Road for sale, with a listing price of $168,000. See Exhibit 1, Perotti-Cyrus Transcript, p. 31, l. 1-21.

16. Ms. Perotti-Cyrus granted a mortgage to Brad Cushing in 2004 in the amount of Fifty Thousand ($50,000) Dollars, on both 9 and 11 Ploughed Neck Road. See Exhibit 1, Perotti-Cyrus Transcript, p. 29, l.1 through p. 30, l.18.

17. Shortly after the fire, Ms. Perotti-Cyrus' husband, William Cyrus, went to the town building department to obtain a building permit to perform repairs to the dwelling. See Exhibit 1, Perotti-Cyrus Transcript, p. 35, l.3-6.

18. The Building Inspector, Donna Boardman, informed Mr. Cyrus that he could not have a building permit to perform repairs to the dwelling. See Exhibit 1, Perotti-Cyrus Transcript, p. 35, l. 5 through p. 36, l.16.

19. Another owner of one of the dwellings, Heather Garhnum, obtained a building permit from the Building Inspector to install a new roof and perform work on the interior of her home. See Exhibit 1, Perotti-Cyrus Transcript, p. 51, l.1-24.

20. West Yarmouth Lodgings, Inc. purchased the single family dwellings located at 9 and 11 Ploughed Neck Road from Forestdale Realty, Inc., which deed is recorded with the Barnstable Registry of Deeds, Book 13898, Page 197. See Exhibit 2, Affidavit of Harry B. Miller, Jr.

21. The president of both West Yarmouth Lodgings, Inc., and Forestdale Realty, Inc., at all times relevant was Harry B. Miller, Jr. See Exhibit 2, Miller Affidavit.

22. Forestdale Realty, Inc., purchased Lots 1 through 6, each containing one single family dwelling, from Elizabeth Sprague, on October 28, 1994, which deed is recorded with the Barnstable County Registry of Deeds, Book 9424, Page 323, and which property is depicted on a plan recorded with the Barnstable County Registry of Deeds, Plan Book 506, Pafe 85 [hereinafter "ANR Plan"]. See Exhibit 2, Miller Affidavit.

23. The property qualified for endorsement as an ANR plan because the structures, constructed in 1948, on the property pre-dated the Town of Sandwich's adoption of the Subdivision Control Law, in 1954, and accordingly, the Town of Sandwich Planning Board was required to endorse the plan, as it showed a division of the land such that each of the six lots contained one structure or dwelling, in accordance with Sections 81L and 81P of Chapter 41, the Subdivision Control Law. See Exhibit 3, Molloy Affidavit; see also Exhibit 3-14, Assessor's Filed cards

for properties located at 9, 11, 13, 15, 17, and 19; and see Exhibit 8, Deposition Transcript of JoAnne Miller Buntich ["Miller Buntich Transcript"], p. 19, line 11 – p. 21, line 20.

24. The definition of the term "cottage colony" was defined under the Town of Sandwich zoning by-laws, in October 1994, stating:

> Two or more detached seasonal dwellings located on the same lot, each designed for independent family living and including cooking facilities, and each containing not more than 480 square feet.
>
> See Exhibit 3, Affidavit of Julie C. Molloy [hereinafter "Molloy Affidavit"], and Exhibit 3-1, 1994 Zoning By-laws, Article VII, "Definitions," p. VII-2.

25. The definition of the term "cottage colony" was defined under the Town of Sandwich zoning by-laws, in 2004, stating:

> Two or more detached seasonal dwellings located on the same lot, each designed for independent family living and including cooking facilities. (Amended May 1, 1995)
>
> See Exhibit 3, Molloy Affidavit, and Exhibit 3-2, 2004 Zoning By-laws, Article VIII, "Definitions," p. VIII-2.

26. There is no definition of the term "seasonal" contained in the Sandwich Zoning By-laws, either in 1994 or 2004. See Exhibit 3-1, 1994 Zoning By-laws, Article VII, "Definitions," p. VII-1 through VII-7; and see Exhibit 3-2, 2004 Zoning By Laws, Article VIII, "Definitions," pp. VIII-1 through VII-7; see also Exhibit 8, Miller Buntich Transcript, p. 31, lines 14-23.

27. Each of the cottages shown on the ANR plan, including the plaintiff's, have contained heating systems since they were constructed. See Exhibit 2, Miller Affidavit; and see Exhibit 4, Letter from Thomas Hannigan.

28. The Sandwich Zoning By-laws, both in 1994 and in 2004, provided for abandonment of use, in Section 2410, entitled "Abandonment," which states (emphasis added):

> "A non-conforming use of a building or land, which has been abandoned for a period of two (2) years, shall not thereafter be returned to such non-conforming use. A non-conforming use shall be considered abandoned when the premises has been vacant for two years, *or when the*

4

*characteristic equipment and/or furnishings of the non-conforming use have been removed from the premises and have not been replaced by similar equipment*, whichever shall occur first."

See Exhibit 3-1, 1994 Zoning By-laws, p. II-8; and see Exhibit 3-2, 2004 Zoning By-laws, p. II-5

29. Having been equipped with heating systems since their construction, the cottages shown on the ANR plan at Ploughed Neck Road, including plaintiff's, have been "equipped with the characteristic equipment and/or furnishings" for year-round usage, regardless of whether or not they were in fact rented out on a year-round basis. See Exhibit 3-1, Sandwich Zoning By-laws in effect in 1994, Section 2410, p. II-8; and see Exhibit 3-2, 2004 Sandwich Zoning By-laws, Section 2410, p. II-5.

30. The definition of "single family dwelling" as set forth in the Town of Sandwich Protective Zoning By-laws, in both 1994 and 2004, is identical, and states:

"DWELLING, SINGLE-FAMILY - One dwelling unit on a single lot irrespective of structure type, ownership or tenure. (Added STM 9/91)."

See Exhibit 3-1, 1994 Sandwich zoning by-laws, "Definitions" section, p. VII-3; and see Exhibit 3-2, 2004 Sandwich Zoning By-laws, "Definitions" section, p. VIII-2-3.

31. The use of property as a single family dwelling is a by-right use in the R-2 zoning district (requiring 60,000 square feet of lot area) in which plaintiff's property is located is a "by-right" use, not requiring any permits from any board. See Exhibit 3-1, 1994 Sandwich zoning by-laws, "Intensity of Use Regulations," Section 2310, p. II-7; and see Exhibit 3-2, 2004 Sandwich Zoning By-laws, "Use Regulations", Section 2310, "Use Regulations Schedule," p. II-4; see also Exhibit 5, Transcript of Deposition on Donna Boardman, Building Inspector for the Town of Sandwich [hereinafter "Boardman Transcript"], p. 24, lines 15-17, p. 27, lines 1-7; and Exhibit 6, Transcript of Deposition of Robert Jensen, Chair of the Board of Appeals [hereinafter "Jensen Transcript"], p. 21, lines 8-23.

32. By virtue of the endorsement of the ANR plan for Ploughed Neck Road, on October 19, 1994, each cottage was located upon its own lot, and no longer fell within the definition of "cottage colony," and instead, each cottage falls within the definition of "Dwelling, single-family." See Exhibit 3, Molloy Affidavit, and Exhibit 3-1, 1994 Zoning By-Laws, "Definitions," p. VII-3; and 3-2, 2004 Zoning By-laws, "Definitions," p.

5

VIII-2-3; see also Exhibit 5, Boardman Transcript, p. 22, lines 1-11; and Exhibit 6, Jensen Transcript, p.33, line 11 to p.34, line 1, p.44, line 16 to p.46, line 2, p.55, line 15 to p.56, line17, p. 111, line 15 through p. 111, line11; and see also Exhibit 7, Deposition Transcript of Judith C. Cutler, Esq., Town Counsel ["Cutler Transcript"], p. 60, l.13 through p.62, l.13.

33. The Subdivision Control Law excludes from the definition of the term "subdivision" ". . . the division of a tract of land on which two or more buildings were standing when the subdivision control law went into effect in the city or town in which the land lies into separate lots on each of which one of such buildings remains standing, shall not constitute a subdivision." See Exhibit 3, Molloy Affidavit and Exhibit 3-3, copy of G.L. c. 41, s. 81L.

34. The Town of Sandwich Planning Board could not refuse to endorse the ANR Plan presented by Mrs. Sprague on October 19, 1994, which divided her tract of land "on which two or more buildings were standing when the subdivision control law went into effect in the city or town in which the land lies into separate lots on each of which one of such buildings remains standing" even though the resultant lots, each containing their own structure, did not meet zoning dimensional requirements in effect as of the date of endorsement of this ANR plan. See Exhibit 3, Molloy Affidavit and Exhibits 3-4 and 3-5, copies of Citgo Petroleum Corp. v. Planning Board of Braintree, 24 Mass. App. Ct. 425, 427, 509 N.E.2d 284 (1987); Smalley v. Planning Board of Harwich, 10 Mass. App. Ct. 599, at 604, 410 N.E.2d 1219 (1980).

35. The Town of Sandwich adopted the Subdivision Control Law on August 20, 1954, when it recorded its notice of acceptance of this law and the by-laws adopted by the Planning Board, with the Barnstable County Registry of Deeds, Book 883, Pages 194-202, pursuant to G.L. c. 41, s. 81N. See Exhibit 3, Molloy Affidavit, and Exhibit 3-6, Town of Sandwich Notice of adoption of Subdivision Control Law, recorded with the Barnstable Registry of Deeds.

36. This ANR plan, creating lots 1 through 6 on October 19, 1994 ["the 1994 ANR Plan"], was endorsed by the then-chair of the Town of Sandwich Planning Board, JoAnne Miller Buntich, and divided the larger parcel into six smaller parcels, with one structure on each of the lots. See Exhibit 8, Miller Buntich Transcript, p.19, l.11 through p.21, l.20; see Exhibit 2-1, ANR Plan.

37. In connection with Forestdale Realty, Inc.'s purchase of the Ploughed Neck Road property from Elizabeth Sprague, Mrs. Sprague assured Forestdale Realty, Inc., that the cottages had been used on a year-round basis. See Exhibit 2, Miller Affidavit.

38. In early 1995, Mrs. Sprague submitted a letter to the Zoning Board of Appeals for the Town of Sandwich informing that Board that the cottages at Ploughed Neck Road, had been used and rented-out by her on a year-round basis, in connection with Forestdale Realty, Inc.'s application for a special permit to move the cottages further back on their respective lots, so that the dimensional nonconformities would be diminished and/or eliminated (as to setback requirements). See Exhibit 2, Miller Affidavit, and Exhibit 9, copy letter from Mrs. Sprague from Board of Appeals files.

39. Single-family dwelling is a by-right use in the R-2 zoning district in which Ms. Perotti-Cyrus' cottages are located, for which use no zoning relief or permission is required. See Exhibit 3-1, 1994 Sandwich zoning by-laws, "Intensity of Use Regulations," Section 2310, p. II-7; and see Exhibit 3-2, 2004 Sandwich Zoning By-laws, "Use Regulations", Section 2310, "Use Regulations Schedule," p. II-4; see also Exhibit 5, Boardman Transcript, p. 24, lines 15-17, p. 27, lines 1-7; and Exhibit 6, Jensen Transcript, p. 21, lines 8-23 and p. 51, l.23 through p. 52, l.12.

40. The State Building Code does not make any distinction of use between a cottage as opposed to a single-family residence. See Exhibit 5, Boardman Transcript, p. 27, l.1 through p. 28, l.9.

41. Pursuant to G.L. c. 40A, s. 16, an owner of property may submit a repetitive petition for zoning relief, notwithstanding the fact that a similar or identical application for zoning relief had previously been denied, if two years have passed since the prior unsuccessful zoning application for relief, and accordingly, neither the principles of *res judicata* or collateral estoppel apply in this case to applications for zoning relief. See Exhibit 3, Molloy Affidavit, and Exhibit 3-7, copy of G.L. c. 40A, s. 16.

42. The Town of Sandwich has not brought ay zoning enforcement action against any of the properties shown on the ANR Plan, with the exception of the denial of Ms. Perotti-Cyrus' application for a building permit to repair her cottage. See Exhibit 5, Boardman Transcript, p. 30, l.20 through p. 32, l.5.

43. One of the purposes of dimensional zoning is to control structural density in any given district. See Exhibit 5, Boardman Transcript, p. 42, l.16-20; see Exhibit 6, Jensen Transcript, p. 69, l.15-23.

44. The division of the Ploughed Neck Road cottages, which cottages predate both the adoption of subdivision control and zoning by Sandwich, as shown on the 1994 ANR Plan did not change the structural density of the neighborhood. See Exhibit 5, Boardman Transcript, p. 43, l.6-11; see Jensen Transcript, p. 70, l.1-7.

7

45. A dimensional violation pertaining to a single-family residence does not create a use violation under the zoning by-laws. See Exhibit 6, Jensen Transcript, p. 35, l.13 through p. 36, l.4.

46. After Ms. Perotti-Cyrus' application for a building permit was denied by the Building Inspector, she appealed this denial to the Board of Appeals, and simultaneously filed applications for a special permit and a variance, in order to obtain a building permit to repair the modest damage done to her property at 9 Ploughed Neck Road, East Sandwich. See Plaintiff's Complaint, amendments thereto, and Exhibits to same; see also Exhibit 5, Boardman Transcript, p. 26, l.12-19; and Exhibit 1, Perotti-Cyrus Transcript, p. 36, l.4 through p. 41, l.24.

47. In connection with her three applications for relief to the Board of Appeals, Ms. Perotti-Cyrus submitted records from the Town Assessing Department, showing that of two hundred and sixty (262) single family properties in the surrounding area and neighborhood, only thirty (30) such properties, or eleven (11%) percent, had the requisite 60,000 square feet (60,000 ÷ 43,560 = 1.38 acres) required under the Sandwich zoning by-laws in both 1995, when the ANR plan was endorsed, and in 2004, when Ms. Perotti-Cyrus applied for her building permit for 9 Ploughed Neck Road, meaning that the other eighty-nine (89%) percent or 232 properties contained, to varying degrees, less than 60,000 square feet, or 1.38 acres, of lot area. See Exhibit 3, Molloy Affidavit; and see Exhibit 3-8, Assessor's records regarding 262 Single-family properties in the neighborhood surrounding 9 Ploughed Neck Road.

48. Plaintiff's property at 9 Ploughed Neck Road ranks 59th on the Assessor's records set forth in Exhibit 3-8; her other property, at 11 Ploughed Neck Road, ranks 61st on Exhibit 3-8. The other homes shown on the ANR Plan creating plaintiff's property, rank as follows on Exhibit 3-6: No. 13 Ploughed Neck Road ranks 56th; No. 15 Ploughed Neck Road ranks 51st; No. 17 Ploughed Neck Road ranks 44th; No 19 Ploughed Neck Road ranks 49th. See Exhibit 3-8.

49. There are a substantial number of single family homes located on lots with less area than the plaintiff's property, or any of the properties created by the 1994 ANR plan. See Exhibit 3-8.

50. A dimensional nonconformity regarding a single-family home does not create a change of use of a property under the Sandwich zoning by-laws. See Exhibit 6, Jensen Transcript, p. 34, line 13 through p. 36, line 4.

51. The 1994 ANR plan relating to the Ploughed Neck Road cottages did not effect any change of use of these properties, but instead effected only a change in compliance with dimensional requirements in effect as of the date of endorsement of that ANR plan. See Exhibit 6, Jensen Transcript, p. 34, line 13 through p. 36, line 4; see also Exhibit 3, Molloy Affidavit, and Exhibit 3-9, copy of Willard v. Board of Appeals of Orleans, 25 Mass. App. Ct. at 20-21, fn.10 (1987) ("[T]here is an apples-compared-to-oranges problem regarding buildings in sentence two of new Section 6 in that any extension or alteration of a [nonconforming] structure depends on a demonstration to and a finding by the [permit granting authority] that the same will not be substantially more detrimental to the neighborhood than the existing nonconforming use... .")

52. Cottages and single family dwellings are considered to be the same use type under the State Building Code, and no "change of use" permit is required under the State Building Code to change a cottage to a single-family residence, because they are considered the same. See Exhibit 5, Boardman Transcript, p. 27, line 12 through p. 28, line 9.

53. After three public hearings, the Board of Appeals denied all three of Ms. Perotti-Cyrus' applications for zoning relief. See Plaintiff's Complaint and Amended Complaint and attachments thereto.

54. The Board, in denying Ms. Perotti-Cyrus' three applications for relief, relied upon Town Counsel's opinion that the division of the property through the endorsement of the 1994 ANR Plan was in violation of Section 4710 of the Zoning by-laws, specifically, the "Cottage Colony Conversion By-law," and thus rendered the property not lawful under zoning, and because it violated Section 2550 of the Town's zoning by-laws. See Exhibit 6, Jensen Transcript, p. 19, l.4-21; and see Exhibit 5, Boardman Transcript, p. 22, line 20 through p. 24, line 3.

55. Section 2550 of the Sandwich Zoning By-laws, which sets forth the dimensional regulations, states: "Application of amended Intensity of Use Regulations to previously created lots is limited by Section 6, Chapter 40A, MGL. In addition, any increase in lot area, width, depth, frontage, yard, or coverage requirements of this by-law shall not apply to erection, extension, alterations, or moving of a structure on a legally created lot not meeting current requirements, provided that either the lot is in an exempted subdivision (see Section 2560[1]) or the applicant documents that:

    a. At the time such increase requirement became applicable to it, the lot:

---

[1] Section 2560 of the Zoning By-laws has been deleted.

       1. Had at least 5,000 square feet of lot area and 50 feet of frontage on a street; and
       2. Conformed to the existing dimensions required at the time of creation,

  b. The lot is to be used for a single dwelling unit or for non-residential use, provided that no side yard shall be less than 20 feet on a lot having frontage of more than 100 feet but less than 200 feet and that no side yard shall be less than the greater of ten (10) percent of the lot's frontage or six (6) feet on one side and eight (8) feet on the other on a lot having frontage of 100 feet or less,

  c. And the lot was held in ownership separate from all abutting property on December 31, 1998. (Amended 5/4/98)

Such non-conforming lots may be changed in size or shape or their land area recombined without losing this exemption, so long as the change does not increase the actual or potential number of buildable lots."

See Exhibit 3, Molloy Affidavit, and Exhibit2 3-1 and 3-2, 1994 and 2004 Town of Sandwich Zoning By-laws.

56. Section 2550 of the Sandwich Zoning By-laws is *inconsistent* with the is inconsistent with the Home Rule Act, G.L. c. 43B, s. 13, which states, in pertinent part:

> ... Nothing in this section shall be construed to permit any city or town, by ordinance or by-law, to exercise any power or function which is *inconsistent with any general law enacted by the general court before November eighth, nineteen hundred and sixty-six which applies alike to all cities, or to all towns, or to all cities and towns, or to a class of not fewer than two*.

See Exhibit 3, Molloy Affidavit, and Exhibit 3-10, copy of G.L. c. 43B, s. 13 (emphasis added).

57. Specifically, Section 2550 is inconsistent with the Subdivision Control Law, G.L. c. 4, ss. 81L and 81P, which allows the division of property on which two of more structures existed as of the date the municipality adopted the Subdivision Control Law, G.L. c. 41, ss. 81K, et seq., because Section 2550 prohibits the division of developed land upon which two or more structures have existed since the municipality adopted the Subdivision Control Law (August 1954 for Sandwich) (which was enacted in 1953, and most assuredly applies to two or more municipalities, Citgo Petroleum Corp. v. Planning Board of Braintree, 24 Mass. App. Ct. at427; Smalley v. Planning Board of Harwich, 10

10

Mass. App. Ct. at 604), unless the resulting lots, after division comply with dimensional requirements upon the date of endorsement of this particular type of ANR plan.

58. The Subdivision Control Law contains no requirement that the division of properties developed before the municipality adopted subdivision control must comply with dimensional requirements in effect as of the date of such division, and in point of fact, both the Supreme Judicial Court and the Appeals Court have repeatedly held that a planning board may not withhold endorsement of such an ANR plan on such grounds. Citgo Petroleum Corp. v. Planning Board of Braintree, 24 Mass. App. Ct. at 427; Smalley v. Planning Board of Harwich, 10 Mass. App. Ct. at 604.

59. Plaintiff has standing to assert lack of compliance with the Home Rule Act, G.L. c. 43B, s. 13, pursuant to G.L. c. 231A, s. 2, and G.L. c. 43B. s. 14, in an action for declaratory judgment. See Exhibit 3, Molloy Affidavit, and Exhibit 3-11, G.L. c. 43B, s. 14, and Exhibit 3-12, G.L. c. 231A, s.2.

60. As a consequence of her inability to repair 9 Ploughed Neck Road, Ms. Perotti-Cyrus has lost rental income in the amount of $700 per month, from October 2003, through the present. See Exhibit 1, Perotti-Cyrus Transcript, p. 23, l.18-20; p. 45, l.22-24.

61. In addition, plaintiff has incurred costs, including having to obtain a loan and mortgage on 9 Ploughed Neck Road, in the amount of $50,000, in order to support herself in replacement of the rental income she formerly received from the rent of 9 Ploughed Neck Road. See Exhibit 1, Perotti-Cyrus Transcript, p. 29, l.11 through p. 30, l.15.

62. The current fair market value of No. 11 Ploughed Neck Road is $168,000, and the fair market value of No. 9 Ploughed neck Road is similar, if the property could be repaired and rendered habitable. See Exhibit 1, Perotti-Cyrus Transcript, p. 3, l. 4-21.

63. The fair market value of No. 9 Ploughed Neck Road, unrepaired and uninhabitable is zero. See Exhibit 1, Perotti-Cyrus Transcript, p. 31, l.22-24.

64. The Town of Sandwich has engaged in spot zoning with respect to plaintiff's property, in deciding that it is unlawful, while at the same time granting a building permit to another cottage owner, Marjorie Collis, at 15 Ploughed Neck Road, one of the other properties created through endorsement of the 1994 ANR Plan, to reshingle her home, despite the fact that the property suffers from all of the alleged

deficiencies suffered by plaintiff property. See Exhibit 10, Collis Building Permit.

65. The Town of Sandwich has violated the equal protection clause of the Massachusetts and Federal Constitutions in treating plaintiff's property differently from other dimensionally non-conforming properties in the surrounding neighborhood. See Exhibit 3-6; see Exhibit 8, Miller Buntich Transcript, p. 56, l. 7 through p. 58, l. 8.

66. Section 6 of Chapter 40A, first paragraph, states:

> Except as hereinafter provided, a zoning ordinance or by-law shall not apply to structures or uses lawfully in existence or lawfully begun, . . . , but shall apply to any change or substantial extension of such use, to a building or special permit issued after the first notice of said public hearing, to any reconstruction, extension or structural change of such structure and to any alteration of a structure begun after the first notice of said public hearing to provide for its use for a substantially different purpose or for the same purpose in a substantially different manner or to a substantially greater extent *except where alteration, reconstruction, extension or structural change to a single or two-family residential structure does not increase the nonconforming nature of said structure.* . . .

> G.L. c. 40A, s. 6 1st¶ (in pertinent part, emphasis added) (See Exhibit 3-13)

67. Plaintiff's cottages at 9 and 11 Ploughed Neck Road are "structures lawfully in existence" and "lawfully begun," pursuant to their lawful division pursuant to G.L. c. 41, s. 81L, which allows the division of properties upon which two or more structures existed when Sandwich adopted the Subdivision Control Law, such that each structure is located on its own lot, without regard to compliance with dimensional requirements in effect when the ANR plan dividing the property is endorsed. G.L. c. 40A, s. 6 1st¶.

68. Certain other properties, located at 6 and 8 Jarves Street and 133 and 135 Route 6A, were similarly divided pursuant to G.L. c. 41, s. 81L, because the structures on those properties predated the Town's adoption of Subdivision Control, but at the time of this type of ANR division, in each instance, one of the two resulting lots at each property failed to meet the minimum dimensional requirements in effect as of the date of endorsement of each such ANR plan, however, in each instance, the Town of Sandwich, specifically the Board of Appeals, has granted numerous special permits to each of these properties, and has

never treated these properties "unlawful" under zoning, despite the fact that these properties suffer from the very same dimensional nonconformity suffered by plaintiff's property. See Exhibit 11, Jarves Street properties, and Exhibit 12, Route 6A properties, and Exhibit 3-18, Summary of Town of Sandwich dimensional zoning by-laws from 1960 through present.

69. The ANR Plan dividing 6 and 8 Jarves Street into two separate lots, each containing one structure, the former church rectory on Lot A and the church on lot B, was endorsed by the then-chair of the Planning Board, JoAnne Miller-Buntich, despite the fact that Lot A did not meet the dimensional requirements as of the date of endorsement of this ANR Plan. See Exhibit 8, Miller Buntich Transcript, p. 63, lines 11-23.

70. Ms. Miller-Buntich was the Director of Planning & Development for the Town of Sandwich from September 1998 through November 4, 2005. See Exhibit 8, Miller Buntich Transcript, p. 7, line 1 through p. 13, line 1.

71. In early 2004, Ms. Miller Buntich attended hearings before the Zoning Board of Appeals in her capacity as Director of Planning & Development, at which an amendment for a special permit for 8 Jarves Street, Lot B, was considered. Despite the fact that she was well aware that Lot A, 6 Jarves Street, did not comply with zoning dimensional requirements, and that the doctrine of infectious invalidity, per Town Counsel's opinion and interpretation of the zoning by-laws, should have prohibited the issuance of any special permit, or amendment thereto, from issuing to 8 Jarves Street, Ms. Miller Buntich failed to bring this to the attention of Board of Appeals, and an amendment to the special permit for 8 Jarves Street was issued. See Exhibit 8, Miller Buntich Transcript, p. 64, line 1 through p. 65, line 22.

72. The Town of Sandwich has violated both the equal protection and due process clauses of the Massachusetts and Federal Constitutions in depriving her of the protections afforded in G.L. c. 40A, s. 6 1st ¶, especially in light of its treatment of similarly divided properties, which also did not meet dimensional requirements at the time of division pursuant to an ANR plan.

73. The only place in Section 6, Chapter 40A, that references the date of endorsement of a plan as having any bearing is paragraph 4, which states:

> Any increase in area, frontage, width, yard, or depth requirements of a zoning ordinance or by-law shall not apply to a lot for single and two-family residential use _which at the time of recording or endorsement_, whichever occurs sooner

13

was not held in common ownership with any adjoining land, conformed to then existing requirements and had less than the proposed requirement but at least five thousand square feet of area and fifty feet of frontage. Any increase in area, frontage, width, yard or depth requirement of a zoning ordinance or by-law shall not apply for a period of five years from its effective date or for five years after January first, nineteen hundred and seventy-six, whichever is later, to a lot for single and two family residential use, provided the plan for such lot was recorded or endorsed and such lot was held in common ownership with an adjoining land and conformed to the existing zoning requirements as of January first, nineteen hundred and seventy-six, and had less area, frontage, width, yard or depth requirements than the newly effective zoning requirements but contained at least seven thousand five hundred square feet of area and seventy-five feet of frontage, and provided that said five year period does not commence prior to January first, nineteen hundred and seventy-six, and provided further that the provisions of this sentence shall not apply to more than three of such adjoining lots held in common ownership. The provisions of this paragraph shall not be construed to prohibit a lot being built upon, if at the time of the building, building upon such lot is not prohibited by the zoning ordinances or by-laws in effect in a city or town.

See Exhibit 3-13, G.L. c. 40A, s. 6, 4th¶ (emphasis added).

74. The fourth paragraph of section 6 of the Zoning Act, Chapter 40A, applies only to vacant land. See Exhibit 3-19, Dial Away Co., Inc. v. Zoning Board of Appeals of Auburn, 41 Mass. App. Ct. 165, 168, 669 N.E.2d 446 (1996) (paragraph 4 of Section 6 applies only to vacant land, while paragraph 1 of Section 6 applies to lots upon which structures have already been constructed); and see Exhibit 3-20, Willard v. Board of Appeals of Orleans, 25 Mass. App. Ct. 15, 18, 514 N.E.2d 369 (1987) ("There is nothing to suggest on the face of the fourth paragraph to suggest that it was intended to apply to anything but vacant land"). Most assuredly, properties such as plaintiff's are not vacant land.

75. Section 2550 of the Town's Zoning By-laws conflicts with G.L. c. 40, s. 6,1st¶, and Section 2420 of the Town's Zoning By-laws, which states (in pertinent part):

> **2420. Change, Extension Or Alteration.** No change, extension or alteration of a pre-existing non-conforming use and no change, extension or alteration of a pre-existing nonconforming structure may be made except

14

upon the issuance of a special permit from the Zoning Board of Appeals. Such a special permit may be granted only if the special permit granting authority finds that the proposed change, extension or alteration of a pre-existing non-conforming use, or change, extension or alteration of a pre-existing non-conforming structure is not substantially more detrimental to the neighborhood than the existing nonconforming use or non-conforming structure.

See Exhibit 3-1, 1994 Sandwich Zoning By-laws, Sections 2420 and 2550; and see Exhibit 3-2, 2004 Sandwich Zoning By-laws, Sections 2420 and 2550; and see Exhibit 3-13, G.L. c. 40A, s. 6, 1st¶.

76. The Town of Sandwich was first settled in 1639, and there are many properties which were developed before the Town adopted zoning in 1960. See Molloy Affidavit, ¶¶21-24.

77. According to the Town of Sandwich Assessing Department records, there are at least 42 properties which were developed before 1954, and which contain less than 5,000 square feet (0.11 acres) of lot area. See Molloy Affidavit, ¶23; and see Exhibit 3-21.

78. According to a review of the ANR plans on file with the Office of Planning & Development, for streets beginning with "A" through "Jarves Street," there are some twenty-eight properties created through the endorsement of an ANR plan, after 1960 and through the present, by virtue of the fact that the structures on the property pre-date the adoption of Subdivision Control by Sandwich in 1954, with one or more of the resulting lots being dimensionally nonconforming as to lot area as of the date of the ANR endorsement. See Molloy Affidavit, ¶¶23, 24.

79. The Town of Sandwich Zoning By-laws allow the creation of dimensionally nonconforming lots in connection with Cluster Special Permits, providing for smaller lots in exchange for designated open space within the development, as well as in connection with the development of affordable housing. See Exhibit 3-2, Section 4400-4448, "Cluster & Village Special Permits," and Section 4550-4456 "Affordable Housing Conditional Density Regulation."

80. Despite the fact that the Town, essentially, is seeking to compel the abandonment of plaintiff's cottage, by refusing to grant her a building permit to repair the same, the Town has never, either as to Ms. Perotti-Cyrus or her predecessors in title, brought an action pursuant to G.L. c. 40A, s. 7, to enjoin either any alleged use or structural violation, nor has any notice of any such action ever been recorded with the

Barnstable Registry of Deeds, as is required by Section 7 of the Zoning Act.

Plaintiff,

PATRICIA PEROTTI-CYRUS,

By her attorney,

/s/ Julie C. Molloy
Julie C. Molloy     BBO#555176
379 Route 6A
East Sandwich MA 02537
(508) 833-3707

Dated: December 23, 2005

CERTIFICATE OF SERVICE

I, Julie C. Molloy, Esq., hereby certify that a copy of the foregoing was served via U.S. Mail, ~~first class, postage pre-~~paid FEDEX, on December 24, 2005, upon the defendants, as follows:

Leonard H. Kesten, Esq.
Deborah Ecker, Esq.
Brody, Hardoon, Perkins & Kesten
One Exeter Plaza, 12th floor
Boston MA 02116

/s/ Julie C. Molloy