UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO.: 05-10116DPW

PATRICIA PEROTTI-CYRUS
      Plaintiff,

   v.

ROBERT JENSEN, Chairman of the Board of
Appeals for the Town of Sandwich, ROBERT
GUERIN, JAMES KILLION, MATTHEW
McDONNELL, ERIK VAN BUSKIRK,
WILLIAM DAWES, and MICHAEL
LESPERANCE, as they are Members of the
Board of Appeals, DONNA BOARDMAN,
Building Inspector and Zoning Enforcement
Officer for the Town of Sandwich, and TOWN
OF SANDWICH,
      Defendants.

## DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### Introduction

The Defendants submit the following supplemental memorandum of law in response to the Court's inquiries at a hearing on the parties' motions for summary judgment. The Defendants incorporate the facts and legal arguments contained in their previously submitted Memorandum of Law herein.

**Argument**

I.  Neither the Structure Nor the Use of the Plaintiff's Property Are
    Lawfully In Existence

General Laws Chapter 40A, section 6 paragraph 1, provides for the

protection against the application of a zoning by law or ordinance for structures

or uses of properties lawfully in existence prior to the adoption of the zoning

ordinance or bylaw. Specifically, paragraph one of section six specifically states:

> Except as hereinafter provided, a zoning ordinance or by-law shall
> not apply to **structures or uses lawfully in existence or lawfully
> begun...before** the publication or notice of the public hearing on
> such ordinance or by-law . . .

G.L. c. 40A, §6, para. 1 (emphasis added). For section six to apply and for the

inquiry to proceed any further, the structure or use of the property must have

been lawfully in existence prior to the enactment of the zoning by-laws at issue.

Here, the Plaintiff's structure and use of her property was not <u>lawfully</u> in

existence prior to the adoption of the Town of Sandwich Zoning By-laws

specifically, sections 2550 and 4710 of the Town of Sandwich Zoning By-laws,

which set forth the minimum requirements for single family dwellings in the

zoning district in which the Plaintiff's property is located. It is not disputed that

when the Plaintiff's lot was created by the endorsement of the ANR plan in 1994,

the lot did not meet the minimum lot size required for single family dwellings in

the zoning district in which the land was located. Because the Plaintiff's lot was

not created until after the enactment of the zoning by-laws, the Plaintiff's lot is

not protected from the application of those bylaws to the structure and use of her

property.

2

Case law is clear that the endorsement of an ANR plan does not provide the lots created by the ANR endorsement any zoning validity and the undersized lots shown on the ANR plan could not be conveyed out under separate ownership for single family dwelling use, absent zoning relief. Unless each lot has the required area and other dimensions required for the proposed single-family use it is not lawful to create such new lots or to change the use of the property regardless of the number of lots that are formed through the approval not required ("ANR") process. Citgo Petroleum Corp. v. Planning Board of Braintree, 24 Mass. App. Ct. 425 (1987); Smalley v. Planning Board of Harwich, 10 Mass. App. Ct. 599, 603 (1980). When the ownership of the property was divided, with the subject lot being conveyed to the Plaintiff, the resulting individually-owned cottages and lots were not lawful under the zoning by-law. Because the lots, including the Plaintiff's lot, were not lawful and were not lawfully in existence prior to the enactment of the zoning bylaws at issue, the Plaintiff's lot is not afforded protection from the application of those bylaws by Section six of Chapter 40A.

It should be noted that the structure was not nonconforming at the time the Bylaw was amended. Rather, only the use was nonconforming at that time. The structure only became nonconforming when the lot was unlawfully created, thereby depriving the structure of required setbacks and frontage. Thus, the structural nonconformity was created after the zoning change is not covered by G.L. c.40A, §6. A use or structure only "achieves the status of nonconformity for statutory purposes if it precedes the coming into being of the zoning regulation which prohibits it." Mendes v. Board of Appeals of Barnstable, 28 Mass. App.

3

Ct. 527, 529-30 (and cases cited). Here, the nonconforming nature of the structure (setbacks and frontage) were only created by virtue of the unlawful division and sale of the lot. This nonconformity did <u>not</u> preexist the relevant bylaw provisions. Indeed, the structure never would have been legal as currently situated, even before the amendment to the cottage colony bylaw provisions, since that amendment did not affect the requirements for structural setbacks and frontage. <u>Compare</u> <u>Mendes</u>, 28 Mass.App.Ct. at 530 ("The owners' use of the premises has never been permitted by the town's zoning regulations and has never been nonconforming in the special sense that it existed 'at the time the [use restricting] zoning by-law was originally adopted"). Therefore, the Plaintiff should not be allowed to benefit from the unlawful conduct of her predecessor in interest.

In the precedential cases that discuss the application of General Laws Chapter 40A, §6 and specifically the second "except" clause contained in paragraph 1 of that section, all of the properties discussed were <u>lawfully in existence</u> prior to the adoption of the zoning by-law. For example, in <u>Fitzsimonds v. Board of Appeals of Chatham</u>, 21 Mass.App.Ct., 53 (1985), a case involving the conversion of a cottage colony, the cottage colony was already "condominiumized" and the condominiums had already been sold to individual owners, including the Plaintiff <u>prior to</u> the enactment of the Town bylaw restricting the conversion of cottage colonies to condominiums. Because the Plaintiff's condominium was lawfully in existence prior to the enactment of the by-law, the protections afforded by §6 of Chapter 40A from the application of the subsequently enacted by law would apply. Here, the Plaintiff's lot was not

4

lawfully in existence prior to the date the cottage colony conversion by-law was enacted and, as such, the lot is not afforded protection from the application of the by-law. Consequently, to the extent the creation of the lot resulted in the structure becoming noncompliant as to setbacks, area and frontage, the structure is similarly without protection. Because the Plaintiff's lot did not meet the minimum dimensional requirements for a single family dwelling, or indeed for any use, in the zoning district in which the lot is located, once the undersized lot was conveyed out under separate ownership, a new dimensional illegality was created, to which the protections of G.L. c.40A, §6 do not apply.

While the cottage itself was in existence prior to the enactment of the zoning bylaws, as opposed to the lot, the Courts have found that, "[c]reating a distinction in the treatment between a nonconforming structure and a nonconforming lot is one that analytically and practically should not be made. The two concepts are intertwined and separating them would permit a landowner to circumvent valid and useful minimum lot area requirements". Bransford v. Zoning Board of Appeals of Edgartown, 444 Mass. 852, 861 (2005). As such the "structure" being the lot and cottage, were not lawful at the time the lot was created and conveyed out under separate ownership to the Plaintiff. In addition, the use of the undersized lot as a single family dwelling use was not lawful. Accordingly, the Plaintiff cannot satisfy the first sentence contained in paragraph 1 of Section six that the structure be lawfully in existence prior to the adoption of the zoning by-law at issue and, as such, the Plaintiff cannot avail herself of the protections afforded to properties lawfully in existence prior to the adoption of zoning contained in Section six of Chapter 40A.

While the result may appear harsh for the Plaintiff, the problem was knowingly created by her predecessor in interest, and the Plaintiff's remedy is against that predecessor in interest. "Where a landowner divides a parcel so that one or more lots do not conform to zoning requirements, the ensuing hardship is deemed self-created." Thibault v. Sandwich Zoning Board of Appeals, Barnstable Superior Court, C.A. No. 2004-00588 (March 2, 2006) a copy of which is attached hereto as **Exhibit 1**, citing, Adams v. Brolly, 46 Mass. App. Ct. 1, 4 (1998). "A self-inflicted nonconformity is an 'unprotected, rather than a lawful, nonconforming use' or lot." Id., quoting, Martin v. Board of Appeals of Yarmouth, 20 Mass. App. Ct. 972 (1985). "Any change or extension of an unprotected nonconforming use or structure does not have the benefit of G.L. c. 40A, § 6 or the special permit process." Id. As the recent decision in Thibault confirmed, an unprotected nonconforming use or structure such as the unprotected use and structure here, is not afforded the protections of G.L. c. 40A, § 6 or the special permit process and no further inquiry under the statute is required. The Defendants properly denied the Plaintiff's appeal of the Building Inspector's decision denying the Plaintiff's building permit application and properly denied her applications for a special permit and a variance.

II.    The Plaintiff's structure was not a lawfully existing nonconforming single family residential structure subject to the second "except" clause contained in G.L. c. 40A, § 6 para. 1.

If the Court finds that the structures or use of the Plaintiff's property was lawfully in existence prior to the enactment of the zoning bylaws, which it clearly was not, and that the Plaintiff's nonconforming cottage retained some sort of grandfathered protection from the zoning bylaws, which it clearly did not, then

the next inquiry to be made under G.L. c. 40A, § 6 is contained in the second

"except" clause of the first sentence of paragraph 1.  Specifically the statute

provides:

> [zoning ordinance or bylaw] shall apply to any change or substantial extension of such use, to a building or special permit issued after the first notice of said public hearing, to any reconstruction, extension or structural change of such structure and to any alteration of a structure begun after the first notice of said public hearing to provide for its use for a substantially different purpose or for the same purpose in a substantially different manner or to a substantially greater extent **except where alteration, reconstruction, extension or structural change to a single family or two family residential structure does not increase the nonconforming nature of said structures.**

M.G. L. c. 40A, § 6 para. 1 (emphasis added).  In interpreting this second "except

clause", an initial determination must be made as to whether a proposed

alteration of or addition to or reconstruction of a nonconforming structure would

increase the nonconforming nature of said structure.  Bransford, 444 Mass. 852,

citing Willard v. Board of Appeals of Orleans, 25 Mass. App. Ct. 15 (1987).  The

Court has held that this part of the statute [the second 'except' clause' of the first

paragraph of Chapter 40A, § 6] is not concerned with the use of the structure or

of the land on which it is located and has opined that:

> "[w]e think that the quoted language should be read as requiring a board of appeals to identify the particular respect or respects in which the existing structure does not conform to the requirements of the present by-law and then determine whether the proposed alteration or addition would intensify the existing nonconformities or result in additional ones. If the answer to that question is in the negative, the applicant is entitled to the issuance of a special permit under the second "except" clause of Chapter 40A, § 6, and any implementing by-law. Only if the answer to that question is in the affirmative will there be any occasion for consideration of the additional question illuminated in the Fitzsimonds, case [of detriment to the neighborhood]."

7

Bransford, 444 Mass. at p, 858 quoting, Willard, 25 Mass.App.Ct. at 21-22.  The
Court in Bransford went on to opine that the rule to date is that "where an
undersized lot exists, the proposed reconstruction may be allowed without
special permit only if the proposed new residence does not intensify existing
nonconformities."  Bransford, 444 Mass. at p. 859.

Again as set forth above, the structure here (the cottage located on the
Plaintiff's undersized lot) is not a lawfully preexisting nonconforming single
family structure and while the Court in Fitzsimonds proceeded in that case on
the basis that the Plaintiffs' house was a single family structure in relation to the
"except" clause, the Plaintiff's structure (a former cottage) in the Fitzsimonds
case was lawful and had been created and sold out as individual condominium
units prior to the enactment of the zoning bylaws regulating the conversion of
cottage colonies to condominiums from which the Plaintiff in Fitzsimonds
sought protection. Fitzsimonds, 21 Mass. App. Ct. 53, 56. Simply stated, the
Plaintiff's structure could not lawfully be constructed (for any purpose) on the
lot on which it is currently situated even prior to the amendment of the cottage
colony bylaw provision and may not now be reconstructed.  Such a result would
promote the creation of new illegalities, which is patently inconsistent with the
well-recognized policy of eliminating existing nonconformities—not creating
new ones. See Asack v. Board of Appeals of Westwood, 47 Mass. App. CT. 733,
736 (1999) ("A basic purpose of the zoning laws is "to foster the creation of
conforming lots.") (and cases cited); See also, e.g., Davis v. Zoning Board of
Appeals of Chatham, 52 Mass. App. Ct. 349, 357 (2001); Blasco v. Board of
Appeals of Winchendon, 31 Mass. App. Ct. 32, 39 (1991).

8

III.    The Cottage Colony could not be converted to single-family dwelling use under separate ownership.

The Cottage Colony was not used as year-round single family dwelling use prior to the adoption of zoning in the Town of Sandwich in 1960. As a threshold matter, it is Plaintiff's burden to present evidence to support her contention to the contrary. Derby Refining Co. v. City of Chelsea, 407 Mass. 703, 712 (1990); Green v. Board of Appeals of Provincetown, 26 Mass. App. Ct. 469, 470 n.3 (1988). Thus, at the summary judgment stage, if Plaintiff is unable to present such evidence, the Town is entitled to judgment in its favor. See Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).

Plaintiff has provided absolutely no competent evidence in this regard. Indeed, at the April 12 summary judgment hearing, Plaintiff's counsel specifically admitted that she had no direct evidence regarding the historic use of the property and would not be able to obtain such evidence.

While it is the Plaintiff's burden to prove that the cottages were used as year round single family dwellings and were not used as a seasonal cottage colony the circumstantial evidence supports the Defendants contention that in fact the cottage was used as part of cottage colony on a seasonal basis. First, the Plaintiff admits that up to 1994 the prior property owner, Elizabeth Sprague, operated the structures as a "cottage colony". See, Exhibit 5 attached to the Defendants' Memorandum of Law In Support of Its Opposition to Plaintiff's Motion For Summary Judgment at p. 5. The Plaintiff admits that the definition of a "cottage colony" as contained in the Town of Sandwich Zoning By-laws is,

9

"two or more detached **seasonal dwellings** located on the same lot…" Id. at p. 6. (emphasis added). By her own admission, the cottage was used as a seasonal dwelling prior to the endorsement of the ANR plan. The fact that the cottages were outfitted with individual heating units does not provide evidence that the cottages were used on anything but a seasonal, intermittent basis.

Further, the Building Inspector in 1994 and the Zoning Board of Appeals in 1995 specifically determined that the prior property owner had used the cottages on a seasonal basis and that the property constituted a cottage colony within the meaning of the Zoning By-laws.[1] Although the Plaintiff's predecessor in interest subsequently appealed the ZBA's determination that the property was a cottage colony, that appeal was dismissed with prejudice. Furthermore, even in the appeal that was filed, the Plaintiff's predecessor in interest did not challenge the finding of seasonal use, but rather challenged the ZBA's decision solely on the basis of the floor area of the cottages. Exhibit 2. Certainly, had the prior property owner had evidence to challenge that the cottages were not used on a seasonal or intermittent basis at that time, the prior property owner would have incorporated that evidence into his objection that the property did not fall under the definition of a cottage colony as the building inspector had found.

As set forth in the Defendants' Memorandum of Law in Support of their Opposition to the Plaintiff's Motion For Summary Judgment, the endorsement of an ANR did not give the property zoning validity and did not convert the seasonal, intermittent use of the cottage colony to single family dwelling use as

---

[1] Exhibit 2 hereto is a true and accurate copy of the Complaint filed by Plaintiff's predecessor in interest, appealing the ZBA's 1995 decision. Attached to the Complaint, respectively, are copies of the Building Inspector's and ZBA's decisions.

the lots under separate ownership did not meet the lot size required under the zoning by-laws for single family dwelling use at the time of the ANR endorsement. The Plaintiff's property is not exempt from the application of the zoning bylaw. The Plaintiff's desired use of the property as a year round single family dwelling is not a preexisting nonconforming use that is subject to the protection of Chapter 40A, § 6.

If the Court finds that the preexisting nonconforming use of the Plaintiff's cottage was as a single family dwelling and was not used as a part of a seasonal, intermittent cottage colony, then, paragraph 1 of Section six allows for the extension or alteration of a preexisting nonconforming use provided that, "no such extension or alteration shall be permitted unless there is a finding by the permit granting authority designated by ordinance or by-law that such change, extension or alteration shall not be substantially more detrimental than the existing nonconforming use to the neighborhood.". M.G.L. c. 40A, § 6, para. 1. This language for the change, extension or alteration of a pre-existing non-conforming use is tracked in Section 2420 of the Town of Sandwich Zoning By-laws which states that "[n]o extension, or alteration of a pre-existing non-conforming use and no change, extension or alteration of a pre-existing non-conforming structure may be made except upon the issuance of a special permit from the Zoning Board of Appeals. Such a special permit may be granted only if the special permit granting authority finds that the proposed change, extension or alteration of a pre-existing non-conforming use, or change, extension, or alteration of a pre-existing non-conforming use....is not substantially more detrimental to the neighborhood than the existing non-conforming use or non-

11

conforming structure." Section 2420 of the Town of Sandwich Zoning By-laws attached hereto as Exhibit 3. Again, the Plaintiff will not be able to prove, and has the burden of proving, that the preexisting use of the cottage as part of the larger cottage colony was not seasonal or intermittent use. Davis, supra, 52 Mass. App. Ct. at 357 n.12. As discussed above, Plaintiff's counsel has admitted in open court that such evidence will not be forthcoming, and the 1995 Superior Court action did not even challenge the 1995 ZBA decision on this issue.

The Plaintiff did apply to the special permit granting authority, and the decision by the special permit granting authority dated March 8, 2005 denying her application for a special permit was appealed by the Plaintiff as part of this case.

### Conclusion

While the outcome may appear harsh to the Plaintiff in the instant case, because the Plaintiff's property is not lawful and the structure and use of the property was not lawfully in existence prior to the adoption of the Town of Sandwich Zoning By-laws, the Plaintiff's cottage is not afforded the protections of G. L. c. 40A, § 6 para. 1. If the Court deems the Plaintiff's "structure" to be lawfully in existence (distinct from the lot and use) which the Defendants dispute, then all that the Plaintiff is entitled to under the second 'except' clause contained in the first sentence of paragraph 1 of Section, 6, is a building permit to make the repairs to the cottage caused by the fire that will not increase the nonconforming nature of the unlawful nonconforming structure itself. The Plaintiff is not entitled to a declaration that the use of the property be changed from seasonal, intermittent use as a cottage colony to year round single-family

dwelling use or that the preexisting use of the property was that of a year round single-family dwelling use.

The Plaintiff is not left without recourse, however, as she can bring a claim against the prior property owner who sold her a lot that was not lawful and a lot which could not be used for year round single family dwelling use.

Respectfully submitted,
The Defendants,
Town of Sandwich, et al
By their attorneys,

/s/ Deborah I. Ecker
Leonard H. Kesten, BBO# 542042
Deborah I. Ecker, BBO# 554623
BRODY, HARDOON, PERKINS & KESTEN, LLP
One Exeter Plaza
Boston, MA 02116
(617) 880-7100

DATED: April 19, 2006

COMMONWEALTH OF MASSACHUSETTS

BARNSTABLE, ss

SUPERIOR COURT
CIVIL ACTION
NO. 2004-00588

DONALD THIBAULT
Plaintiff

vs.

SANDWICH BOARD OF APPEALS et al.[1]
Defendants

## MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT.

This is a civil action arising from the plaintiff Donald Thibault's attempts to obtain

approval to build an accessory three car garage on his residential property located at 372 Route

6A, in Sandwich, Massachusetts. The defendants are the members of the Board of Appeal of the

Town of Sandwich, the Building Inspector for the Town and the Town. In Count I of the First

Amended Complaint (the complaint), The plaintiff seeks a declaration that the defendants

violated the Home Rule Procedures Act, G.L. c. 43B, § 13 because their interpretation and

application of the town's zoning bylaws is inconsistent with G.L. c. 41 §§ 81L and 81P, and G.L.

c. 40A, § 6. In Count II, the plaintiff appeals from the denial of his application for a building

permit by the Building Inspector. In Count III, the plaintiff appeals from the denial of his

application for a special permit by the Board of Appeals. In Count IV, the plaintiff alleges the

conditions attached to the zoning variance granted by the Board of Appeals constitute an

---

[1]     William Dawes, Robert Guerin, Robert Jensen, James Killion, Federick Watt, Matthew Mcdonnell, Erik Vanbuskirk, as They Are Members of the Town of Sandwich Board of Appeals, Donna Boardman, Building Inspector, Town of Sandwich, and the Town of Sandwich

unlawful deprivation of his right to Equal Protection and an effective taking of his property. The plaintiff has moved for summary judgment pursuant to Mass. R. Civ. P.56 on all counts. The defendants oppose the motion and have filed a cross motion for summary judgment.

For the following reasons the plaintiff's motion is **DENIED** and the defendants' cross motion for summary judgment on Counts I, II and III is **ALLOWED**.

## BACKGROUND

The Summary Judgment record reveals the following undisputed facts:

The Subdivision Control Law, G.L. c. 41, §§ 81K through 81GG, was adopted by the Town of Sandwich on August 20, 1954. The Town enacted its zoning bylaws in 1960. In May of 1960, the Town first adopted a Protective Zoning Bylaw. At the time the Town adopted the Subdivision Control law and its zoning bylaws, a tract of land now designated 372 Route 6A and 374 Route 6A was held under common ownership There were two single family residential buildings on the tract. Both buildings were built prior to the Town's adopting either a zoning bylaw or the Subdivision Control Law.

In 1966, the owner of that tract of land filed a plan dividing the tract into two lots together with an application to the Town Planning Board requesting that the plan be endorsed "Approval Not Required" under the Subdivision Control Law (ANR). G.L. c. 41, §§ 81L, 81P. After fourteen days with no action being taken by the Planning Board, the plan was certified by the Town Clerk as Approval Not Required (ANR) under the subdivision control law.[2] On May 6,

---

[2]    The Town Planning Board had failed to act on the plan and the owner's request that it be endorsed "Approval Not Required" within 14 days of the Plan's submission. By operation of law, the plan was designated ANR and so certified by the Town Clerk.

2

1966, that certified plan dividing the tract was recorded in the Registry of Deeds.

In May of 1966, the Sandwich zoning bylaw required a minimum lot area of 20,000 square feet and 125 feet of frontage for the tract of land in question. The ANR plan divided the single tract into two separate lots or parcels; parcel 40-095 and parcel 40-096. Parcel 40-095 is the larger lot located at 372 Route 6A, East Sandwich. That lot consisted of approximately seven acres and had 99.46 feet of frontage on Route 6A. The house located on that parcel 40-095 was built in 1875. The second lot, parcel 40-096, located at 374 Route 6A, East Sandwich, was approximately a 10,464-square foot in area with 81 feet of frontage on Route 6A. The house located on parcel 40-096 was built in 1930.

As a result of dividing the tract, both lots complied with the use requirements of the zoning bylaw. However, both lots failed to comply with the dimensional requirements of the then existing zoning bylaw. Neither lot conformed to the frontage requirement of at least 125 foot.[3] The smaller lot, parcel 40-096, did not conform to either the frontage or the minimum lot size requirements of the zoning bylaw. Currently, the plaintiff's lot is located in an R2 residential District of Sandwich which requires 200 feet of frontage and 60,000 square feet of lot area. Any structure erected must also have a 50 foot front yard setback and 45 foot side yard setback.

In 1988, the plaintiff acquired parcel 40-095, the larger of the two lots. In 2003, the plaintiff wanted to erect a three car garage on parcel 40-095. The garage plans conformed to the set back requirements of the zoning bylaw but the lot did not conform to the frontage

---

[3]      There is a dispute as to the actual frontage of the two lots. The plaintiff asserts that parcel 40-095 had 99.39 feet of frontage and parcel 40-096 had only 91 feet of frontage. According to the defendant, the respective frontage was 99.46 feet and 81 feet. The dispute is not material since there is no dispute the frontage was less than required under the zoning bylaw.

3

requirements. Initially, the plaintiff sought a zoning variance for the deficiency in frontage. That application was denied on October 14, 2003 because the Board determined that the deficiency could be remedied through the subdivision of the property. On February 13, 2004, the plaintiff filed an application for a building permit to construct the three car garage. That application was denied on April 26, 2004 because the Building Inspector deemed the plaintiff's property "unlawful" under the Zoning Bylaw. The Building Inspector denied the application for a building permit until the property was brought into compliance with the zoning bylaw. After the denial of the building permit application, the plaintiff filed a timely appeal to the Board of Appeals on May 24, 2004. That appeal was denied on August 31, 2004 without prejudice.[4]

On May 24, 2004, the plaintiff had also filed an application to the Board of Appeals for a special permit to build the proposed garage under Section 2420 and Section 1330 of the zoning bylaws. The application for a special permit was also denied on August 31, 2004. On August 2, 2004, while the special permit application and appeal were pending, the plaintiff filed for another application for a variance to build the proposed garage pursuant to Section 1321 of the Bylaws. On August 31, 2004, the Board voted to grant the variance subject to specified conditions. The plaintiff asserts the conditions are so onerous that the constitute a taking.

Use and Intensity Regulations for the Town are governed by Article II of the zoning bylaw. Section 2400 provides "that use of any structure or of land lawfully existing at the time of the enactment or subsequent amendment of this bylaw may be continued although such structure or use does not conform with provisions of this bylaw, subject to the following conditions and

---

[4]      The decision of the Board of Appeal was filed with the Town Clerk on September 29, 2004.

4

exceptions." Section 2420 provides that "no change, extension or alteration of a pre-existing non-conforming use and no change, extension or alteration of a pre-existing non-conforming structure may be made except upon issuance of a special permit from the Zoning Board of Appeals. Such a permit may be granted only if the special permit granting authority finds that the proposed change,...is not substantially more detrimental to the neighborhood than the existing nonconforming use or structure."

## DISCUSSION

In its simplest terms, the determinative issues raised in the Cross-Motions for Summary Judgment are whether the plaintiff's use and structure were "lawfully in existence" when the plaintiff filed his application to build a two-storey, three car garage on the property. If the use and structure were "lawfully in existence," authorization to construct the proposed garage was governed by the special permit procedure pursuant to § 2420 of the zoning bylaw; if they were not "lawfully in existence," the plaintiff's sole recourse would be through the variance procedure. If the plaintiff has the benefit of a valid nonconforming use or structure, that use or structure could be changed or substantially extended where the zoning bylaw permits. Section 2420 of the Sandwich Zoning Bylaw authorizes a special permit for a change or alteration of a pre-existing nonconforming use or structure "only if the special permit granting authority finds that the proposed change ... is not substantially more detrimental to the neighborhood than the existing nonconforming use" or structure. See *Titcomb v. Board of Appeals of Sandwich*, 64 Mass.App.Ct. 725, 729 (2005)[5]; G.L. c. 40A, §6.

---

[5]    Procedure for altering a pre-existing nonconforming use under the Sandwich Zoning Bylaw is the Special Permit procedure rather than the variance procedure.

As a preliminary matter, Count I seeks a declaration that the defendants have violated the Home Rule Procedures Act, G.L. c. 43B, §§ 1 et seq. The plaintiff lacks standing to bring an action under c. 43B. See G.L. c. 43B, §14(1).[6]

G.L. c. 40A, §6, provides that "[e]xcept as hereinafter provided, a zoning ... by-law shall not apply to structures or uses *lawfully in existence* . . . before the first publication of notice of the public hearing on such ... by-law ..." (emphasis supplied). It is undisputed that as of 1966, parcels 40-095 and 40-096 were part of a single tract of land held in single ownership. By virtue of the 1966 plan, that tract or single parcel was divided into two separate and distinct parcels which could be and were conveyed separately. Although approval of the plan under the Subdivision Control Law was not required because there were pre-existing buildings on each lot, see G.L. c. 41, §81L, the two parcels resulting from the division did not conform to the zoning bylaw then in existence.

"Under § 81P [of G.L. c. 41] of the subdivision control law . . . , an owner of land may secure from a planning board an endorsement on a plan of land that 'approval under the subdivision control law [is] not required.' G.L. c. 41, § 81P, as amended by St.1963, c. 363, § 1. A planning board is bound to make such an endorsement unless the plan presented shows a subdivision. *Ibid.* That mandate directs the reader of the subdivision control law back to § 81L, which defines the term 'subdivision,' in part by what it is not." *Gates v. Planning Bd. of Dighton,* 48 Mass.App.Ct. 394, 395 (2000); *Ball v. Planning Bd. of Leverett,* 58 Mass.App.Ct. 513, 516-517 (2003). G.L. c. 41, § 81L, provides in part that "the division of a tract of land on which two

---

[6]    G.L. c. 43B, §14(1) provides "The superior court shall, upon petition of ten or more registered voters or of the attorney general, have jurisdiction in equity to enforce the provisions of this chapter." [Emphasis supplied].

6

or more buildings were standing when the subdivision control law went into effect in the city or town in which the land lies into separate lots on each of which one of such buildings remains standing, shall not constitute a subdivision." Thus a tract of land with two buildings such as that in issue here can be divided into separate lots without being subject to the requirements of the Subdivision Control Law, G.L. c. 41, §§81K through 81GG. The resulting parcels are separate and distinct and not part of a subdivision.

Having said that, the ANR endorsement of the plan does not mean that the parcels resulting from the division are exempt from adverse zoning provisions. See *Cicatelli v. Board of Appeals of Wakefield*, 57 Mass.App.Ct. 799 (2003). In *Alley v. Building Inspector of Danvers*, 354 Mass. 6 (1968) a developer bought a parcel of land which conformed to the minimum lot size requirements of the Danvers zoning law. The developer then divided the parcel into two smaller parcels. One resulting parcel conformed to the zoning bylaw while the second did not. Since the developer kept the nonconforming lot, he bought a third lot, divided it and made his lot conforming. The problem was that the third parcel was rendered nonconforming after it was divided. By dividing a parcel to make one parcel conform to the detriment of the second was referred to as "zoning misbehavior."

In 1966, the plaintiff's predecessor divided a conforming lot into two nonconforming ones. Where a landowner divides a parcel so that one or more lots do not conform to zoning requirements, the ensuing hardship is deemed self-created. *Adams v. Brolly*, 46 Mass.App.Ct. 1, 4 (1998). A self-inflicted nonconformity is an "unprotected, rather than a lawful, nonconforming use" or lot. See *Martin v. Board of Appeals of Yarmouth*, 20 Mass.App.Ct. 972 (1985). Any change or extension of an unprotected nonconforming use or structure does not have the benefit

7

of G.L. c. 40A, §6 or the special permit process.

The plaintiff asserts that the defendant failed to enforce the zoning code as to alleged violation of the frontage requirement within the limitations period provided for in G.L. c. 40A, §7. Where the limitations period expires without any enforcement action being taken, an unlawful use or lot is not thereby converted to a lawful nonconforming use under > G.L. c. 40A, § 6. See *Bruno v. Board of Appeals of Wrentham*, 62 Mass.App.Ct. 527, 537 (2004).

Since the plaintiff's lot was an unprotected nonconforming lot, the plaintiff had the had no entitlement to a building permit to build a three car garage. *Bransford v. Zoning Bd. of Appeals of Edgartown*, 444 Mass. 852, 862 (2005). Nor was the plaintiff entitled to a special permit where the lot was an unproected nonconforming lot.

As to the issue of a variance and the conditions imposed, those issues raise questions of fact which preclude summary judgment.

### ORDER

For the foregoing reasons, the court ORDERS that the plaintiff's Motion for Summary Judgment be DENIED and that the defendants' cross-motion for partial summary judgment on Counts I, II and III be ALLOWED.

By the court (Quinlan, J.)

_____
/ s t    Assistant Clerk

Date: March 2, 2006

A true copy, Attest: _____
/st Asst    **Clerk**

# Commonwealth of Massachusetts
## County of Barnstable
### The Superior Court

CIVIL DOCKET#: BACV2004-00588-A

RE:     Thibault v Sandwich Board of Appeals et al

TO:     Jackie A Cowin, Esquire
        Kopelman & Paige PC
        101 Arch Street
        Boston, MA 02110-1109

## NOTICE OF DOCKET ENTRY

You are hereby notified that on **03/02/2006** the following entry was made on the above referenced docket:

**MEMORANDUM OF DECISION AND ORDER on plaintiff's motion for summary judgment and defendants' cross-motion for summary judgment: Plaintiff's motion for summary judgment be DENIED and defendants' cross-motion for summary judgment on Counts I, II and III be ALLOWED (Regina L. Quinlan, Justice)**

Dated at Barnstable, Massachusetts this 7th day of March, 2006.

Scott W. Nickerson,
Clerk of the Courts

BY: John S. Dale
First Assistant Clerk

Telephone: (508) 375-6684

Disabled individuals who need handicap accommodations should contact the Administrative Office of the Superior Court at (617) 788-8130

cvdgeneric_2.wpd 476131 memord higginbo

# Commonwealth of Massachusetts
## County of Barnstable
## The Superior Court

Civil Docket **BACV2004-00588**

RE:   Thibault v Sandwich Board of Appeals et al

TO:   Jackie A Cowin, Esquire
      Kopelman & Paige PC
      101 Arch Street
      Boston, MA 02110-1109

------

### CLERK'S NOTICE

This is to notify you that in the above referenced case the Court's action on **04/05/2006**:

*RE: MOTION: Plaintiff's for reconsideration of Memorandum of
decision P#17 re motion (P#15) with memorandum n support;
defendant's opposition*

Is as follows:

**Motion (P#18) DENIED by the Court, Quinlan, Justice(1st Asst Clerk, John S.
Dale) Notices mailed/faxed April 05, 2006**

Dated at Barnstable, Massachusetts this 5th day of April,
2006.

                                                  Scott W. Nickerson,
                                                  Clerk of the Courts
                              BY:

                                                  John S. Dale
                                                  First Assistant Clerk

Telephone: (508) 375-6684

COMMONWEALTH OF MASSACHUSETTS

BARNSTABLE, SS.

FIRST BARNSTABLE DIVISION
DISTRICT COURT DEPARTMENT
DOCKET NO. 9525-CV-340

FORESTDALE REALTY, INC. )
                        )
          Plaintiff,    )
                        )
v.                      )          COMPLAINT FILED PURSUANT
                        )          TO THE PROVISIONS OF
JOSEPH KILLORY, MADLON CATERINO, )   M.G.L.  C. 40A, § 17
WILLIAM DAWES, JOHN BRYANT and   )
LEONARD LANDALL, as they are     )       TOWN CLERK
members of the Zoning Board of   )    TOWN OF SANDWICH
Appeals for the Town of Sandwich,)
                        )            APR - 3 1995
          Defendants.   )
                        )        H 50   M   M
                                 RECEIVED & RECORDED

## STATEMENT OF THE CASE

The Plaintiff, a person aggrieved, brings this civil action
pursuant to the provision of M.G.L. c. 40A, § 17 against the
Defendants, as they are Members of the Zoning Board of Appeals
for the Town of Sandwich, the duly authorized authority for the
grant of Special Permit relief and relief from a Decision of the
Building Inspector, pursuant to provisions of G.L. c. 40A, § 9
and 15.

The Plaintiff contends that the Defendants' denial of its
Appeal of the Building Inspector's Decision and denial of its
Application for Special Permit constitutes an arbitrary and
capricious action in excess of the Board's authority and,
therefore, should be annulled.

## PARTIES

1.  The Plaintiff, Forestdale Realty, Inc., a Massachusetts
corporation, with a principal place of business at 33 Route 130,
Forestdale, MA; is the owner of the property which is the subject
matter of the Appeal of the Building Inspector's Decision and
Petition for Special Permit relief and as such is a party
aggrieved by the negative determination reached by the Zoning
Board of Appeals.

2.  The Defendants, Joseph Killory, Madlon Caterino, William
Dawes, John Bryant and Leonard Landall, are residents of the Town

RECD APR - 3 1995

1

of Sandwich, Barnstable County, Massachusetts, and are the duly appointed members of the Zoning Board of Appeals for the Town of Sandwich having the requisite authority to grant relief pursuant to the provisions of M.G.L. c. 40A, § 9 and 15.

## STATEMENT OF THE FACTS

3. Forestdale Realty, Inc., is the owner of six (6) lots situated off of Ploughed Neck Road, Sandwich, Barnstable County, Massachusetts, each of which lots has situated thereon a residential dwelling.

4. Five of the six residential dwellings contain less than 480 square feet (being 458, 456, 451, 458 and 311 square feet) but the sixth contains more than 480 square feet (690 square feet).

5. All six dwellings predate the adoption of the Zoning By-law and the time when the subdivision control law went into effect in the Town of Sandwich.

6. The lots are shown on a plan of land prepared for "Owner: Elizabeth Sprague", which plan was dated October 11, 1994, and was drafted by Alan Kingsbury, P.L.S. Said plan was endorsed as an Approval Not Required plan pursuant to the provisions of M.G.L. c. 41, § 81L, which permits "the division of a tract of land on which two or more buildings were standing when the subdivision control went into effect . . . into separate lots on each of which one of such building remains standing".

7. Said plan is recorded in Barnstable County Registry of Deeds in Plan Book 506 Page 85. A copy of said plan is annexed hereto and marked Exhibit "A".

8. Prior to the endorsement of the Approval Not Required plan on October 19, 1994, all six residential structures were situated on one lot.

9. Forestdale Realty, Inc., purchased said six lots from Elizabeth W. Sprague for consideration of $250,000.00, on October 28, 1994, pursuant to deed recorded in Barnstable County Registry of Deeds in Book 9424 Page 323, a copy of which is annexed hereto and marked Exhibit "B".

10. On January 26, 1995, Theodore Misiaszek, Inspector of Buildings for the Town of Sandwich, (Exhibit "C") interpreter of the Zoning By-Law of said town, issued an opinion that the subject property constituted a "Cottage Colony" as that term is defined in Article VII of the Zoning By-Laws of the Town of Sandwich, which defines cottage colony as follows:

"Cottage Colony - Two or more detached seasonal dwellings located on the same lot, each designed for independent family

living and including cooking facilities, and <u>each</u> containing not more than 480 square feet." (emphasis added)

11. At such time, and at all prior times, it was not true that each of the dwellings contained "not more than 480 square feet", because one of the dwellings contained 690 square feet, substantially more than the maximum 480 square feet required by the Article VII definition.

12. Having determined the subject property to be a cottage colony, the Building Inspector then determined that the subject property was subject to the provision of § 4710 of the Sandwich Zoning By-Laws, entitled "Cottage Colonies", and which provides as follows:

"Cottage Colonies. Any existing cottage colony may not be converted to single-family dwelling use under separate ownership unless the lot upon which each building is located complies with the minimum requirements for single family dwellings in the zoning district in which the land is located, and such non-conforming cottage colony may not be converted to single-family use under condominium, cooperative, time sharing condominium, or any other single-family dwelling use more intensive or frequent than seasonal or intermittent use, unless the lot meets the minimum requirements for Cluster Developments, as set forth in Section 4440. This section shall apply whether or not the lot is situated in a district in which Cluster Development is a prohibited use."

13. Forestdale Realty, Inc., appealed said Decision of the Building Inspector and, simultaneously, sought a Special Permit to relocate five of the six residential dwellings on their own respective lots, in such a way as to move them further apart, and to render them more nearly in conformity with the existing setback requirements.

14. With respect to the Application for a Special Permit to relocate five of the six dwellings, the Board stated that it "could find the relocations to be approvable", but still denied the Application because of its simultaneous finding that the property was in violation of the aforesaid § 4710.

15. With respect to the Appeal of the Building Inspector's Decision, the Board upheld that Decision and found that the property constituted a "cottage colony" as defined in Article VII, and as such was subject to § 4710, which limits or prohibits the conversion to "single family dwelling use under separate ownerships".

REC'D APR - 3 1995

3

## CAUSE OF ACTION

### COUNT I

### APPEAL OF DECISION OF BUILDING INSPECTOR

16.   The Plaintiff hereby reavers, restates and incorporates by reference Paragraphs 1-15 as set out above.

17.   The Plaintiff contends that the Decision recorded with the Town Clerk on March 15, 1995 relating to the Plaintiff's Appeal of the Building Inspector's Decision (a copy of which Decision is attached hereto and marked as Exhibit "D" is erroneous, exceeds the authority of the Board, lacks the requisite findings to support the denial, and should be annulled for those reasons set forth herein:

a)   The Decision is unreasonable, arbitrary and capricious.

b)   The Decision is based upon legal untenable grounds.

c)   The Board's finding that its own by-law definition of "cottage colony" is ambiguous is erroneous.  The language is clear, and requires that <u>each</u> of the dwellings located on a lot contain not more than 480 square feet.

d)   Since the language of the by-law is not ambiguous, the Board erred in employing another by-law article, § 4710, to interpret the definition of cottage colony.

e)   That § 4710 was adopted subsequent to the adoption of the definition of "cottage colony" and thus cannot be used to define "cottage colony".

f)   That prior to the adoption of § 4710, construction of cottage colonies was a permitted use in certain zoning districts, and the purpose of the definition of "cottage colony" was to prohibit construction of dwellings larger than 480 square feet under the permitted use of cottage colonies.

g)   The Decision reached by the Board ignores a long standing practice of the Town in interpreting the phrase "cottage colony" and seeks to render such definition inclusive, whereas same was clearly intended to be exclusive in nature.

h)   The Board's finding that the use of one unit with a floor area of more than 480 square feet as the basis of excluding the property from "cottage colony" status as being a "technical interpretation to contradict the 'spirit of the law'", is clearly erroneous.  At the time

4

REC'D APR - 3 1995

the definition of "cottage colony" was adopted, it was clearly intended to prohibit the construction of units larger than 480 square feet, and it is the Board's decision which seeks a "technical interpretation" and which is in violation of the intended purpose of the By-Law.

i). The Board's alternative finding that, even if the existence of the larger unit removes the property from the definition of "cottage colony"; that it would regard the existence of the larger unit as a "second non-conformity", so that it could retain jurisdiction, and not as a basis of overturning the Building Inspector's Decision is clearly erroneous.

<u>COUNT II</u>

<u>APPEAL OF SPECIAL PERMIT DENIAL</u>

18.   The Plaintiff hereby reavers, restates and incorporates by reference Paragraphs 1-17 set out above.

19.   The Plaintiff contends that the Decision recorded with the Town Clerk on March 15, 1994, relating to the Plaintiff's request for Special Permit to relocate five of the six units, is erroneous, exceeds the authority of the Board, lacks the requisite findings to support that denial, and should be annulled for the reasons set forth herein:

a)   The Decision is unreasonable, arbitrary and capricious.

b)   The Decision is based upon legally untenable grounds.

c)   The Decision of the Board to deny the Special Permit is inconsistent of its findings that "the Board could find the relocations to be approvable" constitutes improper association of the Application of a Special Permit and the Appeal of the Building Inspector's Decision.

WHEREFORE, the Plaintiff requests:

1.   That this Honorable Court find that the Decision of the Board of Appeals was in excess of its authority and therefore should be annulled.

2.   That this Honorable Court find the Plaintiff is entitled to the Special Permit relief granted so as to permit the relocation of the residences and the alleviation of existing non-conformities.

3.   That the Decision of the Building Inspector be overturned.

5

4.  That this Honorable Court award the Plaintiff its costs and reasonable counsel fees in having to prosecute this action.

5.  That this Honorable Court award the Plaintiff such other further relief as it deems appropriate.

Respectfully submitted,
Plaintiff,
By Its Attorney,

Dated:   April 3, 1995

Michael A. Dunning
DUNNING, FORMAN, KIRRANE & TERRY
P. O. Box 560
Mashpee, MA   02649
(508) 477-6500
BBO # 138640

FOREST/D4/4/3/95

6



Exhibit "A"

HERITAGE WAY

PLAN OF LAND
In SANDWICH, MA
For: Douglas Levings, Tr.
Whidah Road
Chatham, MA 02633.

Owner: Elizabeth Sprague
Ploughed Neck Road
East Sandwich, MA 02537

Scale 1"=20'  October 11, 1994
Allan Kingsbury, PLS
22 Pine Road
East Sandwich, MA

REC'D APR - 3 1995

SANDWICH PLANING BOARD

Approval under the Subdivision
Control Law not required.
Chap. 41 Sect. 81L, 81I.

Date: 10-19-94

The above endorsement does not constitute

I certify that this plan was
prepared in conformity with
the rules and regulations of
the Massachusetts Registers
of Deeds.

This plan was prepared in
accordance with the
Procedural and Technical
Standards for the Practice
of Land Surveying in the
Commonwealth of Massachusetts

BP:09424-0323 94-10-28 3:57 #63494

## DEED

18 Ploughed Neck

I, ELIZABETH W. SPRAGUE, surviving tenant by the entirety, of/
East Sandwich, MA

for consideration paid in the amount of TWO HUNDRED FIFTY THOUSAND
and 00/100 ($250,000.00) Dollars,

GRANT TO:

FORESTDALE REALTY, INC., a duly organized Massachusetts
corporation having a usual place of business at 33 Route 130,
Forestdale, MA 02644

with QUITCLAIM COVENANTS,

the land together with the buildings thereon situated in Sandwich
(East), Barnstable County, Massachusetts, described as follows:

LOTS 1 and 2 as shown on a plan of land entitled, "Plan of Land in
East Sandwich, MA. prepared for Forestdale Realty, Inc. 33 Route 13C
Dorestdale, MA 02644  10/18/94  Sale 1 inch = 40 feet, Yankee Survey
Consultants, Unit 1, 40B Industry Road Marstons Mills, MA 02648",
which plan is recorded in Barnstable County Registry of Deeds in
PLAN BOOK ___ PAGE ___ .

Property Address:  16 Ploughed Neck Road
                   East Sandwich, MA

ALSO, the following described property in East Sandwich,
Barnstable County, Massachusetts:

LOTS 1, 2, 3, 4, 5 and 6  as shown on a plan entitled, Plan of
Land in Sandwich, MA for: Douglas Levings, Tr. Widah Road, Chatham,
MA 02633 Owner: Elizabeth Sprague Ploughed Neck Road, East Sandwich
02537 Scale 1" = 20' October 11, 1994 Allan Kingsbury, PLS 22 Pine
Road, East Sandwich, MA", which plan is recorded in Barnstable
County Registry of Deeds in PLAN BOOK 5C6 PAGE 85 .

Property Location:  9 Ploughed Neck Road
                    East Sandwich, MA 02537

The above described premises are conveyed subject to and with the
benefit of all rights, rights of way, easements, appurtenances,
reservations and restrictions of record, insofar as the same are
in force and applicable.





BP:09424-0324 94-10-28  3:57 #63494

For title see deed dated November 29, 1954 and rrecorded
in Barnstable County Registry of Deeds in Book 892 Page 69.

Also deed dated August 8, 1960 and recorded in said Deeds
in Book 1086 Page 149.

WITNESS my hand and seal this _28_ day of _OCTOBER_ , 1994.

ELIZABETH W. SPRAGUE

### THE COMMONWEALTH OF MASSACHUSETTS

Barnstable,ss.                                    _OCTOBER 28_ , 1994.

Then personally appeared the above named Elizabeth W. Sprague and
acknowledged the foregoing instrument to be her free act and deed,
before me

Notary Public

JONATHAN D FITCH

My Commission Expires:
12-9-99

# TOWN OF SANDWICH

THE OLDEST TOWN ON CAPE COD

(508) 888-4200



OFFICE OF THE BUILDING INSPECTOR

THEODORE MISIASZEK

January 26, 1995

Michael A. Dunning, Esq.
DUNNING, FORMAN, KIRRANE & TERRY
Suite A
Shellback Place
133 Route 28
Box 560
Mashpee, MA  02640

Re:  Harry Miller
     Lots 1-6, Ploughed Neck Road
     Barnstable Plan Book 506 Page 85

Dear Attorney Dunning,

     Please be advised that after receiving an opinion
from town counsel, it is my opinion that the above refer-
enced property constitutes a "Cottage Colony" under Article
4710 of the Town of Sandwich zoning bylaws and, as such,
may not be converted to single family dwelling use under
separate ownership unless the lot upon which each building
is located complies with the minimum requirements for the
zoning district in which the property is located.

     If you are aggrieved by my decision you have the right
to appeal it to the zoning board of appeals.

                              Sincerely,

                              Theodore Misiaszek
                              Inspector of Buildings

TM/cbs
cc:  Harry Miller
     33 Route 130
     Forestdale, MA  02644

95-13

# THE COMMONWEALTH OF MASSACHUSETTS

*Town Clerk*

**SANDWICH**

*City or Town*

And 95-13 Appeal of Decision of Building Inspector Attached

DECISION: Decision of Building Inspector is UPHELD

Exhibit "D"

## BOARD OF APPEALS

Date: March 14, 1995

DENIAL

Certificate of ~~Granting~~ of     Special Permit

(General Laws Chapter 40A, Section 11)

The Board of appeals of the City or Town of SANDWICH

hereby certifies that a     Special Permit has been ~~GRANTED~~ DENIED

To    Forestdale Realty, Inc.    Harry B. Miller, Jr., Pres. & Treasurer

Address   33 Route 130

City or Town   Forestdale, MA 02644

affecting the rights of the owner with respect to land or buildings at _____

   9-19 Ploughed Neck Road      Map 52    Lot 009

    And the said Board of Appeals further certifies that the decision attached hereto is a true and correct copy of its decision ~~GRANTING~~ DENYING said     special permit, and that copies of said decision, and of all plans referred to in the decision, have been filed with the planning board and the city or town clerk.

    The Board of Appeals also calls to the attention of the owner or applicant that General Laws, Chapter 40A, Section 11 (last paragraph) provides that no variance or special permit, or any extension, modification or renewal thereof, shall take effect until a copy of the decision bearing the certification of the town or city clerk that twenty days have elapsed after the decision has been filed in the office of the city or town clerk and no appeal has been filed or that, if such appeal has been filed, that it has been dismissed or denied, is recorded in the registry of deeds for the county and district in which the land is located and indexed in the grantor index under the name of the owner of record or is recorded and noted on the owner's certificate of title. The fee for such recording or registering shall be paid by the owner or applicant.

_____
Chairman

_____
Clerk

A TRUE COPY ATTEST

TOWN CLERK
SANDWICH

FORM 1064 HOBBS & WARREN INC REVISED 1978

# Town of Sandwich

**THE OLDEST TOWN ON CAPE COD**

**OFFICE OF THE BOARD OF APPEALS**

See 95-13  Appeal of Decision of
Building Inspector Attach(

**RECORD OF PROCEEDINGS**    DECISION OF BUILDING INSPECTOR IS
UPHELD  March 15, 1995

PETITION NUMBER    95-13

HEARING DATE:    FEBRUARY 28, 1995

Copies of this RECORD OF PROCEEDINGS with all attachments are on file in the Office of the Town Clerk.

Special Permit Application received and filed:    February 2, 1995

Applicant(s) Forestdale Realty, Inc.    Harry B. Miller, Jr. Pres. & Treasurer
Address:    33 Route 130
            Forestdale, MA  02644        Telephone    477-6500
LOCATION OF PROPERTY:    9-19 Ploughed Neck Road    Law Office: Dunning, Forman, Kirra
                         Map 52    Lot 009                      & Terry/Mashpee

APPLICANT DESIRES TO:  (1) To appeal Decision of Building Inspector dated January 26, 1995,
copy on file, that locus is a "cottage colony" and thus subject to section 4710; (2) To
apply for a Special Permit pursuant to section 2420 to alter, extend or change pre-existing
use by relocating 5 of 6 non-conforming single family dwellings so that they are further
Applicable Zoning Bylaw Section(s)  apart and more nearly in conformity with existing set
1320c, 1320b, 2420                   requirements and (3) for such further relief as may k
                                     required.

Copies of the application and plans are attached.  A copy of the legal notice, published in
the    Sandwich Broadsider    on    February 9, 1995
and on    February 16, 1995    is attached.  The NOTICE OF HEARING,
(which is the published legal notice) was mailed to all "Parties of Interest" as pre-
scribed in Section 11, Chapter 40A, M.G.L. and was posted 14 days prior to the hearing.
It was posted on the town bulletin boards located in the Town Hall and the Town Hall Annex.
A copy of the listing of "Parties of Interest", certified by the Assessors Office, is
attached.

On    March 14, 1995    a public hearing was held at
The Human Services Building, 270 Quaker Meetinghouse Road, E. Sandwich
at which time all persons were given an opportunity to be heard.  Minutes of the hearing
were tape recorded and prepared by a secretary and are on file with the Town Clerk.

Members present were:  JOSEPH KILLORY        MICHAEL LESPERANCE

MADLON CATERINO        WILLIAM DAWES        JOHN BRYANT

LEONARD LANDALL as Designated Alternate

Case 1:05-cv-10116-DPW Document 28-9 Filed 04/19/2006 Page 13 of 20

# TOWN OF SANDWICH

THE OLDEST TOWN ON CAPE COD



OFFICE OF THE BOARD OF APPEALS

SPECIAL PERMIT DECISION & NOTICE

See 95-13 Appeal of Decisio
of Building Inspector
Attached

Petition Number ___95-13___

On ___March 14, 1995___ The Zoning Board of Appeals voted to _DENY_____

a Special Permit to __Forestdale Realty, Inc. (Harry B. Miller, Jr., Pres. & Treasurer)_

TO: _alter, extend or change pre-existing use by relocating 5 of 6 non-conforming single fam_

_dwellings so that they are further apart and more nearly in conformity with existing setbac_

_requirements._____

On property located at: ___9-19 Ploughed Neck Road_____

_____Sandwich_____ Map 52  Lot 009 ._____

Applicable Zoning Bylaw Section(s) __1320c, 1320b, 2420_____

CONDITIONS:  1.  ~~That the~~ plans approved and dated _____ be adhered to.
2.  Section ~~1330 requires~~ that this Special Permit expire within twelve (12)
months if no ~~substantial construction~~ or occupancy takes place, or upon
transfer of ownership prior to ~~construction or~~ occupancy of the site.
3.  Failure to comply with conditions set forth ~~will result~~ in termination of
the Special Permit granted.

N/A

Reasons for Vote:  (Refer to statutory requirements)

Vote of each member present: JOSEPH KILLORY (DENY)    MADLON CATERINO (DENY)

_WILLIAM DAWES (DENY)_____ JOHN BRYANT (DENY)____ LEONARD LANDALL (DENY)

Any person aggrieved by this decision may appeal to the Superior or Land Court as in Section
17 of Ch. 40A, M.G.L. by filing a notice of action and complaint with the Town Clerk within
twenty (20) days of the date of filing of this decision.

I, _Joseph G. Felberg_____ certify that this decision of the Board and plan is
filed with the Planning Board & Town Clerk as Petition Number _____95-13_____.

SPECIAL PERMIT

DECISION   BUILDING INSPECTOR IS UPHELD   March 15, 1995

## SPECIAL PERMIT FINDINGS

Petition Number ____95-13____   Date: ____March 14, 1995____
95-13 Appeal Dec. of B.I.
Attached

1. Meets requirements of Section 9, M.G.L. Chapter 40A.   YES _____ NO _X_

2. Section 1330 requirements:

   A) Has a peculiar condition not generally true for similar permitted use in this _Residential 2_ District.   YES _X_ NO _____

   B) Appears that nuisance hazard or congestion will be created.   YES _____ NO _X_

   C) Will pose substantial harm to the neighborhood.   YES _X_ NO _____

   D) Will derogate from the intent of the bylaw.   YES _X_ NO _____

3. Meets all requirements of Section 1330.   YES _____ NO _X_

4. Meets requirements of applicable Section(s) _____
   ____1320c, 1320b, 2420____   YES _____ NO _X_

Explain: 1. Applicant seeks to "relocate 5 of 6 non-conforming single family dwelling so that they are further apart and more nearly in conformity with existing setback requirements.".
2. Applicant's plan dated January 31, 1995 shows 6 new lots created from a single lot.
3. Property is in an R2 district with minimum area of 60,000 sq.ft. & 200 ft. frontage
4. The 6 lots vary from 10,756± sq.ft. to 21,518± sq.ft. for a total of 90,000 to 100,000 sq. ft., sufficient for only one single family dwelling under current zonin bylaw; therefore none comes close to meeting the required minima.
5. Applicant asserts that the section of State law (Chapter 41, Section 81L which allo establishment of these lot lines without needing subdivision approval) intended to preclude the enforcement of the zoning bylaw if the plan results in a violation.
6. Applicant named cases which relate to this issue: Citgo v. Braintree and a Harwich case without elaborating.
7. Leonard Landall moved that the application be denied based on the following:
    1. It is recognized by the Board that the applicant is seeking to relocate 5 of the 6 structures. If that were that consideration, i.e. the relocating of 5 units of a cottage colony, the Board could find the relocations to be approvable but that is not the case.
    2. The applicant goes beyond such a mere relocation by the inclusion of "non-confor single family dwellings" - ("single family dwelling" is defined as "one dwelling a single lot"). Thus the Board finds a conversion to single family dwellings on separate lots to be a violation of the Zoning Bylaw because (a.) Section 4710 applies (see Board's decision upholding building inspector dated March 14, 1995 and filed March 15, 1995.) (b.) Even if applicant's contention that the property is not a "cottage colony" were correct, zoning relief is needed before the applicant can validly treat the property as six separate lots.  Such a request is not included in this application.

# TOWN OF SANDWICH

**THE OLDEST TOWN ON CAPE COD**



PE1..ION NUMBER ___95-13___

**OFFICE OF THE BOARD OF APPEAL!**

Attention directed to ZBA95-13 Specia
Permit attached herewith

APPEAL OF THE DECISION OF THE BUILDING INSPECTOR    DATED: ___January 26, 1995___

APPLICANT(s) Forestdale Realty, Inc.  (Harry B. Miller, Jr., Pres. & Treasurer)
33 Route 130, Forestdale, MA

Nature of the Appeal:

Appeal Decision of Building Inspector dated January 26, 1995, copy on file, that
locus is a "cottage Colony" and thus subject to section 4710.  See special permit
application for nature of further request(s).  See special permit decision (attache
and filed under same ZBA application number 95-13.

On ___March 15, 1995___  The VOTE OF THE BOARD OF APPEALS TO  UPHOLD
the decision of the Building Inspector WAS FILED WITH THE TOWN CLERK.

REASONS FOR VOTE: _____ SEE BUILDING INSPECTOR'S DECISION  (FINDINGS)

_____ ATTACHED HERETO AND LABELED "95-13 ATTACHMENT #1"

_____ SEE BUILDING INSPECTOR'S DECISION (DECISION)

_____ ATTACHED HERETO AND LABELED "95-13 ATTACHMENT #2"

_____ SEE "95-13 ATTACHMENT #3"  Zoning Bylaw 4710

Members Voting Were:

| | |
|---|---|
| JOSEPH KILLORY | UPHOLD DECISION OF THE BUILDING INSPECTOR |
| MADLON CATERINO | UPHOLD DECISION OF THE BUILDING INSPECTOR |
| WILLIAM DAWES | UPHOLD DECISION OF THE BUILDING INSPECTOR |
| JOHN BRYANT | UPHOLD DECISION OF THE BUILDING INSPECTOR |
| LEONARD LANDALL | UPHOLD DECISION OF THE BUILDING INSPECTOR |

Any person aggrieved by this decision may appeal to the Superior or Land Court as in
Section 17 of Ch. 40A, M.G.L. by filing a notice of action and complaint with the
Town Clerk within twenty (20) days of the date of filing of this decision.

I, _____ certify that this decision of the Board and plan is
filed with the Planning Board and Town Clerk as Petition Number ___95-13___.

Case 1:05-cv-10116-DPW DECISION OF BUILDING INSPECTOR Filed 09/06/2006 Page 6 of 20, 1995
Special Permit Denied March 15, )95

Pg 6 of 8

Petition Number  95-13

BUILDING INSPECTOR'S DECISION      FINDINGS

"95-13 ATTACHMENT #1"

1. Applicant is appealing the decision of the building inspector that locus is a "cottage colony" and therefore subject to Section 4710 of the Sandwich Zoning Bylaw.

2. Subject structures predate zoning bylaw.

3. Section 4710 prohibits the conversion of a cottage colony to single-family dwelling use under separate ownership unless the lots comply with the minimum requirements for single family dwellings in the zoning district in which the land is located.

4. Section 4710 falls under Section 4700 - Conversion of Seasonal or Intermittent Structures.

5. Applicant argues that since one structure has a floor area in excess of 480 sq. the complex is not a "cottage colony" as defined in the bylaw.

6. Applicant presented a plan converting the locus from one lot to six lots under c.41 section 81L.

7. Applicant has simultaneously submitted a request for a special permit (95-13) to relocate 5 of the 6 structures which he has categorized as "single family dwellii

8. Neighbor and former owner stated in the public session that the complex has alwa; been called a "cottage colony" and was advertised as such when seeking summer tenants.

9. "Cottage colonies" are not allowed in an R-2 District.

10. Locus is in an R-2 District.

SEE  95-13 DECISION      "ATTACHMENT #2"

BUILDING INSPECTOR'S DECISION          DECISION


"95-13 ATTACHMENT #2"


## DECISION

The Zoning Board of Appeals upholds the decision of the building inspector.

Rationale

1. The locus historically has been for the purpose of seasonal rental, and was advertised as a cottage colony.

2. Any ambiguity as to whether the one unit over 480 sq. ft. "overrides" the definition's "two or more detached seasonal dwellings" based on whether "each" in the phrase "each containing not more than 480 sq. ft." means all (6) or each of the two or more (5) is made unambiguous by the context and intent of the section of the bylaw under which 4710 falls, i.e. "conversion of Seasonal or Intermittent-use Structures". (Emphasis added)

3. The complex is a pre-existing non-conforming cottage colony in that it is located in an R-2 District. Additionally if one were to accept the narrower interpretation relating to the unit which is over 480 sq. ft. the Board would consider this a second non-conformity.

4. Finally, the use of one unit with a floor area of more than 480 sq. ft. as the basis of excluding the complex from "cottage colony" status is an attempt to use a technical interpretation to contradict the "spirit of the law".


END

Case 1:05-cv-10116-DPW    Document 38-3    Filed 04/19/2006    Page 18 of 20
95-13    Decision of Building Inspector is Upheld    March 15, 1995
Special Permit Denied March 15, 1995

Pg 8 Of 8

"95-13 ATTACHMENT #3"

4650.  If the number of multi-family dwelling units allowed on a
lot exceeds 10, there shall be two separate points of
access and egress supplied.  The location of these shall
comply with the dimensional requirements for separation
and visibility of Section 3140 of these by-laws.  These
access roads shall be interconnected on the lot so as not
to form separate dead ends.

4660.  The applicant shall notify the agencies listed below that
an application for a special permit along with an
accompanying plan is being filed with the Board of Appeals
and is available for review.  Copies of receipts for those
notifications shall be presented to the Board of Appeals
as part of the application for special permit.
a. Fire Chief
b. Chief of Police
c. Superintendent of Public Works
d. Water District Superintendent
e. Conservation Commission
f. Electric Company
g. Gas Company
h. Telephone Company
i. Cable Company

4670.  The Board of Appeals shall require as a condition of the
special permit that the applicant shall covenant with the
Planning Board for the completion of all roadways and
parking areas.  These covenants and their ultimate release
shall be in accordance with the rules and regulations of
the Planning Board as contained in its Subdivision Control
Regulations.

4700.  CONVERSION OF SEASONAL OR INTERMITTENT-USE STRUCTURES.

4710.  Cottage Colonies.  Any existing cottage colony may not be
converted to single-family dwelling use under separate
ownership unless the lot upon which each building is
located complies with the minimum requirements for single
family dwellings in the zoning district in which the land
is located, and such non-conforming cottage colony may not
be converted to single-family use under condominium,
cooperative, time sharing condominium, or any other
single-family dwelling use more intensive or frequent than
seasonal or intermittent use, unless the lot meets the
minimum requirements for Cluster Developments, as set
forth in Section 4440.  This section shall apply whether
or not the lot is situated in a district in which Cluster
Development is a prohibited use.

COMMONWEALTH OF MASSACHUSETTS

BARNSTABLE, SS.

FIRST BARNSTABLE DIVISION
DISTRICT COURT DEPARTMENT
DOCKET NO.

FORESTDALE REALTY, INC.                    )
                                           )
            Plaintiff,                     )
                                           )
v.                                         )
                                           )       NOTICE OF ACTION
JOSEPH KILLORY, MADLON CATERINO,           )
WILLIAM DAWES, JOHN BRYANT and             )        TOWN CLERK
LEONARD LANDALL, as they are               )       TOWN OF SANDWICH
members of the Zoning Board of             )
Appeals for the Town of Sandwich,          )        APR - 3 1995
                                           )
            Defendants.                    )       7   1 H 50 M  PM
                                           )       RECEIVED & RECORDED

     Notice of Action is hereby given that the above-entitled
Plaintiff, through its attorney, on April 3, 1995, filed in the
Barnstable Superior Court a Complaint in the nature of an Appeal
of the Decision of the Zoning Board of Appeals.  A copy of the
Complaint and Decision are attached hereto.  The Complaint bears
the docket No. _____.

                         Respectfully submitted,
                         Plaintiff,
                         By Its Attorney,


Dated:   April 3, 1995

                         Michael A. Dunning
                         DUNNING, FORMAN, KIRRANE & TERRY
                         P. O. Box 560
                         Mashpee, MA   02649
                         (508) 477-6500
                         BBO # 138640


FOREST-1/D4/4/3/95


RECD APR - 3 1995

COMMONWEALTH OF MASSACHUSETTS

BARNSTABLE, SS.

FIRST BARNSTABLE DIVISION
DISTRICT COURT DEPARTMENT
DOCKET NO.

FORESTDALE REALTY, INC.                )
                                       )
          Plaintiff,                   )
                                       )
v.                                     )          AFFIDAVIT OF SERVICE
                                       )
JOSEPH KILLORY, MADLON CATERINO,       )            TOWN CLERK
WILLIAM DAWES, JOHN BRYANT and         )          TOWN OF SANDWICH
LEONARD LANDALL, as they are           )
members of the Zoning Board of         )            APR - 3 1995
Appeals for the Town of Sandwich,      )          �££ 1 H 50 M  M
                                       )          RECEIVED & RECORDED
          Defendants.                  )

     I, Michael A. Dunning, counsel for the Plaintiff, certify
that on April 3, 1995, by certified mail, return receipt
requested, I served a copy of the Complaint with the Decision and
Notice of Action attached thereto, upon the Defendants, Joseph
Killory, 17 Morgan Trail, Sandwich, MA  02563; Madlon Caterino,
5 Braddock Circle, P. O. Box 758, East Sandwich, MA  02537;
William Dawes, 6 Wilson Road, Sandwich, MA  02563; John Bryant, 6
Captain Mortgan Road, P. O. Box 840, East Sandwich, MA  02537;
and Leonard Landall, 7 Earl Road, RD#1, East Sandwich, MA 02537,
as required by G.L. c. 40A, § 17.

                         Respectfully submitted,
                         Plaintiff,
                         By Its Attorney,

Dated:  April 3, 1995

                         _____
                         Michael A. Dunning
                         DUNNING, FORMAN, KIRRANE & TERRY
                         P. O. Box 560
                         Mashpee, MA  02649
                         (508) 477-6500
                         BBO # 138640

FOREST-2/D4/3/3/95

RECD APR - 3 1995

# Town Of Sandwich

## THE OLDEST TOWN ON CAPE COD





Sandwich Glass Works

# PROTECTIVE ZONING BY-LAW
# MAY 2004

**Use regulation schedule Notes:**

1. Only on premises of five (5) acres or more, otherwise "N". Structures containing such animals not to be located within 100 feet of a lot line or within 200 feet of a dwelling not on the same lot.
2. Not more than two cattle per acre or their equivalent in terms of waste products shall be allowed unless special waste handling procedures satisfactory to the Board of Health are provided.
3. See definition.
4. *Reserved for future use. (Amended 5/4/98)*
5. No more than 20% of the floor space to be used for retailing. Products to be retailed must be directly related to the primary industrial activity.
6. Lot #2, Assessor's Map 67, in Forestdale may only be used as a physician's office.
7. Only on lots of fifteen (15) acres or more, within a single building containing at least 10,000 square feet of floor area, of which no more than 75% is used for retailing. (Added STM 8/92)
8. Only on parcels of five (5) acres or larger
9. But not more than one horse on less than one acre.
10. For six (6) or more cars.
11. Not allowed on parcels less than 25 acres in area. Setback requirements of the district are doubled for spa lots. The spa lot must maintain a 50' undisturbed vegetated buffer around the lot perimeter.
12. Tattoo/Body Art Establishments shall be prohibited as home occupations.
13. In the R-1, R-2, Ridge, Shore and BI-1 such storage shall be limited to one boat and one boat trailer per principal use.

**2321.** **Uses whether or not on the same parcel** as activities permitted as matter of right, accessory to activities permitted as a matter of right, which activities are necessary in connection with **scientific research or scientific development or related production** may be permitted upon the issuance of a special permit provided the Special Permit Granting Authority (SPGA) finds that the proposed accessory use does not substantially derogate from the public good.

**2400.** **Non-Conforming Uses.** The use of any structure or land lawfully existing at the time of the enactment or subsequent amendment of this bylaw may be continued although such structure or use does not conform with provisions of this by-law, subject to the following conditions and exceptions:

**2410.** **Abandonment.** A non-conforming use of a building or land, which has been abandoned for a period of two (2) years, shall not thereafter be returned to such non-conforming use. A non-conforming use shall be considered abandoned when the premises has been vacant for two years, or when the characteristic equipment and/or furnishings of the non-conforming use have been removed from the premises and have not been replaced by similar equipment, whichever shall occur first.

**2420.** **Change, Extension Or Alteration.** No change, extension or alteration of a pre-existing non-conforming use and no change, extension or alteration of a pre-existing non-conforming structure may be made except upon the issuance of a special permit from the Zoning Board of Appeals. Such a special permit may be granted only if the special permit granting authority finds that the proposed change, extension or alteration of a pre-existing non-conforming use, or change, extension or alteration of a pre-existing non-conforming structure is not substantially more detrimental to the neighborhood than the existing non-conforming use or non-conforming structure.

The following conditions shall apply to any special permit granted under this section:
a). When the permit applicant requests either a change, extension or alteration of a non-conforming use or change, extension or alteration of a non-conforming structure, any change, extension or alteration may occur only upon those parcels of land upon which the pre-existing non-conforming use or structure is located;
b). When the permit applicant requests either a change, extension or alteration of a non-conforming use, or a. change, extension or alteration of a non-conforming structure, the

permit applicant shall substantially screen all new parking from abutters and from streets. (5/4/98)

**2430.    Restoration.** In case of destruction or damage by fire or other catastrophe, a legally non-conforming structure may be rebuilt in substantially the form it had at the time of the destruction or damage, or in any form if within applicable setback requirement and not larger than previously, provided that reconstruction is started within twelve (12) months and completed within twenty-four (24) months of the catastrophe.

## 2500. INTENSITY OF USE REGULATIONS

**2510.**    All buildings hereafter erected in any district shall be located on a lot such that all the requirements set forth in Section 2600 are conformed with, except where specifically exempted by this by-law or by General Law. Construction or operations under a building or special permit shall conform to any subsequent amendment of the ordinance or by-law unless the use or construction is commenced within a period of not less than six (6) months after issuance of the permit and, in cases involving construction, unless such construction is continued through to completion as continuously and expeditiously as is reasonable.

**2520.**    No lot shall be changed in size or shape so as to result in a violation of Section 2600, if such alteration increases the number of actual or potential building lots.

**2530.**    Where **no street line** has been established or can be readily determined, such line shall be assumed to be twenty-five feet (25') from the center of the traveled roadway for the purpose of applying these regulations.

**2540.    Multiple Principal Buildings on the Same Lot.**
   **a.    Residential Districts.** Up to two principal dwellings may be allowed in R-1, R-2, and Ridge zoning districts on the same lot, but only upon issuance of a special permit by the Zoning Board of Appeals. Such a special permit shall not be issued unless the subject lot has at least twice the minimum lot area required for one principal dwelling, at least the required frontage for one principal dwelling; and then only if both proposed dwellings satisfy all of the minimum yard, lot coverage and other dimensional requirements set forth under Section 2600.
   **b.    Commercial Districts.** Multiple principal buildings may be allowed in the BL-1, BL-2, Industrial Limited, and Marine Limited Districts, but only upon issuance of a special permit by the Zoning Board of Appeals. Such a special permit shall not be issued unless the subject lot satisfies the minimum requirements set forth in Section 2600 for one building and unless each building satisfies all of the minimum yard and lot requirements set forth in Section 2600.
   **c.    Affordable Housing.** In the BL-1 and BL-2 Districts, one dwelling unit may be located within a structure which has a principal non-residential use, but only upon issuance of a special permit by the Zoning Board of Appeals. Additional dwelling units may thereafter be authorized by special permit; however, to be eligible for a special permit for additional dwelling units, a 1:1 ratio of market rate units to affordable units shall be established and maintained. The Board of Appeals shall condition any special permit allowing the affordable units according to the affordability criteria in Section 4138. In addition, no special permit for more than one such unit shall be issued unless adequate parking is provided; appropriate site provisions have been made for both the residential and non-residential uses; and all of the criteria of Section 1330 have been shown to be satisfied.

**2550.    Non-Conforming Lots.** Application of amended Intensity of Use Regulations to previously created lots is limited by Section 6, Chapter 40A, MGL. In addition, any increase in lot area, width, depth, frontage, yard, or coverage requirements of this by-law shall not apply to erection, extension, alterations, or moving of a structure on a legally created lot not meeting current requirements, provided that either the lot is in an exempted subdivision (see Section 2560) or the applicant documents that:
   a)    At the time such increase requirement became applicable to it, the lot:
      1.    Had at least 5,000 square feet of lot area and 50 feet of frontage on a street;