UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PATRICIA PEROTTI-CYRUS,          )
        Plaintiff,               )          CIVIL ACTION NO.
                                 )          05-10116-DPW
        v.                       )
                                 )
ROBERT JENSON, Chairman of       )
the Board of Appeals for the     )
Town of Sandwich, ROBERT         )
GUERIN, JAMES KILLION,           )
MATTHEW McDONNELL, ERIK VAN      )
BUSKIRK, WILLIAM DAWES, and      )
MICHAEL LESPERANCE, Members      )
of the Board of Appeals,         )
DONNA BOARDMAN, Building         )
Inspector and Zoning             )
Enforcement Officer for the      )
Town of Sandwich, and the        )
TOWN OF SANDWICH,                )
        Defendants.              )

MEMORANDUM AND ORDER
March 31, 2008

The plaintiff, Patricia Perotti-Cyrus, brought this action against the Town of Sandwich, the Chairman and Members of its Board of Appeals (collectively, the "Board" or "Board of Appeals"), and the Town's Building Inspector and Zoning Enforcement Officer (the "Building Inspector") seeking various forms of relief from the Town's refusal to grant her a building permit to repair a property she owns at 9 Ploughed Neck Road in East Sandwich, Massachusetts.

The parties have filed cross-motions for summary judgment to resolve a long-running legal dispute that dates back to 1994.

In this Memorandum, I resolve the Cross-Motions. I find

-1-

that the plaintiff is entitled to a building permit to repair her
property and conclude that her claims for damages under Mass.
Gen. Laws ch. 258 and for equal protection rights under federal
law untenable.  Having disposed of the only federal claim in the
case and having concluded that plaintiff's broad-based challenge
to the application of the Town's cottage colony conversion
regulations cannot be resolved by summary judgment, I have
determined not to exercise supplemental jurisdiction but rather
to remand the case to the state court where the necessary fact
finding can more readily be conducted.

## I. BACKGROUND

### A. The Record

The plaintiff filed a Statement of Undisputed Facts with
exhibits in support of her motion for summary judgment as
required by Local Rule 56.1.  She also submitted exhibits in
support of her Opposition to the defendants' motion for summary
judgment.  In compliance with Local Rule 56.1, the defendants
included "a statement of the material facts of record as to which
it is contended that there exists a genuine issue to be tried,
with page references to affidavits, depositions and other
documentation" attached to their Memorandum in Opposition to the
plaintiff's motion for summary judgment.  Although many of these
exhibits have been submitted uncertified or without an affidavit
authenticating the materials, neither of the parties has

objected.  Consequently, I consider the materials submitted even though, technically speaking, to satisfy Rule 56, the parties should have introduced these exhibits into the record through affidavits as was done for Pl. Exs. 3-1 to 3-21.  *Cerqueira v. Cerqueira*, 828 F.2d 863, 865 (1st Cir. 1987) ("We see no point in remanding this case to permit [the parties] to file an affidavit stating the very thing that [the other party] has conceded, namely, that the document is what it purports to be."); 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d, § 2722 (2005)("As is true of other material introduced on a summary-judgment motion, uncertified or otherwise inadmissible documents may be considered by the court if not challenged.  The objection must be timely or it will be deemed to have been waived.").

**B. Background**

The plaintiff purchased two investment properties located at 9 and 11 Ploughed Neck Road in East Sandwich, Barnstable County, Massachusetts in September 2002 and August 2001, respectively. Only the property at 9 Ploughed Neck Road is at issue in this action.

The property at 9 Ploughed Neck Road has a small dwelling with two rooms (an open living room/kitchen area and one bedroom) and a bathroom.  The dwelling was constructed in 1948 as one of six dwellings on a two acre lot.  In 1994, Elizabeth Sprague, the

owner of the entire two-acre lot located, which is located in Sandwich's R-2 resident zoning district, decided to subdivide the lots into six individual lots, each with one dwelling. According to Sprague's plan, the subject lot (Lot 1) was to have 17,053 square feet. A lot in the R-2 zoning district was then and is now required to have a minimum lot area of 60,000 square feet.

On October 19, 1994, the Town's Planning Board endorsed the plan as an "Approval Under the Subdivision Control Law Not Required" ("ANR Plan") pursuant to Mass. Gen. Laws ch. 41, §§ 81P and 81L, because the various dwellings were constructed before the Subdivision Control Law came into effect in 1954 for the Town of Sandwich. On the face of the ANR Plan document is the reservation that "[t]he above endorsement does not constitute compliance with the Protective Zoning By-Laws of the Town of Sandwich." The ANR Plan was recorded with the Barnstable County Registry of Deeds.

Sprague sold the six individual lots to Forestdale Realty, Inc. ("Forestdale") on October 28, 1994 and the deed was recorded with the Barnstable County Registry. The President of Forestdale was Harry B. Miller, Jr.

On January 27, 1995, the Town's Building Inspector at the time (Theodore Misiaszek) determined that all but one of the dwellings had been used only for seasonal or intermittent use, that the land and structures thereon constituted a "cottage

colony" as defined in Article VII-2 of the Town of Sandwich Protective Zoning By-Law then in effect, and that the conversion to single-family dwelling use would violate Section 4710 of the Sandwich Protective Zoning By-Law. Forestdale appealed the Building Inspector's determination to the Board and contemporaneously petitioned the Board for a special permit to move the dwellings. On March 15, 1995, after a public hearing on both matters, the Board upheld the Building Inspector's decision and denied the special permit. Forestdale then appealed these decisions.

On March 8, 1995, prior to the Board's decision, Forestdale, through Miller, had undertaken to create a condominium out of the six lots. According to the Master Deed, the condominium included all six dwellings or units from the six lots. The individual units were to be owned by individual condominium owners, while the common area would consist of all of the land and buildings on the six lots other than the units themselves. The Master Deed did not make any reference to any seasonal use restriction.

In April 1996, Forestdale voluntarily dismissed its appeal of the Board's decision with prejudice. Letters exchanged between Forestdale's attorney, Mr. Dunning, and the Building Inspector, Mr. Misiaszek, suggest that the Town and Forestdale had come to an agreement to dismiss the action if the Building Inspector, as stated in the August 17, 1995 letter to Mr. Misiaszek from Mr. Dunning, confirmed that "the

condominiumization of the property" with seasonal use restrictions for units 1 - 5 was in conformity with the Zoning By-Law of the Town of Sandwich.  Although there is no answer from the Building Inspector to the August 17 letter in the record before me, there is a reply to Mr. Dunning's September 13, 1995 letter, which itself has not been submitted, indicating that Mr. Misiaszek

> agreed to issue moving permits to Mr. Miller provided that the lots are recombined into one lot and that the seasonal restrictions be left in place, thereby bringing the property into compliance with zoning as a seasonal use only and as a preexisting, nonconforming use, which will allow for moving of the structures without a special permit provided they meet setbacks for the year the lot was created.

At some point after March 8, 1995, Paulette Sasville as Trustee of the Paulette Sasville Realty Trust purchased Unit 1 (reflected as Lot 5 on the ANR Plan).  Then, in May 2001, she and Forestdale executed a document revoking the condominium.  The document purported to grant Forestdale ownership and to convey all of the "right, title and interest" Sasville may have had to Units 2, 3, 4, 5, and 6, which correspond to the dwellings reflected as Lots 1, 2, 3, 4, and 6 on the ANR Plan.  Sasville was to receive all right, title, and interest to Unit 1 on Lot 5. The document, "upon and in connection with the termination of the condominium and master deed," further purported to convey the "right, title and interest she may have in Lots 1, 2, 3, 4, and 6, together with all buildings or structures located thereon" as

-6-

depicted in the ANR Plan.  In exchange, Sasville was to receive
the same conveyance regarding Lot 5.

Forestdale then conveyed the remaining five lots to West
Yarmouth Lodgings, Inc., the vice president, treasurer and clerk
of which was Harry B. Miller, Jr., Forestdale's quondam
President.  West Yarmouth Lodgings sold the subject lot (Lot 1)
and the lot at 11 Ploughed Neck Road (Lot 2) to the plaintiff in
September 2002 and August 2001, respectively.  The plaintiff
rented the property at 9 Ploughed Neck Road until there was a
fire in the dwelling in October 2003.  The Property has been
empty since the fire.

## C.  The Dispute

Shortly after the fire, either the plaintiff or her husband,
William Cyrus, went to the Town's building department to apply
for a building permit to perform work on the dwelling.  When the
Building Inspector denied the application, the plaintiff appealed
the denial and contemporaneously filed applications for a special
permit and a variance in order to obtain the building permit.
After three public hearings, the Board denied all three
applications for zoning relief based "in large part" on the Town
Counsel's opinion that the Property was not lawful under the
Town's zoning by-laws.

In Count I of her Complaint, the plaintiff seeks a
declaration that the Town's interpretation of the state zoning

enabling legislation, Mass. Gen. Laws ch. 40A, § 6, and its own
zoning by-laws are in violation of the Home Rule Procedures Act,
Mass. Gen. Laws ch. 43B, § 6.  In Counts II, III, and IV, the
plaintiff seeks declarations that the Board's decisions (A)
upholding the Building Inspector's denial of her application for
a building permit, (B) denying her application for a special
permit, and (C) denying her request for a variance were
incorrect, arbitrary, capricious, and legally untenable.  In
Count V, the plaintiff seeks a declaration that the Board's
interpretation of Mass. Gen. Laws ch. 40A, § 6 and the Town's
zoning by-laws constitutes unlawful spot zoning in violation of
her equal protection rights under the state and federal
constitutions.  Finally, in Count VI, the plaintiff seeks damages
sounding in negligence against the Town pursuant to Mass. Gen.
Laws ch. 258 for the actions of the Town officials.

      The plaintiff filed an action in the Barnstable Superior
Court on December 27, 2004.  The plaintiff subsequently amended
her Complaint to add a claim pursuant to Mass. Gen. Laws ch. 258
for damages against the Town.

      On the basis of the plaintiff's federal constitutional claim
in Count V, the defendants removed the action to this Court
pursuant to 28 U.S.C. §§ 1331, 1441 on January 18, 2005.  Later,
the defendants apparently changed their minds and requested that
I sever and stay the plaintiff's damages claims (Counts V and VI)

and remand her state law appeal (Counts I through IV) for
adjudication by the state court "in the interests of judicial
economy."  I denied the defendants' motion to sever, stay and
remand in order to avoid splitting judicial consideration for--
and thereby making yet more complex--the litigation of a case
with considerable inherent complexity.

## II. STANDARD OF REVIEW

### A. Review of Local Zoning Decisions

In this case, I am in essence deciding an appeal of three
decisions by the Sandwich Board of Appeals.

> Massachusetts is one of several States that provide for
> de novo review of local zoning authority decisions.  On
> appeal to the Superior Court or Land Court, a judge
> determines the legal validity of a zoning board decision
> on the facts found by him; he gives no evidentiary weight
> to the board's findings.  Judicial review is nevertheless
> circumscribed:  the decision of the board cannot be
> disturbed unless it is based on a legally untenable
> ground, or is unreasonable, whimsical, capricious or
> arbitrary.

*Roberts v. Southwestern Bell Mobile Systems, Inc.*, 429 Mass. 478,
485-86 (1999)(internal citations and footnotes omitted); *see*
Mass. Gen. Laws ch. 40A, § 17 ("The court shall hear all evidence
pertinent to the authority of the board or special permit
granting authority and determine the facts, and, upon the facts
as so determined, annul such decision if found to exceed the
authority of such board or special permit granting authority or
make such other decree as justice and equity may require.").
Since both parties have moved for summary judgment, I consider

-9-

whether the Board's decision ought to be disturbed based on traditional federal summary judgment procedures.

**B. Summary Judgment Standard**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment must make a preliminary showing that no genuine issue of material fact exists. *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995), *cert. denied*, 515 U.S. 1103 (1995). Once the movant makes such a showing, the nonmovant must point to specific facts demonstrating that there is, indeed, a trialworthy issue. *Id.*

A fact is "material" if it has the "potential to affect the outcome of the suit under the applicable law." *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir. 2000), and a "genuine" issue is one supported by such evidence that "a 'reasonable jury, drawing favorable inferences,' could resolve it in favor of the nonmoving party." *Triangle Trading Co., Inc. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (quoting *Smith v. F.W. Morse & Co.*, 76 F.3d 413, 428 (1st Cir. 1996)). "[C]onclusory allegations, improbable inferences, and unsupported speculation," are insufficient to establish a genuine dispute of

fact. *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

Cross-motions for summary judgment do not alter the basic summary judgment standard, but rather require courts to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed. *See Adria Int'l Group, Inc. v. Ferre Dev., Inc.*, 241 F.3d 103 (1st Cir. 2001); *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996). Thus, in deciding cross-motions for summary judgment, courts must consider each motion separately, drawing all reasonable inferences against each movant in turn. *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 6 (1st Cir. 1997).

### III. DENIAL OF THE BUILDING PERMIT

In this section I address the Board's ongoing refusal to issue the plaintiff a building permit to repair her fire-damaged structure (Counts II, III, and IV).

The plaintiff contends that the Board's decision upholding the Building Inspector's denial of a building permit and the Board's denial of her request for a special permit and variance relief rests upon an untenable interpretation of the zoning by-laws, in violation of the limits placed upon municipalities under the Home Rule Procedures Act. Mass. Gen. Laws ch. 43B, § 13. Since the plaintiff makes no separate argument about why the Board should have granted her a variance or a special permit if

the Building Inspector's determination is correct, her appeal of
the denial of a special permit and variance (Counts III and IV)
tracks her appeal of the denial of the building permit (Count
II).

In upholding the Building Inspector's denial of the building
permit, the Board made the following findings:

(1) "[N]o information was submitted by the applicant to
contradict determinations made by Town Counsel and the
Building Inspector that the use remains cottage colony
as shown by information contained in the public record
for this matter.... [T]he information submitted by the
applicant to show that the year round use of the
property pre-dates the adoption of zoning in Sandwich
was insufficient."

(3) "[T]he conveyance of the property to individual
owners to be used as single-family dwellings created a
zoning violation because the conveyance took place
without complying with Section 4710." (The Board cited
to Town Counsel's letter of March 12, 2004 to Ms. Donna
Boardman in which she concluded that "because these
lots have subsequently come into separate ownership
[after the termination of the condominium] the entire
property is in violation of the zoning by-law.")

(4) The ANR Plan "does not legitimize single-family
dwelling use."

(5) The statute of limitations in M.G.L. c. 40A, § 7
does not protect the property either because: it "does
not apply to uses," "10 years have not yet expired," or
"denial of a building permit is not an action or
proceeding" under that section.

The Plaintiff challenges all of these findings to a greater or
lesser degree. Before discussing the disputed findings in
detail, I first consider whether the plaintiff is entitled to the
limited right to rebuild her dwelling, irrespective of the
application of the cottage colony conversion by-law that is at

the center of this debate.

**A. Right to Rebuild Under Sandwich Zoning By-law § 2430 and Mass. Gen. Laws ch. 40A, § 6**

The parties agree that shortly after the fire either the plaintiff or her husband went to the Town's building department to apply for a building permit to perform work on the dwelling. The plaintiff claims that they in fact sought a building permit to *repair* the damage to the dwelling by the fire. The Building Inspector denied them a building permit and the Board upheld this decision contending the entire property to be in violation of Sandwich Zoning By-Law § 4710.

What is unclear is why neither the Building Inspector nor the Board considered the plaintiff's right pursuant to Sandwich Zoning By-Law § 2430 and Mass. Gen. Laws ch. 40A, § 6, ¶ 1 to repair or rebuild her dwelling, even if the property was created in violation of the cottage colony conversion by-law. Section 6 is a statutory grandfather clause that protects the reconstruction or rebuilding, *see Dial Away Co., Inc. v. Zoning Board of Appeals of Auburn*, 41 Mass.App.Ct. 165, 168-71 (1996)(using reconstruction and rebuilding interchangeably), of nonconforming single-family residential structures without the need for a special permit.

> Except as hereinafter provided, *a zoning ordinance or by-law shall not apply to <u>structures</u> or <u>uses lawfully in existence</u> or lawfully begun* . . . before the first publication of notice of the public hearing on such ordinance or by-law . . . ,

-13-

> but shall apply to . . . any _reconstruction_ . . .
> of such structure . . . begun after the first
> notice of said public hearing _to provide for its_
> _use for a substantially different purpose_ or for
> the same purpose in a substantially different
> manner or to a substantially greater extent _except_
> where . . . _reconstruction_ . . . to a _single_ or
> two-_family residential structure does not increase_
> _the nonconforming nature of said structure_ . . . .

Mass. Gen. Laws ch. 40A, § 6, ¶ 1 (emphasis added).

Although Sandwich Zoning By-Law § 2550 appears to recognize only that this statute limits the application of amendments of its Intensity of Use Regulations to previously created lots, Sandwich may not enforce any of its by-laws -- including the "special regulation" governing conversion of cottage colonies -- where the effect is inconsistent with the protections granted by Mass. Gen. Laws ch. 40A, § 6.  Mass. Gen. Laws ch. 43B, § 13 (Home Rule Procedures Act); _see also Dial Away_, 41 Mass.App.Ct. at 170-71 ("If not for this provision, [the second _except_ clause of Mass. Gen. Laws ch. 40A, § 6, ¶ 1,] § 8.3.3 of the [Auburn] by-law[, which "precludes rebuilding or reconstruction without a special permit if a nonconforming structure is damaged to an extent greater than fifty percent of its fair market value before it was damaged, unless reconstruction is completed within two years,"] would probably apply.").

In discussing why Sandwich Zoning By-Law Sections 4710 and 2550 do not violate Mass. Gen. Laws ch. 40A, § 6, the Town suggests that the plaintiff has no right to this protection

because her "cottage" is not a single-family dwelling afforded
such protection.  The Massachusetts Appeals Court considered a
similar argument in *Fitzsimonds v. Board of Appeals of Chatham*,
21 Mass.App.Ct. 53 (1985), where the Court was required to decide
whether the owners of a seasonal condominium unit could alter
their cottage by adding a livable second story pursuant to Mass.
Gen. Laws ch. 40A, § 6, ¶ 1.  The condominium unit was non-
conforming under Chatham's cottage colony conversion by-law
because the plaintiffs' lot, which the plaintiffs purchased after
condominiumization, did not have the minimum lot area and was not
provided with either public water or sewer.  *Id*. at 54.  The
Appeals Court confronted the argument that the structure (a
seasonal cottage) was not a single-family residential structure
because such a designation "ordinarily assumes ownership of some
verge of land, with definite bounds, beyond the footprint, and
also assumes (though more doubtfully) a right to occupancy
year-round."  *Id*. at 56.  The Court decided, however, that it was
"right to proceed on the basis that the plaintiffs' house is a
single-family structure in relation to the 'except' clause" of
Mass. Gen. Laws ch. 40A, § 6, even if only used seasonally.  *Id*.
I make the same assumption here and, in doing so, observe that
the Sandwich Zoning By-Law includes the following broad
definition of single-family dwelling: "One dwelling unit on a
single lot irrespective of structure type, ownership or tenure."

Sandwich Zoning By-Law at VIII-2,3.

The defendants argue that Mass. Gen. Laws ch. 40A, § 6 does not protect the plaintiff's dwelling because it cannot be considered "lawfully in existence."  They argue that when the ownership of the property was divided following the revocation of the condominium, the resulting individually-owned cottages and lots were not lawful because the division was in violation of Sandwich Zoning By-law § 4710.  I disagree with this reasoning.

Whether or not separate ownership or more than seasonal use is lawful, questions I address below, there is nothing in the record challenging the suggestion that the <u>structure</u> itself has been lawfully in existence since it was built in 1948, prior to both zoning and subdivision control in Sandwich.  "[A] zoning ordinance or by-law shall not apply to <u>structures</u> or uses <u>lawfully in existence</u> . . . , but shall apply to . . . any reconstruction . . . of <u>such structure</u> . . . <u>except</u> where . . . <u>reconstruction</u> . . . <u>to a single or two-family residential structure does not increase the nonconforming nature of said structure</u> . . . ."  Mass. Gen. Laws ch. 40A, § 6, ¶ 1 (emphasis added).  No doubt because it is the lawfulness of the structure itself that is a prerequisite to protection by the second "except" clause, the Massachusetts Appeals Court did not question that the condominium units themselves were lawfully in existence in *Fitzsimonds*, even though the condominiumization of the

property created dimensionally nonconforming, and therefore "unlawful" lots. *Fitzsimonds*, 21 Mass.App.Ct. at 56-57.

Similarly, in *Bransford v. Zoning Board of Appeals of Edgartown*, 444 Mass. 852 (2005), the Supreme Judicial Court did not question whether the residence was lawfully in existence, because the parties agreed that the property was greater than the minimum lot area "when the residence was constructed." *Id.* at 854 (emphasis added). *See also Norwell-Arch, LLC v. Norwell Zoning Board of Appeals*, No. 285113, 2004 Mass. LCR LEXIS 44, at *7-8 (Mass. Land Court, May 24, 2004)(rejecting the Town's argument that a lot "is not a *lawful* nonconforming structure but rather an *unlawful* structure with no zoning protection afforded to it" as a result of the landowner's voluntary subdivision, because "[t]o fully protect single and two-family residential structures, G.L. c. 41, § 81L, and c. 40A, § 5, must be read together."). Consequently, the plaintiff may rebuild her dwelling without a special permit if "the proposed ... [repairs] do[] not intensify existing nonconformities." *Bransford*, 444 Mass. at 859. As *Bransford* makes clear, not all rebuilding constitutes an increase in nonconformity, even on a nonconforming lot. *Id.* at 860 ("If their proposed new residence had retained the size of the original, no intensification would be present and reconstruction would have been permissible.").

As was the Land Court in *Norwell-Arch*, I am satisfied "[t]he

-17-

nonconformities contemplated in G.L. c. 40A, § 6, first par.,
include situations like this one where a conforming structure
exists on a nonconforming lot." *Bransford*, 444 Mass. at 859.
Thus, if the plaintiff attempted to do more than simply repair or
rebuild her structure she might overstep the protection. *Id.* at
853 (upholding the Land Court's decision that "'doubling the size
of the structure on an undersized (nonconforming) lot would
increase the nonconforming nature of the structure,' thereby
requiring the plaintiffs to seek a special permit").  In such a
case, I might consider remanding this case to the Sandwich Board
of Appeals. *See Fitzsimonds*, 21 Mass.App.Ct. at 57 ("We think it
would be unwise for the court to decide this question of the
application of the 'except' clause as if it presented a nice
legal point upon a motion to dismiss an action for failure to
state a claim.  A local board of appeals brings to the matter an
intimate understanding of the immediate circumstances, of local
conditions, and of the background and purposes of the entire
by-law; and so, at least in the first instance, the board's
administrative view is valuable and is wanted.").  But here, the
plaintiff only seeks to rebuild her damaged dwelling, not to
expand it, making such a remand unnecessary, as there is no
intensification of existing nonconformities sought in this
situation.

The Sandwich Zoning By-Law moreover appears to provide the

plaintiff with specific protection for rebuilding a structure in case of fire damage:

> In case of destruction or damage by fire or other catastrophe, a legally non-conforming structure may be rebuilt in substantially the form it had at the time of the destruction or damage, or in any form if within applicable setback requirement and not larger than previously, provided that reconstruction is started within twelve (12) months and completed within twenty-four (24) months of the catastrophe.

Sandwich Zoning By-Law § 2430.  Accordingly, irrespective of the impact of the cottage colony conversion by-law, I find the Board's decision to uphold the Building Inspector's denial of a building permit to repair her dwelling at 9 Ploughed Neck Road to have been legally untenable.

This conclusion does not address the plaintiff's additional effort to secure judicial recognition that her property includes a single-family dwelling lawfully in existence on its own lot for year-round use.  I now outline the multitude of complicated state law questions raised by both parties in this case arising from that issue.  While this outline provides a predicate for my decision to dismiss the federal claims in this proceeding, I conclude that the state law issues must be remanded for resolution in the state courts.

**B. Judicial Recognition of Single-family, Year-round Use Entitlement**

*1. Subdivision Control*

a. Statutory Framework

The Massachusetts Subdivision Control Law came into effect in 1954 in the Town of Sandwich.  The law gives the Sandwich Planning Board the authority to "regulat[e] the laying out and construction of ways in subdivisions" in order to "lessen[] congestion in such ways and in the adjacent public ways," to "secur[e] adequate provision for water, sewerage, drainage, underground utility services, fire, police, and other similar municipal equipment, and street lighting and other requirements where necessary in a subdivision," and to "insur[e] compliance with the applicable zoning ordinances or by-laws," among other purposes.  Mass. Gen. Laws ch. 41, § 81M.  The Planning Board may establish requirements regarding ways that pay "due regard . . . to the prospective character of different subdivisions, whether open residence, dense residence, business or industrial, and the prospective amount of travel upon the various ways therein." Mass. Gen. Laws ch. 41, § 81Q.

The Subdivision Control Law requires landowners to obtain approval from the Planning Board before land may be divided into two or more subdivisions, unless approval of the Planning Board is not required.  Mass. Gen. Laws ch. 41, § 81O.  Approval is not required when "the division of a tract of land into two or more lots" does not constitute "a subdivision within the meaning of the subdivision control law."  Mass. Gen. Laws ch. 41, § 81L.

This exception applies in two scenarios: (1) where,

> at the time when it is made, every lot within the tract
> so divided has frontage on (a) a public way or a way
> which the clerk of the city or town certifies is
> maintained and used as a public way, or (b) a way shown
> on a plan theretofore approved and endorsed in accordance
> with the subdivision control law, or (c) a way in
> existence when the subdivision control law became
> effective in the city or town in which the land lies,
> having, in the opinion of the planning board, sufficient
> width, suitable grades and adequate construction to
> provide for the needs of vehicular traffic in relation to
> the proposed use of the land abutting thereon or served
> thereby, and for the installation of municipal services
> to serve such land and the buildings erected or to be
> erected thereon,

and (2) to the "division of a tract of land on which two or more
buildings were standing when the subdivision control law went
into effect in the city or town in which the land lies into
separate lots on each of which one of such buildings remains
standing."  Mass. Gen. Laws ch. 41, § 81L.

The second exception is the one relevant here.

b. ANR Plan Approval

On October 19, 1994, the Town's Planning Board endorsed
Sprague's plan to divide (or subdivide) her two acre lot into six
individual lots, each with one dwelling, as an "Approval Under
the Subdivision Control Law Not Required" ("ANR Plan") pursuant
to Mass. Gen. Laws ch. 41, §§ 81P and 81L.  I am satisfied "[t]he
text of the [second] statutory exclusion is unambiguous, and
[Sprague's plan] falls within it." *Citgo Petroleum Corp. v.
Planning Board of Braintree*, 24 Mass.App.Ct. 425, 426 (1987).

Consequently, the Sandwich Planning Board correctly endorsed her 1994 ANR Plan, and neither of the parties argue otherwise. The dispute between the parties stems from disagreement over the validity and applicability of the cottage colony conversion by-law after the division of land pursuant to the ANR Plan and the effect of the creation and termination of the condominium.

2. *General Validity of the Cottage Colony Conversion By-Law*

The plaintiff argues that the cottage colony conversion by-law is generally invalid because it inappropriately and unlawfully seeks to regulate types of "ownership." The plaintiff claims this is an impermissible use of zoning, and additionally argues that the cottage colony by-law is inconsistent with the Subdivision Control Law. I address the ownership issue first then turn to the alleged inconsistency between the two statutes.

a. Ownership

The Sandwich cottage colony conversion by-law provides:

> Any existing cottage colony may not be converted to single-family dwelling use under separate ownership unless the lot upon which each building is located complies with the minimum requirements for single family dwellings in the zoning district in which the land is located, and such non-conforming cottage colony may not be converted to single-family use under condominium, cooperative, time sharing condominium, or any other single-family dwelling use more intensive or frequent than seasonal or intermittent use, unless the lot meets the minimum requirements for Cluster Developments, as set forth in Section 4440. This section shall apply whether or not the lot is situated in a district in which Cluster Development is a prohibited use.

Sandwich Zoning By-law § 4710 (1994).

The plaintiff fails to provide any directly applicable case law or statutory authority supporting her argument that it is impermissible for a town to regulate ownership under its zoning power through a provision such as the town of Sandwich cottage colony by-law.  Perhaps, the plaintiff has in mind negative inferences which might be drawn from cases such as *Goldman v. Town of Dennis*, 375 Mass. 197 (1978), where the Supreme Judicial Court concluded that the condominiumization restriction in a similar cottage colony conversion by-law[1] was "valid as a regulation of 'change of use,'" even though the by-law was "phrased in terms of the type of ownership." *Id.* at 199.  The Court reasoned that "[t]he legislative body of the town could reasonably believe that conversion of a cottage colony to single family use under condominium type ownership would encourage expansion of use beyond the short summer season." *Id.*  The same

_____

[1] The relevant Town of Dennis by-law provided:

> An existing non-conforming cottage colony may not be converted to a single family dwelling use under separate ownership unless the lot upon which each building is located complies with minimum requirements for single family dwellings in the zoning district in which the land is located, and such non-conforming cottage colony may not be converted to single family use under condominium type ownership unless the  lot meets the minimum requirements for open space village development.

See *Goldman v. Town of Dennis*, 375 Mass. 197, 198 n.2 (1978).

-23-

reasoning would apply to the first part of the Sandwich (and the Dennis) cottage conversion by-law if it is true that zoning regulations of ownership are still impermissible: the Towns could reasonably believe, and regulate conversion of a cottage colony to single family use under separate ownership on the basis that, such ownership would encourage expansion of use beyond the short summer season. In any event, I am not convinced that the concerns about regulating ownership obliquely referenced in *Goldman* still apply because "[t]he stated, permissible purposes of zoning under the 1975 Zoning Act (St. 1975, c. 808, s 2A) are broader than those expressed in the 1954 Zoning Enabling Act (St. 1954, c. 368, § 2)," the latter of which governed the dispute in *Goldman*. *Sturges v. Town of Chilmark*, 380 Mass. 246, 253 n.11 (1980).

With respect to the current version of the Massachusetts zoning statute, the Supreme Judicial Court has since said that

'[f]rom the wide scope of the purposes of The Zoning Act [G.L. c. 40A],[2] it is apparent that the Legislature intended to permit cities and towns to adopt any and all

---

[2]  "As to zoning objectives, St. 1975, c. 808, § 2A, after referring to the Home Rule Amendment, states: 'This section is designed to suggest objectives for which zoning might be established which include, <u>but are not limited to</u> [a list of objectives]." *Sturges v. Town of Chilmark*, 380 Mass. 246, 253 n.11 (1980)(emphasis in original). To fulfill the listed objectives, zoning "regulations may include <u>but are not limited to</u> restricting, prohibiting, permitting or regulating": "*uses* of land," "areas and dimensions of land . . . to be occupied or unoccupied by uses and structures," and "density of population and intensity of *use*." St. 1975, c. 808, s. 2A (emphasis added).

zoning provisions which are constitutionally permissible,' subject only to 'limitations expressly stated in that act (see, e.g., G.L. c. 40A, § 3) or in other controlling legislation.'

*Zuckerman v. Town of Hadley*, 442 Mass. 511, 515 (2004) (quoting *Sturges*, 380 Mass. at 253 (1980)). Furthermore, "[e]very presumption is to be made in favor of the validity of a zoning by-law and great weight is to be given to a town's determination that necessity exists for its adoption or amendment." *Jenckes v. Building Commissioner of Brookline*, 341 Mass. 162, 166 (1960).

The limitations in Mass. Gen. Laws ch. 40A, § 3 do not include quasi-subdivision of land requirements like the cottage colony conversion by-law. Additionally, the plaintiff has not established that the by-law overreaches the broad constitutional scope for zoning by-laws. Zoning by-laws are valid unless they are "'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.'" *Zuckerman*, 442 Mass. at 516 (quoting *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926)).[3]

---

[3] The plaintiff argues that:

There is no legitimate nor rational reason why the Town of Sandwich would apply dimensional requirements in effect in 1994 or 2004 to properties developed before the adoption of either SCL (in 1954) or zoning (in 1960). The division of the Ploughed Neck Road cottages, including the plaintiff's, in no way adversely affected the structural density of the neighborhood, which remains unchanged by the endorsement of the 1994 ANR plan. The only change, in terms of dimensions and use, is that the homes are now owned by six (6) separate

b.  Subdivision Control

I do find, however, that the Subdivision Control Law limits the power of a Town's Building Inspector to regulate the subdivision of land, or "the division of a tract of land into two or more lots,"  Mass. Gen. Laws ch. 41, § 81L, since that power is vested in a Town's Planning Board and Board of Appeals.  Mass. Gen. Laws ch. 41, § 81K *et seq.*  Consequently, it would be inconsistent with the Subdivision Control Law for the Building Inspector to institute legal proceedings under his enforcement power, Sandwich Zoning By-Law § 1240, in an attempt to enforce the cottage colony conversion by-law by prohibiting the subdivision or forcing a recombination of the lots.  *Compare Sparks v. Bolton*, 335 S.W.2d 780, 784 (Tex. Civ. App. 1960) (Zoning "Ordinance No. 7792 passed by the City Council . . . is void if by its terms the City Council attempted to take over the

---

individuals, some of whom continue to use the property
as rental property, on a long-term, as opposed to
transient, basis, in the same manner as it was used
when it was a cottage colony, and some of whom chose to
reside there themselves.

Pl. Opp. Memo., at 19-20.  But, as the Supreme Judicial Court
held in *Goldman v. Town of Dennis*, 375 Mass. 197 (1978), "[t]he
legislative body of the town could reasonably believe that
conversion of a cottage colony to single family use under
condominium type ownership would encourage expansion of use
beyond the short summer season."  *Id.* at 199.  This belief is
obviously a circumstance that the Supreme Judicial Court has
concluded may give rise to a zoning regulation that has some
relation to the public health, safety, morals, or general
welfare.

platting and subdividing responsibilities of the City Plan
Commission."), *with Kane v. Zoning Bd. of Review of Town of East
Greenwich*, 97 R.I. 152, 155 (1964) (citing *Nonan v. Zoning Board
of Review*, 90 R.I. 466, 470 (1960)) ("[T]he town council was not
authorized by the zoning law, G.L. 1956, chap. 24 of title 45, to
incorporate in a zoning ordinance any provision governing the
division and subdivision of land[, such as 'No lot shall be
created unless it conforms to the provisions of this ordinance.']
That power may be exercised by the town council only pursuant to
the provisions of G.L.1956, chap. 23 of title 45 and, as
indicated above, it does not appear that the council has ever
done so.").  But, it would not be inconsistent with the
Subdivision Control Law, for the Building Inspector to refuse to
issue a building permit where the lot at issue was not created in
compliance with the cottage colony conversion by-law given the
directive of Sandwich Zoning By-Law § 1220, except, of course,
where the § 1220 directive is limited by Mass. Gen. Laws ch. 40A,
§ 6.

     This delineration of zoning powers provides both the broad
zoning authority intended under Massachusetts law, while
recognizing that the Legislature granted the power to regulate
the subdivision of land to other municipal bodies.  The practical
effect of this resolution means that the 1994 ANR Plan does not
take each dwelling outside the purview of the cottage colony by-

law by locating each dwelling on its own lot for the purpose of
seeking building permits on the created lots.  Consequently, the
Building Inspector properly denied the plaintiff a building
permit, assuming the Ploughed Neck Road dwellings meet the
cottage colony definition, subject, of course, to the restoration
and reconstruction exceptions discussed in Section III.A. *infra*.
*See* Sandwich Zoning By-Law § 1220 (2004) ("No building permits
shall be approved except in compliance with this by-law.").

3. *Application of the Cottage Colony Conversion By-law*

     The Sandwich Zoning By-Law § 4710 only regulates the
conversion of a cottage colony into (1) "single-family dwelling
use <u>under</u> <u>separate</u> <u>ownership</u>"; (2) "single-family use under
<u>condominium</u>, cooperative, [or] time sharing condominium"; or (3)
"single-family use under . . . any other single-family dwelling
use more intensive or frequent than seasonal or intermittent
use." *Id*. (emphasis added).  The 1994 subdivision itself did not
violate the cottage colony conversion by-law, as suggested by the
defendants, since the subdivision did not convert the Ploughed
Neck Road dwellings into lots for single-family dwelling use
<u>under</u> <u>separate</u> <u>ownership</u>.  Rather, Sprague initially retained
ownership of all six dwellings and then she conveyed all six lots
to Forestdale, which retained them under common ownership until
after the condominiumization of the property.  Consequently,
assuming that the Ploughed Neck Road dwellings fit within the

-28-

definition of cottage colony, the first relevant violation of the
cottage colony conversion by-law apparently occurred when
Forestdale created the Ploughed Neck Condominium for
single-family use without seasonal restrictions, because the
original two acre lot apparently did not meet the minimum
requirements for Cluster Developments in 1995.  An additional
violation appears to have occurred when Forestdale, and then West
Yarmouth Lodgings, purported to convey individual lots that do
not comply with the minimum requirements for single family
dwellings in the R-2 zoning district to separate owners.

    In 1994, the by-law defined a "cottage colony" as "[t]wo or
more detached <u>seasonal</u> dwellings located on the <u>same lot</u>, each
designed for independent family living and including cooking
facilities, and each containing not more than <u>480 square feet</u>."
Sandwich Zoning By-Law at VII-2 (1994) (emphasis added).[4]  The
plaintiff argues that the cottage colony conversion by-law does
not apply to the conveyance of any of the Ploughed Neck Road
dwellings to separate owners because (1) the original two acre
land did not have "two or more detached <u>seasonal</u> dwellings" since
the dwellings were used year-round and were equipped with a
heating system; (2) the ANR Plan divided the land so that each
dwelling was no longer "located on the <u>same lot</u>"; and (3) one of

---

    [4] The definition was amended May 1, 1995 to describe "[t]wo
or more detached seasonal dwellings located on the same lot, each
designed for independent family living and including cooking
facilities."  Sandwich Zoning By-Law at VIII-2 (2004).

the six dwellings was 690 square feet so the original two acre land did not have two or more dwellings "each containing not more than <u>480 square feet</u>."  I will analyze each of these arguments separately.

a. Same Lot

The plaintiff's position is that the 1994 ANR Plan took each dwelling outside the purview of the cottage colony by-law by locating each dwelling on its own lot and that the termination of the condominium put each structure back on its own lot.  The defendants contend that the subdivision of the land did not exempt the owners from the prohibition against conveying lots under separate ownership and the termination of the Ploughed Neck Condominium did not transform the status of the nonconforming lots such that they could be conveyed out into separate ownership.[5]

_____

[5] In its decision, the Board explicitly referenced Town Counsel's March 12, 2004 letter, which concluded that the subsequent condominium termination and purported division of the property violated the conveyancing prohibition in the cottage colony conversion by-law.  According to Town Counsel, "the revocation brought the entire Property (land and cottages) back under a single, undivided ownership, as it had been prior to the creation of the Condominium . . . .  The revocation of the Condominium did not . . . lawfully divide ownership of the property such that each former Condominium was left on a lot of land which could be conveyed out into separate ownership.  The purported division of ownership recited in the 2001 Condominium revocation document occurred, illegally . . . because it included a conveyance of one of the cottages and a lot of land to separate ownership in violation of Section 4701 of the Zoning By-law.  This violation destroyed any grandfathered protections the nonconforming Cottage Colony may have enjoyed at this point."

It is clear that "just because a lot can be divided under [the Mass. Gen. Laws ch. 41, § 81P] exception does not mean that the resulting lots will be buildable under the zoning ordinance." *Citgo Petroleum Corp. v. Planning Board of Braintree*, 24 Mass.App.Ct. 425, 427 (1987) (citing *Smalley v. Planning Board of Harwich*, 10 Mass.App.Ct. 599, 603 (1980)).  This means that a landowner seeking to divide a lot into two or more nonconforming buildable lots needs approval from *both* the Planning Board and the Board of Appeals.  *See, e.g., Arrigo v. Planning Board of Franklin*, 12 Mass.App.Ct. 802, 808 (1981)("[P]ersons . . . seeking to make two building lots from a parcel lacking adequate frontage, are required to obtain two independent approvals: one from the planning board, which may in its discretion waive the frontage requirement under the criteria for waiver set out in

---

Town Counsel's conclusion appears well founded.  A revocation or the "removal" of a condominium from the provision of the Massachusetts Condominium Statute, Mass. Gen. Laws ch. 183A, § 1 *et seq*, is accomplished by the execution and recording of "an instrument to that effect."  Mass. Gen. Laws ch. 183A, § 19(a).  The revocation or termination of a condominium brings the entire condominium property (the land and the units) under common ownerships.  *See* Mass. Gen. Laws ch. 183A, § 19 ("Upon such removal, the condominium, including all the units, or the portion thereof thus removed shall be owned in common by the unit owners. . . .  The undivided interest in the property owned in common held by each unit owner shall be equal to the percentage of the undivided interest of such owner in the common areas and facilities.").  Consequently, the subsequent conveyance of Lot 5, which does not meet the minimum requirements for single family dwellings in the R-2 zoning district, to Sasville and then the conveyance of the other nonconforming lots to other individuals under separate ownership would appear to have violated the cottage colony conversion by-law.

G.L. c. 41, § 81R, and one from the board of appeals, which may vary the frontage requirement only under the highly restrictive criteria of G.L. c. 40A, § 10."). "The approvals serve different purposes, one to give marketability to the lots through recordation, the other to enable the lots to be built upon. The action of neither board should, in our view, bind the other, particularly as their actions are based on different statutory criteria." *Id.*

Consequently, the endorsement of the ANR Plan in this case does not preclude the Town from enforcing the cottage colony conversion by-law. As the ANR Plan indicates on the face of the document, the Planning Board's endorsement of the division of Sprague's land into six individual lots does not "constitute compliance with the Protective Zoning By-Laws of the Town of Sandwich." This, however, does not complete the analysis of plaintiff's claim.

Absent from both parties' contrary contentions is any discussion of what I find to be a crucial principle: Massachusetts applies a "common-law doctrine of merger, which treats adjacent lots currently in common ownership as a single lot 'for zoning purposes so as to minimize nonconformities.'" *Marinelli v. Board of Appeals of Stoughton*, 440 Mass. 255, 261 (2003) (quoting *Preston v. Board of Appeals of Hull*, 51 Mass.App.Ct. 236, 238 (2001)). This means that even if the 1994

ANR Plan technically located each dwelling on its own lot before the later condominiumization and conveyances to separate owners, Massachusetts common-law dictates that the six lots be considered as a single lot for the purpose of applying the cottage colony conversion by-law.  Consequently, the plaintiff is incorrect that the 1994 ANR Plan took each dwelling outside the purview of the cottage colony by-law, and I find that the dwellings are located on the "same lot" for the purposes of this analysis.

b. Not more than 480 square feet

The plaintiff also argues that the Ploughed Neck Road dwellings do not meet the cottage colony definition because one of the six dwellings was 690 square feet, and therefore the original two acre plot did not have six dwellings "each containing not more than 480 square feet."  Since the plaintiff raised this issue for the first time in her Opposition Brief in this Court, the Defendants did not respond to this substantive legal argument, focusing instead on defending Town Counsel from the plaintiff's rebuttal ad hominem attack.  Nonetheless, I consider Attorney Judith Cutler's position in her February 10, 1995 letter to the then-Building Inspector explaining the opposing position.

In that letter to the building Inspector, Cutler responded to the assertion of Forestdale's attorney that "if one of the dwellings has an area greater than 480 square feet, then it follows that the dwellings on this lot cannot be determined to be

-33-

a 'cottage colony.'"  In Cutler's opinion, a sensible reading of the definition of cottage colony in light of the cottage colony conversion by-law means that "the fact that an additional dwelling that does not meet all of the required conditions for a cottage colony is located on the same lot with 'two or more' that do is immaterial."

It is well settled that "Zoning by-laws must be construed reasonably . . . .  [S]uch by-laws should not be so interpreted as to cause absurd or unreasonable results when the language is susceptible of a sensible meaning." *North Shore Realty Trust v. Commonwealth*, 434 Mass. 109, 112-13 (2001) (quoting *Green v. Board of Appeal of Norwood*, 358 Mass. 253, 258 (1970)).  In this case, I concur with Cutler's analysis.  It would be nonsensical not to allow the conversion of what would otherwise be a "cottage colony" simply because there is another structure on the same lot that is a larger than 480 square feet, or by the same reasoning, just because there is another structure on the same lot that is used more than seasonally or that is not designed for independent family living.  The more sensible interpretation is to read the definition as covering property with "[t]wo or more detached seasonal dwellings located on the same lot, each designed for independent family living and including cooking facilities, and each containing not more than 480 square feet," regardless of what else may be on the lot.  The corollary of this construction

-34-

means that one could potentially convert Unit 6 on Lot 6, which
is larger than 480 square feet, to single-family dwelling use
under separate ownership from the rest of the five dwellings that
make up the Ploughed Neck cottage colony without contravening the
cottage colony conversion by-law.  But, at issue here is the
conveyance of Lot 1, which has a dwelling with only 311 square
feet, to ownership separate from four other dwellings that are
less than 480 square feet.

c. Seasonal

     As with the more-than-480-square-feet argument, the
plaintiff did not effectively raise the issue of whether the
Ploughed Neck Road dwellings meet the definition of "cottage
colony" since they were not used seasonally -- in her words "not
only having been used on a year-round basis, but also being
equipped with heating systems rendering them usable on a
year-round basis" -- in this Court until her Opposition Brief.[6]

     There is no separate definition of "seasonal dwelling" in

_____

    [6] The plaintiff focused on the argument that the ANR Plan
removed the Ploughed Neck Road dwellings from the definition of
cottage colony in her initial memorandum.  She did, however, also
incidentally state that "the definition of the term 'cottage
colony,' as contained in the Sandwich zoning by-laws, suggests
that the cottages are in fact single-family dwellings, when
compared to the definition of 'dwelling, single-family,' as
contained in the same by-laws."  The paragraphs of her Statement
of Facts to which she cites simply set out the relevant
definitions in the Sandwich Zoning By-Law.  Nevertheless,
plaintiff's counsel did raise this issue with the Board.  *See*
Complaint, Ex. 2, November 5, 2004 letter to the Board Members
from Julie C. Molloy, at 2-3.  And the Board specifically
considered the issue in making its decision.

the Sandwich Zoning By-Law.  The plaintiff contends in her
Opposition that the reasonable interpretation of this term is a
"cottage not equipped with the characteristic equipment, e.g.;
heating system, which would allow year round usage, as opposed to
the Town's requirement of proof of actual usage from the 1960's
forward – a standard impossible to meet."  The "characteristic
equipment" language is derived from the Zoning By-Law's
Abandonment provision: ". . . A non-conforming use shall be
considered abandoned when the premises has been vacant for two
years, or when the <u>characteristic equipment</u> and/or furnishings of
the non-conforming use have been removed from the premises and
have not been replaced by similar equipment, whichever shall
occur first."  Sandwich Zoning By-Law § 2410 (emphasis added).

     I doubt that a heating system alone necessarily takes a
cottage out of the definition of a cottage colony.  The Sandwich
Zoning By-Law is focused on "use".  *See, e.g.*, Sandwich Zoning
By-Law § 4710 ("[N]on-conforming cottage colony may not be
converted to single-family <u>use</u> ... or any other single-family
dwelling <u>use</u> more intensive or frequent than seasonal or
intermittent <u>use</u> . . . .")(emphasis added); *see also McAleer v.
Board of Appeals of Barnstable*, 361 Mass. 317, 323 (1972)(finding
a town could inhibit "expansion of a nonconforming <u>use</u> from
seasonal to a year-round basis")  (emphasis added).
Consequently, I am inclined toward the view that the more

-36-

consistent interpretation of "seasonal dwelling", as used in the zoning by-law of a Cape Code town, is a dwelling that is used in the late spring, summer, and early fall months, as opposed to a dwelling used year-round. *See, e.g., Goldman*, 375 Mass. at 200 (accepting the trial judge's conclusion that in the context of the Cape Cod Town of Dennis, a "cottage colony" is a "group of small <u>summer</u> vacation homes").  The fact that a dwelling is equipped with a heating system would be evidence that might support a finding of year-round use as opposed to "seasonal" or "intermittent" use but it is insufficient by itself to do so.

The Sandwich Board of Appeals made the following finding in denying the plaintiff's appeal of the Building Inspector's denial:

> [N]o information was submitted by the applicant to contradict determinations made by Town Counsel and the Building Inspector that the use remains cottage colony as shown by information contained in the public record for this matter . . . .  [T]he information submitted by the applicant to show that the year round use of the property pre-dates the adoption of zoning in Sandwich was insufficient.

All I have in the record before me is letters recounting that on January 27, 1995 the Town's Building Inspector at the time determined all but one of the dwellings had been used only for seasonal or intermittent use and that the land and structures thereon constituted a "cottage colony" as defined in Article VII-2 of the Town of Sandwich Protective Zoning By-Law then in effect and how on March 15, 1995 the Board upheld the Building

Inspector's decision and denied a special permit.  Nothing has been provided that explains the bases on which Misiaszek and the Board made the determination that all but one of the dwellings had been used only for seasonal or intermittent use.

In the plaintiff's Statement of Fact she claims that each of the Ploughed Neck Road dwellings have contained heating systems since they were constructed, that Mrs. Sprague assured Mr. Miller of Forestdale that the dwellings had been used on a year-round basis, and that in early 1995 Mrs. Sprague submitted a letter to the Zoning Board of Appeals informing the Board that the dwellings had been used and rented-out by her on a year-round basis.  As evidentiary support for these statements, the plaintiff has provided an October 5, 2004 letter from one Tom Hannigan to whom it may concern indicating that he "performed maintenance . . . at 9 Ploughed Neck Rd. from 1993 - 1999," that all of the dwellings except the front house were equipped with "propane heaters that had been installed when they were built," and that all of the units "were still being used for year round use in 1998" (Pl. Ex. 4); Mr. Miller's Affidavit (Pl. Ex. 2); and Mrs. Sprague's February 21, 1995 letter to the Town of Sandwich (Pl. Ex. 9).  The defendants denied the truth of all of these statements except that the defendants admitted that "Mr. Miller has claimed that the cottages had been used on a year round basis" and that "Mrs. Sprague's letter was submitted by Mr. Miller to the Zoning Board of Appeals in 1995."  Def. Resp. to

Pl. Statement of Facts, at 5.  In her Opposition to the
defendants' cross-motion for summary judgment, the plaintiff also
provided a letter from one Helen Ann Tompkins to the Sandwich
Board of Appeals dated February 28, 1995, in which Ms. Tompkins
stated that "Mrs. Elizabeth Sprague and her late husband lived in
the year round cottage for several years" and that "after that
the cottage was always rented year round" (Pl. Ex. 14); and a
letter from one Donna Fleet-Maguire to whom it may concern dated
February 28, 1995, in which she stated that "[t]he property at
Nine Ploughed Neck Rd. in East Sandwich has been rented year-
round in the past several years" (Pl. Ex. 14).  The defendants
have neither admitted nor denied the reports contained in these
exhibits.

        "Summary judgment is to be decided on the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any.  In addition, a court may
take into account any material that would be admissible or usable
at trial.  However, inadmissible evidence may not be considered.
Mere allegations, or conjecture unsupported in the record, are
insufficient to raise a genuine issue of material fact." *Horta*,
4 F.3d at 7-8.  The plaintiff's proffer of evidence is weak and
dependent upon inadmissible hearsay.  However, the defendants
have not moved to strike any of the exhibits and have not
disputed the plaintiff's argument in her Opposition that the

Ploughed Neck Road dwellings are not and have never been "seasonal dwellings."

If the Ploughed Neck Road dwellings are found to have been in year-round use since before the Sandwich Zoning By-Law took effect in 1960, then the cottage colony conversion by-law cannot apply to the property because the group of dwellings do not fit within the cottage colony definition. Consequently, the Board's decision would be legally untenable as it stands because it rests only on the legal finding that "the conveyance took place without complying with Section 4710." Def. Ex. 7. The decision does not rest on the dimensional, minimum frontage, or minimum side, rear and front setbacks nonconformities of the lot at 9 Ploughed Neck Road. *See* Def. Ex. 3, March 12, 2004 Letter to Ms. Donna Boardman from Judith C. Cutler, pp. 2-3.

If the Ploughed Neck Road dwellings are found to have changed from seasonal or intermittent use to year-round use sometime after the zoning by-laws took effect in 1960, but before the 1994 subdivision, the situation is more complicated because the change of use before 1994 arguably converts a "non-conforming cottage colony" to a "single-family dwelling use more intensive or frequent than seasonal or intermittent use." Sandwich Zoning By-Law § 4710. That change of use may also create compliance issues with the change-of-use and the multiple-principal-buildings on the-same-lot by-laws. *See* Sandwich Zoning By-Law §

-40-

2410(1994)("No change, extension or alteration o[f] [sic] a non-conforming use of a building or land may be made except upon the issuance of a special permit for such changes, extension, or alterations . . . ."), *and* § 2540(a)(1994) ("Multiple principal buildings on the same lot may be authorized by Special Permit if Section 2600 Lot Area and Yard Requirements are met without counting any area twice, and if all other requirements of the Zoning Bylaw are met . . . ."). Nevertheless, the Board's decision to uphold the Building Inspector's denial appears to rest <u>only</u> on the legal finding that "the <u>conveyance</u> took place without complying with Section 4710." Def. Ex. 7 (emphasis added). Consequently, even under this hypothetical factual circumstance, an argument can be made that the cottage colony conversion by-law would technically not apply to the conveyances to separate owners, because the dwellings would not have comprised a cottage colony at the time of the conversion to single-family dwelling use under separate ownership. As a result, if the trier of fact were to make this alternative factual determination, the Board's decision would still be legally untenable as it stands.

Finally, if the Ploughed Neck Road dwellings are found always to have been used seasonally, then the condominiumization and the conveyance of the lots for single-family dwelling use under separate ownership with no seasonal restriction would

likely be in violation of the cottage colony conversion by-law.
In this case, the Board's decision would be legally tenable,
subject to the Mass. Gen. Laws ch. 40A, § 6 and Sandwich Zoning
By-Law § 2430 discussed in Section III.A., *supra*.

4.  *Conclusion*

For the reasons discussed above, I will GRANT plaintiff's
motion for summary judgment on Count II, to the extent that the
repair of her dwelling requires a building permit from the Town
of Sandwich.  I will DENY both motions for summary judgment on
Count I, finding that a genuine dispute exists over whether the
dwelling was used seasonally or year-round in the past.

### IV. THE DENIAL OF THE VARIANCE AND SPECIAL PERMIT

As noted above, the plaintiff makes no separate argument
about why the Board should have granted her a variance or a
special permit if the Building Inspector's determination to deny
a building permit is incorrect.  Because I find that the decision
to deny a standard building permit to allow for the repair of
plaintiff's dwelling was incorrect and legally untenable, I do
not need to reach the question of whether a variance or special
permit should have been issued.  Consequently, I will not conjure
up reasons why the Board's decisions that "a literal enforcement
of the provisions of th[e § 4710] bylaw would [not] involve a
substantial hardship, financial or otherwise, to the petitioner,"
that "desirable relief may [not] be granted without either . . .

substantial detriment to the public good . . . or nullifying or substantially derogating from the intent or purpose of this by-law," or that the plaintiff's application for a special permit "does not meet the requirements of Sandwich Protective Zoning By-law Section 1330," (Def. Ex. 7 - Variance Decision, p. 2; Special Permit Decision, p. 2), were legally untenable, unreasonable, whimsical, capricious or arbitrary.  I DENY the cross-motions for summary judgment on Counts III and IV, and DISMISS those claims as MOOT.

## V. SPOT ZONING

In Count V, the plaintiff argues that the Town's dealings with respect to the property at 9 Ploughed Neck Road constitute "reverse spot zoning" in violation of the Federal and Massachusetts Constitutions because the Town is treating the plaintiff's dimensionally nonconforming property differently than the other dimensionally nonconforming single-family homes in the R-2 zoning district in Sandwich.  The percentage of nonconforming single-family homes in this district is said to be ninety percent.

Commentators have suggested that "[s]pot zoning occurs when there is a singling out of one lot for different treatment from that accorded to similar surrounding land indistinguishable from it in character, all for the economic benefit of the owner of that lot.  Such zoning constitutes a denial of equal protection

-43-

under the law guaranteed by the State and Federal Constitutions and violates the uniformity requirement of the zoning law."  18A Randall and Franklin, Massachusetts Practice - Municipal Law § 590 (3d ed.)(footnotes omitted).  "Amendments that impose more restrictive treatment on given parcels than is imposed on other parcels in the same zoning district are often characterized as 'reverse spot zoning.'"  *W.R. Grace & Co.-Conn. v. Cambridge City Council*, 56 Mass.App.Ct. 559, 569 (2002) (quoting M. Bobrowski, Massachusetts Land Use and Planning Law § 3.4.3 (1993)).

In this case, the plaintiff has made no specific argument why I should consider the enactment of the Sandwich cottage colony conversion by-law to be "reverse spot zoning" imposing more restrictive treatment on the plaintiff's property at 9 Ploughed Neck Road than is imposed on other former "cottage colony" parcels in the same zoning district.  The fact that her property may be the 775th smallest dimensionally nonconforming single-family home in the R-2 zoning district does not mean that she is being singled out for the most restrictive treatment, as she alleges.  Since "[e]very presumption is to be made in favor of the validity of a zoning by-law and great weight is to be given to a town's determination that necessity exists for its adoption or amendment," *Jenckes*, 341 Mass. at 166, I decline to find that Sandwich's adoption of the cottage colony conversion by-law amounts to reverse spot zoning.

-44-

An interesting issue, although one not specifically pursued by the plaintiff, is whether she is entitled to any relief if the Town has acted inconsistently with respect to properties divided in violation of the cottage colony conversion by-law.[7]  "In the administration of controls limiting the use of land -- as with any exercise of the police power -- uniformity of standards and enforcement are of the essence.  If the laws are not applied equally they do not protect equally."  *Fafard v. Conservation Com'n of Reading*, 41 Mass.App.Ct. 565, 569 (1996) (citing *SCIT, Inc. v. Planning Bd. of Braintree*, 19 Mass.App.Ct. 101, 106-111 (1984)); *see also Nat'l Amusements, Inc. v. Boston*, 29 Mass.App.Ct. 305, 312 (1990).  Here, the plaintiff alleges and the defendants admit that another owner of a Ploughed Neck Road dwelling obtained a building permit to do some work on the outside of her dwelling.[8]

---

[7]  In her Opposition, the plaintiff suggests that the Town's inconsistent treatment of properties created as a result of subdivisions pursuant to Mass. Gen. Laws ch. 43, § 81P demonstrates that the Town has acted arbitrarily, capriciously, and unlawful such that the Town has engaged in reverse spot zoning.  However, the examples cited by the plaintiff do not appear to have anything to do with cottage colony conversion.

[8]  In paragraph 19 of the plaintiff's facts she cites to her own deposition testimony as support for the allegation that "[a]nother owner of one of the dwellings, Heather Garhnum, obtained a building permit from the Building Inspector to install a new roof and perform work on the interior of her home."  The defendants admit only that "another cottage owner was issued a quick permit on May 20, 2002 to re-shingle the sides of her cottage."  Def. Resp. to Pl. Facts, ¶ 19.  In paragraph 64 of the plaintiff's facts, she refers to a Building Permit issued May 20,

The defendants explain the non-uniformity by suggesting that the type of permit granted to the other owner does not fall under the building code requirements and is not always personally handled by the Building Inspector.  The defendants also admit that no zoning enforcement action has been brought against any of the other five Ploughed Neck Road properties shown on the ANR Plan.  The defendants do, however, qualify their non-action by emphasizing that since 1995 the Town has taken the position that the conversion of the properties to single-family dwelling use under separate ownership would violate Sandwich Zoning By-Law § 4710.  I do not find the issuance of a building permit for re-shingling to one or more of the other Ploughed Neck Road dwelling owners suggests improper non-uniformity.  Nor do I find that the decision not to initiate pro-active enforcement actions against existing properties as opposed to denying land use permits, as here, reactively would support an equal protection claim.  More fundamentally, I do not find plaintiff has demonstrated or put into question any circumstance that amounts to reverse spot zoning in violation of the equal protection or due process provisions of the Federal and Massachusetts Constitutions.  As the First Circuit has had recent occasion to reiterate, "a plaintiff not relying on 'typical' impermissible categories, such

---

2002 to Marjorie Collis to support her assertion that one of the other cottage owners, Marjorie Collis, was also granted a building permit to re-shingle her home.

as race or religion, must show that he was intentionally treated differently from others similarly situated, . . . and that the different treatment was based on a malicious or bad faith intent to injure." *Clark v. Boscher*, 514 F.3d 107, 114 (1st Cir. 2008) (quoting *Buchanan v. Maine*, 469 F.3d 158, 178 (1st Cir. 2006)). I will, therefore, GRANT summary judgment in favor of the defendants on Count V.

## VI. STATE LAW TORT CLAIM

Count VI of plaintiff's claim advances a Massachusetts Tort Claims Act claim for negligence on the part of the Town. However, by its own terms, the state Tort Claims Act does not apply to "any claim based upon the issuance, denial, suspension or revocation or failure or refusal to issue, deny, suspend, or revoke any permit, license, certificate, approval, order or similar authorization." Mass. Gen. Laws ch. 258, § 10(e). Plaintiff's Tort Claims Act claim is clearly based on the denial of a building permit, and consequentially falls with Section 10. I will therefore GRANT defendants summary judgment on Count VI.

## VII. *RES JUDICATA* EFFECT OF 1995/1996 DECISIONS

Finally, I consider the preclusive effect of the Board's 1995/1996 decisions. Although the defendants do not specifically argue that the plaintiff's Complaint ought to be dismissed on *res judicata* grounds in their Memorandum in support of their motion for summary judgment or in opposition to the plaintiff's motion

for summary judgment,[9] the plaintiff's third argument in Opposition to the defendants' Cross-Motion for Summary Judgment is that "*Res Judicata* does not apply in this case." I consider the issue independently because of its jurisdictional implications.

I sit essentially as a state court in this case. "The full faith and credit statute, 28 U.S.C. § 1738, requires [federal courts] to give the same preclusive effect to state *court* judgments -- both as to claims and issues previously adjudicated -- as would be given in the state court system in which the federal court sits." *Keystone Shipping Co. v. New England Power Co.*, 109 F.3d 46, 50 (1st Cir. 1997)(internal quotations and citations omitted)(emphasis added). Thus, Massachusetts law governs the preclusive effect to be given, if any, by this court to the Barnstable Superior Court's dismissal with prejudice of Forestdale's appeal of the Board's 1995 decision upholding the Building Inspector's determinations.

The Supreme Judicial Court has provided the following overview of Massachusetts preclusion law:

> The term 'res judicata' describes doctrines by which a judgment has a binding effect in future actions. It

---

[9] In the July 23, 2001 letter to Mr. Walton, the Building Inspector/Zoning Enforcement Officer, and to the Members of the Planning Board, Town Counsel did, however, express her opinion that the 1995 decisions of the Building Inspect and Board of Appeals are binding under the *res judicata* doctrine. Def. Ex. 1, July 23, 2001 Letter to Mr. Walton from Ilana M. Quirk.

-48-

comprises both claim preclusion (also known as 'merger' and 'bar') and issue preclusion (also known as 'collateral estoppel'). Claim preclusion 'makes a valid, final judgment conclusive on the parties and their privies, and bars further litigation of all matters that were or should have been litigated in the action.' Issue preclusion prevents the relitigation of an issue determined in an earlier action when that issue subsequently arises in another action based on a different claim between the same parties or their privies.

*Jarosz v. Palmer*, 436 Mass. 526, 531 n.3 (2002) (quoting *Heacock v. Heacock*, 402 Mass. 21, 23 n.2 (1988)).

The essential elements of claim preclusion are: "(1) a final judgment on the merits in [the first] action; (2) an identity of parties or privies in the two suits; and (3) an identity of the cause of action in both the earlier and later suits." *Mancuso v. Kinchla*, 60 Mass.App.Ct. 558, 567 (2004) (quoting *Aunyx Corp. v. Canon U.S.A., Inc.*, 978 F.2d 3, 6 (1st Cir. 1992), *cert. denied*, 507 U.S. 973 (1993)). I am satisfied that not all of these elements are present here. Most obviously, the required identity of the "cause of action" in the 1995/1996 dispute between Forestdale and the Town and the instant suit has not been established. Indeed, I have not even been provided with the Building Inspector or the Board's 1995 decision or the Complaint for the appeal that followed. Nor can I say there is privity between the plaintiff and Forestdale.

Under Massachusetts law, a stipulation of dismissal with prejudice is equivalent to a final judgment on the merits for the

purposes of claim preclusion, but not for issue preclusion. *Jarosz*, 436 Mass. at 536 (2002). Consequently, there is an additional problem with respect to the application of the issue preclusion doctrine. The Massachusetts Appeals Court has recently discussed the preclusive effect of a determination by a zoning board in *Petrillo v. Zoning Board of Appeals of Cohasset*, 65 Mass.App.Ct. 453 (2006). The Court assumed, without deciding, that "the board is the equivalent of a 'court of competent jurisdiction'" because the parties agreed that the board's decision qualified for preclusive effect. *Id.* at 457 n.9 (quoting *Tuper v. North Adams Ambulance Serv., Inc.*, 428 Mass. 132, 135 (1998)).

However, the Court

> explicitly [did] not decide that all decisions of a zoning board of appeals (on special permits, variances, or otherwise) qualify as final determinations, because of various provisions in the Zoning Act (G.L. c. 40A) that bear on finality, e.g., the automatic lapse of special permits for lack of substantial use (G.L. c. 40A, § 9, fourteenth par.); the similar lapse of variance rights, and certain provisions for reestablishment of those rights (G.L. c. 40A, § 10, third par.); and the potential for further consideration of applications, and the potential for reconsideration, upon matters initially denied (G.L. c. 40A, § 16).

*Petrillo*, 65 Mass.App.Ct. at 457 n.9. Federal law speaks only of giving the "factfinding" of a state agency acting in a judicial or "adjudicative capacity" the "same preclusive effect to which it would be entitled in the State's courts." *Bath Iron Works Corp. v. Director, Office of Workers' Compensation Programs*, 125

-50-

F.3d 18, 21 (1st Cir. 1997).

While the plaintiff's Opposition Memorandum is not wholly convincing that no preclusive effect is appropriate in these circumstances, it is the defendants who have the burden of establishing the elements of either claim or issue preclusion so that summary judgment may be granted in their favor on *res judicata* grounds. *See Petrillo*, 65 Mass.App.Ct. at 458. Given that the defendants have not explicitly briefed the applicability of either claim or issue preclusion, I decline to grant summary judgment on this ground.

## VIII. CONCLUSION

The plaintiff has a right to repair her dwelling at 9 Ploughed Neck Road pursuant to Sandwich Zoning By-Law § 2430, and accordingly I GRANT summary judgment to the plaintiff on Count II, finding the denial of a building permit for repairs to be legally untenable. In this connection, I also DISMISS Counts III and IV as MOOT. I GRANT summary judgment to defendants on Counts V and VI. The disposition of Count V removes the federal question from this case. There remains the issue whether plaintiff's property is lawfully in existence for year-round use. As to this, I DENY summary judgment to both parties on Count I. I decline, however, to exercise supplemental jurisdiction over this case pursuant to 28 U.S.C. § 1367 and REMAND the case to the Barnstable Superior Court for any further proceedings on Count I

necessary to resolve the factual dispute over the historical use
of the property[10].

_____
**_/s/ Douglas P. Woodlock_**
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE

_____

[10] As this extended Memorandum makes clear, the surviving
issues in this case are intensely complex state and local
matters, largely outside the customary concerns of the federal
courts.  Having provided such guidance as I can, I conclude that
any fact finding regarding historic use will be conducted most
efficiently in the county where the dispute arose.