UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PATRICIA PEROTTI-CYRUS,
   Plaintiff,        CIVIL ACTION
               NO. 05-10116-DPW


   v.

ROBERT JENSON, Chairman
of The Board of Appeals For
The Town of Sandwich, et al.,
   Defendants.

**PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' APPEAL OF MARCH 31, 2008, DECISION AND ORDER OF THIS COURT, AND MOTION FOR RECONSIDERATION AND/OR PERMISSION TO APPEAL THE DISMISSAL OF PLAINTIFF'S CLAIMS FOR DAMAGES DUE TO VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS**

   NOW comes the plaintiff, Patricia Perotti-Cyrus, and submits this Memorandum of Law in support of her Motion to _DISMISS_ defendants' Notice of Appeal and Appeal of the March 31, 2008, Decision and Order of this Honorable Court.  Plaintiff also files this Memorandum of Law in support of her motion for reconsideration and/or request for permission to file an interlocutory appeal of the dismissal of plaintiff's claims for constitutional law violations by the defendants, individually and as officials of the Town of Sandwich, on grounds of violation of her rights to due process and/or equal protection under the laws of the federal and state constitutions, and corresponding claims for similar violations of the Massachusetts Civil Rights Act, G.L. c. 12, s. 11I, together with claims for damages there under, collectively.

I.  OPPOSITION TO DEFENDANTS' INTERLOCUTORY APPEAL

The March 31, 2008, Decision and Order of this Court constitutes an interlocutory appeal, since, per this Honorable Court's Decision, there remain genuine and materials issues of fact in dispute to be tried by the trier of fact – in this case the Barnstable Superior Court, in light of this Honorable Court's remand of the state law claim on the zoning issue, as set forth in Count I of plaintiff's Second Amended Complaint (this Honorable Court allowed summary judgment on Counts II, III, IV, V, and Vi of plaintiff's action, finding in plaintiff's favor on Count II, finding and ordering that plaintiff is entitled to the building permit in questions, and in defendants' favor on Counts III through VI, dismissing plaintiff's claims set forth in this Counts.  In essence, with regard to Count I, the sole remaining undecided claim, this Honorable Court decided that the sole remaining issue in dispute, is whether plaintiff's house, located at 9 Ploughed Neck Road, East Sandwich, Barnstable County, MA, may be used only seasonally or on a year-round basis.

This Honorable Court remanded this particular question of fact to the Barnstable Superior Court for resolution, in its March 31, 2008, Memorandum and Decision.  Accordingly, since this Court's decision did not definitively dispose of all of the facts and/or issues in dispute, instead remanding this one issue to the Barnstable Superior Court for disposition, this Honorable Court's March 31, 2008, Memorandum and Decision is _not_ a final order and/or judgment of this Court, but instead merely an interlocutory order, for which no "special circumstances" meriting an interlocutory appeal exist.  28 U.S.C.A. Sections 1291

and 1292; <u>Campbell v. Gen'l Dynamics Gov. Syst. Corp.</u>, 407 F.3d 546, 550 (1st

Cir. 2005); <u>Roque-Rodriguez v. Lema Moya</u>, 926 F.2d 103, 104-105(1st Cir. 1991).

As such, this Court's March 31, 2008, interlocutory decision and order is not

appealable by the defendants (or any other party) at this juncture.

WHEREFORE, plaintiff respectfully requests that this Honorable Court

enter an order *<u>DISMISSING</u>* the defendants' Notice of Appeal and Appeal, filed

with this Court on April 28, 2008, as untimely and premature.


II.    <u>ADDITIONALLY, PLAINTIFF REQUESTS THAT THIS COURT
RECONSIDER AND REVISE ITS DECISION, OR ALLOW HER TO
FILE AN INTERLOCUTORY APPEAL OF THIS COURT'S DISMISSAL
OF HER CLAIMS, AS SET FORTH IN COUNTS V AND VI OF HER
SECOND AMENDED COMPLAINT, FOR A FINDING OF VIOLATION
OF HER FEDERAL AND STATE CONSTITUTIONALLY PROTECTED
RIGHTS TO DUE PROCESS AND EQUAL PROTECTION OF THE
LAW, IN CONNECTION WITH THIS MATTER, TOGETHER WITH
HER CLAIMS FOR DAMAGES AS A CONSEQUENCE OF SAID
VIOLATIONS.</u>


Alternatively, plaintiff requests that this Honorable Court reconsider and

revise its Decision, reinstating her claims for violations of her constitutional

rights, making findings that her constitutional rights have indeed been violated,

and award plaintiff damages, attorney's fees and costs in this matter, or allow

plaintiff to pursue an interlocutory appeal of the dismissal of Counts V and VI of

her Second Amended Complaint, asserting violations of plaintiff's claims for

violations of her state and federally protected constitutional rights to due process

and equal protections, and her claims for damages as a result thereof.

Plaintiff states that, in light of the Court's finding that the defendants'

decision(s) denying her application for a building permit (to repair her non-

structurally fire-damaged single family dwelling at 9 Ploughed Neck Road) was "legally untenable," it logically follows that the plaintiff, having been entitled to said building permit (now nearly 5 years ago, after the October 2003 fire), having applied properly for the same, *without* regard to the application and/or applicability of the defendant Town's "cottage colony conversion" zoning by-law, has indeed been deprived of her right(s) to due process and equal protection under the state and federal constitutions.

In denying (and continuing to deny) plaintiff the long sought-after building permit, defendants wrongfully, and without legal basis, have maintained that plaintiff is not entitled to the same unless she has complied with the Town's "cottage colony conversion" zoning by-law.  Yet, as found by this Court, this is in fact untrue, and defendants' position is "legally untenable" -- or, in other words, "arbitrary, capricious, whimsical," and, most importantly, *unlawful*.  As noted by the Court, the applicability and application of the "cottage colony conversion" zoning by-law only affects the limited issue of whether plaintiff's single-family dwelling may be used only on a "seasonal" basis, or whether year-round use is permissible.

Regardless of the answer to this limited question, as this Honorable Court found, plaintiff is nonetheless *entitled* as a matter of law to the issuance of the building permit – since, in short, denying plaintiff the building permit altogether deprives the plaintiff of *any use* – seasonal or year-round – of the dwelling in question.[1]

---

[1] Further, as noted by the plaintiff in an accompanying Motion seeking Affirmative Injunctive Relief, requesting that this Honorable Court order the defendants forthwith to issue the building permit to her, the defendants continue to refuse to issue a building permit to the plaintiff.  As

Defendants actions in so denying plaintiff of _any_ use of her dwelling at 9 Ploughed Neck Road, from October 1993, and continuing through the present (as evidenced by the defendant Building Inspector's May 22, 2008, letter to plaintiff (copy attached), _yet again_ denying her application for said building permit), have been and are in violation of her rights to due process and equal protection under the state and federal constitutions.

The issue is not whether the plaintiff, as the owner of a dwelling formerly part of a cottage colony, has been treated differently from owners of other cottages formerly part of a cottage colony (although most assuredly she has been, as plaintiff's evidence made clear – the Town has sought neither any enforcement actions against any other cottage colonies in the same manner it has as to the plaintiff – including with regard to the five other cottages also formerly part of this same cottage colony), but instead whether plaintiff has been subjected to and singled out for treatment different than (and adverse to, meaning by asserting that plaintiff has no rights with regard to the lawful use of her property) that afforded other owners of developed properties, where the structures on such other properties pre-dated the adoption of the Subdivision Control Law, and were divided in the same manner as was plaintiff's property.

As the evidence submitted by the plaintiff makes quite clear, there are numerous other properties in Sandwich, developed before the Subdivision

---

grounds, in the letter denying plaintiff's May 2008 further application for a building permit, defendants stated that they could not issue said building permit because (a) final judgment has not entered in this matter, and further (b) there is an appeal pending in this matter.  _However_, in defendants' portion of the parties' Joint Pre-Trial Memorandum filed with the Barnstable Superior Court (pre-trial conference having been held on May 30, 2008), defendants assert that, even if a _building permit_ is issued to the plaintiff, the defendants would be justified (and evidently intend to) in denying her an occupancy permit upon completion of the repairs in question.  In sum, the defendants continue, with no good or reasonable grounds to deny plaintiff her rights to due process and equal protection under the law.

Control Law was adopted, that came into existence in the very same manner as a single structure on a single lot, just as the plaintiff's property did, through endorsement of a so-called "ANR" plan by the Sandwich Planning Board, pursuant to G.L. c. 41, ss. 81L and 81P.  Plaintiff expressly cited four such "resultant" properties in her briefs: 133-135 Route 6A and 6 -8 Jarves Street, plaintiff also implicitly cited two more, 372 and 374 Route 6A.

While the four "resultant" properties at 133-135 Route 6A and 6-8 Jarves Street are commercial use properties, this does not change the basic fact and alleged "defect" suffered by each — just as does plaintiff's property: a dimensional non-conformity created as of the date of endorsement of the "ANR" plan which divided the two larger parcels upon which pre-Subdivision Control Law structures existed into four separate lots.

Yet, despite the fact that the four properties cited above, upon division, each suffered from a dimensional defect or "deficiency," each of these four "resultant" properties have been afforded innumerable building and special permits, and have never been subjected to the treatment "afforded" the plaintiff in this action (and, notably, even after having brought the very same types of defects to the defendants' attention, no adverse action has been taken against any of these properties or their owners).  In considering this, the Court must be mindful that a comparison of uses and dimensions is akin to comparing apples and oranges — while both are fruit, they are of a very different nature, and lend themselves to different purposes.

The essential purpose of *dimensional* zoning (irrespective of use) is to regulate the open space character of a neighborhood — or, stated differently, but

to the same end, to regulate the *structural* density of a neighborhood.  Federman v. Board of Appeals, 35 Mass. App. Ct. 727, 731 (1994) ("A primary purpose of requiring minimum lot sizes [dimensional zoning] is assuring open space to a neighborhood, and that objective was not compromised by the circumstance that part of the open space of the locus was southerly of the right of way. . . .  In a land use context, the passage of the right of way across the locus is an irrelevancy and, hence, not a tenable ground for deciding whether the special permit applied for ought to be granted."); *see also* Simon v. Town of Needham, 311 Mass. 560, 564, (1942).

On the other hand, the primary purpose of *use* regulations is to determine what *uses*, irrespective of dimensional requirements/regulations, are appropriate for a particular area ("zoning district").[2]  Here, plaintiff puts her property to a *use*, that of single family residential, which is allowed *by right* in the R-2 zoning district in which her property is located (meaning, no special permit or other zoning "relief" was necessary to change the use of plaintiff's cottage from that of part of a cottage colony to a single family residence was necessary).

As noted in the materials previously submitted to the Court, her property, while not in compliance with dimensional requirements as to lot area when her property was "created," when the Planning Board endorsed the ANR plan creating her lot, it nonetheless has more lot area than many surrounding

---

[2] Plaintiff notes that sometimes uses are limited in terms of allowable dimensions, such as was the case of the Rogers v. Norfolk Board of Appeals, in order to ensure that a child-care facility (and other specially protected uses afforded special protection by virtue of the Dover Amendment) located in a residential neighborhood was not so large as to detract from the residential character of a neighborhood.  432 Mass. 374, 379 (2000).  Usually, however, uses are designated as appropriate to a particular zoning district as distinct from dimensional requirements.  Enos v. Brockton, 354 Mass. 278, 280 (1968)(" the main purpose of zoning is to stabilize the use of property and to protect an area from deleterious uses").

properties which are unquestionably "lawful" under zoning in the Town's
opinion. The Town's position is that, because the property was dimensionally
non-conforming when "created," the property's use as a single family residence is
unlawful. This is, as noted above, an inappropriate and unwarranted mixing of
"apples and oranges" – which becomes especially obvious when one considers
that the use of the adjective "arguably,"[3] to describe the "legislative rationale" for
enacting by-laws such as Sandwich's cottage colony conversion zoning by-law ,
seriously undermines the validity of the same (as plaintiff would be happy to
prove in this case, as is further noted in footnote 3, below).

     Getting back to the point: plaintiff has been singled out and treated
differently that other properties which have been divided by virtue of fact that
several structures on one large parcel all pre-date the adoption of the Subdivision
Control Law by Sandwich in August 1954, for no legitimate governmental
purpose, by virtue of the fact that she (and her property) have been treated
differently than other property owners whose properties were "created" in the

---

[3] Plaintiff notes that the Appeals Court's use of the term "arguable," in defining the Town of
Harwich's purported rationale in adopting a "cottage colony conversion" by-law imparts the
indisputable understanding that the Court intended to state that it was not one hundred percent
convinced by the argument asserted by the Town, since the adjective "arguable" means "open to
debate," as set forth in Black's Law Dictionary, 5th Edition. Sullivan v. Board of Appeals of
Harwich, 15 Mass. App. Ct. 286, 288 (1983)("there is arguably a qualitative difference between
summer rental units and individually owned condominium units.") Similarly, plaintiff here
asserts that the Town of Sandwich's rational for the "cottage colony" by-law at issue is the same as
that of Harwich's. Yet, when examined closely, the Town's records reveal or the total number of
"seasonal" homes (those without any heating systems or, like plaintiff's, with only a wall furnace,
are examined, it becomes apparent that the number of dwellings former part of a cottage colony
make up only some 28% of the total number of supposedly "seasonal dwellings," which could
possibly be converted to year-round dwellings. If, as was the case in the Sullivan case, the
"rationale" warranting upholding the "cottage colony conversion" zoning by-law here in Sandwich
is to protect the Town from the overburdening of Town services due to cottage-colony conversions
to year-round dwellings, the very fact that these types of dwellings (when counted each as
individual units) make up only 28% of the possible total conversions, the very purpose and
rationale behind the zoning by-law becomes highly circumspect and questionable.

same manner as was plaintiff's property, and which other properties also suffered from the same zoning deficiency, because those other properties failed to comply with the zoning dimensional requirements when "created." It matters not that some of these properties are commercial structures. Instead, the point is that plaintiff has been denied a building permit, whereas numerous others of these properties have been not only granted building permits, special permits and/or variance relief, while plaintiff has been denied all of the above. The Town, having done so, has singled the plaintiff (and her property) out for different, and substantially more detrimental treatment that has been afforded to other similarly situated properties, by the Town, for no legitimate governmental purpose. Tapalian v. Tusino, 377 F.3d 1, 6-7 (1st Cir. 2004) (where public employee singles out one person for different treatment, for reasons serving no legitimate governmental purpose, causing substantial harm to that person in doing so, person is entitled to damages for violation of constitutionally protected equal protection rights).

The plain facts are that plaintiff has been denied a building permit to repair her single family dwelling, because the Town believes that, since her property, when "created," did not comply with the then-in-effect zoning dimensional requirements, because it lacked the required lot area of 60,000 square feet, it is "unlawful under zoning," despite the fact that there is absolutely no legitimate governmental purpose served in doing so.[4] The Town has granted

---

[4] When one reflects on the *purpose* of zoning dimensional requirements, set forth above (to regulate the "open space" in a neighborhood or zoning district, or stated otherwise, to regulate the structural density of a neighborhood), it becomes clear that here, where the structure in question, having been built in 1948, pre-dates not only Sandwich's adoption of the Subdivision Control Law in August 1954, but also Sandwich's adoption of zoning by-laws, which occurred in 1960, it

special permits, variances and building permits to other properties similarly "created"[5] and which, at the time of "creation," also suffered from lot area deficiencies (meaning one or both of the resulting lots lacked the lot area required under zoning when they were "created" by the Planning Board's endorsement of the ANR plan at issue), including but not limited to not only the 133 and 135 Route 6A and 6 and 8 Jarves Street properties, but also to some of the five other cottages which were formerly located on the large lot with plaintiff's cottage.[6]  Additionally, as the plaintiff pointed out to the Court, a property nearby, located at 372 Route 6A, which was also "created" through the endorsement by the Planning Board of an ANR plan, because it and the now neighboring property at 374 Route 6A, both located on one large lot until the 1967 ANR plan endorsement, were both developed (meaning the structures, consisting of two single-family homes) before August 1954, was deemed by the Town to be entitled to a variance, even though the property at 372 Route 6A,

---

becomes clear that the division of the larger lot upon which plaintiff's home previously was located, together with the five other cottages on that same lot, into six separate lots, each containing one cottage, in and of itself , not only does not adversely affect the "open space" characteristics of the neighborhood, it has *absolutely no effect whatsoever* on the "open space" characteristics of the neighborhood.  In other words, locating each of the six cottages formerly part located on one lot altogether, such that each of the six cottages, including the one owned by the plaintiff, does not in any way shape or form increase the structural density of the neighborhood.  The October 1995 endorsement of the ANR plan dividing these large lot into six separate lots, and conveyance of each cottage to separate owners, absolutely did not (and, as a practical and factual matter, *could* not), increase the structural density of the neighborhood. Accordingly, the Town's interpretation serves no legitimate governmental purpose.

[5] Created by virtue of the Sandwich Planning Board's endorsement of an ANR plan, because the structures pre-dated the adoption of the Subdivision Control Law by the Town, in August 1954.

[6] Plaintiff respectfully contends that the Court erred in holding that there is some sort of distinction between an "express" building permit and a "regular" building permit – a building permit is a building permit, and either one is entitled to one or not.  There is no such thing as someone owning an allegedly "unlawful" property being entitled to re-roof a structure, under an "express" permit, but not being allowed to obtain a building permit to repair fire damage.  For instance:  what if plaintiff's roof had been damaged, in addition to the other damage done as a result of the October 2003 fire?  Would the Town assert, and the Court hold, that she was entitled to an "express" permit, by right, even while the Town denied her the building permit to repair the interior fire damage?  The obvious answer is no, that would be utter foolishness.

when "created," did not contain the then-1967 required frontage, but instead was short some twenty-five feet. Again, plaintiff, who not only appealed the Building Inspector's denial of her building permit application, but also the Town's denial of her applications for a special permit and/or variance, has been singled out and treated differently that "similarly situated properties," *for no legitimate governmental purpose.*

That plaintiff has suffered substantial damages as a consequence of the this different treatment has been established, and is not contradicted by the Town: Not only is there a diminution of the fair market value of the plaintiff's property, but in addition, plaintiff who bought the cottage free and clear,[7] had to mortgage the property, has lost now nearly five years of rental income, lost the opportunity to sell the property while this matter has dragged on (not to mention she could have sold it for a profit three years ago but for this litigation, since the real estate market has now collapsed, meaning she probably could only sell the property for about what she paid for it – leaving her with a net loss, when one

---

[7] Plaintiff notes, parenthetically, as she has before, that she also owns the cottage next door, at 11 Ploughed Neck Road, and takes this opportunity to correct, respectfully, a miss-statement by the Court in its Decision. The doctrine of merger has never been applied in connection with two (or more) adjacent *developed* properties. Instead, merger applies where one of the two (or more) properties consists of vacant, undeveloped land. Marinelli v. Board of Appeals, 440 Mass. 255, 261 (2003). When two (or more) *developed* adjacent properties are at issue, such as here, the relevant and applicable zoning doctrine which applies is the doctrine of infectious invalidity, which, absent zoning relief, would prevent the property owner, such as the plaintiff in this case, from tearing down the cottage and in its stead building a brand new structure. Norton v. Donohue, Land Court Decision, Misc. Case No. 256473 (May 10, 2004, Trombly, J.), citing Alley v. Building Inspector of Danvers, 354 Mass. 6 (1968); Planning Bd. of Nantucket v. Bd. of Appeals of Nantucket, 15 Mass. App. Ct. 733, 737 (1983), further appellate review denied, 389 Mass. 1104 (1983). In the Norton decision, the property owners, entitled to an ANR endorsement, dividing their one large parcel containing a single family home and a barn, into two separate lots, one with the barn and the other with the single family home, were not entitled to demolish the barn and in its place build a single family home (although the barn, as it existed, located on its own lot, was indeed deemed lawful under zoning by the Land Court), because of the doctrine of infectious invalidity.

considers the mortgage she had to obtain), and now is in danger of losing the cottage altogether, since she recently learned that the mortgagee (a private party) – who to date has graciously extended what was only supposed to be short term loan – is no longer willing to extend the loan further and wants to be repaid in full.  In total, plaintiff has sustained damages of at least One Hundred Thousand Dollars ($100,000.00), if not twice that amount as a consequence of the Town's unlawful, arbitrary, capricious, whimsical, and, bad faith denial of her application for a building permit.

Accordingly, plaintiff most assuredly has presented sufficient and substantial evidence demonstrating that the Town, in denying her building permit application, has violated plaintiff's right to due process and equal protection under the state and federal constitutions and laws, and she has been seriously, substantially and irreparably harmed by the Town as a direct and proximate consequence.

Wherefore, plaintiff begs this Honorable Court either to reconsider its dismissal of her claims for violation of her right to equal protection, or to allow her appeal, on an interlocutory basis, the dismissal of her claims for violation of her constitutional rights to due process and equal protection under the state and federal laws and constitutions.

In submitting this plea, plaintiff also notes, and moves, that this Court dismiss the remand order and instead enter final judgment in this matter, in accordance with its decision, as amended at plaintiff's request for reinstatement of her claim for damages, and entry of findings as set forth above, to the effect that her constitutional rights have been violated by the Town, and entry of an

award of damages to plaintiff by the Town (as well as an award of attorney's fees, which are in excess of $40,000.00, and costs in this matter), as set forth above. As grounds, plaintiff notes that the relief sought by her was a reversal of the Building Inspector's denial of her application for a building permit, and the Board of Appeal's decision upholding that denial. The Court has found that plaintiff is entitled to said building permit. This should end the matter. The question of whether the cottage at issue may be used seasonally only or on a year-round basis is not properly before this (or the Barnstable Superior) Court. Moreover, in the event that the Town finds that, in its opinion, the cottage is being unlawfully used on more than just a "seasonal" basis, it may pursue a zoning enforcement action, pursuant to G.L. c. 40A,[8] at which point in time, if the matter is appealed to the courts, this discreet issue will be properly before the courts. Accordingly, plaintiff is amenable to having this Court reconsider and revise its Decision as set forth herein, and then enter final judgment in this matter.

WHEREFORE, plaintiff requests this Honorable Court either to reconsider and revise its Decision, or grant plaintiff permission to appeal the dismissal of her claims set forth in Counts V and VI of her Second Amended Complaint, on an interlocutory basis, seeking findings that her constitutional rights, as set forth above, have indeed been violated, and further seeking an award of damages

---

[8] Plaintiff notes that the Town has not ever brought any zoning enforcement action against plaintiff, the owner of the neighboring cottage, at 11 Ploughed Neck Road, or any of the other four cottage owners at 13, 15, 17, and 19 Ploughed Neck Road, and not only were all of these cottages once part of the same cottage colony, divided by virtue of endorsement of the 1995 ANR plan, but further, they are all used on a year-round basis (with perhaps one exception – and obviously, plaintiff has been deprived of making _any_ use of her cottage since October 2003).

against the defendants and in plaintiff's favor as compensation for these

fundamental constitutional law violations.

Plaintiff,

PATRICIA PEROTTI-CYRUS,

By her attorney,

*/s/ Julie C. Molloy*

_____

Julie C. Molloy      BBO#555176
379 Route 6A
East Sandwich MA 02537
(508) 833-3707

Dated:  June 26, 2008

## CERTIFICATE OF SERVICE

I, Julie C. Molloy, Esq., hereby certify that a copy of the foregoing was served via U.S. Mail, first-class, postage pre-paid, on June 26, 2008, and by e-filing the same with the U.S. District Court (Massachusetts) on the same date, upon the defendants, as follows:

Leonard H. Kesten, Esq.
Deborah Ecker, Esq.
Brody, Hardoon, Perkins & Kesten
One Exeter Plaza, 12th floor
Boston MA 02116

Judith C. Cutler, Esq.
Jackie Cowin, Esq.
Kopelman and Paige, P.C.
101 Arch Street
Boston MA 02110

*/s/ Julie C. Molloy*

_____

14



# Town Of Sandwich
THE OLDEST TOWN ON CAPE COD



**Donna Boardman, Inspector of Buildings**
16 Jan Sebastian Drive, Sandwich, MA 02563
Phone: 508 888 4200
Fax: 508 833 0018

E-mail: dboardman@townofsandwich.net

May 22, 2008

Patricia Perotti-Cyrus
P. O. Box 1193
E. Sandwich, MA  02537

RE: Building Permit 08-262, Map 52, Lot 20, 9 Ploughed Neck Road

Dear Ms. Perotti-Cyrus;

I am in receipt of your application dated May 13, 2008 for a building permit at 9 Ploughed Neck Road.

I have reviewed the application and determined after a discussion with Town Council that the permit to repair fire damage cannot be issued at this time because no entry of final judgment has been issued and a Notice of Appeal has been filed.

I will automatically provide you with an additional 60-day period to allow for the courts/attorneys to complete their work. If I do not hear from you, I will formally act on the application at the expiration of the 60-day period. If you wish more than an additional 60 days, please contact me. If you do not wish to proceed, please contact me and I will proceed to act on the application as submitted.

Thank you for your attention to this matter.

Sincerely,

Donna Boardman, CBO
Building Commissioner

COMMONWEALTH OF MASSACHUSETTS

BARNSTABLE, SS.                                              SUPERIOR COURT
                                                            C.A. NO. 04-00767

PATRICIA PEROTTI-CYRUS

        Plaintiff

v.

ROBERT JENSEN, Chairman of the Board
of Appeals for the Town of Sandwich,
ROBERT GUERIN, JAMES KILLION,               JOINT PRE-TRIAL MEMORANDUM
MATTHEW MCDONNELL, ERIK VAN
BUSKIRK, WILLIAM DAWES, and
MICHAEL LESPERANCE, as they are
Members of the Board of Appeals,
DONNA BOARDMAN, Building
Inspector and Zoning Enforcement Officer
for the Town of Sandwich, and TOWN OF
SANDWICH,

        Defendants

## I.    <u>Facts</u>

### A.  <u>Agreed Material Facts</u>

1.      Plaintiff owns property located at 9 Ploughed Neck Road in the Town of Sandwich
(the "premises"), which she purchased in 2002.  One dwelling is located on the
premises.

2.      In October, 2003, plaintiff's dwelling was damaged due to fire, after which plaintiff
commenced repairs on the dwelling.

3.      Subsequently, the Sandwich Building Inspector issued a cease-and-desist order to
plaintiff to stop making repairs.

4.       Thereafter, plaintiff applied for a building permit to complete the repairs.  Plaintiff's
application for a building permit was denied by the Building Inspector.

5.      Plaintiff timely appealed the denial of her building permit application to the Sandwich
Zoning Board of Appeals, and simultaneously applied for a special permit and/or

variance relief to allow her to obtain a building permit to repair the dwelling (hereinafter "zoning relief applications").

6.    After a hearing, the Board of Appeals denied all three of plaintiff's zoning relief applications.

7.    Plaintiff thereafter filed a Complaint in the Barnstable Superior Court based on the denials of her applications for zoning relief. Due to the inclusion of federal claims in the Complaint, the defendants removed the Complaint to the U.S. District Court.

8.    Plaintiff's Complaint sought the following relief:

> Count I sought a declaratory judgment that the Town's interpretation of G.L. c.40A, §6, and its application of its Zoning By-law regarding conversion of "cottage colonies" to the premises violate the Home Rule Procedures Act, G.L. c. 43B, §13.

> Count II-IV requested that the Court overturn the Board of Appeals' denials of plaintiff's three applications for zoning relief;

> Count V alleged that the Board's decisions violated her Equal Protection rights;

> Count VI sought damages under the Massachusetts State Tort Claims Act.

9.    On March 31, 2008, upon the parties' cross-motions for summary judgment, the District Court (Woodlock, J.) took the following action:

> <u>Dismissed</u> Counts V and VI.

> <u>Dismissed</u> Counts III-IV as moot.

> <u>Allowed</u> plaintiff's request for summary judgment on Count II, and ordered that the defendants issue a building permit to allow plaintiff to repair her dwelling.

> <u>Denied</u> both parties' requests for summary judgment on Count I, holding that a dispute of fact precluded a determination on whether application of the cottage colony By-law to plaintiff's property is lawful, and remanded Count I to the Superior Court for trial.

> A copy of the Court's Memorandum and Order is attached hereto as Exhibit 1.

10.   Final judgment has not entered on the District Court's decision. However, the defendants filed a Notice of Appeal of the Court's decision with respect to Count II,

and requested that, pursuant to Fed.R.App. 4(2), the appeal be treated as filed on the date final judgment is entered. This request is contained within the Notice of Appeal.

11.    On May 13, 2008, plaintiff submitted a new application for a building permit to the Sandwich Building Inspector.  By letter dated May 22, 2008, the Building Inspector denied the application, stating that "[she] . . . reviewed the application and determined after discussion with Town Council (sic) that the permit to repair fire damage cannot be issued at this time because no entry of final judgment has been issued and a Notice of Appeal has been filed [by the Town]."  A copy of the May 22, 2008 letter is attached hereto as Exhibit 2.


## B.  **Plaintiff's Additional UnAgreed Upon Facts**

12.    Plaintiff purchased 9 Ploughed Neck Road, East Sandwich MA 02537 ["the premises"] on September 11, 2002, which premises consists of a parcel of land containing one dwelling unit [hereinafter referred to as "dwelling unit"].

13.    The premises consisted (and consists) of parcel of land containing a single dwelling unit, as defined under the Town of Sandwich Zoning By-laws.

14.    The dwelling unit at 9 Ploughed Neck Road was constructed in 1948.

15.    The Town of Sandwich adopted the Subdivision Control Law on August 20, 1954, pursuant to G.L. c. 41, s. 81EE, by virtue of recording a notice to that effect, which notice is recorded with the Barnstable County Registry of Deeds at Book 883, Page 195, having been recorded on August 20, 1954.

16.    The Town of Sandwich first adopted zoning by-laws in 1960, nearly six years after adopting the Subdivision Control Law, and twelve (12) years after the plaintiff's single-family dwelling at 9 Ploughed Neck Road had been lawfully constructed.

17.    On or about October 19, 1994, pursuant to G.L. c. 41, ss. 81L et seq., the Planning Board received for endorsement a plan of land ["1994 ANR plan"], submitted by Elizabeth Sprague, the then-property owner, not showing a subdivision of land, and for which, approval was not required under the Subdivision Control Law [an "ANR" plan].

18.    The 1994 ANR plan was submitted as a plan not requiring approval under the Subdivision Control Law, because all of the six (6) dwelling units located on the land proposed to be divided (as opposed to "subdivided"), had been in existence since 1948, six (6) years before the Town of Sandwich adopted the Subdivision Control Law, on August 20, 1954, in accordance with the provisions of G.L. c. 41, s. 81L (last para.), which exempts from subdivision control the division of land containing two or more structures since before a municipality adopted the Subdivision Control Law, and allowing the division of the same by endorsement of an ANR plan.

19.    On or about October 19, 1994, the Sandwich Planning Board endorsed Mrs. Sprague's 1994 ANR plan.

20.    After endorsement of the ANR plan, by the Sandwich Planning Board, each of the six (6) dwelling units formerly located on one large lot, were each located individually on their own lot, separate and apart from the other five (5) dwelling units (regardless of the fact that they remained in common ownership), including the single-family dwelling on its own lot, now owned by the plaintiff.

21.    The endorsement and recording of the 1994 ANR plan, dividing the one large parcel with six (6) dwelling units, into six separate lots, each lot containing one such dwelling, was lawful.

22.    There is no evidence that the plaintiff's single-family dwelling located at 9 Ploughed Neck Road (or any of the other five dwelling units formerly on the one, larger parcel) was unlawful or illegal in terms of construction, erection, or use, at any time between 1948 and 1994, or thereafter.

23.    Various other properties in the Town of Sandwich, where one large parcel of land contained two or more structures in existence since before the Town adopted the Subdivision Control Law, had also been divided pursuant to endorsement by the Planning Board of an ANR plan, such that each structure in existence before the adoption of Subdivision Control was located, after endorsement of the ANR plan, on its own lot, and, in many instances, the "resultant" lot(s) upon which such pre-subdivision control law structures, did not meet the zoning dimensional requirements in effect as of the date of endorsement of the ANR plan.

24.    Despite the fact that such other properties did not meet the zoning dimensional requirements in effect at the time of endorsement of the ANR plan, such other properties have applied for and been issued building and/or special permits, whether for maintenance and/or repaid of the existing structures, structural "changes, alterations and/or additions," or permission for various uses authorized by special permit

25.    The Town, having denied plaintiff a building permit, while having previously granted building permits to other structures in similar circumstances and "suffering" from zoning dimensional "deficiencies" identical to those "suffered" by plaintiff's structure, has treated plaintiff differently to her distinct disadvantage, in violation of her rights to due process and equal protection under the federal and state constitutions.

26.    In mid-October, 2003, plaintiff's dwelling unit sustained non-structural damage due to a fire at the premises, which it uninhabitable.

27.    Plaintiff commenced repairs on the dwelling unit on her own, but stopped after receiving a cease-and-desist notice from the defendant Town and its employees, representatives, agents, and/or servants, specifically including the Building Inspector, in late 2003/early 2004.

28.    Thereafter, plaintiff applied for a building permit to complete the non-structural repairs to the dwelling in/about July 2004.

29.    Plaintiff's application for a building permit was denied by the Building Inspector.

30.    Plaintiff appealed the Building Inspector's denial of her building permit application to the Sandwich Board of (zoning) Appeals, in a legally prompt and timely manner.

31.    Plaintiff simultaneously submitted applications for special permit and/or variance relief [hereinafter "zoning relief applications"], together with her appeal of the Building Inspector's denial of her request with a building permit; the sole purpose of the appeal of the decision of the Building Inspector, special permit and variance applications was to obtain and/or receive a building permit, in order to repair the non-structural damage to the dwelling unit.

32.    After a duly published notice, the Town of Sandwich Board of Appeals held (a) public hearing(s) on plaintiff's zoning relief applications.

33.    After the close of the public hearing(s) referenced above, the defendant Board of Appeals denied all three (3) of plaintiff's zoning relief applications.

34.    Plaintiff thereafter filed this appeal, in the Barnstable Superior Court, seeking the issuance of a building permit to repair her property at 9 Ploughed Neck Road, requesting that this Court overturn the Board of Appeals' decisions denying her three (3) applications for zoning relief, within twenty (20) days after the filing of the Board of Appeals' decisions on plaintiff's three zoning relief applications with the Town Clerk, initially by means of her original Complaint, the her First Amended Complaint, and, with the U.S. District Court, a Second Amended Complaint . See Plaintiff's Second Amended Complaint, Count I, seeking declaratory judgment pursuant to G.L. c. 231A, s.1, that Town's Interpretation of G.L. c. 40A, s. 6 and Town By-laws violate Home Rule Procedures Act, G.L. c. 43B, s. 13, specifically challenging the application of the "cottage colony conversion" zoning by-law and its application to plaintiff's property at issue; Count II, seeking to have Court overturn Building Inspector and Board of Appeals' denial of plaintiff's building permit application; Count III, seeking to have Court overturn Board of Appeals' denial of plaintiff's special permit application; Count IV, seeking to have Court overturn Board of Appeals' denial of plaintiff's variance application; Count V, seeking to have the Court find that defendants' interpretation G.L. c. 40A, s. 6 and town zoning by-laws, constituted unlawful "spot zoning" as applied to plaintiff's property, and denying plaintiff of her rights to due process and equal protection under the federal constitution, and entitling plaintiff to an award of damages, arising out of the denial

of her quest for a building permit; Count VI, seeking to have Court find that the defendants were liable to plaintiff under the Massachusetts State Tort Claims Act for damages, arising out of plaintiff's quest for a building permit.

35.    Defendants answered the plaintiff's Complaint, as amended, denying plaintiff's claims, and asserting affirmative defenses, but defendants <u>never</u> asserted any counterclaim(s) against the plaintiff.

36.    In mid-April 2006, after completing discovery, and in accordance with the scheduling Order of the United States District Court (Hon. J. Woodlock presiding), the parties argued cross-motions for summary judgment.

37.    On March 31, 2008, the United States District Court for Massachusetts (Hon. J. Woodlock presiding) issued its "Memorandum and Order." <u>See</u> Exhibit 1, Memorandum and Order, dated March 31, 2008.

38.    In this Decision, the Court dismissed all but Counts I and II of plaintiff's Complaint, finding that: (a) as to Count I, there remained genuine and material issues of fact regarding the legality and applicability of the "cottage colony conversion" zoning by-law to plaintiff's property; and (b)as to Count II, <u>regardless</u> of whether or not the validity and/or application of the Town's "cottage colony conversion" by-law, the defendants' denial of the sought-after building permit to the plaintiff was "legally untenable," and instead that plaintiff was and is entitled to the issuance of the same. <u>Ibid.</u>, p. 19.

39.    Although not required to do so, the Court went on to discuss the issue of the possible application of the "cottage colony conversion" zoning by-law, offering its thoughts and suggestions regarding possible resolution of the applicability of this zoning by-law. Since this discussion was unnecessary, it is little more than <u>dicta</u>, and while perhaps helpful in "fleshing out" some of the issues, it is non-binding. Accordingly, the U.S. District Court remanded the matter to the Barnstable Superior Court, on the sole issue of plaintiff's remaining claim, Count I of her Second Amended Complaint, regarding the validity and applicability of the "cottage colony" zoning by-law. The U.S. District Court rightly noted, however, that, the essence of this by-law (and at bottom of this controversy) is the question of whether the plaintiff's single-family residence may be used only seasonally or year-round.

40.    After issuance of its Decision, and also on March 31, 2008, the U.S. District Court issued a further Order remanding this matter for further proceedings and resolution by the Barnstable Superior Court. <u>See</u> Exhibit 3, Remand Order.

41.    Thereafter, this Court, on April 15, 2008, scheduled and sent out Notice of this Pre-Trial Conference, scheduled for May 30, 2008, at 9:00 a.m.

42.    On April 28, 2008, the defendants filed an interlocutory appeal of the decision and order of the U.S. District Court, despite the fact that the filing of an interlocutory

appeal is not permitted in this type of case, since no final judgment has as yet entered, and the claims set forth in Count I of plaintiff's Second Amended Complaint have not as yet been resolved or determined.

43.   On May 13, 2008, plaintiff submitted a new application for a building permit to the Town of Sandwich Building Inspector, Donna Boardman.

44.   On or about May 22, 2008, defendants requested a continuance of this May, 30, 2008, Pre-Trial Conference, which request plaintiff denied.

45.   By letter dated May 22, 2008, the Town of Sandwich Building Inspector, Donna Boardman, wrongfully <u>denied</u> plaintiff's May 13, 2008, building permit application, stating that "[she] . . . reviewed the application and determined after discussion with Town Council (sic) that the permit to repair fire damage cannot be issued at this time because no entry of final judgment has been issued and a Notice of Appeal has been filed [by the Town]."  <u>See</u> Exhibit 2, May 22, 2008, letter from Building Inspector, Donna Boardman, to Patricia Perotti-Cyrus, attached hereto.


## C.   <u>Defendants' Additional UnAgreed Upon Facts</u>

1.   Plaintiff's property is one of six dwellings that were part of a "Cottage Colony" – i.e. under single ownership and rented for seasonal use.  Although Cottage Colonies are no longer a permissible use in the zoning district in which plaintiff's property is located, the Cottage Colony at issue would enjoy pre-existing, non-conforming status.

2.   Section 4710 of the Sandwich Zoning By-law expressly prohibits the conversion of dwellings that are part of a Cottage Colony to single-family dwellings under separate ownership "unless the lot upon which each building is located complies with the minimum requirements for single-family dwellings in the district in which the land is located."

3.   The lot upon which plaintiff's dwelling is located does not meet minimum requirements for single-family dwellings in the district with regard to lot area, frontage, or setbacks.

4.   The previous owner of all the dwellings in the Cottage Colony was advised that Section 4710 would prevent the conversion of the cottages to separate, single-family ownership in 1995.

5.   In 2001 and 2002, the cottages in the Cottage Colony were sold to individual buyers, including plaintiff, in violation of Section 4701.

II.     Parties' Statements As To What They Expect the Evidence to Show.

    A.     Plaintiff's Statement

1.     Count I of Plaintiff's Complaint is Rendered Moot by U.S. District Court Decision, and Should be Dismissed Without Prejudice.

In light of this and the ruling of the U.S. District Court, determining that the plaintiff is entitled to the issuance of the building permit in question, regardless of the validity and/or application of the "cottage colony conversion" zoning by-law, plaintiff asserts that Count I of her Second Amended Complaint is rendered moot, and as such, Count I should be dismissed without prejudice.  Plaintiff states that she would be content to have the Court so dismiss Count I, without prejudice, and to have this matter go to final judgment.

In so stating, plaintiff notes that her goal all along has been to obtain a building permit so that she may repair her fire-damaged single-family home.  If, as the U.S. District Court has determined, the issuance of this building permit does <u>not</u> hinge in any way upon the question of the validity and/or application of the "cottage colony conversion" zoning by-law in this matter, plaintiff sees no need, at this point, to pursue adjudication on and/or of that issue.

In so stating, plaintiff notes that zoning by-laws regulating the conversion of cottage colonies have been upheld by the Massachusetts appellate courts, on the limited grounds that municipalities "<u>arguably</u>" (a qualifying term which indicates that there is some question as to the merits of such a contention) can assert a "qualitative difference between summer rental units and individually owned condominium units."  <u>Sullivan v. Harwich Board of Appeals</u>, 15 Mass.App.Ct. 286, 288 (1983) (emphasis added).

Here, however, as in the case of <u>Fitzsimonds v. Board of Appeals of Chatham</u>, based upon and in light of the decision by the U.S. District Court, there is no question on the broader issue of application or validity of Sandwich's "cottage colony" zoning by-law, since here, as was the case in <u>Fitzsimonds</u>, <u>regardless</u> of the application and/or validity of that zoning by-law, plaintiff is entitled to the building permit she has sought since October 2003, nearly five years ago.  21 Mass. App. Ct. 53, 56-57 (1985).

To the extent that plaintiff asserted claims in Count I relating to the "cottage colony conversion" zoning by-law, she did so only in support of her quest to obtain a building permit.  The U.S. District Court having determined that the issue of her entitlement to a building permit could and was decided independent of the issues relating to the "cottage colony conversion" zoning by-law, Count I of plaintiff's Second Amended Complaint, contesting the validity of Sandwich's "cottage colony conversion" zoning by-law, is rendered moot.

This is especially so where the defendants failed to assert any affirmative claims (in the form of counterclaims) against the plaintiff alleging the validity of enforcement of this zoning by-law.  The defendants, having failed to do so, and instead only having asserted defensive claims on this issue, cannot now be permitted in this action to pursue a claim relating to the validity and/or enforcement or enforceability of this zoning by-law. Defendants have failed to place this issue squarely before the Court, and plaintiff is content to have the issue dismissed without prejudice, in the interest of judicial economy, since, after all the relief she sought, at bottom, was the issuance of the building permit – which has been determined to be "issuable" regardless of the issues pertaining to the "cottage colony conversion" by-law.

Moreover, plaintiff notes that the ultimate permissible "police power" purposes upon which such cottage colony zoning by-laws have been upheld involve not "forms or ownership," but instead the conversion of seasonal housing to year-round housing, on the grounds that such conversions, given the potential strain that might result upon municipal services, are within the realm of permissible zoning police powers.  This has been deemed true even though most, if not all, such cottage colony by-laws are phrased in terms of "form of ownership," which, as a matter of well-settled law, is beyond the permissible zoning police powers exercisable by a municipality (see, e.g.: CHR Gen., Inc. v. Newton, 387 Mass. 351, 356-357 (1982)("municipality's zoning power is confined to regulating the use of property rather than its form of ownership.")), instead of simply being based upon the seasonal conversion issue.

Plaintiff further notes that the defendant Town and its agents, servants, employees, and/or representatives will not be prejudiced by the action plaintiff proposes, since it/they remain free to raise the issue of the validity and enforceability of the "cottage colony conversion" zoning by-law by means of an enforcement action, in the event that it/they believe(s) a use violation arises, presumably b y virtue of use of the structure in question on a year-round and not just a seasonal basis.

Accordingly, for the reasons stated, plaintiff proposes that, the U.S. District Court having determined that she is entitled to the building permit in question -- regardless of the validity and/or enforceability of the "cottage colony conversion" zoning by-law – Count I of her Second Amended Complaint be dismissed, without prejudice, and that entry of final judgment enter in this matter.  The parties will then be able to pursue appeals in this matter as they see fit, and no further judicial, private, or municipal resources will be unnecessarily expended on an issue whose determination is neither outcome dispositive, nor necessary is resolving the "gist" of the current case.

2.  Plaintiff's Statement of Evidence if Count I is Not Dismissed

In the event that Count I of Plaintiff's Second Amended Complaint is not dismissed by this Court, plaintiff anticipates that the evidence will be as follows:

(1) The evidence will show that the provisions of the Sandwich "cottage colony conversion" zoning by-law do not apply to the plaintiff's property;

(2) The provisions of the Sandwich "cottage colony conversion" zoning by-law have no rational relation to any legitimate zoning police purpose properly exercisable by the Town of Sandwich;

(3) In the absence of a definition of the term "seasonal" as used not only in the Sandwich "cottage colony conversion" zoning by-law, but the Sandwich zoning by-laws in general, the defendants must decide the question of "seasonal" versus "year-round" use based upon whether the dwelling in question has been equipped with the customary equipment which would allow the premises to be used on a year-round basis – i.e.; if the dwelling has been equipped with a heating system since its construction in 1948 (or before the Town adopted the "cottage colony conversion" zoning by-law, in 1982), the Town should be required to find that the dwelling is not limited to "seasonal" use only, but instead may be used on a year-round basis;

(4) The Town's efforts to regulate the conversion of cottage colonies improperly seeks to regulate the form of ownership as opposed to any legitimate police power properly exercisable under zoning, particularly when examined in light of the possible or actual conversion of the number of "seasonal" cottages, which do not fall within the definition of "cottage colony;

(5) Because the Town fails to regulate the conversion of all seasonal cottages, regardless of whether part of a "cottage colony," so-called, and the indisputable fact that the total number of "seasonal cottages" not part of a "cottage colony" greatly exceeds the number of "cottages" within a "cottage colony," as defined by the Sandwich zoning by-laws, the Town cannot dispute that the "cottage colony conversion" zoning by-law, by focusing only a small fraction of the total number of "cottages" that could be "converted" from seasonal to year-round use, does not constitute a "rational" exercise of police power, because the number of possible "conversions" sought to be prohibited by the "cottage colony conversion" zoning by-law has little or no impact when compared to the potential and likely drain on municipal resources which could and will be effected by unfettered, unregulated (most importantly) permissible "conversion" of seasonal cottages not part of a "cottage colony;"

(6) The Town's interpretation of its zoning by-laws, to the effect that the 1994 ANR plan was "unlawful under zoning, and resulting in a violation of the Town's "cottage colony conversion" zoning by law, are both incorrect, legally untenable, arbitrary, capricious, and whimsical;

(7) At bottom, the sole issue presented by the "cottage colony conversion" zoning by-law (and indeed the sole rational basis for the Town defendants' exercise of this "police power"), is the question of whether a dwelling unit, formerly a part of a cottage colony, may be used only "seasonally," or on a year-round basis;

(8) The Town has not properly presented and/or preserved the issue of the applicability of the "cottage colony conversion" zoning by-law in this case, since, even if this zoning by-law applies, the plaintiff is nonetheless entitled to the building permit in questions;

(9) The Town may properly pursue the issue of applicability and enforcement of the "cottage colony conversion" zoning by-law by means of an administrative zoning enforcement action, in the event that the Town defendants believe that the plaintiff is using her single-family dwelling in appropriately and/or unlawfully, by using the same more than just "seasonally" – i.e.; if the Town believes that anything other than seasonal use is permissible, and the dwelling in question is being used more than just "seasonally," the Town defendants may bring an action against plaintiff to enjoin her from using the property other than only on a "seasonal" basis;

(10)    Per the Town of Sandwich's Fiscal Year 2006 Assessor's records, there were some 172 "dwellings" having <u>no heat</u>, and which, therefore, by definition, are "seasonal dwellings."

(11)    Of these 172 unheated "seasonal dwellings," only 20 of these were cottages forming part of a "cottage colony."

(12)    Of these 172 unheated "seasonal dwellings," 152 were dwellings not forming part of a "cottage colony," whether cottages of other dwelling units.

(13)    Plaintiff's dwelling has, since 1948, when it was built, contained a "wall furnace" as its heating system.

(14)    Per the Town of Sandwich defendants' interpretation, a dwelling heated only by a "wall furnace" heating system is a "seasonal dwelling."

(15)    Per the Town of Sandwich's Fiscal Year 2006 Assessor's records, there were some 114 "dwellings" furnished with only "wall furnaces" as the heating system for said dwelling units.

(16)    These 114 dwellings are "seasonal dwellings" as defined by the Sandwich zoning by-laws, since, like plaintiff's dwelling, the only source of heat is a "wall furnace."

(17)    Of these 114 "wall heated" seasonal dwellings, 44 are dwellings now or formerly part of a cottage colony.

(18)    Of these 114 "wall heated" seasonal dwellings, 70 are dwellings not now or formerly part of a cottage colony, whether "cottages" or other types of dwellings.

(19)    The total "unheated" or only "wall furnace" heated seasonal dwellings now or formerly part of a cottage colony within the Town of Sandwich numbers 97 dwellings.

(20)    The total "unheated" or only "wall furnace" heated seasonal dwellings not now or previously part of a cottage colony within the Town of Sandwich numbers 122 dwellings.

(21)    The total number of "seasonal cottages" which may be converted to year-round dwellings which are or were not part of a "cottage colony" not only equals but in fact <u>exceeds</u> the total number of "seasonal cottages" now or formerly part of a "cottage colony" which might be converted from "seasonal" to "year-round" use.

(22)    The goal of Sandwich's "cottage colony conversion" zoning by-law is to prevent the conversion of traditionally "seasonal dwellings" to year-round usage, in an effort to prevent and avoid undue strain and/or drain on Town resources by such conversion.

(23)    Given the greater number of non-cottage colony "seasonal dwellings" which might be converted to year-round use than the number of cottage colony "seasonal dwellings" that might be so converted, Sandwich's "cottage colony conversion" zoning by-law bears no rational and/or reasonable relation to "goals" purportedly sought to be accomplished by the "cottage colony conversion" zoning by-law – in other words, the conversion of non-cottage colony "seasonal dwellings" to year-round use poses a greater likelihood and risk of strain and/or drain on municipal resources than does the conversion of cottage colony "seasonal dwellings."

B.    <u>Defendants' Statement</u>

Defendants submit that the District Court's decision that plaintiff's dwelling is a lawful pre-existing <u>structure</u>, and therefore entitled to a building permit to allow repairs, is not correct. However, irrespective of that decision, the issue of whether plaintiff's <u>use</u> of the dwelling – for <u>any</u> purpose – was not adjudicated by the District Court, and thus is at issue in this trial.

Defendants submit that, contrary to plaintiff's contention, the issue of what if any use of plaintiff's property is permitted is not moot because, even if plaintiff obtains a building permit and repairs the dwelling, it is the Town's position that she will be unable to secure an Occupancy Permit, and therefore will be unable to use the premises, because use of the dwelling is unlawful under Section 4710 of the Town's Zoning By-law.

Defendants submit that the only way plaintiff could establish that Section 4710 does not apply to her property is if she could demonstrate that the property was never part of a Cottage Colony. This she could only do by showing that the property was used as a year-round residence

since before the Town of Sandwich adopted a zoning bylaw which rendered it unlawful to have more than one dwelling per lot, unless the dwelling was part of a Cottage Colony. Defendants expect that plaintiff will be unable to make this showing. Therefore, plaintiff's property was part of the pre-existing Cottage Colony, and was rendered unlawful when conveyed out into separate ownership in violation of Section 4710.

Plaintiff's contention that the property is rendered lawful by the 1994 ANR endorsement of the subdivision plan showing the land on which the Cottage Colony is located is meritless, since ANR endorsement speaks only to a property's exemption from the Subdivision Control Law, not zoning laws. See Smalley v. Planning Board of Harwich, 10 Mass.App.Ct. 599, 603 (1980); Citgo Petroleum Corp. v. Planning Board of Braintree, 24 Mass.App.Ct. 425 (1987). Indeed, the District Court noted this very fact in its decision.

Defendants further state that plaintiff may not re-raise her claims that the defendants have violated her Equal Protection rights or owe her damages pursuant to the Tort Claims Act, as these claims are precluded by the District Court's decision dismissing same.

III.    Suggested Description of Case to be Read to the Jury

As this is a zoning appeal pursuant to G.L c.40A, §17, the case will be tried de novo before a judge. Therefore, no description of the case to be read to the jury is necessary.

IV.    Unusual Legal Issues.

A.    Plaintiff

Plaintiff assets that all pertinent legal issues have been resolved by the decision of the U.S. District Court in this matter, and that there is nothing left for this Court to do other than make entry of final judgment. Having said that, in the event that this Court disagrees, plaintiff states as follows regarding the "significant legal issues" in this matter:

This case turns on a determination of the legal status and "lawfulness," under zoning, of parcels of land, developed before a municipality adopted the Subdivision Control Law, after a division of any such parcel, containing "two or more structures since before the municipality adopted the subdivision control law," such that each resulting parcel, after division, contains its own structure, as is the case with plaintiff's property at issue in this action. G.L. c. 41, s. 81L.

1.    A division of land containing two or more structures erected and constructed before a municipality adopted the Subdivision Control Law, such that the resulting divided parcels of land each contain their own pre-subdivision control law structure, is lawful, and a Planning Board may not refuse to endorse such a plan. Citgo Petroleum Corp. v. Planning Board of Braintree, 24 Mass. App. Ct. 425, 426 (1987); Smalley v. Planning Board of Harwich, 10 Mass. App. Ct. 599, 604 (1980).

2.    The primary purpose of minimum dimensional zoning requirements is to regulate the "structural density" of a neighborhood and/or zoning district – or, put another way, to

ensure a minimum amount of open space between structures in a neighborhood and/or zoning district. <u>Federman v. Marblehead Board of Appeals</u>, 35 Mass.App.Ct. 727, 731 (1994)("primary purpose of requiring minimum lot sizes is assuring open space to a neighborhood,. . . ."); <u>Bransford v. Zoning Bd. Of Appeals of Edgartown</u>, 444 Mass. 852, 860 (2005) ("See P. Rohan, Zoning and Land Use Controls, supra (explaining minimum lot area requirements achieve population and building density controls); E.C. Yokley, Zoning Law and Practice § 23-9, at 23-40 (2003) (among purposes of minimum lot area requirements 'are maintaining the character of low density residential neighborhoods, protecting environmentally sensitive areas, and preservation of open space').")

3.   The division of the larger lot upon which plaintiff's single-family home was located, on October 19, 1995, by endorsement of the ANR plan, in and of itself effected no change to the structural density of the neighborhood, nor effected or caused any change to the "open space" between structures "in [the] neighborhood." <u>Ibid.</u>

4.   Division of land developed before a municipality adopted the Subdivision Control Law, by endorsement of an ANR plan, such as is at issue here, which later leads to a change in the form of ownership, as is also the case here, "does not by itself effect a change of use." <u>Sullivan v. Board of Appeals of Harwich</u>, 15 Mass.App.Ct. 286, 290 (1983).

5.   The first paragraph of Section 6, Chapter 40A, the State Zoning Act, states that, except in certain instances not applicable in this case, ". . . a zoning ordinance or by-law shall not apply to structures or uses lawfully in existence or lawfully begun," before the enactment/adoption and/or amendment of a zoning ordinance of by-law. G.L. c. 40A, s. 6 (para.1); Decision of U.S. District Court, March 31, 2008.

6.   Plaintiff's single-family dwelling was "lawfully in existence" before the Town of Sandwich adopted <u>any</u> zoning by-laws (as well as before the Town adopted the Subdivision Control Law), and most certainly was "lawfully in existence" before October 19, 1995, and the applicable zoning dimensional by-laws in effect on that date, pertaining, inter alia, to lot area.  G.L. c. 40A, s. 6 (para. 1); Decision of U.S. District Court, March 31, 2008.

7.   Application of dimensional zoning by-laws and/or amendments thereto, only apply to "structures . . . lawfully in existence" in certain instances -- in particular, when a change, alteration and/or extension of such a <u>structure</u> is proposed.  G.L. c. 40A, s. 6 (para. 1); Decision of U.S. District Court, March 31, 2008.

8.   Plaintiff, in requesting a building permit, does not propose any structural "change, alteration or extension" of her single-family dwelling structure, and certainly no "use" change with regard to the same; instead, she only seeks to repair the fire-damaged, non-structural damage to the interior of this single-family dwelling structure, and, therefore, the dimensional zoning by-laws now in effect, as adopted and amended

since 1960, have no application to plaintiff's single-family structure.  G.L. c. 40A, s. 6 (para. 1); Decision of U.S. District Court, March 31, 2008.

9.  The placement of plaintiff's single-family structure on its own lot, by virtue of the Planning Board's endorsement of the October 19, 1995, ANR plan, did <u>not</u> cause or effect any "change of use" of the property or structure as that of a dwelling unit used for independent family living purposes.  <u>Sullivan v. Board of Appeals of Harwich</u>, 15 Mass.App.Ct. at 290.

10.  The Town of Sandwich, in/by having issued building permits relating to construction, whether for repairs and/or maintenance, or for "change, alteration or extension" of other structures which were in existence before the Town adopted the Subdivision Control Law with one or more other structures also in existence before adoption of the Subdivision Control Law, and where the land upon which such pre-Subdivision Control Law structures was later divided by endorsement of an ANR plan, similar to the one at issue in this case, such that each pre-Subdivision Control Law structure is now located on its own lot, <u>even</u> <u>though</u> these other structures, when located on their own lot(s), <u>also</u> did not meet the dimensional zoning requirements in effect as of the date of endorsement of the applicable ANR plans, but denying a building permit to the plaintiff, treated plaintiff markedly differently, to plaintiff's extreme disadvantage, than other similarly situated properties containing identical characteristics, and, in doing so, violated plaintiff's rights to due process and equal protection of the law, entitling her to damages for violation of these state and federal constitutionally guaranteed rights.  <u>Lexington v. Simeone</u>, 334 Mass. 127, 131 (1956)("With respect to the contention that the zoning by-law is unconstitutional or invalid as applied to the defendant's land, the test is whether its provisions "are clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." Euclid v. Ambler Realty Co. 272 U.S. 365, 395. Nectow v. Cambridge, 277 U.S. 183, 187-188. Wilbur v. Newton, 302 Mass. 38, 39.").

11. Since the division of the larger lot upon which plaintiff's dwelling formerly was located, such that plaintiff's dwelling is now and has been located on its own lot since the endorsement of the ANR plan on October 19, 1995, neither had any effect (adverse or otherwise), in and of itself, upon the "open space of the neighborhood," nor, in and of itself, effected any change of "use," the Town's application (or attempted application) of either the 1995 or current zoning dimensional requirements and provisions, is "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare[,]" and therefore is unconstitutional, and plaintiff is entitled to an award of damages for violation of her constitutional rights to equal protection and due process under the law.  <u>Lexington v. Simeone</u>, 334 Mass. at 131.

12. Further, defendants' ongoing refusal to issue a building permit to allow her to complete such repairs, where it is clear, at the very least, that she is entitled to use the single-family dwelling in question seasonally, infringes upon and denies her the right to use the same even seasonally only.  As such, defendants most assuredly have and

continue to violate plaintiff's rights to due process and equal protection under the federal and state constitutions and laws, and she is entitled to damages as a consequence of these violations.  <u>Ibid.</u>

13. In light of the foregoing, plaintiff is entitled to bring and prevail upon an action in the nature of mandamus against the defendants, requiring the issuance of the building permit in question.

14. "Cottage colony conversion" zoning by-laws are "arguably" within a municipalities proper "police powers" under zoning, as a regulating a "qualitative difference between summer rental units and individually owned condominium units," and have been upheld by the appellate courts of the Commonwealth in this limited basis. <u>Sullivan v. Harwich Board of Appeals</u>, 15 Mass.App.Ct. 286, 288 (1983);

15. Where a municipality's seasonal "conversion" zoning by-law deals <u>only</u> with the conversion of cottage colony structures, and where, in such municipality, the conversion of dwellings formerly a part of "cottage colonies" constitutes less of a potential strain and/or drain on municipal resources than conversion of non-cottage colony seasonal dwellings within the municipality, a zoning by-law relating only to conversion of dwellings formerly a part of a "cottage colony," bears no "rational" or "legitimate" relation to a municipality's exercise of police zoning powers seeking to prevent a strain and/or drain on municipal resources.  <u>Sullivan v. Harwich Board of Appeals</u>, 15 Mass.App.Ct. 286 (1983);

16.  While "[e]qual protection does not prohibit differences in treatment where there is a <u>rational</u> basis for those differences reasonably related to the purposes which the regulation seeks to accomplish[,]" where, as here, there is no "rational" basis to distinguish between seasonal dwellings forming a part of a "cottage colony" versus "seasonal dwellings" separately owned on their own lots – especially where the number of "seasonal dwellings" separately owned on their own lots <u>far</u> exceeds the number of "seasonal dwellings" forming a part of a cottage colony – there is <u>no</u> "rational" basis for treating conversion of "seasonal dwellings" forming part of a cottage colony separately and distinctly from "seasonal dwellings" separately owned on their own lots.  <u>Goldman v. Dennis</u>, 375 Mass. 197, 200 (1978).  Accordingly, Sandwich's "cottage colony conversion" zoning by-law is unconstitutional and an invalid exercise of its police power under zoning.

B.    Defendant

Defendants submit that there are no unusual legal issues raised by this case.

IV.    <u>Names and Addresses of Witnesses to be Called at Trial</u>:

A.    <u>Plaintiff</u>

1.  Plaintiff, One Palmer Road, East Sandwich MA 02537;

    2.  William C. Cyrus, Jr., her husband, same address;
    3.  Thomas C. Garrahan, East Sandwich (real estate appraiser);
    4.  Donna Boardman, Sandwich Building Inspector;
    5.  Christopher Wilson, 6-8 Jarves Street, Sandwich;
    6.  Edward Childs, Chief Assessor, Town of Sandwich;
    7.  JoAnne Miller-Buntich, 5 Boardley Road, Sandwich MA.

B.    <u>Defendants</u>

Defendants may call the following witness at trial:

Donna Boardman, Building Inspector for the Town of Sandwich.

The defendants object to the plaintiff's calling of Mr. Childs, on grounds that classification of a property for tax purposes is not determinative of the property's zoning status. <u>See</u> <u>Heald</u> v. <u>Zoning Bd. of Appeals of Greenfield</u>, 7 Mass.App.Ct. 286, 291-2 (1979) ("[n]othing in G.L. c. 40A substitutes the board of assessors for the zoning administrator or board of appeals of a municipality as the administrator of its zoning code") <u>Seltzer</u> v. <u>Board of Appeals of Orleans</u>, 24 Mass.App.Ct. 521, 524 (1987); <u>Sullivan</u> v. <u>Mannion</u>, 2008 WL 509876 (Mass.Land. Ct., 2008).

The defendans reserve their right to further object to plaintiff's witnesses, and to supplement their witness list.

VI.    <u>Experts</u>

A.    <u>Plaintiff</u>

Thomas C. Garrahan, Real Estate Appraiser, qualified to testify in various courts, including but not limited to those of Barnstable County.  Mr. Garrahan's qualifications are fully set forth in his written real estate appraisal which has been produced to the defendants by plaintiff, and filed with the U.S. District Court in connection with plaintiff's Motion for Summary Judgment.

B.    <u>Defendants</u>

None.

VII.    <u>Estimated Length of Trial</u>

Plaintiff estimates three days for trial of this matter.

Defendants estimate one half-day for trial but state the length of trial will depend on the length of plaintiff's case.

## VIII.   ITEMIZATION OF SPECIAL OR LIQUIDATED DAMAGES

### A.   Plaintiff

Plaintiff has suffered the loss of some $27,000 + in rental income due to an inability to rent the single-family dwelling at 9 Ploughed Neck Road, because, without repairs, it is uninhabitable.  Additionally, plaintiff has suffered damages, in an amount to be determined at trial, due to the violation of her federal and state constitutional rights.  Plaintiff has also suffered a diminution of the fair market value of the single-family residence in question, even if it were habitable, due to the collapse of the real estate market between October 2003, and present, and in fact lost several opportunities to sell this property because of this lawsuit.  Plaintiff has also been forced to incur other debts, including mortgaging this property and the one at No. 11 Ploughed Neck Road that she also owns, in order to be able to sustain herself financially due to the financial hardships she has suffered as a direct and proximate cause of defendants' wrongful and unconstitutional conduct in this matter – not only past, but ongoing.

### B.   Defendants

Defendants state that as this is a zoning appeal, plaintiff is not entitled to recover any damages in this action.  With respect to plaintiff's attempt to recover damages for alleged constitutional violations and other torts, plaintiff is precluded from doing so by the District Court's dismissal of Counts V and VI.

## IX.   Certification Regarding Settlement

### A.   Plaintiff

Plaintiff's counsel has repeatedly inquired orally of defense counsel about the possibility of settling this matter, however, each and every suggestion by plaintiff's counsel to this effect has been rejected out of hand by the defendants counsel (most recently on May 22, 2008).
.

### B.   Defendants

As plaintiff's offers of settlement have included a demand that the defendants concede that her property is lawful – the precise issue that is the subject of this dispute – the defendants have declined said offers.

PLAINTIFF,                                    DEFENDANTS,

PATRICIA PEROTTI-CYRUS,                        TOWN OF SANDWICH et al.

By her attorneys,                              By their attorneys,

*Julie C. Molloy*                              *Jackie Cowin*

_____               _____
Julie C. Molloy        BBO#555176              Jonathan M. Silverstein (BBO# 630431)
379 Route 6A                                   Jackie Cowin (BBO# 655880)
East Sandwich MA 02537                         Kopelman and Paige, P.C.
(508) 833-3707                                 Town Counsel
                                               101 Arch Street, 12th floor
                                               Boston, MA 02110
                                               (617) 556-0007

Dated: May 29, 2008

Norton v. Donohue, Land Court Decision, Misc. Case No. 256473 (May 10, 2004, Trombly, J.)

*County:*  **PLYMOUTH, ss.**

*Case No:*  **MISCELLANEOUS    CASE NO. 256473**

*Date:*  **May 10, 2004**

*Parties:*  **ROBERT P. NORTON and MARY D. NORTON, Plaintiffs,**
v.
PETER DONAHUE, WILLIAM ZACHMAN, GEORGE WADSWORTH, DAVID MATTHEWS, AMY
MACNAB, and ANN WELD, as they comprise THE TOWN OF DUXBURY
PLANNING BOARD, Defendants.

MISCELLANEOUS CASE NO. 283993
ROBERT P. NORTON and MARY D. NORTON, Plaintiffs,
v.
ELIZABETH LEWIS, PAUL KALOUS, SALLY WILSON, STEPHEN JONES, and THOMAS
MCCLURE, as they comprise the TOWN OF DUXBURY ZONING BOARD OF APPEALS,
and RICHARD MACDONALD DIRECTOR OF INSPECTIONAL SERVICES FOR THE TOWN OF
DUXBURY, Defendants.

–    1–

*Decision Type:* **DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**


        These cases arise out of the desire of plaintiffs Robert P. Norton
and Mary D. Norton (the "Nortons") to divide the land on which their
home and a barn are located into two parcels, said land being known as
and numbered 180 Tremont Street in Duxbury. In Land Court Misc. Case
No. 256473 the Nortons appeal, pursuant to G. L. c. 41, s. 81BB, a
decision of the defendant Town of Duxbury Planning Board (the "Planning
Board") refusing to endorse a plan which they caused to be submitted to
the Planning Board with a request that it be endorsed as one not
requiring approval under the Subdivision Control Law (the "Planning
Board case"). In Land Court Misc. Case No. 283993 the Nortons appeal,
pursuant to G. L. c. 40A, s. 17, a decision of the defendant Town of
Duxbury Zoning Board of Appeals ("ZBA") upholding a decision of the
Director of Inspectional Services ("Inspectional Services")
(collectively, the "municipal defendants") refusing to issue the
Nortons a building permit which would allow them to demolish the barn
and construct a single family residence on the newly created lot shown
on the plan submitted to the Planning Board (the "ZBA case").[1]
        The Nortons filed the Planning Board case on May 13, 1999. An
answer was filed by the Planning Board on May 19, 1999. On June 6,
2000, the Planning Board filed a motion for summary judgment, together
with affidavits of Robert S. Troy and Thomas Broadrick. The Planning
Board's memorandum in support of its motion was filed on July 17, 2000.
On August 10, 2000, the Nortons filed a cross-motion for summary
judgment, an opposition to the Planning Board's motion, and a brief in
support of their motion for summary judgment. After a hearing on

----------------------
        [1] The two cases were consolidated by former Land Court Chief
Justice Peter W. Kilborn following a telephonic conference between
counsel on October 10, 2002.

- 2-

August 17, 2000, Chief Justice Peter W. Kilborn granted partial summary judgment for the Nortons, ruling from the bench that the house and barn currently existing on the Nortons' property were "separate structures" and that the barn was a "substantial structure." At the same time, the municipal defendants conceded that the home and barn have existed on the property since before the subdivision control law went into effect in Duxbury. There was still a question as to whether the barn currently exists in the same location where it has been since that time. I am now convinced, based on evidence produced by the Nortons, that the barn. has not been moved.

The Nortons filed the ZBA case on September 23, 2002. The municipal defendants filed an answer on October 9, 2002. On June 12, 2003, the ZBA filed a motion for summary judgment in the now consolidated cases, together with an affidavit of Richard MacDonald, and a memorandum in support of the motion. The Nortons filed a cross-motion for summary judgment on September 16, 2003, together with a memorandum in support, a statement of undisputed material facts, and affidavits of Paul J. Driscoll and Anthony La Greca. The municipal defendants filed a memorandum in opposition to the Nortons' cross-motion on October 27, 2003. On November 4, 2003, a hearing was held (Trombly, J.) as which the cross-motions for summary judgment were argued and taken under advisement.

The facts are undisputed and I find them to be as follows:

1. The Nortons are the owners of a parcel of land known as 180 Tremont Street in Duxbury, having acquired the property by deed dated September 11, 1996, and recorded at the

- 3-

Plymouth County Registry of Deeds in Book 14672, Page 90.[2] Prior to that date, title to the property had been held in the names of the Nortons as Trustees of the Robert P. and Mary D. Norton Trust by virtue of a deed to the trust dated 1954 and recorded in Book 8402, Page 91.

2. The grantors in the 1954 deed were Frank and Elsie Nudd who had lived in the house on the property along with Ms. Nudd's father. When the Nortons purchased the property, the house and barn which currently exist thereon had already been there for many years, perhaps for as many as one hundred but at least fifty years.

3. Since purchasing the property in 1954, the Nortons have made several additions to the house, making it substantially larger than it was at the time of purchase. The barn, which was at one time used for storage and to house animals, is now used only for storage and as a workshop. The barn has never been used for residential purposes.

4. At some point, the Nortons decided to divide their land into two lots and to sell one of the newly created lots to their married daughter and her husband in order that they could construct a new house

on the lot where the barn is presently located. The presently existing barn would be demolished.

5. On or about April 18, 1999, the Nortons filed with the Planning Board an "Application for Endorsement Believed Not to Require Approval" (the "ANR Application"). The ANR Application was accompanied by a Plan of Land dated October 28, 1998, entitled "Plan of Land in Duxbury, Mass. Assr's #150-010-001" (the "ANR Plan"). This plan depicted the division of the Norton property into two lots, designated as Lot A and Lot B. A reduced copy of this plan is

----------------------
[2] All references to recorded documents refer to instruments recorded at the Plymouth County Registry of Deeds.

-    4-

attached hereto as "Exhibit A."

6. The ANR Plan shows Lot A as containing six tenths of an acre (25,986 square feet) and having 42.49 feet of frontage on Tremont Street. Lot B on the ANR Plan contains ninety-two hundredths of an acre (40,040 square feet) and would have two hundred feet of frontage on Tremont Street. The existing house is located on Lot A while the existing barn in located on Lot B.

7. Current zoning by-laws for the Town of Duxbury require a minimum area of forty thousand (40,000) square feet and minimum frontage of two hundred feet for land in the district in which the Norton property is located. Thus, while Lot B on the ANR Plan would comply with these requirements, Lot A would not. In addition, the house on Lot A would also be in violation of the sideyard setback requirements under the current zoning by-laws because, at its nearest point, it would be only 7.4 feet from the proposed side property line. If the barn were to remain on Lot B, it too would be in violation of the sideyard setback requirements.

8. The Nortons' ANR Application sought the Planning Board's endorsement on two grounds, the first being that "[t]he division of the tract of land shown on the plan is not a subdivision because every lot shown on the plan has frontage of such distance as is presently required by the Duxbury Protective By-law under Section 502 which requires 200 feet for erection of a building on such lot." In other words, the Nortons sought endorsement because the lot sought to be built Lipon (Lot B) complied with the frontage and area requirements.

9. The Nortons' second grounds for seeking ANR endorsement was their contention that the plan complied with the requirements of G. L. c. 41, s. 81L, because "[t]he division of the tract of land shown on the [ANR] plan is not a subdivision because two or more buildings ... were

-    5-

standing on the land prior to August 18, 1950, the date when the
subdivision control law went into effect in ... Duxbury ... and one of
such buildings remains standing on each of the lots/said buildings as
shown and located on the accompanying plan."

10. On April 26, 1999, the Planning Board conducted a public
hearing on the ANR Application and voted unanimously to refuse the
Nortons' request for ANR endorsement. Notice of this action was filed
in the office of the Town Clerk on April 27, 1999. The Planning Board
has since offered to endorse the ANR Plan. The offer has not been
accepted by the Nortons.

11. On or about March 27, 2002, the Nortons formally applied to
Inspectional Services seeking a building permit to construct a single-
family dwelling on Lot B. By letter dated April 26, 2002, Inspectional
Services denied the application for several reasons, one of them being
that Lot B was not yet in existence because of the fact that the ANR
plan had not been endorsed. However, the primary reason given by
Inspectional Services for refusing to issue the building permit was
that while Lot B appeared to meet the minimum requirements of the
zoning by-laws, it was nevertheless not eligible to receive a permit
because the creation of Lot B resulted in the remaining land (Lot A)
being rendered non-conforming and not in compliance with the zoning by-
law. The letter from Inspectional Services concluded: "I am of the
opinion that 'infectious invalidity' would apply, and the new lot would
be 'infected' with an invalidity of the created non-conforming
parcel."

12. On May 16, 2002, the Nortons appealed Inspectional Service's
decision to the ZBA pursuant to G. L. c. 40A, s. 8, and Article 906.1
of the Duxbury Protective By-Law. After a public hearing, the ZBA
denied the Nortons' appeal and affirmed the decision of Inspectional
Services. The ZBA decision, dated September 3, 2002, and filed with the
Town Clerk on

-    6-

September 5, 2002, differentiated between allowing a "grandfathered"
lot to continue to exist and allowing such a lot to be further divided,
the obvious result creating an even more nonconforming lot. The ZBA
rejected the Nortons' argument that "a specific prohibition of the
action must exist" before such a newly created and apparently lawful
lot may be rendered unbuildable because of the fact that the remaining
lot is non-conforming.

"Summary judgment is granted where there are no issues of genuine
material fact, and the moving party is entitled to judgment as a matter
of law." Ng Bros. Constr., Inc. v. Cranney, 436 Mass. 638, 643-644
(2002); Mass. R. Civ. P. 56(c). I find and rule that there are no
material facts at issue in the present case which would preclude
judgment as a matter of law. Summary judgment is therefore
appropriate.

There are two major issues before me in these consolidated cases:
1) whether the Nortons, were entitled to receive an approval not
required endorsement on their ANR plan which they submitted to the
Planning Board dividing their property into Lots A and B; and II)
whether, if the Nortons were entitled to such endorsement, are they
then entitled to a building permit to construct a single family house

on Lot B notwithstanding the fact that the creation of Lot B renders
Lot A non-conforming?

## I. The ANR Plan

Ordinarily, when a plan is submitted to a planning board seeking
an endorsement that it does not require approval under the subdivision
control law, the only issue to be considered by the board is whether or
not the plan submitted constitutes a subdivision of land. Bisson v.

– 7–

Planning Bd. of Dover, 43 Mass. App. Ct. 504, 506 (1997) (planning
board's review confined to determining whether plan shows a
subdivision). However, G. L c. 41, s. 81P, dealing with the procedure
for approval of plans thought not to require approval as. subdivisions,
must be read in conjunction with G. L. c 41, s. 81L, where it is
stated:

> "the division of a tract of land on which two or more buildings
> were standing when the subdivision control law went
> into effect in the city or town in which the land
> lies into separate lots on each of which one of such
> buildings remains standing, shall not constitute a
> subdivision." (Emphasis supplied).

The Nortons contend that the barn and house currently existing on
their property were in existence when the subdivision control law went
into effect in Duxbury in 1950, and so I find. The municipal defendants
have alleged that there is some evidence that the barn may have been
moved over the years, but have not submitted credible evidence to
support that allegation. The Nortons have submitted affidavits of
themselves and of a longtime Duxbury resident, Anthony La Greca, to
support the proposition that neither structure has been moved. Thus,
the ANR plan submitted by the Nortons to the Planning Board in 1999 was
entitled to an approval not required endorsement by the Planning Board
because it comes under the exception set forth in G. L. c. 41, s. 81L.

## II. The Building Permit

Having determined that the Nortons' ANR plan should have been
endorsed by the Planning Board as one not requiring approval under G.
L. c. 41, s. 81L, I now address whether the Nortons were entitled to
the building permit which they sought to construct a single family
house on the newly created Lot B. One does not automatically follow
from the other. Lots created by the exception contained in G. L. c. 41,
s. 81L, must stand or fall on their own for zoning

– 8–

purposes. The Appeals Court has stated, "just because a lot can be
divided under [G. L. c. 41, s. 81L] does not mean that the resulting
lots will be buildable under the zoning ordinance." Smalley v. Planning
Bd. of Harwich, 10 Mass. App. Ct. 599, 603 (1980).

The municipal defendants contend that Inspectional Services and the ZBA properly ruled that the Nortons were not entitled to a building permit for Lot B based on the doctrine of infectious invalidity. Under the doctrine of infectious invalidity a property owner may not create a valid building lot by dividing it from another parcel rendered nonconforming by such division. Alley v. Building Inspector of Danvers, 354 Mass. 6 (1968); Planning Bd. of Nantucket v. Bd. of Appeals of Nantucket, 15 Mass. App. Ct. 733, 737 (1983), further apellate review denied, 389 Mass. 1104 (1983). Both Alley and Nantucket involved instances where a land owner sought to divide a conforming lot into one conforming lot and one nonconforming lot. Alley, 354 Mass. at 7; Nantucket, 15 Mass. App. Ct. at 737. Such is the Nortons' desire in the present case. Lot B would be conforming as to frontage and minimum area requirements, and although the barn, in its present location would be in violation of sideline setback requirements, the Nortons plan on destroying it and building a single family residence on Lot B so as to comply with all zoning requirements. Lot A, on which the Norton house currently exists, would violate frontage, area, and setback provisions of the Duxbury zoning by-law. As the town views it, allowing a nonconforming lot to continue to exist under a provision of a zoning by-law is one thing, but allowing the creation of a new non-conforming lot is quite another. I agree.

In opposing the infectious invalidity argument of the municipal defendants, the Nortons argue that the doctrine only applies where explicit and prohibitory zoning by-law language exists. They contend that the Duxbury zoning by-law contains no precise language making it a violation

- 9-

to create a new non-conforming lot and that they violated no provision of the by-law in creating the two new lots. Accordingly, it is the Nortons' position that the doctrine of infectious invalidity does not apply and that they are entitled to a building permit. For this argument, the Nortons cite two Land Court cases, Bouffard v. Peabody Zoning Bd. of Appeals, 3 LCR 230 (1995) (Misc. Case No. 199217), and Murphy v. Musmon, Land Court Misc. Case No. 147997 (June 27, 1991). Neither is persuasive nor instructive to the present case.

The Nortons also seek to rely on Section 504 of the Duxbury by-law which provides:

> "No lot, yard, court or other open space already having less than the minimum requirements in this bylaw shall be further divided or reduced with respect to such minimum requirement or requirements." (Emphasis supplied).

The Nortons contend that since their land presently complies with the dimensional requirements as set forth in the by-laws, that Section 504 is therefore not applicable. Such an interpretation, however, stands Section 504 on its head. Clearly, Section 504 seeks to prohibit an owner of an already non-conforming parcel of land from doing anything to make it even more nonconforming. It does not mean, as contended by the Nortons, that the owner of a conforming parcel can take steps to make it non-conforming. Like most municipalities, Duxbury has

provisions in its zoning by-law allowing already existing lots and
structures to be "grandfathered." Section 501 states, "[n]o building or
structure in any district shall be located, constructed, changed,
enlarged or permitted and no use of premises in any district shall be
permitted except in conformity to the intensity and dimensional
regulations set forth herein and in Section 106." Section 106 allows
nonconforming uses to remain if they were already in existence at the
time the zoning by-law was adopted or amended. Nothing in the by-law
allows the creation of a non-conforming use or lot.

-     10-

Based on the foregoing, I rule that the Nortons were entitled to
have their ANR plan endorsed by the Planning Board as "approval not
required" under G. L. c. 41, s. 81L, creating Lots A and B, but they
were not entitled to a building permit to construct a house on Lot B.
The ZBA did not exceed its authority or act capriciously or arbitrarily
in upholding the decision of Inspectional Services. Accordingly, the
Nortons' motion for summary judgment is DENIED insofar as it relates to
the ZBA decision and ALLOWED as it relates to the Planning Board
decision, and the municipal defendants' motion for summary judgment is
DENIED as it relates to the Planning Board decision but ALLOWED as it
relates to the ZBA decision.
    Judgment to enter accordingly.

Judge:     /s/Charles W. Trombly, Jr.
Justice


End Of Decision